**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LAS AMERICAS IMMIGRANT ADVOCACY
CENTER, on behalf of itself and as next friend on behalf
of UNKNOWN NUMBER OF IMMIGRANTS
DETAINED AT GUANTÁNAMO,
1500 E. Yandell Dr.
El Paso, TX 79902;

REFUGEE AND IMMIGRANT CENTER FOR
EDUCATION AND LEGAL SERVICES, on behalf of
itself and as next friend on behalf of UNKNOWN
NUMBER OF IMMIGRANTS DETAINED AT
GUANTÁNAMO,
131 Interpark Blvd.
San Antonio, TX 78216;

AMERICAN GATEWAYS, on behalf of itself and as next
friend on behalf of UNKNOWN NUMBER OF
IMMIGRANTS DETAINED AT GUANTÁNAMO,
314 E. Highland Mall Blvd., Suite 501
Austin, TX 78752;

AMERICANS FOR IMMIGRANT JUSTICE, on behalf of
itself and as next friend on behalf of UNKNOWN
NUMBER OF IMMIGRANTS DETAINED AT
GUANTÁNAMO,
6355 N.W. 36th Street, Suite 309
Miami, FL 33166;

EUCARIS CAROLINA GOMEZ LUGO, as next friend on
behalf of TILSO RAMON GOMEZ LUGO,
c/o American Civil Liberties Union,
125 Broad Street, 18th Floor
New York, NY 10004;

ANGELA CAROLINA SEQUERA, as next friend on
behalf of YOIKER DAVID SEQUERA,
c/o American Civil Liberties Union,
125 Broad Street, 18th Floor
New York, NY 10004; and

Case No.  25-cv-0418

**COMPLAINT AND PETITION FOR
WRIT OF HABEAS CORPUS**

1

YAJAIRA DEL CARMEN CASTILLO RIVERA, as next
friend on behalf of LUIS ALBERTO CASTILLO
RIVERA,
c/o American Civil Liberties Union,
125 Broad Street, 18th Floor
New York, NY 10004;

     *Plaintiffs–Petitioners*,

v.

KRISTI NOEM, Secretary of the U.S. Department of
Homeland Security, in her official capacity,
240 Murray Lane, SW
Washington, DC 20528;

U.S. DEPARTMENT OF HOMELAND SECURITY,
245 Murray Lane, SW
Washington, DC 20528;

CALEB VITELLO, Acting Director and Senior Official
Performing the Duties of the Director of U.S. Immigration
and Customs Enforcement, in his official capacity,
500 12th Street, SW
Washington, DC 20536;

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT,
500 12th Street, SW
Washington, DC 20536;

PETE HEGSETH, Secretary of Defense, in his official
capacity
1000 Defense Pentagon
Washington, DC 20301;

U.S. DEPARTMENT OF DEFENSE,
1000 Defense Pentagon
Washington, DC 20301;

MARCO RUBIO, Secretary of State, in his official
capacity
2201 C Street, NW
Washington, DC 20520; and

2

U.S. STATE DEPARTMENT
2201 C Street, NW
Washington, DC 20520;

     *Defendants–Respondents*.

## INTRODUCTION

1.     This lawsuit is about the government's attempt to thwart access to counsel for immigrant detainees.

2.     For the first time in U.S. history, the federal government has moved noncitizens apprehended and detained in the United States on civil immigration charges to the Naval Station at Guantánamo Bay, Cuba ("Guantánamo"). And it is holding them incommunicado, without access to attorneys, family, or the outside world.

3.     Since February 4, 2025, in now daily flights, the government has reportedly transferred over fifty immigrant detainees from the United States to Guantánamo. The government announced the transport of these immigrants by military plane to Guantánamo, posting photos and videos of handcuffed men surrounded by uniformed military personnel arriving at the naval base.

4.     Even in the face of significant public concern about this unprecedented action, the government has offered no legal authority for the transfer of individuals in immigration custody from within the United States to Guantánamo. Journalists have reported that the government is ramping up transfers to Guantánamo, even as government attorneys continue to evaluate the legality of these actions.

5.     Although the government has widely publicized images of people it now detains at Guantánamo, it has also cut off any means of communication that these detained immigrants have with the outside world. Immigrants held at Guantánamo have effectively disappeared into a black

box and cannot contact or communicate with their family or attorneys. By doing so, the U.S. government has prevented immigrants from accessing legal assistance to understand their rights and to challenge their transfer and detention or conditions of confinement at Guantánamo.

6.      The government has also withheld information regarding the legal basis for these individuals' transfers and confinement at Guantánamo, the likelihood of their continued detention, the immigration status of the transferred individuals, the nature of any legal proceedings against them, the conditions of their confinement, and the government's treatment of and plans for these individuals.

7.      Tilso Ramon Gomez Lugo is a Venezuelan national who, upon information and belief, has been transferred by the government from an immigration detention facility in Texas to Guantánamo. As his "next friend," his sister, Eucaris Carolina Gomez Lugo, brings this action on his behalf. On February 5, 2025, Ms. Gomez Lugo saw photographs of immigrant detainees transported to Guantánamo. She immediately recognized her brother Tilso in one of the photographs and became alarmed that the U.S. government had moved and detained him at Guantánamo. Since February 5, 2025, after Ms. Gomez Lugo retained undersigned counsel on behalf of her brother, counsel has made multiple unsuccessful attempts to contact Mr. Gomez Lugo. Ms. Gomez Lugo has also been unsuccessful in attempting to reach her brother and desires that her brother be provided with the ability to communicate with legal counsel regarding his detention at Guantánamo.

8.      Yoiker David Sequera is a Venezuelan national who, upon information and belief, was detained in the United States during his removal proceedings and transferred by the government from an immigration detention facility in Texas to Guantánamo. As his "next friend," his mother, Angela Carolina Sequera, brings this action on his behalf. Ms. Sequera was in near-

daily contact with her son and last spoke to him on Saturday, February 8. The next day, she received a call from a different person detained at the detention facility stating that her son was notified he would be transferred to Guantánamo. Ms. Sequera has made numerous calls to try to locate her son and speak to him, to no avail. She is distraught over the lack of information, and she desires that her son be provided with the ability to communicate with legal counsel regarding his detention at Guantánamo.

9.      Luis Alberto Castillo Rivera is a Venezuelan national who, upon information and belief, has been transferred by the government from an immigration detention facility in Texas to Guantánamo. As his "next friend," his sister, Yajaira Del Carmen Castillo Rivera, brings this action on his behalf. Ms. Castillo spoke regularly with her brother, and last heard from him on February 3, 2025, when he said he believed that he would be released from custody. But when Ms. Castillo later saw online photos of people being transferred to Guantánamo, she immediately recognized her brother. She has received no information about where her brother is, or how to talk with him. She is deeply worried about her brother, and desires that her brother be provided with the ability to communicate with legal counsel regarding his detention at Guantánamo.

10.      This action is also brought by four nonprofit legal service organizations that provide pro bono legal services critical to detained immigrants. These legal service organizations have established attorney-client relationships with detained immigrants in Texas and Florida, including, as detailed below, individuals who have been threatened with transfer to Guantánamo. They desire to provide their legal services to the immigrants detained at Guantánamo but cannot do so because the government has failed to identify the people it has transported there and has prevented any means of attorney–client communication.

11.      This isolation is no coincidence. Guantánamo is home to one of the most notorious

prisons in the world, used when the U.S. government has attempted to operate in secret, without legal constraint or accountability.

12.     The government has announced its goal of sending tens of thousands of immigrants to Guantánamo in the near future. Without this Court's intervention, even more immigrants will be transferred to this legal black box without access to counsel or any means of vindicating their rights.

13.     Plaintiffs-Petitioners ("Plaintiffs") bring this action to seek injunctive, habeas and declaratory relief ordering Defendants-Respondents ("Defendants") to comply with the U.S. Constitution and federal law prohibiting further incommunicado detention of Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other individuals transferred to Guantánamo, and ensuring attorney–client communication for immigrants detained at Guantánamo.

## PARTIES

### A.  Plaintiffs

14.     Plaintiff Eucaris Carolina Gomez Lugo is the sister of Tilso Ramon Gomez Lugo, a Venezuelan national who, upon information and belief, has been transferred by the government from an immigration detention facility in Texas to Guantánamo. She brings this case and habeas petition as next friend of her brother, Tilso Ramon Gomez Lugo. Mr. Gomez Lugo arrived in the United States in April 2024 and sought asylum. He passed a screening interview establishing that he had a "credible" fear of persecution if removed from the United States and was then placed into full immigration removal proceedings. However, because he was pro se, he was unable to adequately represent himself and received a final order of removal from the Immigration Judge on November 25, 2024. Mr. Gomez Lugo believed he was scheduled for removal in February 2025. He last contacted his family on Saturday, February 1, 2025, and asked for clothes for his flight.

Ms. Gomez Lugo tried to arrange to send clothing to the El Paso Processing Center, where he was detained. Ms. Gomez Lugo and her family have lost all contact with Mr. Gomez Lugo since February 1. Several days later, on February 5, Ms. Gomez Lugo was shocked to see photos of her brother among the men being transferred to Guantánamo. She is deeply concerned for her brother and wishes to retain the services of the legal service organizations named in this case to represent her brother.

15.    Plaintiff Angela Carolina Sequera is the mother of Yoiker David Sequera, a Venezuelan national who, upon information and belief, was detained in the United States during his removal proceedings and transferred by the government from an immigration detention facility in Texas to Guantánamo. She brings this case and habeas petition as next friend of her son, Yoiker David Sequera. Mr. Sequera came to the United States in September 2024 to seek asylum and was in removal proceedings until he received an order of removal on January 6, 2025. Ms. Sequera was in near-daily contact with her son and last spoke to him on February 8, 2025, when he was at the El Paso Processing Center. She received a call the next day from another person detained at that detention facility, stating that her son had been notified that he would be transferred to Guantánamo. Ms. Sequera has made numerous calls to Immigration and Customs Enforcement ("ICE") to try to locate her son and speak with him, to no avail. She is distraught over the lack of information about her son. Ms. Sequera wishes to retain the services of the legal service organizations named in this case to represent her son.

16.    Plaintiff Yajaira Del Carmen Castillo Rivera is the sister of Luis Alberto Castillo Rivera, a Venezuelan national who, upon information and belief, was detained in a Texas immigration facility after entering the United States and was transferred by the government to Guantánamo. She brings this case and habeas petition as next friend of her brother Luis Alberto

Castillo Rivera. Mr. Castillo entered the United States in January 2025 and was detained at the El Paso Processing Center. Ms. Castillo last heard from her brother on February 3, 2025, when he said he believed that he would be released from custody. But when Ms. Castillo later saw online photos of people being transferred to Guantánamo, she immediately recognized her brother. She received no information about where her brother is, or how to talk with him. She is deeply worried about her brother and wishes to retain the services of the legal service organizations named in this case to represent her brother.

17.    Plaintiff Las Americas Immigrant Advocacy Center ("Las Americas") is a nonprofit legal services organization based in El Paso, Texas, dedicated to serving the legal needs of low-income immigrants, including asylum seekers, in Texas and in New Mexico. An essential part of Las Americas' work is providing pro se and limited forms of legal assistance to adult immigrants detained in the ICE El Paso jurisdiction, including immigration counseling and legal services to asylum seekers. This work includes assisting asylum seekers in preparing for asylum fear interviews and representing them both during those interviews and throughout the subsequent review process. In 2024, Las Americas staff and volunteers provided approximately 197 credible fear interview orientations. Las Americas also provides direct representation to people seeking asylum and other forms of protection in immigration court. Las Americas has already spent over 50 hours of staff overtime over the past week alone to track and visit people it serves because of fear of transfers to Guantánamo. Through extensive advocacy, Las Americas prevented an existing client from being transferred on the first flight to Guantánamo and has sought a court order to block further transfers of three habeas clients to Guantánamo.

18.    Plaintiff Refugee and Immigrant Center for Education and Legal Services ("RAICES") is a nonprofit, non-partisan organization headquartered in San Antonio, Texas.

RAICES's mission is to defend the rights of immigrants and refugees; empower individuals, families, and communities of immigrants and refugees; and advocate for liberty and justice. RAICES provides free and low-cost immigration legal services to underserved immigrants— including adults, families, and unaccompanied noncitizen children seeking asylum and related protections—and is the largest immigration legal services provider in Texas. A central aspect of RAICES's work is providing legal services to migrants seeking asylum and other statutory protections upon crossing the border. Since flights to Guantánamo began on February 4, RAICES has had clients transferred from ICE detention locations without any notice, and clients have been told by ICE that they would be sent to Guantánamo. This has caused immense panic among the communities that RAICES serves, leading to diversion of time and resources of its staff.

19.    Plaintiff American Gateways is a nonprofit organization founded in 1987 that is incorporated in Texas and has offices in Austin, San Antonio, and Waco, Texas. American Gateways provides a broad range of low- and no-cost legal services to noncitizens throughout the state, including asylum seekers and victims of family violence, sexual assault, and human trafficking. In addition to providing direct representation to people appearing in the San Antonio Immigration Court and people applying for a wide array of federal immigration benefits, American Gateways provides legal orientation, pro se workshops, and pro bono legal representation at three immigrant detention facilities in Central Texas: the T. Don Hutto Residential Center in Taylor, Texas, the South Texas Residential Center in Pearsall, Texas, and the Karnes County Residential Center in Karnes City, Texas. American Gateways has expended both staff time and financial resources to attempt to establish communication with specific detainees who may have been transferred from the facilities it serves to Guantánamo, in addition to gathering information from family members who are contacting it about transferred individuals.

20.    Plaintiff Americans for Immigrant Justice ("AI Justice") is a non-profit organization that (i) advocates for the rights of unaccompanied immigrant children and survivors of trafficking and domestic violence; (ii) serves as a watchdog on immigration detention practices and policies; and (iii) pursues redress on behalf of immigrant groups with particular and compelling claims to justice. AI Justice is based in Florida and provides legal services to people detained at the Krome Detention Center in Miami, as well as other facilities throughout Florida. AI Justice's legal services at Krome include representation in bond and parole proceedings as well as civil litigation challenging inhumane conditions of confinement in immigration detention. The government's transfers to Guantánamo thus far have focused on Venezuelan nationals with final orders, who are among the immigrant communities served by AI Justice. As a result, AI Justice has expended resources toward developing new protocols for case management, training, and data reporting, as well new procedures and policies for their detention hotline to address the transfers and influx of calls.

21.    Plaintiffs American Gateways, AI Justice, Las Americas, and RAICES (collectively "Legal Service Organizations") provide legal services to detained individuals who are at risk of transfer to Guantánamo, including Venezuelan nationals. Normally, each organization would have ready access to immigrants held in ICE detention, in order to provide legal counseling and other assistance—communicating in person, telephone, or videoconference—as part of their respective organizational missions. The Legal Service Organizations intend and seek to provide free legal services and legal representation to detained immigrants transferred from the United States to Guantánamo, including but not limited to Mr. Gomez Lugo, Mr. Sequera, and Mr. Castillo, but are unable to access these individuals in any way.  Accordingly, their respective organizational missions have been frustrated by the government's policy of failing to provide any

means for the Legal Service Organizations to access clients and undertake attorney–client communication at Guantánamo. The Legal Service Organizations have expended resources, including staff time and other financial resources, to try to establish communication with existing and potential clients held at Guantánamo. They have also expended staff time and resources to track their clients' locations, request information from detention centers and ICE officials, follow up with concerned family members, advocate against transfers to Guantánamo, adjust existing protocols and training, and attempt communication with individuals transferred to Guantánamo.

22.    For instance, RAICES is representing a Venezuelan national who had been paroled into the country but was recently apprehended on immigration charges, and someone purporting to be an ICE official told her that she would be sent to Guantánamo. As a result, RAICES is "scrambling" to figure out if any of its existing clients have been transferred or are at risk of transfer to Guantánamo, and as a result, are making contingency plans.

23.    Similarly, Las Americas has expended significant resources and time to prevent transfers. On February 4, after much advocacy on behalf of an existing Venezuelan client in the middle of the family reunification process with his child in Office of Refugee Resettlement custody, Las Americas was able to have its client removed from the first flight to Guantánamo. Las Americas has also fielded extensive phone calls from concerned family members detained at the El Paso Processing Center and Otero County Detention Center regarding potential transfers, culminating in Las Americas seeking a temporary restraining order to prevent three existing clients from being transferred to Guantánamo while their habeas petitions are pending in the district court.

24.    American Gateways believes that individuals previously detained in detention centers that it services—including at T. Don Hutto Residential Center, South Texas Immigrant Processing Center, and Karnes County Residential Center, all in Texas—were among the groups

transferred to Guantánamo and have expended time and energy contacting ICE about those individuals.

25.     AI Justice works closely with immigrant communities in Florida, including the Venezuelan community and detained immigrants at the four detention sites across the state, many of whom have final orders and fit the profile of those being targeted for transfers to Guantánamo. As a result, AI Justice is already spending resources to develop new protocols for addressing this dynamic and new situation, especially for its detention hotline given the influx of calls.

26.     The Plaintiff Legal Service Organizations bring this case on behalf of themselves, and on behalf of and as next friend of immigrants detained at Guantánamo.

**B. Defendants**

27.     Defendant-Respondent ("Defendant") Kristi Noem is the Secretary of DHS. In this capacity, Defendant Noem is the legal custodian of Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and the other unnamed detainees currently held at Guantánamo. Defendant Noem is sued in her official capacity.

28.     Defendant U.S. Department of Homeland Security ("DHS") is a federal executive agency responsible for, among other things, enforcing federal immigration laws and overseeing lawful immigration to the United States. Defendant DHS is a legal custodian of Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and the other unnamed detainees currently held at Guantánamo.

29.     Defendant Caleb Vitello is Acting Director and Senior Official Performing the Duties of the Director of ICE. Defendant Vitello is responsible for ICE's policies, practices, and procedures, including those relating to the detention of immigrants during their removal procedures. Defendant Vitello is a legal custodian of Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and the other unnamed detainees currently held at Guantánamo. Defendant Vitello is sued in his

legal capacity.

30.    Defendant U.S. Immigration and Customs Enforcement ("ICE") is a federal law enforcement agency within DHS. Defendant ICE is responsible for the enforcement of immigration laws, including the detention and removal of immigrants. Defendant ICE is a legal custodian of Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and the other unnamed detainees currently held at Guantánamo.

31.    Defendant Pete Hegseth is the United States Secretary of Defense. In this capacity, Defendant Hegseth maintains custody and control over Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and the other unnamed detainees currently held at Guantánamo. Defendant Hegseth is sued in his official capacity.

32.    Defendant U.S. Department of Defense ("DOD") is a federal agency responsible for the Naval Station at Guantánamo Bay. Defendant DOD is a legal custodian of Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and the other unnamed detainees currently held at Guantánamo.

33.    Defendant Marco Rubio is the United States Secretary of State. In this capacity, Defendant Rubio maintains custody and control over Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and the other unnamed detainees currently held at Guantánamo.

34.    Defendant U.S. Department of State is a federal agency responsible for the resettlement of refugees detained at Guantánamo. Defendant U.S. State Department is a legal custodian of Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and the other unnamed detainees currently held at Guantánamo.

## JURISDICTION AND VENUE

35.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 2241 *et seq*. (habeas corpus), Art. I § 9, cl. 2 of the U.S. Constitution (Suspension Clause), 28 U.S.C. § 1331 (federal

question), 28 U.S.C. § 1346 (United States as defendant), and 28 U.S.C. § 1361 (mandamus). Defendants have waived sovereign immunity for purposes of this suit. 5 U.S.C. §§ 702, 706.

36.     The Court may grant relief pursuant to 28 U.S.C. § 2241, 28 U.S.C. § 2243, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, 28 U.S.C. § 1331, the All Writs Act, 28 U.S.C. § 1651, and the Court's inherent equitable powers.

37.     Venue is proper pursuant to 28 U.S.C. § 1391(e)(1) because Defendants are agencies of the United States or officers of agencies of the United States, Defendants reside in this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## STATEMENT OF FACTS

38.     The Guantánamo Bay Naval Station is a U.S. military base in Guantánamo Bay, Cuba. It is infamous as the site of a U.S. military prison at which the U.S. government has asserted law of war detention authority since 2001.

39.     It has also been a detention site for migrants picked up on the high seas outside of U.S. territorial waters.

40.     Until now, it has never been used to detain immigrants who were first apprehended and detained on U.S. soil.

41.     The base contains two sides for detainees. On the Windward side, there is a maximum-security prison that houses military detainees. On the separate Leeward side of the base is the Migrant Operations Center ("MOC"), where migrants apprehended on the high seas are held. The individuals at the MOC have never set foot on U.S. soil.

42.     On January 29, 2025, President Trump issued a memorandum directing the

Secretary of Defense and Secretary of Homeland Security "to take all appropriate actions to expand the Migrant Operations Center at Naval Station Guantanamo Bay to full capacity and to provide additional detention space for high-priority criminal aliens unlawfully present in the United States," and declared his intention to house as many as 30,000 immigrants at Guantánamo. The White House, "Expanding Migrant Operations Center at Naval Station Guantanamo Bay to Full Capacity" (Jan. 29, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/expanding-migrant-operations-center-at-naval-station-guantanamo-bay-to-full-capacity/ [https://perma.cc/D2P3-45SN]; Hamid Aleaziz, et al., *U.S. Is Holding Migrants in Cells That Once Held Al Qaeda Suspects*, NY Times, Feb. 5, 2025, https://www.nytimes.com/2025/02/05/us/politics/migrants-trump-guantanamo-prison.html [https://perma.cc/XWH6-HMFF].

43.     Officials recognize that it will be an immense undertaking and logistical nightmare to prepare the isolated Navy base for tens of thousands of immigrants. Officials themselves have confirmed that they are "far from prepared" to house the number of people envisioned in the President's memo. Michael Williams & Haley Britzky, *Trump Directs Guantanamo Bay to Be Prepared to Host Up to 30,000 Migrants*, CNN, Jan. 29, 2025, https://www.cnn.com/2025/01/29/politics/guantanamo-bay-trump-migrants/index.html [https://perma.cc/WE3D-GLCZ].

44.     Numerous reports confirm that there is not enough water, food, or other supplies on the base. Tents are being haphazardly erected along with makeshift latrines and outdoor showers.

45.     There has also been no publicly issued guidance about what access detainees will have to counsel, family or the outside world, or what legal rights the government will afford them.

46.     Despite the immense gaps in information, on February 4, 2025, the government announced that it had transferred ten immigration detainees from Fort Bliss, Texas, to Guantánamo. U.S. Customs and Border Protection ("CBP") posted photos and a video of the transfer of these ten individuals on a military plane to Guantánamo on social media, stating that "[f]lights to Guantánamo Bay have begun." Later, DOD released an article alleging that these ten individuals are members of the Tren de Aragua, a Venezuelan gang, but otherwise refused to respond to inquiries regarding the identities of these individuals, their immigration status or the nature of legal proceedings against them, the legal authority under which they are held, or how long they will be held at Guantánamo.

47.     These initial ten detainees were placed in the military complex, in a facility known as Camp 6, where post-9/11 military detainees had previously been held.

48.     The government has since transferred to Guantánamo several dozen more immigration detainees apprehended and detained in the United States. Upon information and belief, they are all being held in the military complex side of the base.

49.     The government has indicated that it is making plans to send daily flights from the United States to Guantánamo, where the immigration detainees will be housed in a "massive immigration detention complex" for an undisclosed amount of time. *See* Williams & Britzky, *supra.* Since their transfer to Guantánamo, the immigrant detainees have been denied the ability to visit, communicate with, or contact an attorney. Defendants have provided no information at all regarding mechanisms for attorneys or family members to contact or communicate with immigrants held at Guantánamo.

50.     The isolation of the transferred immigrants at Guantánamo is stark compared to the attorney access protocols provided to ICE detainees in the United States.

51.    ICE detention facilities within the United States are required to make schedules and procedures for attorney visitation and communication publicly available. *See, e.g.* ICE, Performance-Based National Detention Standards 2011 ("PBNDS") § 5.6 (2016), https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf [https://perma.cc/3UNC-WGLW] ("detainees and their legal counsel shall be able to communicate effectively with each other"); PBNDS § 5.7 ("the facility shall provide notification of the rules and hours for legal visitation"); PBNDS § 6.4 ("[d]etainees shall have access to group presentations on United States immigration law" and "shall be able to communicate and correspond with representatives from the legal groups that make presentations at the facilities"). There are multiple, specific requirements for attorney-client access, including that: private consultation rooms be made available for attorney-client visits; legal visits be available seven days a week, including holidays; calls with legal representatives and other legal services providers be scheduled as soon as possible after submission of requests; facilities promptly deliver telephone messages to detainees; facilities provide detainees with direct or free calls to their legal representatives and/or legal service providers; legal calls not be restricted to less than 20 minutes and must be unmonitored and confidential; and facilities allow group presentations on the legal rights of immigrants. Detention facilities nationwide also provide scheduled, unmonitored video visitation calls and the ability to electronically sign legal documents. Even those awaiting removal in U.S. detention facilities—and in segregation or restrictive housing units — have access to counsel. *See* PBNDS § 2.12.

52.    Even under the best circumstances, attorneys will face several barriers to communicating with immigrant detainees held at Guantánamo given its remote location on a military base. However, at a minimum, the government can provide legal access to immigrant

detainees held at Guantánamo through phone calls, video conferences, electronic mail, fax, and in-person visits, among other means.

53.    Notably, although their access is more restricted than typical immigrant detainees held by ICE in the United States, alleged enemy combatants detained by the Defense Department at Guantánamo have access to counsel. Those protocols for attorney–client communication have been established via court order. *See In re Guantánamo Bay Detainee Continued Access to Counsel*, 892 F. Supp. 2d 8 (D.D.C. 2012); In *re Guantánamo Bay Detainee Litigation*, 577 F. Supp. 2d 143 (D.D.C. 2009); *Al Odah v. United States*, 346 F. Supp. 2d 1 (D.D.C. 2004). These orders establish procedures, including the scheduling of counsel visits and calls, provision of a meeting room, security clearance, and correspondence.

54.    Plaintiff Gomez Lugo and Plaintiff Castillo desire that their brothers be provided with the ability to communicate with legal counsel, including the Plaintiff Legal Service Organizations, regarding their detention at Guantánamo. Similarly, Plaintiff Sequera wishes for her son to be provided with the ability to communicate with legal counsel, including the Plaintiff Legal Service Organizations, regarding his detention at Guantánamo.

55.    The Plaintiff Legal Service Organizations seek to advocate for and vindicate the rights of immigrants in the United States, including detained immigrants, asylum seekers and others seeking humanitarian protections. To further their missions, these organizations provide direct representation in expedited removal and removal proceedings, Know Your Rights trainings on the immigration process, assistance with parole, bond, and other means of seeking release from detention (including habeas), and otherwise advocate on behalf of detained immigrants.

56.    The Plaintiff Legal Service Organizations seek to consult with and provide these legal services to immigrants detained at Guantánamo. The Legal Service Organizations are

especially concerned that immigrants detained at Guantánamo may be deprived of their rights, including whether: they were unlawfully transferred to Guantánamo; they were erroneously denied access to the asylum process; the government may deport them to a country where they will be persecuted or tortured; they are being erroneously detained; and they may be subject to punitive conditions and mistreatment. The Legal Service Organizations thus wish to access detained immigrants at Guantánamo to advise them of their rights and offer legal services for those who wish to retain them.

57.      Noncitizens, including those with final orders of removal, have various forms of immigration relief, legal processes, and legal remedies available to them. This can include: motions to reopen based on changed circumstances; immigration relief under the Violence Against Women Act, Temporary Protected Status, and U- and T- visas; requests for prosecutorial discretion; civil rights complaints and challenges based on conditions of confinement and abuses in detention; as well as means for seeking release, including through federal habeas petitions where the government is not able to deport someone in the reasonably foreseeable future. While Plaintiff Legal Service Organizations provide these and other legal services to people detained in the United States, the complete lack of policies or protocols for attorney access to individuals detained at Guantánamo interferes with the Legal Service Organizations' ability to provide those services and frustrates their respective missions.

58.      On February 7, 2025, the Plaintiff Legal Service Organizations and other rights groups, including counsel in this lawsuit, wrote to Defendants expressing their serious concern about the transfer and detention of immigrants from the United States to Guantánamo, and requesting immediate access to them. The Legal Service Organizations urged the government to provide them with access to the detained immigrants so that those individuals would have access

to legal counsel. Letter from ACLU et al., to Kristi Noem, Sec'y Homeland Sec., et al. (Feb. 7, 2025), https://www.aclu.org/documents/urgent-request-for-access-to-and-information-regarding-immigrants-transferred-from-the-united-states-and-detained-at-guantanamo-bay [https://perma.cc/D2FC-VWFJ].

59.    Defendants have not provided a direct response to the letter. However, DHS Assistant Secretary Tricia McLaughlin posted a response referencing the letter on the social media site X, formerly known as Twitter, that "If the AMERICAN Civil Liberties Union cares more about highly dangerous criminal aliens that include murderers and vicious gang members than they do about American citizens then they should change their name." Tricia McLaughlin, @TriciaOhio,        X        (Feb.        7,        2025,        11:58        AM), https://x.com/TriciaOhio/status/1887908693112480253 [https://perma.cc/73AB-TH6B].

60.    Although Defendants generally assert that they may not publicly provide personally identifying information about immigrant detainees, Defendants publicized photographs of detainees arriving at Guantánamo, clearly showing their faces, including in press releases.

61.    Defendants have not indicated how long they intend to detain these individuals at Guantánamo.

62.    Defendants have not notified any family members of Mr. Gomez Lugo, Mr. Sequera, or Mr. Castillo of their detention at Guantánamo or provided any access to them. ICE has not responded to the many inquiries that these family members and counsel have made about their location.

63.    When Ms. Gomez Lugo first became aware that her brother had been moved to Guantánamo, ICE's online detainee locator, located at https://locator.ice.gov/odls/, displayed his location as the El Paso Processing Center. However, on February 8, counsel confirmed via email

and phone with ICE that he had been transferred from the El Paso Processing Center to Miami on February 4. After multiple calls and emails, counsel confirmed on February 10 that Mr. Gomez Lugo was not at either of ICE's detention facilities near Miami (Krome Processing Center and Broward County Transitional Center). On February 10, an ICE deportation officer at the ICE Field Office in Miami stated that Mr. Gomez Lugo was still in ICE custody but was "in transit." ICE would not provide counsel any further details of Mr. Gomez Lugo's location or any means of communicating with him.

64.    When Ms. Sequera learned that her son had been told he would be transferred to Guantánamo, ICE's online detainee locator continued to show Mr. Sequera as at the El Paso Processing Center. However, on February 10, an ICE employee informed counsel in a telephone conversation that Mr. Sequera may no longer be at the facility and advised counsel to call back again the next day. On February 11, counsel received confirmation over email that Mr. Sequera was no longer at the El Paso Processing Center. Over the course of the morning, the ICE detainee locator was updated to reflect that he was in ICE custody in "Florida" and directed the viewer to call the ICE field office for the detainee's location. Counsel made repeated calls to both the ICE field offices in Plantation, Florida, and El Paso, Texas, but was unable to reach anybody to confirm Mr. Sequera's location. ICE has not provided counsel with any information on how to contact Mr. Sequera.

65.    Counsel has also attempted to locate and contact Mr. Castillo. On February 11, ICE's online detainee locator stated that he was in ICE custody in "Florida," and also directed the viewer to call the ICE field office for the detainee's location.  Counsel made repeated calls to ICE to confirm Mr. Castillo's location, but was unable to reach anyone.

66.    Upon information and belief, Defendants have not provided any individual or

organization capable of providing legal assistance to Mr. Gomez Lugo, Mr. Sequera, or Mr. Castillo with access to them.

67.    Without access to counsel, Mr. Gomez Lugo, Mr. Sequera, and Mr. Castillo cannot assess the legal validity of their detention by Defendants at Guantánamo, challenge their detention or conditions of confinement, or raise any other claims they may have.

68.    Upon information and belief, Defendants have not notified any members of other detained immigrants' families of their transfer to or detention at Guantánamo or provided any family members with access to them. Defendant ICE's online detainee locator system, located at https://locator.ice.gov/odls/, currently states only that detainees suspected of being transferred to Guantanamo are in "Florida," and instructs the user to contact the local ICE Field Office, which has provided no further information. Nor have they provided any of these other detainees with access to counsel. Without access to counsel, these detainees cannot assess the legal validity of their detention by Defendants at Guantánamo, challenge their detention or conditions of confinement, or raise any other claims they may have.

69.    Each of the foregoing paragraphs is incorporated by reference in each of the following claims.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of Right to Habeas Corpus
*On behalf of Plaintiffs Gomez Lugo, Sequera, Castillo, and Immigrant Detainees*

70.    Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees transferred from the United States and held at Guantánamo have the right to file petitions for habeas corpus to challenge the legality of that transfer and detention or raise other claims related to the basis for their removal. That right includes the right of access to counsel.

71.     Absent access to counsel, the right to habeas corpus is meaningless.

72.     By depriving Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and the other immigrant detainees held at Guantánamo of the ability to hire, consult, and communicate with counsel, Defendants have violated and continue to violate their right to habeas corpus. *See* Art. I § 9, cl. 2 of the U.S. Constitution (Suspension Clause); 28 U.S.C. § 2241.

73.     Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and the other immigrant detainees held at Guantánamo have suffered and will imminently suffer irreparable injury as a result of Defendants' policies, practices, and failure to act and are entitled to injunctive relief to avoid any further injury.

## COUNT II
### Violation of First Amendment Rights of the Immigrant Detainees
*On behalf of Plaintiffs Gomez Lugo, Sequera, Castillo, and Immigrant Detainees*

74.     The First Amendment guarantees Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees transferred from the United States and held at Guantánamo the right to communicate with the outside world.

75.     The First Amendment also guarantees Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees held at Guantánamo the right to hire, consult, and communicate with an attorney. The government may not unreasonably restrict this right.

76.     By depriving Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees held at Guantánamo of the ability to hire, consult, and communicate with counsel, Defendants have violated and continue to violate their rights under the First Amendment.

77.     Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees held at Guantánamo have suffered and will imminently suffer irreparable injury as a result of Defendants' policies, practices, and failure to act and are entitled to injunctive relief to avoid any further injury.

## COUNT III
### Violation of Fifth Amendment Right to Due Process
*On behalf of Plaintiffs Gomez Lugo, Sequera, Castillo, and Immigrant Detainees*

78.     Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees transferred from the United States and held at Guantánamo have a due process right not to be subjected to punitive conditions of confinement, which includes the right not to be held without access to counsel or the outside world.

79.     Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees held at Guantánamo experience a denial of access to counsel substantially worse than that experienced by those serving time in prison for a criminal conviction in the United States.

80.     The limitations on attorney access that Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees held at Guantánamo face are not rationally related to a non-punitive purpose and are excessive.

81.     Defendants could accomplish their non-punitive objectives in alternative and less harsh methods than the limitations they have placed on access to counsel by Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees held at Guantánamo.

82.     Defendants have subjected Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees held at Guantánamo to punitive conditions of confinement.

83.     Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees held at Guantánamo have substantial liberty interests in pursuing legal options available to them.

84.     Defendants' denial of attorney access has deprived Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees held at Guantánamo of their liberty interest and creates a substantial risk that they will face delayed or wrongful denial of relief. Allowing attorney access would cause only minor fiscal and/or administrative burdens.

85.     Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees held at Guantánamo have suffered and will imminently suffer irreparable injury as a result of Defendants' policies, practices, and failure to act and are entitled to injunctive relief to avoid any further injury.

**COUNT IV**
**Violation of INA and Implementing Regulations**
*On behalf of Plaintiffs Gomez Lugo, Sequera, Castillo, and Immigrant Detainees*

86.     The Immigration and Nationality Act ("INA") provides all detained noncitizens the right to counsel of their own choice. This statutory and regulatory right to counsel includes the right to consult with and retain counsel.

87.     Defendants' policies, practices, and failure to act have deprived Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees transferred from the United States and held at Guantánamo of their statutory and regulatory right to counsel guaranteed by the INA.

88.     Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees held at Guantánamo have suffered and will imminently suffer irreparable injury as a result of Defendants' policies, practices, and failure to act and are entitled to injunctive relief to avoid any further injury.

**COUNT V**
**Violation of First Amendment Rights of Plaintiff Legal Service Organizations**
*On behalf of Legal Service Organizations*

89.     The First Amendment protects the Legal Service Organizations' activities in advising and representing their clients and in soliciting prospective litigants. These activities are forms of political association and expression.

90.     Defendants' policies, practices, and failure to act have interfered with and obstructed the Legal Service Organizations' ability to advise and represent detainees in need of legal assistance at Guantánamo.

91.     The Legal Service Organizations have suffered and will imminently suffer

irreparable injury as a result of Defendants' policies, practices, and failure to act and are entitled to injunctive relief to avoid any further injury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs ask the Court to:

92.    Enter judgment for Plaintiffs and against Defendants;

93.    Declare that Defendants' actions violate the right of Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other detained immigrants to counsel under Habeas Corpus, their First Amendment right to consult with attorneys, their Fifth Amendment due process rights, and their statutory and regulatory right to counsel, as well as the Legal Service Organizations' First Amendment rights.

94.    Order Defendants forthwith to permit lawyers from the Legal Service Organizations, and the undersigned counsel, to meet and confer with Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and the other unknown immigrant detainees in scheduled, timely, free, confidential, and unmonitored attorney-client conversations, in person, and via videoconferencing or telephone, with accommodations for interpretation, with no additional security clearances beyond those required to visit any individual in immigration custody in the United States, in order for counsel to advise them of their legal rights and to provide them with legal assistance.

95.    Order Defendants to provide a method for immigrants detained at Guantánamo to place timely, free, confidential, and unmonitored outgoing legal calls.

96.    Order Defendants to provide a method for timely and confidential legal document exchange and signature, including via fax, email or electronic signature platforms; courier service, and mail.

97.    Order Defendants to make publicly available information regarding protocols for

attorney-client communication at Guantánamo via Defendant Immigration and Customs Enforcement's website, and to provide that information in English and Spanish to all immigrants detained by Defendants at Guantánamo.

98.     Order Defendants to specifically identify the location of a detainee held at Guantánamo as "Guantánamo" in Defendant Immigration and Customs Enforcement's Online Detainee Locator System within 24 hours of their transfer to Guantánamo;

99.     Order Defendants to provide notice to the Court and to counsel for Plaintiffs at least 72 hours prior to any transfer of Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, or the other unknown immigration detainees to a foreign jurisdiction or to the custody of another nation.

100.     Order Defendants to provide notice to the Court and to counsel for Plaintiffs at least 72 hours prior to any transfer to Guantánamo of additional noncitizens currently detained under immigration authorities inside the United States.

101.     Award Plaintiffs attorney fees and other litigation costs pursuant to the Equal Access to Justice Act and/or any other applicable law.

102.     Grant such other relief as the Court deems just and proper.

Dated: February 12, 2025

Respectfully submitted,

/s/ *Lee Gelernt*

Eunice H. Cho (D.C. Bar No. 1708073)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW, 7th floor
Washington, DC 20005
(202) 546-6616
echo@aclu.org

My Khanh Ngo*
Kyle Virgien*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
mngo@aclu.org
kvirgien@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org

Deepa Alagesan (D.D.C. Bar No. NY0261)
Kimberly Grano (D.D.C. Bar No. NY0512)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza, 33rd Floor
New York, New York 10004
Telephone: (516) 838-7044
dalagesan@refugeerights.org
kgrano@refugeerights.org

Lee Gelernt (D.D.C. Bar No. NY0408)
Brett Max Kaufman (D.D.C. Bar No.
NY0224)
Judy Rabinovitz*
Noor Zafar*
Omar C. Jadwat*
Wafa Junaid*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
bkaufman@aclu.org
jrabinovitz@aclu.org
nzafar@aclu.org
ojadwat@aclu.org
wjunaid@aclu.org

Baher Azmy*
Shayana D. Kadidal (D.C. Bar No. 454248)
J. Wells Dixon*
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, Floor 7
New York, NY 10012
T: (212) 614-6427
bazmy@ccrjustice.org
shanek@ccrjustice.org
wdixon@ccrjustice.org

*Attorneys for Plaintiffs-Petitioners*

**Pro bono representation certificates
forthcoming*