# DECLARATION OF JENNIFER BABAIE

# LAS AMERICAS IMMIGRANT ADVOCACY CENTER

I, Jennifer Babaie, make the following declaration based on my personal knowledge and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

**Las Americas Mission and Activities**

1. I am a licensed attorney and a member in good standing of the California Bar. I have been the Advocacy and Legal Services Director at Las Americas Immigrant Advocacy Center ("Las Americas") since January 2023. Prior to joining Las Americas, I worked in various related positions. Starting in 2018, I worked as a supervising attorney and program director at the International Refugee Assistance Project, where I represented refugees, asylum seekers, and others seeking humanitarian assistance and family reunification, and I ran a cross-border program focused on providing direct legal services to persons in Ciudad Juarez seeking access to safety and family reunification in the United States.

2. Las Americas is a nonprofit legal services organization based in El Paso, Texas. Our mission is to provide high-quality free legal services to low-income immigrants, and to advocate for human rights. Our work spans West Texas, southern New Mexico, and Ciudad Juárez, Mexico. We seek to ensure that individuals have a fair opportunity to establish their eligibility for relief from removal from the United States. Our work includes direct legal services, impact litigation, and advocacy for detained immigrants, particularly those facing prolonged detention and removal.

3. I am submitting this declaration to describe the impact of the lack of access to potential clients who were detained in Texas and New Mexico, and have been transferred to the U.S. Naval Base at Guantánamo Bay, Cuba. This includes one man from Venezuela who we have screened and are actively looking to assist by seeking firm referral services from potential pro bono partners.

4. An essential part of Las Americas' work is providing pro se assistance and legal representation to detained immigrants in the Immigration and Customs Enforcement ("ICE") El Paso jurisdiction, which includes assisting asylum seekers in preparing for and representing them in credible fear interviews ("CFIs") and reasonable fear interviews ("RFIs"), as well as throughout the subsequent review process.

5. Las Americas is one of the few legal service providers offering pro bono representation to detained immigrants in Texas and New Mexico. In 2024, our staff and volunteers provided approximately 197 credible fear interview orientations and represented asylum seekers in related proceedings.

5. Las Americas provides legal assistance to detained individuals, including Venezuelan asylum seekers and other noncitizens at risk of removal. We screen individuals for

asylum and other forms of eligibility, file asylum applications, and represent clients in immigration court, the Board of Immigration Appeals, and federal courts.

6. Las Americas also provides legal representation for people with final orders of removal who face prolonged detention of six months or more because they cannot be deported. We are one of the few service providers in the region who litigate habeas petitions to seek relief for detained individuals in that situation. This work became especially important starting around the summer of 2024, as we started seeing many more Venezuelan nationals facing gang allegations, leading to prolonged detention and separation from minor children even when they could not be removed.

7. We are active members of the Dignity Not Detention Campaign which seeks to prohibit public entities from entering into agreements to detain people for civil immigration violations. Las Americas regularly documents abuses at immigrant prisons in the ICE El Paso field office jurisdiction, including El Paso Processing Center (EPPC) and Otero County Detention Center (OCDC), and advocates for the release of the individuals harmed by these abuses, including reports to the DHS Office of Civil Rights and Liberties.

**Barriers to Legal Access for Prospective Clients Transferred to Guantánamo**

8. On January 29, 2025, President Donald Trump issued an Executive Order instructing the Secretaries of Defense and Homeland Security to take all necessary steps to "expand the Migrant Operations Center [(MOC)] at Naval Station Guantánamo Bay to full capacity," and the government has been taking steps toward detaining up to 30,000 noncitizens transferred from the United States to Guantánamo.

9. The expansion of Guantánamo as an immigration detention site marks a drastic shift in U.S. immigration policy and directly undermines Las Americas' mission of providing free legal representation to detained immigrants. Many of the individuals subject to transfer are the same asylum seekers we typically serve in ICE detention centers in Texas and New Mexico. Offshoring their detention prevents Las Americas from offering them timely legal services and effectively places the detainees in a legal void where they cannot meaningfully assert their rights.

10. In the Otero County and El Paso facilities, we are typically able to access our clients either by telephone or in-person within 24-48 hours, or even faster. The ability to access clients and potential clients on a timely and confidential basis is crucial to our operation and to the ability of people in custody to meaningfully pursue legal avenues towards relief and/or release. As a non-profit organization with limited resources and because of the lack of access to Guantánamo, it would be nearly impossible to continue representing existing clients if they are transferred to the naval base, and we would not be able to reach potential clients without access. Moreover, as detailed below, the threat of transfers has already diverted our resources. Las Americas would need to restructure an already overstretched department to attempt to monitor the daily transfers so as not to lose touch with anyone on our waiting list or those already in the process of receiving our assistance.

11. Just in the last week alone, the government's refusal to provide up-to-date, accurate information has added approximately 50 hours of overtime across multiple staff who have had to track the online detainee locator and visit both facilities in-person more frequently than usual out of a fear that the people we were working with would be some of the people transferred to Guantánamo. I believe that at least one of these men we were working with has been taken out of EPPC and flown to Guantánamo. We have not been able to contact him or any of the other men whose families have reached out to us in tears over the fact that their family members have gone missing. The government has given us absolutely no accurate information for where these men are, and when we follow up with the ICE field offices listed on the ICE detainee locator as having responsibility for them, they either do not respond or simply reply that the men are not present.

12. Las Americas intends to provide free legal services and representation to individuals transferred from the United States to Guantánamo. However, the government has failed to establish any avenue for attorney-client communication, obstructing our ability to represent detained individuals and depriving them of their right to consult with and retain counsel.

13. Since the first transfer of immigrant detainees to Guantánamo on February 4, 2025, Las Americas has been barred from accessing or communicating with detained individuals on the base. The government has not provided any information on how attorneys can represent individuals who have been transferred.

14. Based on conversation with Las Americas staff, I believe that at least several of the individuals detained at Guantánamo were previously detained in detention centers that Las Americas serves like the EPPC and OCPC. After learning that the first flight to Guantánamo had left from El Paso earlier this week, I began looking for information online regarding what the federal government's plans were for these people sent to Guantánamo. All I could find were tweets from the President promising to send the "worst" of them to the base. When members of our staff reported to me that a person they had met with at EPPC informed them they knew of men taken away to Guantánamo, we began making concerted efforts to check the names and A-numbers of the people suspected of being taken and noticed inconsistencies. This lack of information and transparency, coupled with my prior knowledge regarding the near-impossibility of scheduling attorney-client calls and visits at MOC, makes me concerned that Guantánamo is absolutely not equipped to meet basic due process standards. No system has been established for legal visitation, confidential attorney calls, or other forms of communication necessary for *any*, let alone effective, representation of those individuals detained at Guantánamo.

15. We currently work directly with detained individuals who are at risk of transfer to Guantánamo, including those with final orders of removal who remain in prolonged detention due to the government's inability to execute their deportation. These individuals would otherwise benefit from our representation to seek release to which they are entitled under U.S. law, but instead, they now face prolonged detention and transfer to an offshore detention center without access to legal counsel.

16. Without access to legal representation, individuals detained at Guantánamo have no practical ability to challenge their detention or seek relief to which they may be entitled. The lack of transparency and procedural safeguards significantly increases the risk of wrongful deportation and continued human rights violations.

17. The government's refusal to provide attorney-client communication at Guantánamo prevents detained individuals from accessing critical legal counsel and effectively navigating their legal claims. Asylum seekers and other detained noncitizens who would otherwise receive legal assistance at ICE detention facilities in Texas or New Mexico are now beyond our reach, leaving them with no meaningful legal recourse.

18. Las Americas has expended significant resources—including staff time and financial resources—attempting to establish communication with potential clients held at Guantánamo, including one person we are in the process of referring to a pro bono partner. These efforts have included outreach to ICE and advocacy demanding access to the people detained, but to date, the government refuses to confirm the location of anyone we suspect of being transferred, providing inconsistent information between the ICE detainee locator and responses given to several Las Americas staff members. The only reason we were able to first detect the nature of these transfers was because of a report provided to our staff by a man currently detained at EPPC. As far as I am aware, no procedures have been implemented to provide confirmation of the whereabouts of these people or to allow attorney-client communication, rendering these people effectively disappeared.

19. As another example of how the transfers have diverted Las Americas' time and resources: We are representing a Venezuelan man who is eligible to seek release through a habeas petition next month. He was nearly taken on the first flight that left Texas for Guantánamo last Tuesday, February 4, 2025. A Las Americas attorney was contacted by his family on February 4 to inform her that the individual had been told by ICE officers in his unit that he was going to be transferred. The family was terrified because his child is currently in Office of Refugee Resettlement custody in the U.S. awaiting reunification with her parents. The Las Americas attorney contacted several ICE offices by email and telephone requesting that his transfer be stopped immediately because of the family reunification process already underway. His family also attempted to call ICE and was later told that he also demanded to be taken off the bus because his daughter was still in the U.S. As a result of this extensive advocacy, he was removed from the flight.

20. Over the course of the week of February 4 to February 9, we began receiving numerous calls from concerned family members of persons detained at EPPC and concerning reports from individuals we are in the process of screening for potential eligibility for services from our organization. These accounts detail terrorizing and chaotic behavior by ICE guards - we learned that ICE was going around with lists of Venezuelan men, asking some for sizes for a uniform even though people held at EPPC are not usually sized before being given clothing issued by the facility. Others reported that some Venezuelan men were directly told they were on the transfer list for Guantánamo and that more would be placed on the list. At least one of our clients at Otero County Facility who we represent in his habeas petition told a member of our staff that he recognized the faces of

some of the men in the photos shown on televised news aired in the facility. This client also reported to our staff member that he and others in custody noticed that some men were being transferred to EPPC and then to Guantánamo.

21. Recognizing that three of our habeas clients seeking release from prolong custody in Otero County Facility, fit the profile of people being targeted for transfer to Guantánamo, our team along with cocounsel in those cases, filed an emergency TRO seeking an injunction on the transfer of our clients throughout the pendency of their habeas proceedings. This TRO was granted in an emergency ex parte hearing on Sunday, February 9, 2025, by Judge Gonzalez of the U.S. district court of New Mexico. *See* Mem. Op. & Order, *Perez Parra v. Castro*, No. 1:24-cv-00912-KG-KRS (D.N.M. Feb. 9, 2025), ECF No. 47.

22. The continued transfer of noncitizens to Guantánamo under the President's memorandum creates significant barriers to legal access. Without immediate intervention, detained immigrants will continue to face legal limbo, prolonged detention, and the risk of wrongful removal. This lack of access frustrates Las Americas' mission and we are seeking immediate access to ensure that we can offer our services to those in need.

23. On February 7, we joined over a dozen rights organizations to the federal government to demand immediate access to the immigrants transferred from the United States to Guantánamo. We have not received a response as of the date of this declaration.

Executed this 10th day of February, 2025, in El Paso, Texas.

Jennifer Babaie
Director of Advocacy and Legal services
Las Americas Immigrant Advocacy Center