**DECLARATION OF MARIANIS NAZARETH GUILARTE TOBAR**

I, Marianis Nazareth Guilarte Tobar, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I make this declaration based on my personal knowledge. If called to testify, I could and would do so competently and truthfully.

2. My name is Marianis Nazareth Guilarte Tobar. I currently live in San Antonio, Texas. I am the wife of Sergio Gabriel Guevara-Varguillas, a 30-year-old from Venezuela.

3. I am providing this declaration because my husband has been transferred to Guantánamo Bay, Cuba, and I am deeply concerned about his well-being. Sergio and I have a nine-month-old U.S. citizen daughter and he also has a 12-year-old daughter in Venezuela. The children and I need Sergio, and we need to know how he is doing.

4. Sergio and I entered the United States on September 28, 2023. We were separated upon entry—I was processed with other women, and he was later released in Del Rio, Texas. After being released, we went to live in San Antonio, Texas and welcomed our daughter into the world.

5. On September 18, 2024, while his friend was driving, Sergio was stopped by police. Instead of receiving a traffic violation, he was taken into immigration custody and booked into Pearson Detention Center on September 19, 2024.

6. Sergio did not have an immigration attorney because we could not afford one. We have a small child and were trying to meet basic expenses. We were supposed to meet with an attorney two days after Sergio was taken into ICE custody. because Sergio was in detention and could not work, and I had to support our daughter, Sergio ended up getting a final order of removal on November 18, 2024.

7. Sergio and I were in regular contact while he was detained. When he was in Pearson, we spoke every day. After his transfer to El Paso, we were only able to speak every three days because he was not allowed to call more frequently.

8. Sergio was extremely worried about our family, especially about leaving our baby and me alone. He repeatedly told me he could not believe he had to be away from us.

9. He was also afraid of being sent to Guantánamo, although I do not know if he was directly threatened with that possibility. The last thing he told me was that he was expecting to be deported to Mexico.

10. Sergio and I last spoke on February 6, 2025. The next day, I reached out to a friend whose husband was detained at the same detention center, but she told me he was no longer there. At first, I thought he might have been deported to Venezuela. I immediately started trying to get more information. I called the ICE hotline multiple times over three

days but was given conflicting answers. At one point, an agent told me Sergio had been transferred to Florida, but when I kept calling, no one answered or gave me any further details.

11. I also asked Sergio's mother, his brother, and his brother's wife to call on his behalf. After repeated attempts, one agent eventually told them that Sergio could no longer have contact or receive visitation. A few days later, I saw his name on a list circulating on TikTok that showed people transferred to Guantánamo Bay.

12. Sergio has never been involved in any gang activity. However, while detained at Pearson, officers accused him of being part of Tren de Aragua and pressured him multiple times to admit it. He refused every time because it is not true. Sergio does have tattoos, but they are not gang related. He has never been charged with or convicted of a crime, in either Venezuela or the United States.

13. If Sergio is being held at Guantánamo, I want him to have a lawyer who can help him fight his detention and explore any legal options available. I understand that there are legal organizations in this case who would offer Sergio services, and I would like them to represent him if they are able to communicate with him. I believe that it would be in my husband's best interest to have this legal representation. I also believe it is in my husband's best interest to be returned to the United States from Guantánamo.

14. Everything in this statement is true to the best of my knowledge. This declaration was read back to me in Spanish, a language I understand.

Executed on the 20th day of February, 2025 at San Antonio, Texas.

*Marianis G*
_____
Marianis Nazareth Guilarte Tobar

## CERTIFICATE OF TRANSLATION

I, Ana Sofia Barrios, certify that I am fluent in both English and Spanish. On February 20th, 2025, I personally spoke with Marianis Nazareth Guilarte Tobar and read the foregoing declaration to her, translated into Spanish faithfully and accurately, over the phone. Ms. Guilarte Tobar affirmed that she understood my translation and that the information in the above declaration is true and accurate.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

*Ana Barrios*
Ana Sofia Barrios
Paralegal
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660