# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHON ELIAS SUAZO-MULLER
Naval Station Guantanamo Bay
Guantanamo Bay, Cuba;

RODOLFO JOEL LOPEZ JARQUIN
Naval Station Guantanamo Bay,
Guantanamo Bay, Cuba;

       *Plaintiffs, on behalf of themselves and those
       similarly situated,*

                v.

KRISTI NOEM, Secretary of the U.S. Department of
Homeland Security, in her official capacity,
240 Murray Lane, SW
Washington, DC 20528;

U.S. DEPARTMENT OF HOMELAND SECURITY,
245 Murray Lane, SW
Washington, DC 20528;

TODD LYONS, Acting Director and Senior Official
Performing the Duties of the Director of U.S. Immigration
and Customs Enforcement, in his official capacity,
500 12th Street, SW
Washington, DC 20536;

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT,
500 12th Street, SW
Washington, DC 20536;

PETE HEGSETH, Secretary of Defense, in his official
capacity
1000 Defense Pentagon
Washington, DC 20301;

U.S. DEPARTMENT OF DEFENSE,

Case No. 1:25-cv-418-CJN

**AMENDED CLASS ACTION
COMPLAINT**

1

1000 Defense Pentagon
Washington, DC 20301;

MARCO RUBIO, Secretary of State, in his official
capacity
2201 C Street, NW
Washington, DC 20520; and

U.S. STATE DEPARTMENT
2201 C Street, NW
Washington, DC 20520;

       *Defendants.*

## INTRODUCTION

1.     This class action lawsuit challenges the government's severe and unusual restrictions on access to counsel and communication with family members imposed on immigrants detained at the Naval Station at Guantánamo Bay, Cuba ("Guantánamo"), who were originally apprehended in the United States and detained in U.S. immigration detention facilities.

2.     This case began in February 2025, when the federal government began to move noncitizens apprehended and detained in the United States on civil immigration charges to detention at Guantánamo. The government announced the transport of these immigrants from the United States by military plane to Guantánamo, posting social media photos and videos of handcuffed men surrounded by uniformed military personnel arriving at the naval base. For approximately three weeks, the government proceeded to hold them incommunicado, without any access to attorneys, family, or the outside world.

3.     In the wake of those early transfers, Plaintiffs brought this litigation to challenge the government's total and complete failure to provide any form of attorney access to immigrant

detainees held at Guantánamo. In response to this suit, the government has implemented some limited measures for attorney-client communication. However, these measures are inadequate, as the government continues to impose significant barriers to attorney access and, in practice, has failed to fully implement many of the measures it has claimed to have put in place.

4.      For example, the government continues to deny in-person attorney visits with immigrant detainees held at Guantánamo. The government has set up a system to schedule attorney-client phone calls, but requests from attorneys go unanswered and clients are not made available at the scheduled times. Officers at Guantánamo have created a climate of extreme fear and intimidation during these calls, which are far from private or confidential. Officers insist on sitting outside an open door during attorney-client calls, and have placed legal calls on speakerphone. One officer has reported to attorneys that the military is recording legal calls (a claim government counsel has denied on behalf of her clients). The government has not informed detainees of their right to make outgoing legal calls. The process for detainees to request outgoing legal calls is confusing, and many detainees do not know how to do so at all. Those who have managed to learn about outgoing calls and make requests are told that they can either talk to counsel or their families, but not both, or their requests are denied. ICE has posted an erroneous address for detainees held at the Migrant Operations Center facility at Guantánamo, instead indicating that it is holding detainees at a location in Plantation, Florida, creating confusion for attorneys attempting to locate and reach their clients. Detainees and their counsel remain unable to exchange legal documents, including basic forms for signature. In short, immigrants detained at Guantánamo continue to lack meaningful access to counsel.

5.      Immigrants detained at Guantánamo also face significant restrictions on communication with their families. The government has stated that it permits detainees to have

only one five-minute personal phone call per day. If they happen, these calls take place on speakerphone. Officers have forbidden detainees from discussing certain topics with their family members over the phone, including the fact that they are detained at Guantánamo, or their conditions of confinement. Officers immediately disconnect calls if these topics are mentioned and suspend detainees from further use of the phone. Detainees are often denied even this daily phone call and, in some cases, have been permitted only one five-minute call each week. Telephone calls can be placed only to the United States, meaning that many of the detainees cannot speak with their families, who often are abroad in their home country.

6.      The government's limits on communication between immigrant detainees and legal counsel, as well as their families, are significantly more restrictive than those for people held in immigration detention facilities in the United States, in prisons, and even in law-of-war military custody at Guantánamo. These restrictions inhibit detainees' ability to meaningfully access legal counsel, impede upon attorney-client privilege, and violate Plaintiffs' constitutional rights under the First and Fifth Amendments. Plaintiffs, on behalf of themselves and the putative class, bring this action and file this Amended Complaint to seek injunctive and  declaratory relief  to ensure their ability to communicate with legal counsel and their families.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1346 (United States as defendant).  Defendants have waived sovereign immunity for purposes of this suit.  5 U.S.C. §§  702, 706.

8.      The Court may grant relief pursuant to the  Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, 28 U.S.C. § 1331, and the Court's inherent equitable powers.

9.      Venue is proper pursuant to 28 U.S.C. § 1391(e)(1) because Defendants

are agencies of the United States or officers of agencies of the United States, Defendants reside in this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

<strong>PARTIES</strong>

**A. Plaintiffs**

10.     Plaintiff Johon Elias Suazo-Muller is an immigrant currently detained by the government at Guantánamo. Mr. Suazo-Muller is a national of Nicaragua. While detained at Guantánamo, he has not been able to meaningfully access and communicate with legal counsel and has faced unreasonable limitations on speaking with his family.

11.     Plaintiff Rodolfo Joel Lopez Jarquin is an immigrant currently detained by the government at Guantánamo. Mr. Lopez Jarquin is a national of Nicaragua. While detained at Guantánamo, he has not been able to meaningfully access and communicate with legal counsel and has faced unreasonable limitations on speaking with his family.

**B. Defendants**

12.     Defendant Kristi Noem is the Secretary of the U.S. Department of Homeland Security ("DHS"). In this capacity, Defendant Noem is the legal custodian of Plaintiffs Suazo-Muller and Lopez Jarquin, and the members of the putative class. Defendant Noem is sued in her official capacity.

13.     Defendant DHS is a federal executive agency responsible for, among other things, enforcing federal immigration laws and overseeing lawful immigration to the United States. Defendant DHS is a legal custodian of Plaintiffs Suazo-Muller and Lopez Jarquin, and the members of the putative class.

14.     Defendant Todd M. Lyons is Acting Director and Senior Official Performing

the  Duties of the Director of U.S. Immigration and Customs Enforcement ("ICE"). Defendant Lyons is responsible for ICE's policies, practices, and  procedures, including those relating to the detention of immigrants during their removal  procedures. Defendant Lyons is a legal custodian of Plaintiffs Suazo-Muller and Lopez Jarquin, and the members of the putative class. Defendant Lyons is sued in his official capacity.

15.    Defendant ICE is a federal law  enforcement agency within DHS. Defendant ICE is responsible for the enforcement of  immigration laws, including the detention and removal of immigrants. Defendant ICE is a legal  custodian of Plaintiffs Suazo-Muller and Lopez Jarquin, and the members of the putative class.

16.    Defendant Pete Hegseth is the United States Secretary of Defense. In this capacity, Defendant Hegseth maintains custody and control over Plaintiffs Suazo-Muller and Lopez Jarquin, and the members of the putative class. Defendant Hegseth is  sued in his official capacity.

17.    Defendant U.S. Department of Defense ("DOD") is a federal agency responsible for the Naval Station at Guantánamo Bay. Defendant DOD is a legal custodian of  Plaintiffs Suazo-Muller and Lopez Jarquin, and the members of the putative class.

18.    Defendant Marco Rubio is the United States Secretary of State. In this capacity, Defendant Rubio maintains custody and control over Plaintiffs Suazo-Muller and Lopez Jarquin, and the members of the putative class.

19.    Defendant U.S. Department of State is a federal agency responsible for the resettlement of refugees detained at Guantánamo. Defendant U.S. State Department is a legal custodian  of  Plaintiffs Suazo-Muller, and Lopez Jarquin, and the members of the putative class.

## STATEMENT OF FACTS

**A.  Detention of Immigrants at Guantánamo Bay**

13.     The Guantánamo Bay Naval Station is a U.S. military base in Guantánamo Bay, Cuba. It is infamous as the site of a U.S. military prison at which the U.S. government has asserted law of war detention authority since 2001, and continues to detain individuals under the 2001 Authorization for Use of Military Force to this day.

14.     It has also been a detention site for migrants picked up on the high seas outside of U.S. territorial waters. Until now, the United States has never used Guantánamo to detain immigrants who were first apprehended and detained on U.S. soil.

15.     On January 29, 2025, President Trump issued a memorandum directing the Secretary of Defense and Secretary of Homeland Security "to take all appropriate actions to expand the Migrant Operations Center at Naval Station Guantanamo Bay to full capacity and to provide additional detention space for high-priority criminal aliens unlawfully present in the United States," and declared his intention to house as many as 30,000 immigrants at Guantánamo. The White House, "Expanding Migrant Operations Center at Naval Station Guantanamo Bay to Full Capacity" (Jan. 29, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/expanding-migrant-operations-center-at-naval-station-guantanamo-bay-to-full-capacity/ [https://perma.cc/D2P3-45SN]; Hamid Aleaziz, et al., *U.S. Is Holding Migrants in Cells That Once Held Al Qaeda Suspects*, NY Times, Feb. 5, 2025, https://www.nytimes.com/2025/02/05/us/politics/migrants-trump-guantanamo-prison.html [https://perma.cc/XWH6-HMFF].

16.     On February 4, 2025, the government announced that it had transferred ten immigrant detainees from Fort Bliss, Texas, to Guantánamo. U.S. Customs and Border Protection

("CBP") posted photos and a video of the transfer of these ten individuals on a military plane to Guantánamo on social media, stating that "[f]lights to Guantánamo Bay have begun." @CBP, X.com, (Feb. 4, 2025, 7:35PM), https://x.com/CBP/status/1886936769242845237 [https://perma.cc/UR8L-E237].

17. Soon after, DOD released an article alleging that these ten individuals are members of the Tren de Aragua, a Venezuelan gang, but otherwise refused to respond to inquiries regarding the identities of these individuals, their immigration status or the nature of legal proceedings against them, the legal authority under which they are held, or how long they would be held at Guantánamo. The government issued no public guidance about what access detainees would have to counsel, family, or the outside world, or what legal rights the government would afford them. *See* C. Todd Lopez, *First Flight of Illegal Aliens Arrives at Guantanamo*, DOD News, Feb. 5, 2025, https://www.defense.gov/News/News-Stories/Article/Article/4055497/first-flight-of-illegal-aliens-arrives-at-guantanamo/.

18. A Memorandum of Understanding between DHS and DOD titled "DOD Support at Naval Station Guantanamo Bay (NSGB) to U.S. Immigration and Customs Enforcement (ICE) for DHS/ICE Detention of Illegal Aliens Subject to Final Orders of Removal" ("DHS/DOD MOU"), dated March 7, 2025, reveals that the government created broad criteria for the detention of immigrants at Guantánamo not predicated on any assessment of detainees' criminal history or conduct. *See* Camilo Montoya-Galvez, *Memo Shows U.S. Can Send Migrants Without Criminal Records to Guantanamo, Despite Trump's Promise to Hold "the Worst" There*, CBS News, Apr. 16, 2025, https://www.cbsnews.com/news/guantanamo-trump-migrants-without-criminal-records/ [https://perma.cc/XT5H-S336].

19. Since February 4, 2025, the government has transferred to Guantánamo more than

four hundred more immigrant detainees from the United States, at a cost of more than $40 million. Carol Rosenberg, *U.S. Has Spent $40 Million to Jail About 400 Migrants at Guantánamo*, N.Y. Times, Mar. 31, 2025, https://www.nytimes.com/2025/03/31/us/politics/migrants-guantanamo-costs.html.

20.     The government has held immigrant detainees in two facilities at Guantánamo: first, in a maximum-security prison known as "Camp 6" on the island's military complex, where post-9/11 military detainees had previously been held and, second, in barracks at the Migrant Operations Center ("MOC"), where the government has previously held migrants apprehended on the high seas.

**B.  Restrictions on Access to Counsel and Family Communication at Guantánamo**

21.     The government has unreasonably restricted immigrant detainees' access to counsel at Guantánamo. "Regulations and practices that unjustifiably obstruct the availability of professional representation . . . are invalid." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974). The government's intrusions on detainees' confidential communication with counsel undermine the attorney-client privilege, "the oldest of the privileges for confidential communications known to the common law." *Al Odah v. United States*, 346 F. Supp. 2d 1, 10 (D.D.C. 2004) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

22.     The government has also unreasonably restricted detainees' access to telephone communication with their families. Prisoners "retain their First Amendment rights to communicate with family and friends." *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (citation omitted). In prison, "there is no legitimate governmental purpose to be attained by not allowing reasonable access to the telephone, and . . . such use is protected by the First Amendment." *Id.* (quotation omitted).

23.     After Plaintiffs initially filed suit in this case, the government enacted some limited measures for detainees to communicate with counsel and their families. These measures included a method for attorneys to request scheduled phone calls with detainees; the creation of a flier providing information about a telephone hotline to the American Bar Association ("ABA") and the option to request an outgoing legal call; a webpage providing basic logistical information regarding immigrant detainees held at Guantánamo, https://www.ice.gov/detain/detention-facilities/naval-station-guantanamo-bay [https://perma.cc/7DGS-L4LK]; and an update to the government's online immigrant detainee locator to reflect a detainee's location at Guantánamo. The government also began to allow detainees to place five-minute calls to their families.

24.     However, the government continues to impose significant barriers to attorney access and has failed to fully implement many of the measures it has claimed to have put in place. Immigrant detainees at Guantánamo remain unable to meaningfully communicate with legal counsel amidst a climate of extreme intimidation and fear.

25.     **No In-Person Attorney-Client Visitation.** The government continues to deny detainees the ability to meet with legal counsel in person, despite multiple requests by counsel, including those with established attorney-client relationships, for in-person visitation. The government has also ignored requests from attorneys who have security clearance, and who were present on base at Guantánamo as part of their separate, law of war legal representation, for in-person legal visits with immigrant detainees.

26.     **Failure to Provide Scheduled Phone Calls.** The government has set up and publicized on ICE's website a system for attorneys to schedule telephone calls with detained clients, where attorneys may email legal.GTMO@ice.dhs.gov to request a time to talk to their client. However, this system is not reliable. On multiple occasions, the government has simply

10

failed to bring detainees to these scheduled attorney-client calls, even after sending confirmation that the call had been scheduled, or has not responded at all to requests for legal calls sent by attorneys.

27.    **Lack of Confidential Attorney-Client Phone Calls, Amidst Climate of Fear.** Officers at Guantánamo have created a climate of extreme fear and intimidation where immigrant detainees are afraid to communicate freely with their counsel. Detainees are chained and put in restraints while speaking to attorneys on the phone. Scheduled attorney-client calls are not private or confidential at Guantánamo. Officers sit in the hallway by an open door to the room where detainees receive calls from their attorneys, and have placed the legal calls on speakerphone, broadcasting both sides of the conversation. Detainees have expressed fear that they will face punishment or retaliation if they freely share their thoughts or information with counsel because officers can hear their conversations with counsel on legal calls.

28.    **Reported Recording of Attorney-Client Phone Calls.** Two weeks ago, an officer told lawyers during an attorney-client call that military officials are recording their attorney-client telephone conversations at Guantánamo. As a result, the attorneys immediately terminated the call. The government has denied this claim, and informed Plaintiffs' counsel via email that DOD lacks the capacity to record attorney-client calls. Regardless of the veracity of these representations, the officer's statement has had a significant chilling effect on detainees' communication with legal counsel. For example, the detainee who participated in this call has since expressed even greater fear of openly sharing information with counsel during subsequent attorney-client interactions.

29.    **Lack of Clear Instruction Regarding Requests for Outgoing Calls to Counsel and ABA Hotline.** Detainees frequently do not know that they have the right and ability to request a call with legal counsel. The government has claimed that it has posted or otherwise provided

detainees with fliers about requesting outgoing legal calls to counsel or the American Bar Association's (ABA) Information Line. However, the information it claims to have provided to detainees does not actually explain how to place a request for an outgoing legal call. The flier explains that detainees can use an unspecified "form" and "include your legal representative's name, phone number(s), and email address," to request a call with an attorney or the ABA Information Line. Decl. Juan Lopez Vega ¶ 14, *Espinoza Escalona v. Noem*, No. 1:25-cv-604 (D.D.C. Mar. 10, 2025), ECF No. 14-2. But the request form provided by the government does not actually indicate that it can be used to request a legal call and provides no fields to enter a legal representative's name, phone number, or email address. (The form instead includes fields to request attention regarding programs such as "payroll (voluntary work)," or "commissary inquiry," neither of which exist for immigrant detainees at Guantánamo). *Id.* at 16. In addition, the detainee request form is specified only for people held at "GTMO CAMP VI," not at the MOC. *Id.*

30.    **Denials and Penalties for Requesting Outgoing Legal Calls.** Officers do not tell detainees that they have the right to call an attorney. Officers have not provided information about outgoing legal calls to detainees. Officers have told detainees that they do not need legal counsel because they have received final orders of removal. For detainees who are aware of the ability to make a legal call or to call the ABA, officers have denied many requests. Officers have also informed detainees that they can either call the ABA or make a family call, but not both. Many detainees are afraid to request an attorney call because they believe they will be punished for doing so. Officers at Guantánamo have informed detainees that telephone calls, including to attorneys, are a "privilege" that can be taken away.

31.    Officers at Guantánamo have told immigrant detainees that they do not need legal counsel because they have final orders of removal and have impermissibly discouraged detainees

from seeking calls with legal counsel. But detainees who have final orders of removal have a right

to pursue many legal claims. For example, noncitizens with final orders have available many forms

of immigration relief and legal remedies, including motions to reconsider and reopen, 8 U.S.C. §§

1229a(c)(6)-(7); relief under the Violence Against Women Act, 8 U.S.C. § 1154(a)(1)(A)(iii);

Temporary Protected Status, 8 U.S.C. § 1254a; U- and T- visas, 8 U.S.C. §§ 1101(a)(15)(U),

(a)(15)(T); and challenges to unlawful conditions of confinement. Noncitizens with final orders of

removal may also seek release from detention, including through federal habeas petitions where

deportation is not reasonably foreseeable. *Zadvydas v. Davis*, 533 U.S. 678, 687-89 (2001), and

may also require legal consultation regarding various class action injunctions applicable to

noncitizens facing removal.

32.    **Climate of Fear and Intimidation.** Detainees' fears of punishment are not

unfounded. Upon admission to Guantánamo, officers tell detainees that they are terrorists and that

they do not have rights. Officers at Guantánamo do not refer to detainees by name, only by number.

Immigrant detainees have been taken from their cells and brought to interrogation sessions by the

FBI about gang affiliation while surrounded by as many as seven military officers. One detainee

was wrongfully accused of hiding his toothbrush in his cell when, in fact, he had given it to another

officer. Officers searched the detainee, tossed his bed, and searched his genitals for the toothbrush.

Another detainee experienced significant emotional and mental decompensation to the point of

possible self-harm after officers locked him in a concrete cell with no windows or lights for four

days.

33.    **No Exchange of Legal Documents.** The government claims that it has established

a process for the exchange of legal documents. ICE's website states that attorneys may send legal

correspondence to detainees at Legal.GTMO@ice.dhs.gov. *See* ICE, Naval Station Guantanamo

Bay,                    https://www.ice.gov/detain/detention-facilities/naval-station-guantanamo-bay [https://perma.cc/7DGS-L4LK]. However, there is no reliable method for detainees to be able to send documents, including forms or declarations with signatures, to their legal counsel. ICE's website states that the "facility administrator may, in his discretion, allow for a reasonable amount of communication via email between the detainee and their designated legal representative." *Id.* But attorneys have sent documents to the specified email address, requesting that the document be returned with the detainee's signature, with no response. Attorneys have also sent documents to detained clients at Guantánamo through this email account, but have not received any confirmation whether documents have been received. At least one attorney has sent a document to a detained client at Guantánamo through this email account and, when he spoke with his client days later, learned that the client never received the document.

34.     Although the government states that "legal mail will be delivered to [Guantánamo] on a weekly basis via the Defense Courier Service," Decl. Juan Agudelo ¶ 17, ECF No. 14-1, ICE has provided no publicly-available information or address as to how detainees can receive postal or courier mail. *Compare* ICE, Naval Station Guantanamo Bay, https://www.ice.gov/detain/detention-facilities/naval-station-guantanamo-bay [https://perma.cc/7DGS-L4LK] (providing no information regarding mail) *with* ICE, El Paso Service Processing Center, Sending Items to Detainees, https://www.ice.gov/detain/detention-facilities/el-paso-service-processing-center [https://perma.cc/Q242-24H9] (specifying mail instructions). The purported weekly period of mail delivery is also slower than for law-of-war detainees held at Guantánamo by the military, as their mail is delivered within four days. *See In re Guantanamo Bay Detainee Litig.*, 577 F. Supp. 2d 143, 160 (D.D.C. 2008). There is no non-punitive justification for denying immigrant detainees the same mail-delivery schedule that is available to law-of-war detainees.

35.    **Misleading ICE Detainee Locator Information.** The government has claimed that it has updated the ICE Detainee Locator "to reflect the current location of aliens who are currently housed at the MOC and Camp VI." Decl. Juan Lopez-Vega ¶ 17, *Espinoza Escalona v. Noem*, No. 1:25-cv-604 (D.D.C. Mar. 10, 2025), ECF No. 14-2. However, the ICE Detainee Locator does not actually indicate that detainees held at the MOC are held at Guantánamo, creating confusion for attorneys attempting to locate and reach their clients. Instead, the Locator field for the MOC under "Current Detention Facility" displays "Migrant Ops Center Main A," with a link to a facility at "865 SW 78th Ave., Plantation, FL 33324."

36.    **Restrictions on Personal Phone Calls.** The government has stated that it allows immigrant detainees one five-minute personal phone call per day. Decl. Robert Green ("Green Decl.") ¶ 22, *Espinoza Escalona v. Noem*, No. 1:25-cv-604 (D.D.C. Mar. 10, 2025), ECF No. 14-1. In practice, some detainees have only been permitted to place a personal phone call once per week. The personal phone calls take place over speakerphone, with an officer seated less than half a meter away from the detainee. Officers have disconnected the phone line and suspended detainees from phone privileges if the detainee shares anything that the officers "disagree with" on the calls, such as mention of their detention at Guantánamo or in Cuba, or conditions of confinement and the treatment of detainees at Guantánamo. Calls to anywhere other than the United States are not permitted. Some people detained at Guantánamo have no friends or family in the United States whom they can call, which means they are unable to communicate with their friends or families at all.

### C. Immigrant Detainees at Guantánamo Face More Severe Restrictions Than U.S.-Based ICE Detainees, Prisoners, and Guantánamo Military Detainees.

37.    Immigrant detainees at Guantánamo face restrictions on attorney access and family

communication that are far more severe than for people held in ICE detention facilities in the United States, in U.S. prisons, and in some instances, even for people in law-of-war military custody at Guantánamo.

38. **In-Person Attorney Visitation.** People held in ICE detention facilities in the United States, in prisons, and in law-of-war military custody all have the ability to have in-person attorney visits. *See e.g.* ICE, Performance-Based National Detention Standards 2011 ("PBNDS") § 5.7.V.J (2016), https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf [https://perma.cc/3UNC-WGLW]; 28 C.F.R. § 543.13(a) (Federal Bureau of Prisons ("BOP") facilities must "permit visits by the retained, appointed, or prospective attorney of an inmate . . . ."); *In re Guantanamo Bay Detainee Litig.*, 577 F. Supp. 2d at 158 (requiring government to allow in-person attorney visits for law-of-war detainees at Guantánamo).

39. **Private, Confidential, and Unmonitored Attorney-Client Communication.** ICE detention facilities in the United States, prisons, and even law-of-war military custody all require private, confidential, and unmonitored attorney-client communication. *See e.g.* ICE, PBNDS § 5.6.V.F.2 (requiring facilities to "ensure privacy" where detainees can make legal calls "without being overheard," and barring monitoring of legal calls); § 5.7.II(2) (requiring that visits between detainees and legal representatives be confidential, without auditory supervision, in a private consultation room); 28 C.F.R. § 540.102 ("Staff may not monitor an inmate's properly placed call to an attorney" at BOP facilities); 28 C.F.R. § 543.13(e) ("[s]taff shall not subject visits between an attorney and an inmate to auditory supervision" at BOP facilities); *Al Odah*, 346 F.Supp.2d at 11-12 (requiring unmonitored attorney-client communication for law-of-war detainees at Guantánamo).

40. **Outgoing Legal Calls.** U.S.-based ICE detention facilities, prisons, and law-of-war

16

military detention facilities at Guantánamo provide clear mechanisms for people in their custody to place outgoing legal calls. U.S.-based ICE detention facilities are required to provide detainees with free calls to legal service providers, as well as consular officials and oversight agencies. PBNDS § 5.6.II.7. ICE detention facilities must ensure that "free and direct calls" to legal representatives are "easily accessible." *Id.* § 5.6.V.E. "If detainees are required to complete request forms to make direct or free calls, facility staff must assist them as needed, especially illiterate or non-English speaking detainees." *Id.* § 5.6.V.E.1. "Staff shall allow detainees to make such calls as soon as possible after submission of requests," with access granted "within 24 hours of the request." *Id.* § 5.6.V.E.2. Federal BOP regulations forbid facilities from applying "frequency limitations on inmate telephone calls to attorneys when the inmate demonstrates that communication with attorneys by correspondence, visiting, or normal telephone use is not adequate." 28 C.F.R. § 540.103.

41.    **Prohibition Against Retaliation for Attorney-Client Communication.** ICE detention standards specify that "[d]etainees shall not be subject to reprisals, retaliation or penalties for attending legal rights group presentations." PBNDS § 6.4.II.4. ICE detention standards also specify that a facility may not "in any way retaliate against a detainee for lawful communication with a . . . member of the public." *Id.* § 7.2.V.A.4. Prison officials may not retaliate against prisoners for engaging in protected First Amendment conduct, including communication with legal counsel. "[S]uch retaliation offends the Constitution," as "it threatens to inhibit exercise of the protected right." *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998) (citation omitted).

42.    **Exchange of Legal Documents.** ICE detention standards require facilities to have written policies concerning detainee correspondence, and that facilities must notify detainees of their rules regarding correspondence at admission. This notification must specify that legal mail is

treated as privileged mail and may only be opened in the detainee's presence. PBNDS §§ 5.1.V.C, 5.1.V.F.2. Staff may not read or copy outgoing legal mail. *Id*. § 5.1.V.G.2. Facility administrators may allow for reasonable communication by means of fax between detainees and legal representatives. *Id*. § 5.1.V.O. Federal BOP regulations also require that legal mail be opened in accordance with special mail procedures, 28 C.F.R. § 540.19, and provide mail depositories for outgoing special mail. 28 C.F.R. § 540.11.

43.    **Communication with Family Members.** ICE detention standards require that detainees are provided "reasonable and equitable access to telephones during established facility 'waking hours.'" PBNDS § 5.6.V.D. Telephones "shall be located in parts of the facility that are accessible to detainees." *Id.* Telephone access hours "shall be posted near the telephones," and "[e]ach facility shall provide detainees access to international telephone service." *Id.* Prisons may not restrict outgoing communication in a manner "greater than is necessary or essential" to protect "important or substantial interests." *Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974). "Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements" or "suppress unwelcome criticism." *Id*. at 413, 415.

## CLASS ALLEGATIONS

44.    Plaintiffs bring this action under the Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2) on behalf of themselves and a class of all other persons similarly situated.

45.    Plaintiffs propose to represent the following Proposed Class: "all immigration detainees originally apprehended in the United States and detained at U.S. immigration detention facilities, and who are, or will be held at Naval Station Guantánamo Bay, Cuba."

46.    The proposed class satisfies the requirements of Rule 23(a) because the class is so numerous that joinder of all members is impracticable. There are currently 42 immigrants detained

at Guantánamo. The proposed class also includes numerous future immigrant detainees who will be held at Guantánamo. The government has stated that it intends to continue detaining immigrants at Guantánamo. Unit 6 alone has capacity to hold up to 175 people at a time, while the MOC has capacity to hold 50 people at a time. The government also has capacity to hold 520 more people in additional facilities at MOC East and MOC West, for a combined capacity total of 745 people. Green Decl. ¶¶ 4, 18, 21, *Espinoza Escalona*, No. 1:25-cv-604 (D.D.C. Mar. 10, 2025), ECF No. 14-1. The proposed class is fluid, as the government has regularly transported detainees to and from Guantánamo, making joinder of all members not only impracticable but impossible.

47.    The proposed class satisfies the commonality requirements of Rule 23(a)(2). The members of the class are subject to a common practice: detention at Guantánamo and the government's policies and practices for communication with legal counsel and family members. The suit also raises questions of law common to members of the proposed class, including whether the government's policies and practices violate the First and Fifth Amendments of the U.S. Constitution.

48.    The proposed class satisfies the typicality requirements of Rule 23(a)(3), because the claims of the representative Plaintiffs are typical of the claims of the class. Each proposed class member, including the proposed class representatives, has experienced or faces the same principal injury (denial of access to counsel and communication with family members), based on the same government policy and practice, which is unlawful as to the entire class, because they violate the First and Fifth Amendments of the U.S. Constitution.

49.    The proposed class satisfies the adequacy requirements of Rule 23(a)(4). The representative Plaintiffs seek the same relief as the other members of the class—among other things, an order declaring the government's policies and practices with respect to attorney access

and communication with family members unlawful and injunctive relief to provide access to counsel and communication with family members in accordance with constitutional requirements. In defending their rights, Plaintiffs will defend the rights of all proposed class members fairly and adequately.

50.     The proposed class is represented by experienced attorneys from the American Civil Liberties Union, American Civil Liberties Union of the District of Columbia, Center for Constitutional Rights, and the International Refugee Assistance Project. Proposed class counsel have extensive experience litigating class action lawsuits and other complex systemic cases in federal court on behalf of noncitizens.

51.     The proposed class also satisfies Rule 23(b)(1) and 23(b)2). Prosecution of separate actions by individual class members would create a risk of inconsistent adjudication that would establish incompatible standards of conduct. Defendants have acted on grounds generally applicable to the class by subjecting them to the same policies and practices with respect to attorney access and communication with family members. Injunctive and declaratory relief is therefore appropriate with respect to the class as a whole.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of First Amendment Rights of the Immigrant Detainees
*On behalf of all Plaintiffs and the Proposed Class*

52.     The First Amendment guarantees Plaintiffs and the proposed class the right to communicate with the outside world.

53.     The First Amendment also guarantees Plaintiffs and the proposed class the right to hire, consult, and communicate with an attorney. The government may not unreasonably restrict this right.

54.     The First Amendment further guarantees Plaintiffs and the proposed class the right to communication and association with family members. The government may not unreasonably restrict this right.

55.     By unreasonably restricting Plaintiffs and the proposed class of the ability to retain, consult, and communicate with counsel, and to communicate and associate with family members, Defendants have violated and continue to violate their rights under the First Amendment.

56.     Plaintiffs and the proposed class have suffered and will imminently suffer irreparable injury as a result of Defendants' policies, practices, and failure to act and are entitled to injunctive relief to avoid any further injury.

## COUNT II
### Violation of Fifth Amendment Right to Due Process
*On behalf of all Plaintiffs and the Proposed Class*

57.     Plaintiffs and the proposed class have a due process right not to be subjected to punitive conditions of confinement, which includes the right not to be held without access to counsel and communication with their families.

58.     Plaintiffs and the proposed class experience a denial of access to counsel and communication with their families substantially worse than that experienced by those serving time in prison for a criminal conviction in the United States.

59.     The limitations on attorney access and family communication that Plaintiffs and the proposed class face are not rationally related to a non-punitive purpose and are excessive.

60.     Defendants could accomplish their non-punitive objectives in alternative and less harsh methods than the limitations they have placed on access to counsel and family communication for Plaintiffs and the proposed class.

61.     Defendants have subjected Plaintiffs and the proposed class to punitive conditions

21

of confinement.

62.    Plaintiffs and the proposed class have substantial liberty interests in pursuing legal options available to them.

63.    Defendants' denial of attorney access has deprived Plaintiffs and the proposed class of their liberty interest and creates a substantial risk that they will face delayed or wrongful denial of relief. Allowing attorney access would cause only minor fiscal and/or administrative burdens.

64.    Plaintiffs and the proposed class of immigrant detainees held at Guantánamo have suffered and will imminently suffer irreparable injury as a result of Defendants' policies, practices, and failure to act and are entitled to injunctive relief to avoid any further injury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs ask the Court to:

65.    Enter judgment for Plaintiffs and the proposed class and against Defendants.

66.    Declare that Defendants' actions violate Plaintiffs' and the proposed class members' First Amendment right to retain, consult, and communicate with attorneys and to communicate with their family members, and their Fifth Amendment due process rights.

67.    Order Defendants forthwith to permit and ensure that Plaintiffs and the proposed class members can meet and confer with counsel in scheduled, timely, free, confidential, unmonitored, and unrecorded attorney-client conversations, in person, and via videoconferencing or telephone, with accommodations for interpretation, with no additional security clearances beyond those required to visit any individual in immigration custody in the United States, without intimidation, retaliation, or revocation, in order for counsel to advise them of their legal rights and to provide them with legal assistance.

68.     Order Defendants to provide and ensure a method for immigrants detained at Guantánamo to place timely, free, confidential, unmonitored, and unrecorded outgoing legal calls without intimidation, retaliation, or revocation, and to individually provide detainees with clear instruction and process for doing so in both Spanish and English at book-in.

69.     Order Defendants to provide and ensure a method for timely and confidential legal document exchange and signature, including via fax, email or electronic signature platforms, courier service, and mail.

70.     Order Defendants to maintain publicly available information regarding protocols for attorney-client communication at Guantánamo via Defendant Immigration and Customs Enforcement's website.

71.     Order Defendants to provide written information regarding protocols for attorney-client communication in English and Spanish to all immigrants detained by Defendants at Guantánamo, and to provide and honor request forms specifically for attorney-client communication to all immigrants detained by Defendants at Guantánamo.

72.     Order Defendants to maintain specific identification of the location of a detainee held at Guantánamo as "Guantánamo" in Defendant Immigration and Customs Enforcement's Online Detainee Locator System within 24 hours of their transfer to Guantánamo, and order ICE to update entries for detainees held at the Migrant Operations Center to reflect detention at Guantánamo, not Florida.

73.     Order Defendants to allow Plaintiffs and proposed class members daily, reasonable and equitable access to telephones between 8:00 a.m. and 10:00 p.m., in areas that are freely accessible, to allow both domestic and international phone calls; and not to prohibit discussion of the detainee's detention at Guantánamo, including the treatment of detainees and the conditions of

confinement, or any other topic.

74.      Award Plaintiffs attorney fees and other litigation costs pursuant to the Equal

Access to Justice Act and/or any other applicable law.

75.      Grant such other relief as the Court deems just and proper.

Dated: April 26, 2025

Eunice H. Cho (D.C. Bar No. 1708073)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW, 7th floor
Washington, DC 20005
(202) 546-6616
echo@aclu.org

My Khanh Ngo*
Kyle Virgien*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
mngo@aclu.org
kvirgien@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org

Deepa Alagesan (D.D.C. Bar No. NY0261)
Kimberly Grano (D.D.C. Bar No. NY0512)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza, 33rd Floor
New York, New York 10004
Telephone: (516) 838-7044
dalagesan@refugeerights.org
kgrano@refugeerights.org

Respectfully submitted,

/s/ *Lee Gelernt*
Lee Gelernt (D.D.C. Bar No. NY0408)
Brett Max Kaufman (D.D.C. Bar No.
NY0224)
Judy Rabinovitz*
Noor Zafar*
Omar C. Jadwat*
Wafa Junaid*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
bkaufman@aclu.org
jrabinovitz@aclu.org
nzafar@aclu.org
ojadwat@aclu.org
wjunaid@aclu.org

Baher Azmy*
Shayana D. Kadidal (D.C. Bar No. 454248)
J. Wells Dixon*
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, Floor 7
New York, NY 10012
T: (212) 614-6427
bazmy@ccrjustice.org
shanek@ccrjustice.org
wdixon@ccrjustice.org

*Attorneys for Plaintiffs-Petitioners*

*\*Pro bono representation certificates
forthcoming*

25