# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHON ELIAS SUAZO-MULLER
Naval Station Guantanamo Bay
Guantanamo Bay, Cuba;

RODOLFO JOEL LOPEZ JARQUIN
Naval Station Guantanamo Bay,
Guantanamo Bay, Cuba;

*Plaintiffs*LAS AMERICAS IMMIGRANT ADVOCACY
CENTER, *on behalf of* itself*themselves* *and* as
next friend on behalf of UNKNOWN NUMBER OF
IMMIGRANTS DETAINED AT GUANTÁNAMO,*those*
1500 E. Yandell Dr.
El Paso, TX 79902;

REFUGEE AND IMMIGRANT CENTER FOR
EDUCATION AND LEGAL SERVICES, on behalf of
itself and as next friend on behalf of UNKNOWN
NUMBER OF IMMIGRANTS DETAINED AT
GUANTÁNAMO,
131 Interpark Blvd.
San Antonio, TX 78216;

AMERICAN GATEWAYS, on behalf of itself and as next
friend on behalf of UNKNOWN NUMBER OF
IMMIGRANTS DETAINED AT GUANTÁNAMO,
314 E. Highland Mall Blvd., Suite 501
Austin, TX 78752;

AMERICANS FOR IMMIGRANT JUSTICE, on behalf of
itself and as next friend on behalf of UNKNOWN
NUMBER OF IMMIGRANTS DETAINED AT
GUANTÁNAMO,
6355 N.W. 36th Street, Suite 309
Miami, FL 33166;

EUCARIS CAROLINA GOMEZ LUGO, as next friend on
behalf of TILSO RAMON GOMEZ LUGO,
c/o American Civil Liberties Union,

Case No. ——————1:25-cv-418-CJN

**AMENDED CLASS ACTION
COMPLAINT** AND PETITION FOR
WRIT OF HABEAS CORPUS

~~125 Broad Street, 18th Floor~~
~~New York, NY 10004;~~

~~ANGELA CAROLINA SEQUERA, as next friend on~~
~~behalf of YOIKER DAVID SEQUERA,~~
~~c/o American Civil Liberties Union,~~
~~125 Broad Street, 18th Floor~~
~~New York, NY 10004; and~~

~~YAJAIRA DEL CARMEN CASTILLO RIVERA, as next~~
~~friend on behalf of LUIS ALBERTO CASTILLO~~
~~RIVERA,~~
~~c/o American Civil Liberties Union,~~
~~125 Broad Street, 18th Floor~~
~~New York, NY 10004~~*similarly situated,*~~.~~

        *Plaintiffs–Petitioners*,

                    v.

KRISTI NOEM, Secretary of the U.S. Department of
Homeland Security, in her official capacity,
240 Murray Lane, SW
Washington, DC 20528;

U.S. DEPARTMENT OF HOMELAND SECURITY,
245 Murray Lane, SW
Washington, DC 20528;

~~CALEB VITELLO~~TODD LYONS, Acting Director and
Senior Official Performing the Duties of the Director of
U.S. Immigration and Customs Enforcement, in his official
capacity,
500 12th Street, SW
Washington, DC 20536;

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT,
500 12th Street, SW
Washington, DC 20536;

PETE HEGSETH, Secretary of Defense, in his official
capacity
1000 Defense Pentagon

2

Washington, DC 20301;

U.S. DEPARTMENT OF DEFENSE,
1000 Defense Pentagon
Washington, DC 20301;

MARCO RUBIO, Secretary of State, in his official
capacity
2201 C Street, NW
Washington, DC 20520; and

U.S. STATE DEPARTMENT
2201 C Street, NW
Washington, DC 20520;

*Defendants~~—Respondents~~*.

## INTRODUCTION

~~1.~~ This class action lawsuit ~~is about~~challenges the government's ~~attempt to thwart~~ severe and unusual restrictions on access to counsel ~~for immigrant detainees.~~

1. ~~For the first time in~~ and communication with family members imposed on immigrants detained at the Naval Station at Guantánamo Bay, Cuba ("Guantánamo"), who were originally apprehended in the United States and detained in U.S. ~~history,~~immigration detention facilities.

~~2.~~ This case began in February 2025, when the federal government ~~has moved~~began to move noncitizens apprehended and detained in the United States on civil immigration charges to ~~the Naval Station at Guantánamo Bay, Cuba ("Guantánamo"). And it is holding them incommunicado, without access to attorneys, family, or the outside world.~~

~~1.~~2. ~~Since February 4, 2025, in now daily flights, the government has reportedly transferred over fifty immigrant detainees from the United States to~~detention at Guantánamo.

The government announced the transport of these immigrants from the United States by military plane to Guantánamo, posting social media photos and  videos of handcuffed men surrounded by uniformed military personnel arriving at the naval base. For approximately three weeks, the government proceeded to hold them incommunicado, without any access to attorneys, family, or the outside world.

3.      Even in the face of significant public concern about this unprecedented action, the government has offered no legal authority for the transfer of individuals in immigration custody from within the United States to Guantánamo. Journalists have reported that the government is ramping up transfers to Guantánamo, even as government attorneys continue to evaluate the legality of these actions.

4.      Although the government has widely publicized images of people it now detains at Guantánamo, it has also cut off any means of communication that these detained immigrants have with the outside world. Immigrants held at Guantánamo have effectively disappeared into a black box and cannot contact or communicate with their family or attorneys. By doing so, the U.S. government has prevented immigrants from accessing legal assistance to understand their rights and to challenge their transfer and detention or conditions of confinement at Guantánamo.

5.      The government has also withheld information regarding the legal basis for these individuals' transfers and confinement at Guantánamo, the likelihood of their continued detention, the immigration status of the transferred individuals, the nature of any legal proceedings against them, the conditions of their confinement, and the government's treatment of and plans for these individuals.

3.      Tilso Ramon Gomez Lugo is a Venezuelan national who, upon information and belief, has been transferred by the government from an immigration detention facility in Texas

4

~~to Guantánamo. As his "next friend," his sister, Eucaris Carolina Gomez Lugo, brings this action on his behalf. On February 5, 2025, Ms. Gomez Lugo saw photographs of immigrant detainees transported to Guantánamo. She immediately recognized her brother Tilso in one of the photographs and became alarmed that the U.S. government had moved and detained him at Guantánamo. Since February 5, 2025, after Ms. Gomez Lugo retained undersigned counsel on behalf of her brother, counsel has made multiple unsuccessful attempts to contact~~ <u>In the wake of those early transfers, Plaintiffs brought this litigation to challenge the government's total and complete failure to provide any form of attorney access to immigrant detainees held at Guantánamo. In response to this suit, the government has implemented some limited measures for attorney-client communication. However, these measures are inadequate, as the government continues to impose significant barriers to attorney access and, in practice, has failed to fully implement many of the measures it has claimed to have put in place.</u>

<u>4.     For example, the government continues to deny in-person attorney visits with immigrant detainees held at Guantánamo. The government has set up a system to schedule attorney-client phone calls, but requests from attorneys go unanswered and clients are not made available at the scheduled times. Officers at Guantánamo have created a climate of extreme fear and intimidation during these calls, which are far from private or confidential. Officers insist on sitting outside an open door during attorney-client calls, and have placed legal calls on speakerphone. One officer has reported to attorneys that the military is recording legal calls (a claim government counsel has denied on behalf of her clients). The government has not informed detainees of their right to make outgoing legal calls. The process for detainees to request outgoing legal calls is confusing, and many detainees do not know how to do so at all. Those who have managed to learn about outgoing calls and make requests are told that they can</u>

either talk to counsel or their families, but not both, or their requests are denied. ICE has posted an erroneous address for detainees held at the Migrant Operations Center facility at Guantánamo, instead indicating that it is holding detainees at a location in Plantation, Florida, creating confusion for attorneys attempting to locate and reach their clients. Detainees and their counsel remain unable to exchange legal documents, including basic forms for signature. In short, immigrants detained at Guantánamo continue to lack meaningful access to counsel.

5.      Immigrants detained at Guantánamo also face significant restrictions on communication with their families. The government has stated that it permits detainees to have only one five-minute personal phone call per day. If they happen, these calls take place on speakerphone. Officers have forbidden detainees from discussing certain topics with their family members over the phone, including the fact that they are detained at Guantánamo, or their conditions of confinement. Officers immediately disconnect calls if these topics are mentioned and suspend detainees from further use of the phone. Detainees are often denied even this daily phone call and, in some cases, have been permitted only one five-minute call each week. Telephone calls can be placed only to the United States, meaning that many of the detainees cannot speak with their families, who often are abroad in their home country.

6.      The government's limits on communication between immigrant detainees and legal counsel, as well as their families, are significantly more restrictive than those for people held in immigration detention facilities in the United States, in prisons, and even in law-of-war military custody at Guantánamo. These restrictions inhibit detainees' ability to meaningfully access legal counsel, impede upon attorney-client privilege, and violate Plaintiffs' constitutional rights under the First and Fifth Amendments. Plaintiffs, on behalf of themselves and the putative class, bring this action and file this Amended Complaint to seek injunctive and  declaratory

relief to ensure their ability to communicate with legal counsel and their families.

6.    Mr. Gomez Lugo. Ms. Gomez Lugo has also been unsuccessful in attempting to reach her brother and desires that her brother be provided with the ability to communicate with legal counsel regarding his detention at Guantánamo.

7.    Yoiker David Sequera is a Venezuelan national who, upon information and belief, was detained in the United States during his removal proceedings and transferred by the government from an immigration detention facility in Texas to Guantánamo. As his "next friend," his mother, Angela Carolina Sequera, brings this action on his behalf. Ms. Sequera was in near-daily contact with her son and last spoke to him on Saturday, February 8. The next day, she received a call from a different person detained at the detention facility stating that her son was notified he would be transferred to Guantánamo. Ms. Sequera has made numerous calls to try to locate her son and speak to him, to no avail. She is distraught over the lack of information, and she desires that her son be provided with the ability to communicate with legal counsel regarding his detention at Guantánamo.

8.    Luis Alberto Castillo Rivera is a Venezuelan national who, upon information and belief, has been transferred by the government from an immigration detention facility in Texas to Guantánamo. As his "next friend," his sister, Yajaira Del Carmen Castillo Rivera, brings this action on his behalf. Ms. Castillo spoke regularly with her brother, and last heard from him on February 3, 2025, when he said he believed that he would be released from custody. But when Ms. Castillo later saw online photos of people being transferred to Guantánamo, she immediately recognized her brother. She has received no information about where her brother is, or how to talk with him. She is deeply worried about her brother, and desires that her brother be provided with the ability to communicate with legal counsel regarding his detention at Guantánamo.

9.    ~~This action is also brought by four nonprofit legal service organizations that provide pro bono legal services critical to detained immigrants. These legal service organizations have established attorney-client relationships with detained immigrants in Texas and Florida, including, as detailed below, individuals who have been threatened with transfer to Guantánamo. They desire to provide their legal services to the immigrants detained at Guantánamo but cannot do so because the government has failed to identify the people it has transported there and has prevented any means of attorney-client communication.~~

10.    ~~This isolation is no coincidence. Guantánamo is home to one of the most notorious prisons in the world, used when the U.S. government has attempted to operate in secret, without legal constraint or accountability.~~

11.    ~~The government has announced its goal of sending tens of thousands of immigrants to Guantánamo in the near future. Without this Court's intervention, even more immigrants will be transferred to this legal black box without access to counsel or any means of vindicating their rights.~~

12.    ~~Plaintiffs Petitioners ("Plaintiffs") bring this action to seek injunctive, habeas and declaratory relief ordering Defendants Respondents ("Defendants") to comply with the U.S. Constitution and federal law prohibiting further incommunicado detention of Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other individuals transferred to Guantánamo, and ensuring attorney-client communication for immigrants detained at Guantánamo.~~

### JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1346 (United States as defendant).  Defendants have waived sovereign immunity for purposes of this suit.  5 U.S.C. §§ 702, 706.

8.    The Court may grant relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, 28 U.S.C. § 1331, and the Court's inherent equitable powers.

2.9.    Venue is proper pursuant to 28 U.S.C. § 1391(e)(1) because Defendants are agencies of the United States or officers of agencies of the United States, Defendants reside in this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

**PARTIES**

**A. Plaintiffs**

10.    Plaintiff Johon Elias Suazo-Muller is an immigrant currently detained by the government at Guantánamo. Mr. Suazo-Muller is a national of Nicaragua. While detained at Guantánamo, he has not been able to meaningfully access and communicate with legal counsel and has faced unreasonable limitations on speaking with his family.

13.    Plaintiff Rodolfo Joel Lopez Jarquin is an immigrant currently detained by the government at Guantánamo. Mr. Plaintiff Eucaris Carolina Gomez Lugo is the sister of Tilso Ramon Gomez Lugo, a Venezuelan national who, upon information and belief, has been transferred by the government from an immigration detention facility in Texas to Guantánamo. She brings this case and habeas petition as next friend of her brother, Tilso Ramon Gomez Lugo. Mr. Gomez Lugo arrived in the United States in April 2024 and sought asylum. He passed a screening interview establishing that he had a "credible" fear of persecution if removed from the United States and was then placed into full immigration removal proceedings. However, because he was pro se, he was unable to adequately represent himself and received a final order of removal from the Immigration Judge on November 25, 2024. Mr. Gomez Lugo believed he was scheduled for removal in February 2025. He last contacted his family on Saturday, February 1, 2025, and

asked for clothes for his flight. Ms. Gomez Lugo tried to arrange to send clothing to the El Paso Processing Center, where he was detained. Ms. Gomez Lugo and her family have lost all contact with Mr. Gomez Lugo since February 1. Several days later, on February 5, Ms. Gomez Lugo was shocked to see photos of her brother among the men being transferred to Guantánamo. She is deeply concerned for her brother and wishes to retain the services of the legal service organizations named in this case to represent her brother.

14.    Plaintiff Angela Carolina Sequera is the mother of Yoiker David Sequera, a Venezuelan national who, upon information and belief, was detained in the United States during his removal proceedings and transferred by the government from an immigration detention facility in Texas to Guantánamo. She brings this case and habeas petition as next friend of her son, Yoiker David Sequera. Mr. Sequera came to the United States in September 2024 to seek asylum and was in removal proceedings until he received an order of removal on January 6, 2025. Ms. Sequera was in near-daily contact with her son and last spoke to him on February 8, 2025, when he was at the El Paso Processing Center. She received a call the next day from another person detained at that detention facility, stating that her son had been notified that he would be transferred to Guantánamo. Ms. Sequera has made numerous calls to Immigration and Customs Enforcement ("ICE") to try to locate her son and speak with him, to no avail. She is distraught over the lack of information about her son. Ms. Sequera wishes to retain the services of the legal service organizations named in this case to represent her son.

15.    Plaintiff Yajaira Del Carmen Castillo Rivera is the sister of Luis Alberto Castillo Rivera, a Venezuelan national who, upon information and belief, was detained in a Texas immigration facility after entering the United States and was transferred by the government to Guantánamo. She brings this case and habeas petition as next friend of her brother Luis Alberto

Castillo Rivera. Mr. Castillo entered the United States in January 2025 and was detained at the El Paso Processing Center. Ms. Castillo last heard from her brother on February 3, 2025, when he said he believed that he would be released from custody. But when Ms. Castillo later saw online photos of people being transferred to Guantánamo, she immediately recognized her brother. She received no information about where her brother is, or how to talk with him. She is deeply worried about her brother and wishes to retain the services of the legal service organizations named in this case to represent her brother.

16.    Plaintiff Las Americas Immigrant Advocacy Center ("Las Americas") is a nonprofit legal services organization based in El Paso, Texas, dedicated to serving the legal needs of low-income immigrants, including asylum seekers, in Texas and in New Mexico. An essential part of Las Americas' work is providing pro se and limited forms of legal assistance to adult immigrants detained in the ICE El Paso jurisdiction, including immigration counseling and legal services to asylum seekers. This work includes assisting asylum seekers in preparing for asylum fear interviews and representing them both during those interviews and throughout the subsequent review process. In 2024, Las Americas staff and volunteers provided approximately 197 credible fear interview orientations. Las Americas also provides direct representation to people seeking asylum and other forms of protection in immigration court. Las Americas has already spent over 50 hours of staff overtime over the past week alone to track and visit people it serves because of fear of transfers to Guantánamo. Through extensive advocacy, Las Americas prevented an existing client from being transferred on the first flight to Guantánamo and has sought a court order to block further transfers of three habeas clients to Guantánamo.

17.    Plaintiff Refugee and Immigrant Center for Education and Legal Services ("RAICES") is a nonprofit, non-partisan organization headquartered in San Antonio, Texas.

RAICES's mission is to defend the rights of immigrants and refugees; empower individuals, families, and communities of immigrants and refugees; and advocate for liberty and justice. RAICES provides free and low-cost immigration legal services to underserved immigrants—including adults, families, and unaccompanied noncitizen children seeking asylum and related protections—and is the largest immigration legal services provider in Texas. A central aspect of RAICES's work is providing legal services to migrants seeking asylum and other statutory protections upon crossing the border. Since flights to Guantánamo began on February 4, RAICES has had clients transferred from ICE detention locations without any notice, and clients have been told by ICE that they would be sent to Guantánamo. This has caused immense panic among the communities that RAICES serves, leading to diversion of time and resources of its staff.

18.    Plaintiff American Gateways is a nonprofit organization founded in 1987 that is incorporated in Texas and has offices in Austin, San Antonio, and Waco, Texas. American Gateways provides a broad range of low- and no-cost legal services to noncitizens throughout the state, including asylum seekers and victims of family violence, sexual assault, and human trafficking. In addition to providing direct representation to people appearing in the San Antonio Immigration Court and people applying for a wide array of federal immigration benefits, American Gateways provides legal orientation, pro se workshops, and pro bono legal representation at three immigrant detention facilities in Central Texas: the T. Don Hutto Residential Center in Taylor, Texas, the South Texas Residential Center in Pearsall, Texas, and the Karnes County Residential Center in Karnes City, Texas. American Gateways has expended both staff time and financial resources to attempt to establish communication with specific detainees who may have been transferred from the facilities it serves to Guantánamo, in addition to gathering information from family members who are contacting it about transferred individuals.

19.    Plaintiff Americans for Immigrant Justice ("AI Justice") is a non-profit organization that (i) advocates for the rights of unaccompanied immigrant children and survivors of trafficking and domestic violence; (ii) serves as a watchdog on immigration detention practices and policies; and (iii) pursues redress on behalf of immigrant groups with particular and compelling claims to justice. AI Justice is based in Florida and provides legal services to people detained at the Krome Detention Center in Miami, as well as other facilities throughout Florida. AI Justice's legal services at Krome include representation in bond and parole proceedings as well as civil litigation challenging inhumane conditions of confinement in immigration detention. The government's transfers to Guantánamo thus far have focused on Venezuelan nationals with final orders, who are among the immigrant communities served by AI Justice. As a result, AI Justice has expended resources toward developing new protocols for case management, training, and data reporting, as well new procedures and policies for their detention hotline to address the transfers and influx of calls.

20.    Plaintiffs American Gateways, AI Justice, Las Americas, and RAICES (collectively "Legal Service Organizations") provide legal services to detained individuals who are at risk of transfer to Guantánamo, including Venezuelan nationals. Normally, each organization would have ready access to immigrants held in ICE detention, in order to provide legal counseling and other assistance—communicating in person, telephone, or videoconference—as part of their respective organizational missions. The Legal Service Organizations intend and seek to provide free legal services and legal representation to detained immigrants transferred from the United States to Guantánamo, including but not limited to Mr. Gomez Lugo, Mr. Sequera, and Mr. Castillo, but are unable to access these individuals in any way. Accordingly, their respective organizational missions have been frustrated by the government's policy of failing to provide any

means for the Legal Service Organizations to access clients and undertake attorney-client communication at Guantánamo. The Legal Service Organizations have expended resources, including staff time and other financial resources, to try to establish communication with existing and potential clients held at Guantánamo. They have also expended staff time and resources to track their clients' locations, request information from detention centers and ICE officials, follow up with concerned family members, advocate against transfers to Guantánamo, adjust existing protocols and training, and attempt communication with individuals transferred to Guantánamo.

21.    For instance, RAICES is representing a Venezuelan national who had been paroled into the country but was recently apprehended on immigration charges, and someone purporting to be an ICE official told her that she would be sent to Guantánamo. As a result, RAICES is "scrambling" to figure out if any of its existing clients have been transferred or are at risk of transfer to Guantánamo, and as a result, are making contingency plans.

22.    Similarly, Las Americas has expended significant resources and time to prevent transfers. On February 4, after much advocacy on behalf of an existing Venezuelan client in the middle of the family reunification process with his child in Office of Refugee Resettlement custody, Las Americas was able to have its client removed from the first flight to Guantánamo. Las Americas has also fielded extensive phone calls from concerned family members detained at the El Paso Processing Center and Otero County Detention Center regarding potential transfers, culminating in Las Americas seeking a temporary restraining order to prevent three existing clients from being transferred to Guantánamo while their habeas petitions are pending in the district court.

23.    American Gateways believes that individuals previously detained in detention centers that it services—including at T. Don Hutto Residential Center, South Texas Immigrant Processing Center, and Karnes County Residential Center, all in Texas—were among the groups

14

~~transferred to Guantánamo and have expended time and energy contacting ICE about those individuals.~~

~~24.    AI Justice works closely with immigrant communities in Florida, including the Venezuelan community and detained immigrants at the four detention sites across the state, many of whom have final orders and fit the profile of those being targeted for transfers to Guantánamo. As a result, AI Justice is already spending resources to develop new protocols for addressing this dynamic and new situation, especially for its detention hotline given the influx of calls.~~

~~25.    The Plaintiff Legal Service Organizations bring this case on behalf of themselves, and on behalf of and as next friend of immigrants detained at Guantánamo.~~

11.    Lopez Jarquin is a national of Nicaragua. While detained at Guantánamo, he has not been able to meaningfully access and communicate with legal counsel and has faced unreasonable limitations on speaking with his family.

**B. Defendants**

~~3.~~12.    Defendant ~~Respondent ("Defendant")~~ Kristi Noem is the Secretary of ~~DHS.~~ the U.S. Department of Homeland Security ("DHS"). In this  capacity, Defendant Noem is the legal custodian of ~~Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo,~~Plaintiffs Suazo-Muller and Lopez Jarquin, and the ~~other unnamed detainees currently held at Guantánamo.~~members of the putative class. Defendant Noem is sued in her  official capacity.

~~4.~~13.    Defendant ~~U.S. Department of Homeland Security ("DHS")~~ is a federal executive  agency responsible for, among other things, enforcing federal immigration laws and overseeing  lawful immigration to the United States. Defendant DHS is a legal custodian of ~~Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and the other unnamed detainees currently held at Guantánamo~~Plaintiffs Suazo-Muller and Lopez Jarquin, and the members of the putative class.

5.14.    Defendant ~~Caleb Vitello~~Todd M. Lyons is Acting Director and Senior Official Performing the  Duties of the Director of U.S. Immigration and Customs Enforcement ("ICE~~.~~"). Defendant ~~Vitello~~Lyons is responsible for ICE's policies, practices, and  procedures, including those relating to the detention of immigrants during their removal  procedures. Defendant ~~Vitello~~Lyons is a legal custodian of ~~Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo~~Plaintiffs Suazo-Muller and Lopez Jarquin, and the ~~other unnamed detainees currently held at Guantánamo.~~members of the putative class. Defendant ~~Vitello~~Lyons is sued in his ~~legal~~official capacity.

6.15.    Defendant ~~U.S. Immigration and Customs Enforcement ("ICE")~~ is a federal law enforcement  agency within DHS. Defendant ICE is responsible for the enforcement of immigration laws, including the detention and removal of immigrants. Defendant ICE is a legal custodian  of ~~Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and the other unnamed detainees currently held at Guantánamo~~Plaintiffs Suazo-Muller and Lopez Jarquin, and the members of the putative class.

7.16.    Defendant Pete Hegseth is the United States Secretary of Defense. In this capacity, Defendant Hegseth maintains custody and control over ~~Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and the other unnamed detainees currently held at Guantánamo.~~Plaintiffs Suazo-Muller and Lopez Jarquin, and the members of the putative class. Defendant Hegseth is  sued in his official capacity.

8.17.    Defendant U.S. Department of Defense ("DOD") is a federal agency responsible for the Naval Station at Guantánamo Bay. Defendant DOD is a legal custodian of ~~Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo~~Plaintiffs Suazo-Muller and Lopez Jarquin, and the ~~other unnamed detainees currently held at Guantánamo~~members of the putative class.

16

9.18.   Defendant Marco Rubio is the United States Secretary of State. In this capacity, Defendant Rubio maintains custody and control over ~~Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and the other unnamed detainees currently held at Guantánamo~~Plaintiffs Suazo-Muller and Lopez Jarquin, and the members of the putative class.

10.19.  Defendant U.S. Department of State is a federal agency responsible for the resettlement of refugees detained at Guantánamo. Defendant U.S. State Department is a legal custodian o f  ~~Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and the other unnamed detainees currently held at Guantánamo~~Plaintiffs Suazo-Muller, and Lopez Jarquin, and the members of the putative class.

## ~~JURISDICTION AND VENUE~~

~~26.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 2241 et seq. (habeas corpus), Art. I § 9, cl. 2 of the U.S. Constitution (Suspension Clause), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (United States as defendant), and 28 U.S.C. § 1361 (mandamus).  Defendants have waived sovereign immunity for purposes of this suit.  5 U.S.C. §§ 702, 706.~~

~~27.    The Court may grant relief pursuant to 28 U.S.C. § 2241, 28 U.S.C. § 2243, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., 28 U.S.C. § 1331, the All Writs Act, 28 U.S.C. § 1651, and the Court's inherent equitable powers.~~

~~Venue is proper pursuant to 28 U.S.C. § 1391(e)(1) because Defendants are agencies of the United States or officers of agencies of the United States, Defendants reside in this  District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred  in this~~

## ~~District.~~STATEMENT OF FACTS

### A.  Detention of Immigrants at Guantánamo Bay

17

13.    The Guantánamo Bay Naval Station is a U.S. military base in Guantánamo Bay, Cuba. It is infamous as the site of a U.S. military prison at which the U.S. government has asserted law of war detention authority since 2001~~.~~, and continues to detain individuals under the 2001 Authorization for Use of Military Force to this day.

14.    It has also been a detention site for migrants picked up on the high seas outside of U.S. territorial waters. Until now, the United States has never used Guantánamo to detain immigrants who were first apprehended and detained on U.S. soil.

~~28.    Until now, it has never been used to detain immigrants who were first apprehended and detained on U.S. soil.~~

~~29.    The base contains two sides for detainees.  On the Windward side, there is a maximum-security prison that houses military detainees.  On the separate Leeward side of the base is the Migrant Operations Center ("MOC"), where migrants apprehended on the high seas are held.  The individuals at the MOC have never set foot on U.S. soil.~~

15.    On January 29, 2025, President Trump issued a memorandum directing the Secretary of Defense and Secretary of Homeland Security "to take all appropriate actions to expand the Migrant Operations Center at Naval Station Guantanamo Bay to full capacity and to provide additional detention space for high-priority criminal aliens unlawfully present in the United States," and declared his intention to house as many as 30,000 immigrants at Guantánamo. The White House, "Expanding Migrant Operations Center at Naval Station Guantanamo Bay to Full Capacity" (Jan. 29, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/expanding-migrant-operations-center-at-naval-station-guantanamo-bay-to-full-capacity/ [https://perma.cc/D2P3-45SN]; Hamid Aleaziz, et al., *U.S. Is Holding Migrants in Cells That Once Held Al Qaeda Suspects*, NY Times, Feb. 5, 2025,

18

https://www.nytimes.com/2025/02/05/us/politics/migrants-trump-guantanamo-prison.html [https://perma.cc/XWH6-HMFF].

~~30.     Officials recognize that it will be an immense undertaking and logistical nightmare to prepare the isolated Navy base for tens of thousands of immigrants. Officials themselves have confirmed that they are "far from prepared" to house the number of people envisioned in the President's memo. Michael Williams & Haley Britzky, *Trump Directs Guantanamo Bay to Be Prepared to Host Up to 30,000 Migrants*, CNN, Jan. 29, 2025, https://www.cnn.com/2025/01/29/politics/guantanamo-bay-trump-migrants/index.html [https://perma.cc/WE3D-GLCZ].~~

~~31.     Numerous reports confirm that there is not enough water, food, or other supplies on the base. Tents are being haphazardly erected along with makeshift latrines and outdoor showers.~~

~~32.     There has also been no publicly issued guidance about what access detainees will have to counsel, family or the outside world, or what legal rights the government will afford them.~~

16.     ~~Despite the immense gaps in information, on~~On February 4, 2025, the government announced that it had transferred ten ~~immigration~~immigrant detainees from Fort Bliss, Texas, to Guantánamo. U.S. Customs and Border Protection ("CBP") posted photos and a video of the transfer of these ten individuals on a military plane to Guantánamo on social media, stating that "[f]lights to Guantánamo Bay have begun." ~~Later~~@CBP, X.com, (Feb. 4, 2025, 7:35PM), https://x.com/CBP/status/1886936769242845237 [https://perma.cc/UR8L-E237].

~~16.~~17.  Soon after, DOD released an article alleging that these ten individuals are members of the Tren de Aragua, a Venezuelan gang, but otherwise refused to respond to inquiries regarding the identities of these individuals, their immigration status or the nature of legal proceedings

against them, the legal authority under which they are held, or how long they ~~will be held at Guantánamo.~~would be held at Guantánamo. The government issued no public guidance about what access detainees would have to counsel, family, or the outside world, or what legal rights the government would afford them. *See* C. Todd Lopez, *First Flight of Illegal Aliens Arrives at Guantanamo*, DOD News, Feb. 5, 2025, https://www.defense.gov/News/News-Stories/Article/Article/4055497/first-flight-of-illegal-aliens-arrives-at-guantanamo/.

~~33.    These initial ten detainees were placed in the military complex, in a facility known as Camp 6, where post-9/11 military detainees had previously been held.~~

~~34.    The government has since transferred to Guantánamo several dozen more immigration detainees apprehended and detained in the United States. Upon information and belief, they are all being held in the military complex side of the base.~~

~~35.    The government has indicated that it is making plans to send daily flights from the United States to Guantánamo, where the immigration detainees will be housed in a "massive immigration detention complex" for an undisclosed amount of time. *See* Williams & Britzky, *supra*. Since their transfer to Guantánamo, the immigrant detainees have been denied the ability to visit, communicate with, or contact an attorney. Defendants have provided no information at all regarding mechanisms for attorneys or family members to contact or communicate with immigrants held at Guantánamo.~~

~~36.    The isolation of the transferred immigrants at Guantánamo is stark compared to the attorney access protocols provided to ICE detainees in the United States.~~

~~37.    ICE detention facilities within the United States are required to make schedules and procedures for attorney visitation and communication publicly available. *See, e.g.* ICE, Performance-Based National Detention Standards 2011 ("PBNDS") § 5.6 (2016),~~

https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf

[https://perma.cc/3UNC-WGLW] ("detainees and their legal counsel shall be able to communicate effectively with each other"); PBNDS § 5.7 ("the facility shall provide notification of the rules and hours for legal visitation"); PBNDS § 6.4 ("[d]etainees shall have access to group presentations on United States immigration law" and "shall be able to communicate and correspond with representatives from the legal groups that make presentations at the facilities"). There are multiple, specific requirements for attorney client access, including that: private consultation rooms be made available for attorney-client visits; legal visits be available seven days a week, including holidays; calls with legal representatives and other legal services providers be scheduled as soon as possible after submission of requests; facilities promptly deliver telephone messages to detainees; facilities provide detainees with direct or free calls to their legal representatives and/or legal service providers; legal calls not be restricted to less than 20 minutes and must be unmonitored and confidential; and facilities allow group presentations on the legal rights of immigrants. Detention facilities nationwide also provide scheduled, unmonitored video visitation calls and the ability to electronically sign legal documents. Even those awaiting removal in U.S. detention facilities—and in segregation or restrictive housing units — have access to counsel. *See* PBNDS § 2.12.

38.    Even under the best circumstances, attorneys will face several barriers to communicating with immigrant detainees held at Guantánamo given its remote location on a military base. However, at a minimum, the government can provide legal access to immigrant detainees held at Guantánamo through phone calls, video conferences, electronic mail, fax, and in-person visits, among other means.

39.    Notably, although their access is more restricted than typical immigrant detainees

21

held by ICE in the United States, alleged enemy combatants detained by the Defense Department at Guantánamo have access to counsel. Those protocols for attorney-client communication have been established via court order. *See In re Guantánamo Bay Detainee Continued Access to Counsel*, 892 F. Supp. 2d 8 (D.D.C. 2012); In *re Guantánamo Bay Detainee Litigation*, 577 F. Supp. 2d 143 (D.D.C. 2009); *Al Odah v. United States*, 346 F. Supp. 2d 1 (D.D.C. 2004). These orders establish procedures, including the scheduling of counsel visits and calls, provision of a meeting room, security clearance, and correspondence.

40.    Plaintiff Gomez Lugo and Plaintiff Castillo desire that their brothers be provided with the ability to communicate with legal counsel, including the Plaintiff Legal Service Organizations, regarding their detention at Guantánamo. Similarly, Plaintiff Sequera wishes for her son to be provided with the ability to communicate with legal counsel, including the Plaintiff Legal Service Organizations, regarding his detention at Guantánamo.

41.    The Plaintiff Legal Service Organizations seek to advocate for and vindicate the rights of immigrants in the United States, including detained immigrants, asylum seekers and others seeking humanitarian protections. To further their missions, these organizations provide direct representation in expedited removal and removal proceedings, Know Your Rights trainings on the immigration process, assistance with parole, bond, and other means of seeking release from detention (including habeas), and otherwise advocate on behalf of detained immigrants.

42.    The Plaintiff Legal Service Organizations seek to consult with and provide these legal services to immigrants detained at Guantánamo. The Legal Service Organizations are especially concerned that immigrants detained at Guantánamo may be deprived of their rights, including whether: they were unlawfully transferred to Guantánamo; they were erroneously denied access to the asylum process; the government may deport them to a country where they will be

22

persecuted or tortured; they are being erroneously detained; and they may be subject to punitive conditions and mistreatment. The Legal Service Organizations thus wish to access detained immigrants at Guantánamo to advise them of their rights and offer legal services for those who wish to retain them.

43.    Noncitizens, including those with final orders of removal, have various forms of immigration relief, legal processes, and legal remedies available to them. This can include: motions to reopen based on changed circumstances; immigration relief under the Violence Against Women Act, Temporary Protected Status, and U- and T- visas; requests for prosecutorial discretion; civil rights complaints and challenges based on conditions of confinement and abuses in detention; as well as means for seeking release, including through federal habeas petitions where the government is not able to deport someone in the reasonably foreseeable future. While Plaintiff Legal Service Organizations provide these and other legal services to people detained in the United States, the complete lack of policies or protocols for attorney access to individuals detained at Guantánamo interferes with the Legal Service Organizations' ability to provide those services and frustrates their respective missions.

44.    On February 7, 2025, the Plaintiff Legal Service Organizations and other rights groups, including counsel in this lawsuit, wrote to Defendants expressing their serious concern about the transfer and detention of immigrants from the United States to Guantánamo, and requesting immediate access to them. The Legal Service Organizations urged the government to provide them with access to the detained immigrants so that those individuals would have access to legal counsel. Letter from ACLU et al., to Kristi Noem, Sec'y Homeland Sec., et al. (Feb. 7, 2025), https://www.aclu.org/documents/urgent-request-for-access-to-and-information-regarding-immigrants-transferred-from-the-united-states-and-detained-at-guantanamo-bay

[https://perma.cc/D2FC-VWFJ].

45.    Defendants have not provided a direct response to the letter. However, DHS Assistant Secretary Tricia McLaughlin posted a response referencing the letter on the social media site X, formerly known as Twitter, that "If the AMERICAN Civil Liberties Union cares more about highly dangerous criminal aliens that include murderers and vicious gang members than they do about American citizens then they should change their name." Tricia McLaughlin, @TriciaOhio, X (Feb. 7, 2025, 11:58 AM), https://x.com/TriciaOhio/status/1887908693112480253 [https://perma.cc/73AB-TH6B].

46.    Although Defendants generally assert that they may not publicly provide personally identifying information about immigrant detainees, Defendants publicized photographs of detainees arriving at Guantánamo, clearly showing their faces, including in press releases.

47.    Defendants have not indicated how long they intend to detain these individuals at Guantánamo.

48.    Defendants have not notified any family members of Mr. Gomez Lugo, Mr. Sequera, or Mr. Castillo of their detention at Guantánamo or provided any access to them. ICE has not responded to the many inquiries that these family members and counsel have made about their location.

49.    When Ms. Gomez Lugo first became aware that her brother had been moved to Guantánamo, ICE's online detainee locator, located at https://locator.ice.gov/odls/, displayed his location as the El Paso Processing Center. However, on February 8, counsel confirmed via email and phone with ICE that he had been transferred from the El Paso Processing Center to Miami on February 4. After multiple calls and emails, counsel confirmed on February 10 that Mr. Gomez Lugo was not at either of ICE's detention facilities near Miami (Krome Processing Center and

Broward County Transitional Center). On February 10, an ICE deportation officer at the ICE Field Office in Miami stated that Mr. Gomez Lugo was still in ICE custody but was "in transit." ICE would not provide counsel any further details of Mr. Gomez Lugo's location or any means of communicating with him.

50.    When Ms. Sequera learned that her son had been told he would be transferred to Guantánamo, ICE's online detainee locator continued to show Mr. Sequera as at the El Paso Processing Center. However, on February 10, an ICE employee informed counsel in a telephone conversation that Mr. Sequera may no longer be at the facility and advised counsel to call back again the next day. On February 11, counsel received confirmation over email that Mr. Sequera was no longer at the El Paso Processing Center. Over the course of the morning, the ICE detainee locator was updated to reflect that he was in ICE custody in "Florida" and directed the viewer to call the ICE field office for the detainee's location. Counsel made repeated calls to both the ICE field offices in Plantation, Florida, and El Paso, Texas, but was unable to reach anybody to confirm Mr. Sequera's location. ICE has not provided counsel with any information on how to contact Mr. Sequera.

51.    Counsel has also attempted to locate and contact Mr. Castillo. On February 11, ICE's online detainee locator stated that he was in ICE custody in "Florida," and also directed the viewer to call the ICE field office for the detainee's location.  Counsel made repeated calls to ICE to confirm Mr. Castillo's location, but was unable to reach anyone.

52.    Upon information and belief, Defendants have not provided any individual or organization capable of providing legal assistance to Mr. Gomez Lugo, Mr. Sequera, or Mr. Castillo with access to them.

53.    Without access to counsel, Mr. Gomez Lugo, Mr. Sequera, and Mr. Castillo cannot

assess the legal validity of their detention by Defendants at Guantánamo, challenge their detention or conditions of confinement, or raise any other claims they may have.

54.    Upon information and belief, Defendants have not notified any members of other detained immigrants' families of their transfer to or detention at Guantánamo or provided any family members with access to them. Defendant ICE's online detainee locator system, located at https://locator.ice.gov/odls/, currently states only that detainees suspected of being transferred to Guantanamo are in "Florida," and instructs the user to contact the local ICE Field Office, which has provided no further information. Nor have they provided any of these other detainees with access to counsel. Without access to counsel, these detainees cannot assess the legal validity of their detention by Defendants at Guantánamo, challenge their detention or conditions of confinement, or raise any other claims they may have.

55.    Each of the foregoing paragraphs is incorporated by reference in each of the following claims.

18.    A Memorandum of Understanding between DHS and DOD titled "DOD Support at Naval Station Guantanamo Bay (NSGB) to U.S. Immigration and Customs Enforcement (ICE) for DHS/ICE Detention of Illegal Aliens Subject to Final Orders of Removal" ("DHS/DOD MOU"), dated March 7, 2025, reveals that the government created broad criteria for the detention of immigrants at Guantánamo not predicated on any assessment of detainees' criminal history or conduct. *See* Camilo Montoya-Galvez, *Memo Shows U.S. Can Send Migrants Without Criminal Records to Guantanamo, Despite Trump's Promise to Hold "the Worst" There*, CBS News, Apr. 16, 2025, https://www.cbsnews.com/news/guantanamo-trump-migrants-without-criminal-records/ [https://perma.cc/XT5H-S336].

19.    Since February 4, 2025, the government has transferred to Guantánamo more than

four hundred more immigrant detainees from the United States, at a cost of more than $40 million. Carol Rosenberg, *U.S. Has Spent $40 Million to Jail About 400 Migrants at Guantánamo*, N.Y. Times, Mar. 31, 2025, https://www.nytimes.com/2025/03/31/us/politics/migrants-guantanamo-costs.html.

20.    The government has held immigrant detainees in two facilities at Guantánamo: first, in a maximum-security prison known as "Camp 6" on the island's military complex, where post-9/11 military detainees had previously been held and, second, in barracks at the Migrant Operations Center ("MOC"), where the government has previously held migrants apprehended on the high seas.

**B.  Restrictions on Access to Counsel and Family Communication at Guantánamo**

21.    The government has unreasonably restricted immigrant detainees' access to counsel at Guantánamo. "Regulations and practices that unjustifiably obstruct the availability of professional representation . . . are invalid." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974). The government's intrusions on detainees' confidential communication with counsel undermine the attorney-client privilege, "the oldest of the privileges for confidential communications known to the common law." *Al Odah v. United States*, 346 F. Supp. 2d 1, 10 (D.D.C. 2004) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

22.    The government has also unreasonably restricted detainees' access to telephone communication with their families. Prisoners "retain their First Amendment rights to communicate with family and friends." *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (citation omitted). In prison, "there is no legitimate governmental purpose to be attained by not allowing reasonable access to the telephone, and . . . such use is protected by the First Amendment." *Id.* (quotation omitted).

23.      After Plaintiffs initially filed suit in this case, the government enacted some limited measures for detainees to communicate with counsel and their families. These measures included a method for attorneys to request scheduled phone calls with detainees; the creation of a flier providing information about a telephone hotline to the American Bar Association ("ABA") and the option to request an outgoing legal call; a webpage providing basic logistical information regarding immigrant detainees held at Guantánamo, https://www.ice.gov/detain/detention-facilities/naval-station-guantanamo-bay [https://perma.cc/7DGS-L4LK]; and an update to the government's online immigrant detainee locator to reflect a detainee's location at Guantánamo. The government also began to allow detainees to place five-minute calls to their families.

24.      However, the government continues to impose significant barriers to attorney access and has failed to fully implement many of the measures it has claimed to have put in place. Immigrant detainees at Guantánamo remain unable to meaningfully communicate with legal counsel amidst a climate of extreme intimidation and fear.

25.      **No In-Person Attorney-Client Visitation.** The government continues to deny detainees the ability to meet with legal counsel in person, despite multiple requests by counsel, including those with established attorney-client relationships, for in-person visitation. The government has also ignored requests from attorneys who have security clearance, and who were present on base at Guantánamo as part of their separate, law of war legal representation, for in-person legal visits with immigrant detainees.

26.      **Failure to Provide Scheduled Phone Calls.** The government has set up and publicized on ICE's website a system for attorneys to schedule telephone calls with detained clients, where attorneys may email legal.GTMO@ice.dhs.gov to request a time to talk to their client. However, this system is not reliable. On multiple occasions, the government has simply

28

failed to bring detainees to these scheduled attorney-client calls, even after sending confirmation that the call had been scheduled, or has not responded at all to requests for legal calls sent by attorneys.

27.    **Lack of Confidential Attorney-Client Phone Calls, Amidst Climate of Fear.** Officers at Guantánamo have created a climate of extreme fear and intimidation where immigrant detainees are afraid to communicate freely with their counsel. Detainees are chained and put in restraints while speaking to attorneys on the phone. Scheduled attorney-client calls are not private or confidential at Guantánamo. Officers sit in the hallway by an open door to the room where detainees receive calls from their attorneys, and have placed the legal calls on speakerphone, broadcasting both sides of the conversation. Detainees have expressed fear that they will face punishment or retaliation if they freely share their thoughts or information with counsel because officers can hear their conversations with counsel on legal calls.

28.    **Reported Recording of Attorney-Client Phone Calls.** Two weeks ago, an officer told lawyers during an attorney-client call that military officials are recording their attorney-client telephone conversations at Guantánamo. As a result, the attorneys immediately terminated the call. The government has denied this claim, and informed Plaintiffs' counsel via email that DOD lacks the capacity to record attorney-client calls. Regardless of the veracity of these representations, the officer's statement has had a significant chilling effect on detainees' communication with legal counsel. For example, the detainee who participated in this call has since expressed even greater fear of openly sharing information with counsel during subsequent attorney-client interactions.

29.    **Lack of Clear Instruction Regarding Requests for Outgoing Calls to Counsel and ABA Hotline.** Detainees frequently do not know that they have the right and ability to request a call with legal counsel. The government has claimed that it has posted or otherwise provided

detainees with fliers about requesting outgoing legal calls to counsel or the American Bar Association's (ABA) Information Line. However, the information it claims to have provided to detainees does not actually explain how to place a request for an outgoing legal call. The flier explains that detainees can use an unspecified "form" and "include your legal representative's name, phone number(s), and email address," to request a call with an attorney or the ABA Information Line. Decl. Juan Lopez Vega ¶ 14, *Espinoza Escalona v. Noem*, No. 1:25-cv-604 (D.D.C. Mar. 10, 2025), ECF No. 14-2. But the request form provided by the government does not actually indicate that it can be used to request a legal call and provides no fields to enter a legal representative's name, phone number, or email address. (The form instead includes fields to request attention regarding programs such as "payroll (voluntary work)," or "commissary inquiry," neither of which exist for immigrant detainees at Guantánamo). *Id.* at 16. In addition, the detainee request form is specified only for people held at "GTMO CAMP VI," not at the MOC. *Id.*

30.    **Denials and Penalties for Requesting Outgoing Legal Calls.** Officers do not tell detainees that they have the right to call an attorney. Officers have not provided information about outgoing legal calls to detainees. Officers have told detainees that they do not need legal counsel because they have received final orders of removal. For detainees who are aware of the ability to make a legal call or to call the ABA, officers have denied many requests. Officers have also informed detainees that they can either call the ABA or make a family call, but not both. Many detainees are afraid to request an attorney call because they believe they will be punished for doing so. Officers at Guantánamo have informed detainees that telephone calls, including to attorneys, are a "privilege" that can be taken away.

31.    Officers at Guantánamo have told immigrant detainees that they do not need legal counsel because they have final orders of removal and have impermissibly discouraged detainees

from seeking calls with legal counsel. But detainees who have final orders of removal have a right to pursue many legal claims. For example, noncitizens with final orders have available many forms of immigration relief and legal remedies, including motions to reconsider and reopen, 8 U.S.C. §§ 1229a(c)(6)-(7); relief under the Violence Against Women Act, 8 U.S.C. § 1154(a)(1)(A)(iii); Temporary Protected Status, 8 U.S.C. § 1254a; U- and T- visas, 8 U.S.C. §§ 1101(a)(15)(U), (a)(15)(T); and challenges to unlawful conditions of confinement. Noncitizens with final orders of removal may also seek release from detention, including through federal habeas petitions where deportation is not reasonably foreseeable. *Zadvydas v. Davis*, 533 U.S. 678, 687-89 (2001), and may also require legal consultation regarding various class action injunctions applicable to noncitizens facing removal.

32.    **Climate of Fear and Intimidation.** Detainees' fears of punishment are not unfounded. Upon admission to Guantánamo, officers tell detainees that they are terrorists and that they do not have rights. Officers at Guantánamo do not refer to detainees by name, only by number. Immigrant detainees have been taken from their cells and brought to interrogation sessions by the FBI about gang affiliation while surrounded by as many as seven military officers. One detainee was wrongfully accused of hiding his toothbrush in his cell when, in fact, he had given it to another officer. Officers searched the detainee, tossed his bed, and searched his genitals for the toothbrush. Another detainee experienced significant emotional and mental decompensation to the point of possible self-harm after officers locked him in a concrete cell with no windows or lights for four days.

33.    **No Exchange of Legal Documents.** The government claims that it has established a process for the exchange of legal documents. ICE's website states that attorneys may send legal correspondence to detainees at Legal.GTMO@ice.dhs.gov. *See* ICE, Naval Station Guantanamo

Bay,                https://www.ice.gov/detain/detention-facilities/naval-station-guantanamo-bay [https://perma.cc/7DGS-L4LK]. However, there is no reliable method for detainees to be able to send documents, including forms or declarations with signatures, to their legal counsel. ICE's website states that the "facility administrator may, in his discretion, allow for a reasonable amount of communication via email between the detainee and their designated legal representative." *Id.* But attorneys have sent documents to the specified email address, requesting that the document be returned with the detainee's signature, with no response. Attorneys have also sent documents to detained clients at Guantánamo through this email account, but have not received any confirmation whether documents have been received. At least one attorney has sent a document to a detained client at Guantánamo through this email account and, when he spoke with his client days later, learned that the client never received the document.

34.    Although the government states that "legal mail will be delivered to [Guantánamo] on a weekly basis via the Defense Courier Service," Decl. Juan Agudelo ¶ 17, ECF No. 14-1, ICE has provided no publicly-available information or address as to how detainees can receive postal or courier mail. *Compare* ICE, Naval Station Guantanamo Bay, https://www.ice.gov/detain/detention-facilities/naval-station-guantanamo-bay [https://perma.cc/7DGS-L4LK] (providing no information regarding mail) *with* ICE, El Paso Service Processing Center, Sending Items to Detainees, https://www.ice.gov/detain/detention-facilities/el-paso-service-processing-center [https://perma.cc/Q242-24H9] (specifying mail instructions). The purported weekly period of mail delivery is also slower than for law-of-war detainees held at Guantánamo by the military, as their mail is delivered within four days. *See In re Guantanamo Bay Detainee Litig.*, 577 F. Supp. 2d 143, 160 (D.D.C. 2008). There is no non-punitive justification for denying immigrant detainees the same mail-delivery schedule that is available to law-of-war detainees.

35.    **Misleading ICE Detainee Locator Information.** The government has claimed that it has updated the ICE Detainee Locator "to reflect the current location of aliens who are currently housed at the MOC and Camp VI." Decl. Juan Lopez-Vega ¶ 17, *Espinoza Escalona v. Noem*, No. 1:25-cv-604 (D.D.C. Mar. 10, 2025), ECF No. 14-2. However, the ICE Detainee Locator does not actually indicate that detainees held at the MOC are held at Guantánamo, creating confusion for attorneys attempting to locate and reach their clients. Instead, the Locator field for the MOC under "Current Detention Facility" displays "Migrant Ops Center Main A," with a link to a facility at "865 SW 78th Ave., Plantation, FL 33324."

36.    **Restrictions on Personal Phone Calls.** The government has stated that it allows immigrant detainees one five-minute personal phone call per day. Decl. Robert Green ("Green Decl.") ¶ 22, *Espinoza Escalona v. Noem*, No. 1:25-cv-604 (D.D.C. Mar. 10, 2025), ECF No. 14-1. In practice, some detainees have only been permitted to place a personal phone call once per week. The personal phone calls take place over speakerphone, with an officer seated less than half a meter away from the detainee. Officers have disconnected the phone line and suspended detainees from phone privileges if the detainee shares anything that the officers "disagree with" on the calls, such as mention of their detention at Guantánamo or in Cuba, or conditions of confinement and the treatment of detainees at Guantánamo. Calls to anywhere other than the United States are not permitted. Some people detained at Guantánamo have no friends or family in the United States whom they can call, which means they are unable to communicate with their friends or families at all.

### C. Immigrant Detainees at Guantánamo Face More Severe Restrictions Than U.S.-Based ICE Detainees, Prisoners, and Guantánamo Military Detainees.

37.    Immigrant detainees at Guantánamo face restrictions on attorney access and family

communication that are far more severe than for people held in ICE detention facilities in the United States, in U.S. prisons, and in some instances, even for people in law-of-war military custody at Guantánamo.

38.    **In-Person Attorney Visitation.** People held in ICE detention facilities in the United States, in prisons, and in law-of-war military custody all have the ability to have in-person attorney visits. *See e.g.* ICE, Performance-Based National Detention Standards 2011 ("PBNDS") § 5.7.V.J (2016), https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf [https://perma.cc/3UNC-WGLW]; 28 C.F.R. § 543.13(a) (Federal Bureau of Prisons ("BOP") facilities must "permit visits by the retained, appointed, or prospective attorney of an inmate . . . ."); *In re Guantanamo Bay Detainee Litig.*, 577 F. Supp. 2d at 158 (requiring government to allow in-person attorney visits for law-of-war detainees at Guantánamo).

39.    **Private, Confidential, and Unmonitored Attorney-Client Communication.** ICE detention facilities in the United States, prisons, and even law-of-war military custody all require private, confidential, and unmonitored attorney-client communication. *See e.g.* ICE, PBNDS § 5.6.V.F.2 (requiring facilities to "ensure privacy" where detainees can make legal calls "without being overheard," and barring monitoring of legal calls); § 5.7.II(2) (requiring that visits between detainees and legal representatives be confidential, without auditory supervision, in a private consultation room); 28 C.F.R. § 540.102 ("Staff may not monitor an inmate's properly placed call to an attorney" at BOP facilities); 28 C.F.R. § 543.13(e) ("[s]taff shall not subject visits between an attorney and an inmate to auditory supervision" at BOP facilities); *Al Odah*, 346 F.Supp.2d at 11-12 (requiring unmonitored attorney-client communication for law-of-war detainees at Guantánamo).

40.    **Outgoing Legal Calls.** U.S.-based ICE detention facilities, prisons, and law-of-war

military detention facilities at Guantánamo provide clear mechanisms for people in their custody to place outgoing legal calls. U.S.-based ICE detention facilities are required to provide detainees with free calls to legal service providers, as well as consular officials and oversight agencies. PBNDS § 5.6.II.7. ICE detention facilities must ensure that "free and direct calls" to legal representatives are "easily accessible." *Id.* § 5.6.V.E. "If detainees are required to complete request forms to make direct or free calls, facility staff must assist them as needed, especially illiterate or non-English speaking detainees." *Id.* § 5.6.V.E.1. "Staff shall allow detainees to make such calls as soon as possible after submission of requests," with access granted "within 24 hours of the request." *Id.* § 5.6.V.E.2. Federal BOP regulations forbid facilities from applying "frequency limitations on inmate telephone calls to attorneys when the inmate demonstrates that communication with attorneys by correspondence, visiting, or normal telephone use is not adequate." 28 C.F.R. § 540.103.

41.    **Prohibition Against Retaliation for Attorney-Client Communication.** ICE detention standards specify that "[d]etainees shall not be subject to reprisals, retaliation or penalties for attending legal rights group presentations." PBNDS § 6.4.II.4. ICE detention standards also specify that a facility may not "in any way retaliate against a detainee for lawful communication with a . . . member of the public." *Id.* § 7.2.V.A.4. Prison officials may not retaliate against prisoners for engaging in protected First Amendment conduct, including communication with legal counsel. "[S]uch retaliation offends the Constitution," as "it threatens to inhibit exercise of the protected right." *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998) (citation omitted).

42.    **Exchange of Legal Documents.** ICE detention standards require facilities to have written policies concerning detainee correspondence, and that facilities must notify detainees of their rules regarding correspondence at admission. This notification must specify that legal mail is

treated as privileged mail and may only be opened in the detainee's presence. PBNDS §§ 5.1.V.C, 5.1.V.F.2. Staff may not read or copy outgoing legal mail. *Id*. § 5.1.V.G.2. Facility administrators may allow for reasonable communication by means of fax between detainees and legal representatives. *Id*. § 5.1.V.O. Federal BOP regulations also require that legal mail be opened in accordance with special mail procedures, 28 C.F.R. § 540.19, and provide mail depositories for outgoing special mail. 28 C.F.R. § 540.11.

43. **Communication with Family Members.** ICE detention standards require that detainees are provided "reasonable and equitable access to telephones during established facility 'waking hours.'" PBNDS § 5.6.V.D. Telephones "shall be located in parts of the facility that are accessible to detainees." *Id.* Telephone access hours "shall be posted near the telephones," and "[e]ach facility shall provide detainees access to international telephone service." *Id.* Prisons may not restrict outgoing communication in a manner "greater than is necessary or essential" to protect "important or substantial interests." *Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974). "Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements" or "suppress unwelcome criticism." *Id*. at 413, 415.

## CLASS ALLEGATIONS

44. Plaintiffs bring this action under the Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2) on behalf of themselves and a class of all other persons similarly situated.

45. Plaintiffs propose to represent the following Proposed Class: "all immigration detainees originally apprehended in the United States and detained at U.S. immigration detention facilities, and who are, or will be held at Naval Station Guantánamo Bay, Cuba."

46. The proposed class satisfies the requirements of Rule 23(a) because the class is so numerous that joinder of all members is impracticable. There are currently 42 immigrants detained

at Guantánamo. The proposed class also includes numerous future immigrant detainees who will be held at Guantánamo. The government has stated that it intends to continue detaining immigrants at Guantánamo. Unit 6 alone has capacity to hold up to 175 people at a time, while the MOC has capacity to hold 50 people at a time. The government also has capacity to hold 520 more people in additional facilities at MOC East and MOC West, for a combined capacity total of 745 people. Green Decl. ¶¶ 4, 18, 21, *Espinoza Escalona*, No. 1:25-cv-604 (D.D.C. Mar. 10, 2025), ECF No. 14-1. The proposed class is fluid, as the government has regularly transported detainees to and from Guantánamo, making joinder of all members not only impracticable but impossible.

47.    The proposed class satisfies the commonality requirements of Rule 23(a)(2). The members of the class are subject to a common practice: detention at Guantánamo and the government's policies and practices for communication with legal counsel and family members. The suit also raises questions of law common to members of the proposed class, including whether the government's policies and practices violate the First and Fifth Amendments of the U.S. Constitution.

48.    The proposed class satisfies the typicality requirements of Rule 23(a)(3), because the claims of the representative Plaintiffs are typical of the claims of the class. Each proposed class member, including the proposed class representatives, has experienced or faces the same principal injury (denial of access to counsel and communication with family members), based on the same government policy and practice, which is unlawful as to the entire class, because they violate the First and Fifth Amendments of the U.S. Constitution.

49.    The proposed class satisfies the adequacy requirements of Rule 23(a)(4). The representative Plaintiffs seek the same relief as the other members of the class—among other things, an order declaring the government's policies and practices with respect to attorney access

and communication with family members unlawful and injunctive relief to provide access to counsel and communication with family members in accordance with constitutional requirements. In defending their rights, Plaintiffs will defend the rights of all proposed class members fairly and adequately.

50.    The proposed class is represented by experienced attorneys from the American Civil Liberties Union, American Civil Liberties Union of the District of Columbia, Center for Constitutional Rights, and the International Refugee Assistance Project. Proposed class counsel have extensive experience litigating class action lawsuits and other complex systemic cases in federal court on behalf of noncitizens.

51.    The proposed class also satisfies Rule 23(b)(1) and 23(b)2). Prosecution of separate actions by individual class members would create a risk of inconsistent adjudication that would establish incompatible standards of conduct. Defendants have acted on grounds generally applicable to the class by subjecting them to the same policies and practices with respect to attorney access and communication with family members. Injunctive and declaratory relief is therefore appropriate with respect to the class as a whole.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of Right to Habeas Corpus
*On behalf of Plaintiffs Gomez Lugo, Sequera, Castillo, and Immigrant Detainees*

56.    Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees transferred from the United States and held at Guantánamo have the right to file petitions for habeas corpus to challenge the legality of that transfer and detention or raise other claims related to the basis for their removal. That right includes the right of access to counsel.

57.    Absent access to counsel, the right to habeas corpus is meaningless.

38

58.     By depriving Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and the other immigrant detainees held at Guantánamo of the ability to hire, consult, and communicate with counsel, Defendants have violated and continue to violate their right to habeas corpus. *See* Art. I § 9, cl. 2 of the U.S. Constitution (Suspension Clause); 28 U.S.C. § 2241.

59.     Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and the other immigrant detainees held at Guantánamo have suffered and will imminently suffer irreparable injury as a result of Defendants' policies, practices, and failure to act and are entitled to injunctive relief to avoid any further injury.

## COUNT II
### Violation of First Amendment Rights of the Immigrant Detainees
*On behalf of all Plaintiffs Gomez Lugo, Sequera, Castillo, and Immigrant Detaineesthe Proposed Class*

17.52.  The First Amendment guarantees Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo,Plaintiffs and other immigrant detainees transferred from the United States and held at Guantánamothe proposed class the right to communicate with the outside world.

18.53.  The First Amendment also guarantees Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees held at GuantánamoPlaintiffs and the proposed class the right to hire, consult, and communicate with an attorney. The government may not unreasonably restrict this right.

54.     By depriving Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo,The First Amendment further guarantees Plaintiffs and other immigrant detainees held at Guantánamothe proposed class the right to communication and association with family members. The government may not unreasonably restrict this right.

19.55.  By unreasonably restricting Plaintiffs and the proposed class of the ability to

hireretain, consult, and communicate with counsel, and to communicate and associate with family members, Defendants have violated and continue to violate their rights under the First Amendment.

20.56.  Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees held at GuantánamoPlaintiffs and the proposed class have suffered and will imminently suffer irreparable injury as a result of Defendants' policies, practices, and failure to act and are entitled to injunctive relief to avoid any further injury.

**COUNT III**
**COUNT II**
**Violation of Fifth Amendment Right to Due Process**
*On behalf of all Plaintiffs Gomez Lugo, Sequera, Castillo, and Immigrant Detaineesthe*

*Proposed Class*

21.57.  Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees transferred from the United States and held at GuantánamoPlaintiffs and the proposed class have a due process right not to be subjected to punitive conditions of confinement, which includes the right not to be held without access to counsel or the outside worldand communication with their families.

22.58.  Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo,Plaintiffs and other immigrant detainees held at Guantánamothe proposed class experience a denial of access to counsel and communication with their families substantially worse than that experienced by those serving time in prison for a criminal conviction in the United States.

23.59.  The limitations on attorney access and family communication that Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees held at GuantánamoPlaintiffs and the proposed class face are not rationally related to a non-punitive purpose and are excessive.

24.60.  Defendants could accomplish their non-punitive objectives in alternative and less harsh methods than the limitations they have placed on access to counsel by Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees held at Guantánamoand family communication for Plaintiffs and the proposed class.

25.61.  Defendants have subjected Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo,Plaintiffs and other immigrant detainees held at Guantánamothe proposed class to punitive conditions of confinement.

26.62.  Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees held at GuantánamoPlaintiffs and the proposed class have substantial liberty interests in pursuing legal options available to them.

27.63.  Defendants' denial of attorney access has deprived Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo,Plaintiffs and other immigrant detainees held at Guantánamothe proposed class of their liberty interest and creates a substantial risk that they will face delayed or wrongful denial of relief. Allowing attorney access would cause only minor fiscal and/or administrative burdens.

28.64.  Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and otherPlaintiffs and the proposed class of immigrant detainees held at Guantánamo have suffered and will imminently suffer irreparable injury as a result of Defendants' policies, practices, and failure to act and are entitled to injunctive relief to avoid any further injury.

### COUNT IV
### Violation of INA and Implementing Regulations
*On behalf of Plaintiffs Gomez Lugo, Sequera, Castillo, and Immigrant Detainees*

60.    The Immigration and Nationality Act ("INA") provides all detained noncitizens the right to counsel of their own choice. This statutory and regulatory right to counsel includes the

right to consult with and retain counsel.

61.    Defendants' policies, practices, and failure to act have deprived Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees transferred from the United States and held at Guantánamo of their statutory and regulatory right to counsel guaranteed by the INA.

62.    Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other immigrant detainees held at Guantánamo have suffered and will imminently suffer irreparable injury as a result of Defendants' policies, practices, and failure to act and are entitled to injunctive relief to avoid any further injury.

### COUNT V
**Violation of First Amendment Rights of Plaintiff Legal Service Organizations**
*On behalf of Legal Service Organizations*

63.    The First Amendment protects the Legal Service Organizations' activities in advising and representing their clients and in soliciting prospective litigants. These activities are forms of political association and expression.

64.    Defendants' policies, practices, and failure to act have interfered with and obstructed the Legal Service Organizations' ability to advise and represent detainees in need of legal assistance at Guantánamo.

65.    The Legal Service Organizations have suffered and will imminently suffer irreparable injury as a result of Defendants' policies, practices, and failure to act and are entitled to injunctive relief to avoid any further injury.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs ask the Court to:

~~29.~~65.  Enter judgment for Plaintiffs and the proposed class and against Defendants~~;~~.

~~30.~~66.  Declare that Defendants' actions violate ~~the right of Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and other detained immigrants to counsel under Habeas Corpus, their~~ Plaintiffs' and

the proposed class members' First Amendment right to retain, consult, and communicate with attorneys, and to communicate with their family members, and their Fifth Amendment due process rights, and their statutory and regulatory right to counsel, as well as the Legal Service Organizations' First Amendment rights..

31.67.  Order Defendants forthwith to permit lawyers from and ensure that Plaintiffs and the Legal Service Organizations, and the undersigned counsel, to proposed class members can meet and confer with Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, and the other unknown immigrant detainees counsel in scheduled, timely, free, confidential, and unmonitored, and unrecorded attorney-client conversations, in person, and via videoconferencing or telephone, with accommodations for interpretation, with no additional security clearances beyond those required to visit any individual in immigration custody in the United States, without intimidation, retaliation, or revocation, in order for counsel to advise them of their legal rights and to provide them with legal assistance.

32.68.  Order Defendants to provide and ensure a method for immigrants detained at Guantánamo to place timely, free, confidential, and unmonitored, and unrecorded outgoing legal calls without intimidation, retaliation, or revocation, and to individually provide detainees with clear instruction and process for doing so in both Spanish and English at book-in.

33.69.  Order Defendants to provide and ensure a method for timely and confidential legal document exchange and signature, including via fax, email or electronic signature platforms;, courier service, and mail.

34.70.  Order Defendants to make maintain publicly available information regarding protocols for attorney-client communication at Guantánamo via Defendant Immigration and Customs Enforcement's website, and to provide that information in English and Spanish to all

immigrants detained by Defendants at Guantánamo.

71.    Order Defendants to specifically identifyOrder Defendants to provide written information regarding protocols for attorney-client communication in English and Spanish to all immigrants detained by Defendants at Guantánamo, and to provide and honor request forms specifically for attorney-client communication to all immigrants detained by Defendants at Guantánamo.

35.72.  Order Defendants to maintain specific identification of the location of a detainee held at Guantánamo as "Guantánamo" in Defendant Immigration and Customs Enforcement's Online Detainee Locator System within 24 hours of their transfer to Guantánamo;., and order ICE to update entries for detainees held at the Migrant Operations Center to reflect detention at Guantánamo, not Florida.

66.    Order Defendants to provide notice to the Court and to counsel for Plaintiffs at least 72 hours prior to any transfer of Mr. Gomez Lugo, Mr. Sequera, Mr. Castillo, or the other unknown immigration detainees to a foreign jurisdiction or to the custody of another nation.

67.    Order Defendants to provide notice to the Court and to counsel for Plaintiffs at least 72 hours prior to any transfer to Guantánamo of additional noncitizens currently detained under immigration authorities inside the United States.

73.    Order Defendants to allow Plaintiffs and proposed class members daily, reasonable and equitable access to telephones between 8:00 a.m. and 10:00 p.m., in areas that are freely accessible, to allow both domestic and international phone calls; and not to prohibit discussion of the detainee's detention at Guantánamo, including the treatment of detainees and the conditions of confinement, or any other topic.

36.74.  Award Plaintiffs attorney fees and other litigation costs pursuant to the Equal

44

Access to Justice Act and/or any other applicable law.

~~37.~~75.  Grant such other relief as the Court deems just and proper.

Dated: ~~February 12~~April 26, 2025

Respectfully submitted,

/s/ *Lee Gelernt*

Eunice H. Cho (D.C. Bar No. 1708073)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW, 7th floor
Washington, DC 20005
(202) 546-6616
echo@aclu.org

My Khanh Ngo*
Kyle Virgien*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
mngo@aclu.org
kvirgien@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org

Deepa Alagesan (D.D.C. Bar No. NY0261)
Kimberly Grano (D.D.C. Bar No. NY0512)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza, 33rd Floor
New York, New York 10004
Telephone: (516) 838-7044
dalagesan@refugeerights.org
kgrano@refugeerights.org

Lee Gelernt (D.D.C. Bar No. NY0408)
Brett Max Kaufman (D.D.C. Bar No.
NY0224)
Judy Rabinovitz*
Noor Zafar*
Omar C. Jadwat*
Wafa Junaid*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
bkaufman@aclu.org
jrabinovitz@aclu.org
nzafar@aclu.org
ojadwat@aclu.org
wjunaid@aclu.org

Baher Azmy*
Shayana D. Kadidal (D.C. Bar No. 454248)
J. Wells Dixon*
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, Floor 7
New York, NY 10012
T: (212) 614-6427
bazmy@ccrjustice.org
shanek@ccrjustice.org
wdixon@ccrjustice.org

*Attorneys for Plaintiffs-Petitioners*

*\*Pro bono representation certificates
forthcoming*