**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHON ELIAS SUAZO-MULLER, *et al.*, | ) |
| | ) |
| *Plaintiffs*, *on behalf of themselves and all those similarly situated* | ) |
| | ) |
| | ) Case No. 1:25-cv-418-CJN |
| | ) |
| v. | ) |
| | ) |
| KRISTI NOEM, Secretary of Homeland Security, in her official capacity, *et al.*, | ) |
| | ) |
| *Defendants*. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 2

LEGAL STANDARD ......................................................................................................... 5

ARGUMENT ..................................................................................................................... 6

   I. The Proposed Class Satisfies the Rule 23(a) Requirements. ...................................... 6

     A. The Proposed Class Satisfies the Numerosity Requirement. ............................... 6

     B. The Proposed Class Satisfies the Commonality Requirement. ........................... 7

     C. The Proposed Class Satisfies the Typicality Requirement ................................. 9

     D. The Proposed Class Satisfies the Adequacy Requirement. ............................. 11

   II. Class Certification Is Appropriate Under Rule 23(b)(1), Rule 23(b)(2), or Both. ............... 12

   III. The Court Should Designate Plaintiffs' Counsel as Class Counsel. .................................... 14

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..........................................................................................5

*Bynum v. District of Columbia*,
  214 F.R.D. 27 (D.D.C. 2003)........................................................................8, 10

*Campbell v. McGruder*,
  580 F.2d 521 (D.C. Cir. 1978)..........................................................................6

*Colo. Cross-Disability Coal. v. Taco Bell Corp.*,
  184 F.R.D. 354 (D. Colo. 1999) ........................................................................7

*D.L. v. District of Columbia*,
  302 F.R.D. 1 (D.D.C. 2013).....................................................................6, 7, 8, 9

*Encinas v. J.J. Drywall Corp.*,
  265 F.R.D. 3 (D.D.C. 2010)..............................................................................14

*Espinoza Escalona v. Noem*,
  No. 1:25-cv-604 (D.D.C. Mar. 10, 2025)...........................................................4, 7

*Franco-Gonzalez v. Napolitano*,
  No. 10-CV-2211, 2011 WL 11705815 (C.D. Cal. Nov. 21, 2011) .........................11

*Inmates of Occoquan v. Barry*,
  717 F. Supp. 854 (D.D.C. 1989)........................................................................6

*J.D. v. Azar*,
  925 F.3d 1291 (D.C. Cir. 2019)......................................................................5, 6

*N.S. v. Hughes*,
  335 F.R.D. 337 (D.D.C. May 7, 2020) ................................................................6

*O.A. v. Trump*,
  404 F. Supp. 3d 109 (D.D.C. 2019))..................................................................11

*R.I.L-R. v. Johnson*,
  80 F. Supp. 3d 164 (D.D.C. 2015)...............................................................6, 8, 10

*Radosti v. Envision EMI, LLC*,
  717 F. Supp. 2d 37 (D.D.C. 2010)......................................................................9

*Ramirez v. U.S. Immigr. & Customs Enf't,*
    338 F. Supp. 3d 1 (D.D.C. 2018) .................................................................. 11

*Richardson v. L'Oreal USA, Inc.,*
    991 F. Supp. 2d 181 (D.D.C. 2013) ............................................................... 10

*Taylor v. D.C. Water & Sewer Auth.,*
    241 F.R.D. 33 (D.D.C. 2007) ........................................................................ 6

*Thorpe v. District of Columbia,*
    303 F.R.D. 120 (D.D.C. 2014) ...................................................................... 8

*Twelve John Does v. District of Columbia,*
    117 F.3d 571 (D.C. Cir. 1997) ...................................................................... 11

*Twelve John Does v. District of Columbia,*
    841 F.2d 1133 (D.C. Cir. 1988) .................................................................... 6

*Wagner v. Taylor,*
    836 F.2d 578 (D.C. Cir. 1987) ...................................................................... 10

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ........................................................................... 5, 8, 9

## Rules

Fed. R. Civ. P. 23 ....................................................................................................... 1

Fed. R. Civ. P. 23(a)(1) ........................................................................................ 6, 7

Fed. R. Civ. P. 23(a)(2) ........................................................................................... 7

Fed. R. Civ. P. 23(a)(3) ........................................................................................... 9

Fed. R. Civ. P. 23(a)(4) ......................................................................................... 11

Fed. R. Civ. P. 23(b)(1)(A) ...................................................................................... 5

Fed. R. Civ. P. 23(c)(1)(B) ..................................................................................... 14

Fed. R. Civ. P. 23(g) ............................................................................................. 14

Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv) ......................................................................... 14

Fed. R. Civ. P. 23(g)(1)(B) .................................................................................... 14

## Other Authorities

Camilo Montoya-Galvez, *Memo Shows U.S. Can Send Migrants Without Criminal Records to Guantanamo, Despite Trump's Promise to Hold "the Worst" There,* CBS News, Apr. 17. 2025, https://www.cbsnews.com/news/guantanamo-trump-migrants-without-criminal-records/. ...................................................................................................................................... 7

Carol Rosenberg, *U.S. Has Spent $40 Million to Jail About 400 Migrants at Guantánamo*, N.Y. Times, Mar. 31, 2025, https://www.nytimes.com/2025/03/31/us/politics/migrants-guantanamo-costs.html. ...................................................................................................................................... 3

Customs and Border Protection (@CBP), X.com (Feb. 4, 2025), https://x.com/CBP/status/1886936769242845237 [https://perma.cc/UR8L-E237] ...................................................................................................................................... 2

Hamed Aleaziz, et al., *U.S. Is Holding Migrants in Cells That Once Held Al Qaeda Suspects*, NY Times, Feb. 5, 2025, https://www.nytimes.com/2025/02/05/us/politics/migrants-trump-guantanamo-prison.html [https://perma.cc/XWH6-HMFF] ...................................................... 2

The White House, "Expanding Migrant Operations Center at Naval Station Guantanamo Bay to Full Capacity" (Jan. 29, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/expanding-migrant-operations-center-at-naval-station-guantanamo-bay-to-full-capacity/ [https://perma.cc/D2P3-45SN] .......................................................................... 2

Wright, Miller & Kane, *Federal Practice & Procedure* vol. 7A § 1763 (3d ed. 2005) ................. 8

**INTRODUCTION**

Plaintiffs file this class action to challenge Defendants' restrictions on access to counsel and communication with family members for immigrant detainees held at the Naval Station at Guantánamo Bay, Cuba ("Guantánamo"). Defendants' restrictions on detainees' ability to retain and communicate with legal counsel, and to speak with their families, violate Plaintiffs' constitutional rights under the First and Fifth Amendments.

Plaintiffs' proposed class consists of: All immigration detainees originally apprehended in the United States and detained at U.S. immigration detention facilities, and who are, or will be held at Naval Station Guantánamo Bay, Cuba. The proposed class readily satisfies the requirements of Rule 23(a). First, the class members are numerous, consisting of over 40 detainees at the present, as well as future detainees held at Guantánamo, making joinder impracticable. Second, the class members share common questions of fact, as they are subject to the same conditions and practices regarding attorney access and communication with family members. They also share common questions of law, including whether Defendants' restrictions violate their rights under the First and Fifth Amendments. Third, the class representatives are subject to the same conditions as all class members and therefore assert claims typical of these asserted by the class. Fourth, the class representatives and their experienced counsel will fairly and adequately protect class interests and will vigorously prosecute the action on behalf of the class.

Certification of the Plaintiffs' proposed class is warranted under Rule 23(b)(1), because separate actions by class members would risk creating inconsistent outcomes and incompatible standards of conduct for Defendants, and under Rule 23(b)(2), because Defendants are acting in the same manner with respect to the class, such that a declaration and injunction with respect to the whole class is appropriate.

1

Class members' claims are not dependent on the facts regarding their underlying immigration law claims or any other individualized determinations. The central question is whether Defendants' actions and restrictions violate constitutional standards. This Court should grant class certification under Rule 23(b)(1) and (b)(2), appoint the Individual Plaintiffs as Class Representatives, and appoint the undersigned as Class Counsel.

## FACTUAL BACKGROUND

On January 29, 2025, President Trump issued a memorandum directing the Secretary of Defense and Secretary of Homeland Security "to take all appropriate actions to expand the Migrant Operations Center at Naval Station Guantanamo Bay to full capacity and to provide additional detention space for high-priority criminal aliens unlawfully present in the United States," and declared his intention to house as many as 30,000 immigrants at Guantánamo.[1] On February 4, 2025, the government announced that it had transferred ten immigrant detainees from Fort Bliss, Texas, to Guantánamo. U.S. Customs and Border Protection ("CBP") posted photos and a video of the transfer of these ten individuals on a military plane to Guantánamo on social media, stating that "[f]lights to Guantánamo Bay have begun."[2] The government issued no public guidance about

---

[1] The White House, "Expanding Migrant Operations Center at Naval Station Guantanamo Bay to Full Capacity" (Jan. 29, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/expanding-migrant-operations-center-at-naval-station-guantanamo-bay-to-full-capacity/ [https://perma.cc/D2P3-45SN]; Hamed Aleaziz, et al., *U.S. Is Holding Migrants in Cells That Once Held Al Qaeda Suspects*, NY Times, Feb. 5, 2025, https://www.nytimes.com/2025/02/05/us/politics/migrants-trump-guantanamo-prison.html [https://perma.cc/XWH6-HMFF].
[2] Customs and Border Protection (@CBP), X.com (Feb. 4, 2025), https://x.com/CBP/status/1886936769242845237 [https://perma.cc/UR8L-E237].

what access detainees would have to counsel, family or the outside world, or what legal rights the government would afford them.

Since February 4, 2025, the government has transferred to Guantánamo more than four hundred additional immigrant detainees from the United States, at a cost of more than $40 million.[3] Although the government has implemented some limited measures for attorney-client communication, the government continues to impose significant barriers to attorney access.

For example, the government has no system for in-person attorney visits, and continues to deny in-person attorney visits with immigrant detainees held at Guantánamo. Declaration of Helen Parsonage ("Parsonage Decl.") ¶ 7.

The government has set up a system to schedule attorney-client phone calls, but requests from attorneys go unanswered and clients are not made available at the scheduled times. Declaration of Delaney Rohan ("Rohan Decl.") ¶¶ 5-7, 13. The scheduled attorney-client calls are not confidential or private. *Id.* ¶¶ 8-11; Parsonage Decl. ¶ 5; Declaration of Rodolfo Joel Lopez Jarquin ("Lopez Decl.") ¶ 9. Officers place legal calls on speakerphone and/or sit in the hallway outside of the room with the door open. Parsonage Decl. ¶ 5; Rohan Decl. ¶ 10; Declaration of Johon Elias Suazo-Muller ("Suazo-Muller Decl.") ¶ 9; Declaration of Xavier Jose Chirinos Toyo ("Chirinos Decl.") ¶ 24; Declaration of Juan Diego Veliz Vicent ("Veliz Decl.") ¶ 8.

The government has also established a system for detainees to request outgoing legal calls, but detainees are not told about this option, are discouraged from requesting calls by officers, or simply denied a call. Suazo-Muller Decl. ¶ 8; Lopez Decl. ¶ 7; Declaration of Carlos Luis Vera Gonzalez ("Vera Decl.") ¶ 15; Chirinos Decl. ¶¶ 24-25; Parsonage Decl. ¶ 6; Veliz Decl. ¶ 8. In

---

[3] Carol Rosenberg, *U.S. Has Spent $40 Million to Jail About 400 Migrants at Guantánamo*, N.Y. Times, Mar. 31, 2025, https://www.nytimes.com/2025/03/31/us/politics/migrants-guantanamo-costs.html.

addition, the process and the forms used to request outgoing legal calls are unclear. Declaration of Dominic Alexander Oliveros Tortolero ("Oliveros Decl.") ¶ 8. The flier provided by the government explains that detainees can use an unspecified "form" and "include your legal representative's name, phone number(s), and email address," to request a call with an attorney or the ABA Information Line. Decl. Juan Lopez Vega ¶ 14, *Espinoza Escalona v. Noem*, No. 1:25-cv-604 (D.D.C. Mar. 10, 2025), ECF No. 14-2. But the request form provided by the government does not actually indicate that it can be used to request a legal call and provides no fields to enter a legal representative's name, phone number, or email address. *Id.* at Ex. C.

The government has established a process for attorneys to email documents to detainees, but documents are not delivered to detainees or returned to counsel. Parsonage Decl. ¶ 8; Rohan Decl. ¶¶ 15-16.

The government has stated that it permits detainees to have only one 5-minute personal phone call to family per day, but detainees can be denied these daily phone calls and can go up to a week without a call. Vera Decl. ¶ 16; Chirinos Decl. ¶ 26; Veliz Decl. ¶ 10. The family calls take place over speakerphone, and officers are seated next to detainees during these calls. Vera Decl. ¶ 13; Lopez Decl. ¶ 8. Detainees are handcuffed and chained during these calls. Veliz Decl. ¶ 10. Officers have forbidden detainees from discussing certain topics with their family members over the phone, including their location at Guantánamo, or their conditions of confinement, and will disconnect the call if those topics are discussed. Suazo-Muller Decl. ¶ 10; Vera Decl. ¶¶ 13-14; Chirinos Decl. ¶ 26. Family calls can only be made to the United States. Oliveros Decl. ¶ 6; Chirinos Decl. ¶ 26; Veliz Decl. ¶ 10. The government's limits on communication between immigrant detainees and legal counsel, as well as their families, are significantly more restrictive

than those for people held in immigration detention facilities in the United States, in prisons, and even in law-of-war military custody at Guantánamo. *See* Am. Compl. ¶¶ 36-42.

The Individual Plaintiffs, Johon Elias Suazo-Muller and Rodolfo Joel Lopez Jarquin are two noncitizens who are currently detained at Guantánamo. *See* Suazo-Muller Decl. ¶¶ 3, 8-10; Lopez Decl. ¶¶ 2-3. Plaintiffs' experiences with respect to attorney access and family communication are representative of other detainees at Guantánamo. *See* Suazo-Muller Decl. ¶ 10; Lopez Decl. ¶¶ 6-9.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 sets out the requirements for certification of a class action. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997); *J.D. v. Azar*, 925 F.3d 1291, 1312 (D.C. Cir. 2019). First, Plaintiffs must satisfy the four Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) ("Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate."). Second, Plaintiffs must demonstrate that the case meets the requirements of one of Rule 23(b)'s subsections. Rule 23(b)(1) requires a showing that "prosecuting separate actions by . . . individual class members would create a risk of . . . varying adjudications . . . that would establish incompatible standards of conduct." Fed. R. Civ. P. 23(b)(1)(A); *see Amchem*, 521 U.S. at 614. Alternatively, Rule 23(b)(2) requires a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see Wal-Mart*, 564 U.S. at 360.

## ARGUMENT

Class actions regarding individuals in immigration detention facilities and other carceral institutions are nothing new to this Court. *See, e.g. R.I.L-R. v. Johnson, 80 F. Supp. 3d 164, 181 (D.D.C. 2015)*; *Twelve John Does v. District of Columbia*, 841 F.2d 1133 (D.C. Cir. 1988); *Inmates of Occoquan v. Barry*, 717 F. Supp. 854 (D.D.C. 1989); *Campbell v. McGruder*, 580 F.2d 521 (D.C. Cir. 1978). This case easily qualifies for class action treatment.

### I.   The Proposed Class Satisfies the Rule 23(a) Requirements.

#### A.  The Proposed Class Satisfies the Numerosity Requirement.

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Joinder does not have to be impossible—instead, [the] plaintiff must show 'only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate.'" *N.S. v. Hughes*, 335 F.R.D. 337, 352 (D.D.C. May 7, 2020) (quoting *D.L. v. District of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013)), *reconsideration denied*, 2020 WL 4260739 (D.D.C. July 24, 2020). Although "[t]here is no specific threshold that must be surpassed," courts in this District "have observed that a class of at least forty members is sufficiently large to meet this requirement." *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007) (quotation omitted). Moreover, "classes including future claimants generally meet the numerosity requirement due to the impracticality of counting such class members, much less joining them." *J.D.*, 925 F.3d at 1322 (quotation omitted). "This is especially true when plaintiff seeks injunctive relief." *N.S.*, 335 F.R.D. at 352. And numerosity also takes into account "non-numerical considerations" that affect Plaintiffs' ability to bring individual suits. *J.D.*, 925 F.3d at 1323.

Here, the proposed plaintiff class satisfies the numerosity requirement. Since February 4, 2025, the government has transferred to Guantánamo more than four hundred immigrant detainees from the United States.[4] There are currently 42 migrants detained at Guantanamo.[5] Defendants plan to continue to send immigrant detainees to Guantánamo.[6] Guantánamo has the capacity to hold 745 people at a time. Decl. Robert Green ("Green Decl.") ¶¶ 4, 18, 21, *Espinoza Escalona v. Noem*, No. 1:25-cv-604 (D.D.C. Mar. 10, 2025), ECF No. 14-1.

Joinder is also impractical for other reasons. First, the class seeks relief for future class members. Joinder is inherently impracticable where "the class seeks prospective relief for future class members, whose identities are currently unknown and who are therefore impossible to join." *D.L. v. District of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013). And, of course, the putative class members are detained, making it extremely difficult for them to institute individual suits. The overwhelming majority of the putative class members are also indigent, which raises another barrier to individual suits. *See Colo. Cross-Disability Coal. v. Taco Bell Corp.*, 184 F.R.D. 354, 359 (D. Colo. 1999) (finding joinder impracticable where many class members could not afford to bring individual actions). Accordingly, the proposed class satisfies the numerosity requirement of Rule 23(a)(1).

**B. The Proposed Class Satisfies the Commonality Requirement.**

Rule 23(a)(2), which requires that there be "questions of law or fact common to the class," is likewise satisfied. The key to commonality is that class members' claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means

---

[4] *Id.*

[5] Camilo Montoya-Galvez, *Memo Shows U.S. Can Send Migrants Without Criminal Records to Guantanamo, Despite Trump's Promise to Hold "the Worst" There,* CBS News, Apr. 17. 2025, https://www.cbsnews.com/news/guantanamo-trump-migrants-without-criminal-records/.

[6] *Id.*

that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "Even a single common question" will support a commonality finding. *Id.* at 359 (citation, quotation mark, and alterations omitted), so long as its resolution will "generate common answers for the entire class." *Thorpe v. District of Columbia*, 303 F.R.D. 120, 146-47 (D.D.C. 2014).

Commonality is satisfied where there is a single or "uniform policy or practice that affects all class members." *D.L.*, 713 F.3d at 128. "[F]actual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." *Bynum v. District of Columbia*, 214 F.R.D. 27, 33 (D.D.C. 2003). "[W]here plaintiffs allege widespread wrongdoing by a defendant . . . a uniform policy or practice that affects all class members" satisfies that requirement. *Thorpe*, 303 F.R.D. at 145; *accord R.I.L-R.*, 80 F. Supp. 3d at 181.

The same is true here. Proposed class members have, at least, the following key factual issues in common:

- Whether Defendants have restricted attorney access to immigrant detainees held at Guantánamo;

- Whether Defendants have restricted communication between immigrant detainees held at Guantánamo and their families; and

- Whether Defendants' policies and practices regarding attorney access are more restrictive than those provided in immigration detention facilities in the United States, prisons, and law-of-war detention at Guantánamo.

In addition, the following *legal* questions are common to all proposed class members:

- Whether Defendants' restrictions on attorney access and detainees' communication with their families are reasonably related to legitimate governmental interests;

- Whether Defendants' restrictions on attorney access and communication with family are rationally related to a non-punitive purpose and whether those conditions are not excessive; and

- Whether Defendants have a legitimate non-punitive goal that could be accomplished in alternative and less hash methods than these restrictions on attorney access and communication with family.

The Defendants' policies and practices with respect to attorney access and family communication affect all class members: they do not arise out of circumstances unique to each member. These practices will also result in "common harms," *D.L.*, 860 F.3d at 724 (quotation marks, citation, and alteration omitted). And all class members seek the same declaratory and injunctive relief. The Court's determination of the legality of Defendants' actions and inactions on one or more of the grounds alleged by all class members will resolve all class members' claims "in one stroke." *Wal-Mart*, 564 U.S. at 350.

### C. The Proposed Class Satisfies the Typicality Requirement

Plaintiffs' claims are also "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is satisfied if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability." *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 52 (D.D.C. 2010) (quotation marks and citations omitted). Typicality and commonality "often overlap because both serve as guideposts" in determining "whether a class action is practical and whether the representative plaintiffs' claims are sufficiently interrelated with the class claims

to protect absent class members." *R.I.L-R.*, 80 F. Supp. 3d at 181 (internal quotation marks and citations omitted).

The typicality requirement "has been liberally construed." *Bynum*, 214 F.R.D. at 34. As with commonality, "[t]ypicality is not destroyed merely by 'factual variations.'" *Wagner v. Taylor*, 836 F.2d 578, 591 (D.C. Cir. 1987) (quotation marks and citations omitted). "Rather, if the named plaintiffs' claims are based on the same legal theory as the claims of the other class members, it will suffice to show that the named plaintiffs' injuries arise from the same course of conduct that gives rise to the other class members' claims." *Bynum*, 214 F.R.D. at 35; *see also Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 196 (D.D.C. 2013) ("[C]ourts have found the typicality requirement satisfied when class representatives suffered injuries in the same general fashion as absent class members.") (quotation marks and citation omitted).

The named Plaintiffs' claims are typical of the proposed class claims. As explained above, their claims arise from the same policies and practices regarding attorney access and family communication at Guantánamo. They therefore "arise from the same course of conduct that gives rise to the other class members' claims," *Bynum*, 214 F.R.D. at 35, and are based on the same legal theories as all class members' claims. Notwithstanding any individual differences that may exist between the Plaintiffs and other members of the proposed class, Plaintiffs' claims "are sufficiently interrelated with the class claims to protect absent class members." *R.I.L-R.*, 80 F. Supp. 3d at 181. Accordingly, Plaintiffs' claims satisfy the typicality requirement of Rule 23(a)(3).

**D.  The Proposed Class Satisfies the Adequacy Requirement.**

Rule 23(a)(4) requires that "[t]he representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy of representation imposes two criteria on plaintiffs seeking to represent a class: '(1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel.'" *Ramirez v. U.S. Immigr. & Customs Enf't*, 338 F. Supp. 3d 1, 47 (D.D.C. 2018) (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)).

Plaintiffs will fairly and adequately protect the interests of the proposed class. Plaintiffs do not seek any unique or additional benefit from this litigation that may make their interests different from or adverse to those of absent class members. Instead, Plaintiffs aim to secure relief that will protect them and the entire class from Defendants' challenged policy and to enjoin Defendants from further violations. Nor do Plaintiffs seek financial gain at the cost of absent class members' rights.

Proposed class counsel, meanwhile, includes experienced attorneys with extensive experience in complex immigration cases and class action litigation. *See generally* Decl. Noor Zafar ("Zafar Decl."); Decl. Scott Michelman ("Michelman Decl."). As the declarations make clear, Proposed Class Counsel have been appointed class counsel in several successful class action cases concerning the rights of noncitizens.[7]

---

[7] "It is 'far from clear' . . . 'that there exists in this district a requirement that a class certified under Rule 23(b)(2) must demonstrate ascertainability to merit certification.'" *O.A. v. Trump*, 404 F. Supp. 3d 109, 159 (D.D.C. 2019) (quoting *Ramirez*, 338 F. Supp. 3d at 48 ). Moreover, any such requirement has been "'disavowed by four federal appellate courts.'" *Id.* (quoting *Hoyte v. D.C.*, 325 F.R.D. 485, 489 n.3 (D.D.C. 2017)). Even assuming such a requirement exists, the proposed class here is readily ascertainable because membership in the class is defined by clear and objective

**II. Class Certification Is Appropriate Under Rule 23(b)(1), Rule 23(b)(2), or Both.**

In addition to satisfying the four criteria of Rule 23(a), the proposed class must also fall into one of the three categories outlined in Rule 23(b). This class action qualifies for certification under either Rule 23(b)(1) or Rule 23(b)(2). *See Wal-Mart*, 564 U.S. at 361-62 ("Classes certified under (b)(1) and (b)(2) share the most traditional justifications for class treatment—that individual adjudications would be impossible or unworkable, as in a (b)(1) class, or that the relief sought must perforce affect the entire class at once, as in a (b)(2) class.") (footnote omitted).

Rule 23(b)(1) permits class certification where "prosecuting separate actions by or against individual class members would create a risk of [ ] inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class . . . ." Fed. R. Civ. P. 23(b)(1)(A). Certification under Rule 23(b)(1)(A) "is appropriate when the class seeks injunctive or declaratory relief to change an alleged ongoing course of conduct that is either legal or illegal as to all members of the class." *Adair v. England*, 209 F.R.D. 5, 12 (D.D.C. 2002) (citing 5 Moore's Fed. Practice § 23.41[4] (3d ed. 2000)).

Plaintiffs easily satisfy this standard. If each of approximately 40 individual class members were to bring separate suits making the allegations made in the complaint in this case, the adjudication of these actions would risk creating inconsistent decisions that would establish varying standards to which Defendants would have to adhere. Plaintiffs seek declaratory and injunctive relief that is applicable to all class members, and certification

---

criteria that are known to the government defendants and because identifying class members is administratively feasible.

pursuant to Rule 23(b)(1) is therefore appropriate.

Additionally, Rule 23(b)(2) permits class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The Supreme Court has explained that

> The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.

*Wal-Mart*, 564 U.S. at 360 (quotation marks and citation omitted). Courts in this District have interpreted Rule 23(b)(2) to impose two requirements: "(1) the defendant's action or refusal to act must be generally applicable to the class, and (2) plaintiff must seek final injunctive relief or corresponding declaratory relief on behalf of the class." *Steele v. United States*, 159 F. Supp. 3d 73, 81 (D.D.C. 2016) (quotations and citations omitted); *Bynum*, 214 F.R.D. at 37; *R.I.L-R.*, 80 F. Supp. 3d at 182. To satisfy Rule 23(b)(2), "it is enough to show that a defendant has acted in a consistent manner toward members of the class so that his actions may be viewed as part of a pattern of activity." *Bynum*, 214 F.R.D. at 37 (internal citation omitted).

Those requirements are easily satisfied. As already explained, Defendants' challenged practices with respect to attorney access and family communication are not tailored to individual inmates or detainees, but apply to the whole population of immigrant detainees held at Guantánamo. They apply to all class members simply by virtue of their status as persons held at Guantánamo, without regard to the individual circumstances of their underlying immigration cases or any other differences among them. For the same reason, all class members seek the same declaratory and injunctive relief. Certification pursuant to Rule 23(b)(2) is therefore also

13

appropriate.

### III. The Court Should Designate Plaintiffs' Counsel as Class Counsel.

Upon certifying the class, the Court must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B); 23(g). Rule 23(g) requires the Court to consider the following four factors: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs' counsel satisfy all four criteria. Counsel from the American Civil Liberties Union, American Civil Liberties Union of the District of Columbia, Center for Constitutional Rights, and International Refugee Assistance Project jointly represent Plaintiffs. Counsel from all organizations are experienced federal litigators, including those who have specific expertise in representing noncitizens in detention and at Guantánamo, and those who have specific experience in class action litigation. *See* Zafar Decl; Michelman Decl.

As reflected in the complaint, amended complaint, and briefing related to Plaintiffs' Motion for Temporary Restraining Order filed in this matter, Plaintiffs' counsel have already devoted substantial time investigating the factual and legal issues in this case, and will continue to do so throughout the pendency of the litigation. *See, e.g., Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 9 (D.D.C. 2010) ("The plaintiffs have shown that they will adequately represent the class. . . . Counsel have already committed substantial time and resources to identifying and investigating potential claims in the action.").

Accordingly, the Court should appoint Plaintiffs' counsel as class counsel in this case.

**CONCLUSION**

The Court should certify the proposed Class under Rule 23(a) and 23(b)(1) and (2), appoint the Individual Plaintiffs as Class Representatives, and appoint the undersigned as Class Counsel.

Dated: April 26, 2025

Eunice H. Cho (D.C. Bar No. 1708073)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW, 7th floor
Washington, DC 20005
(202) 546-6616
echo@aclu.org

My Khanh Ngo*
Kyle Virgien*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
mngo@aclu.org
kvirgien@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org

Deepa Alagesan (D.D.C. Bar No. NY0261)
Kimberly Grano (D.D.C. Bar No. NY0512)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza, 33rd Floor
New York, New York 10004
Telephone: (516) 838-7044
dalagesan@refugeerights.org
kgrano@refugeerights.org

Respectfully submitted,

/s/ *Lee Gelernt*
Lee Gelernt (D.D.C. Bar No. NY0408)
Brett Max Kaufman (D.D.C. Bar No.
NY0224)
Judy Rabinovitz*
Noor Zafar*
Omar C. Jadwat*
Wafa Junaid*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
bkaufman@aclu.org
jrabinovitz@aclu.org
nzafar@aclu.org
ojadwat@aclu.org
wjunaid@aclu.org

Baher Azmy*
Shayana D. Kadidal (D.C. Bar No. 454248)
J. Wells Dixon*
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, Floor 7
New York, NY 10012
T: (212) 614-6427
bazmy@ccrjustice.org
shanek@ccrjustice.org
wdixon@ccrjustice.org

*Attorneys for Plaintiffs-Petitioners*

*\*Pro bono representation certificates
forthcoming*