## DECLARATION OF HELEN PARSONAGE

I, Helen Parsonage, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently and truthfully to these matters.

2. I am an attorney in good standing currently licensed in the states of North Carolina and Georgia. I am admitted to practice before the U.S. District Courts for the Eastern, Middle, and Western Districts of North Carolina, the Northern and Middle Districts of Georgia, the District of Columbia and the Northern District of Texas, as well as the Fourth, Fifth and Eleventh Circuit Courts of Appeal. I specialize in the areas of immigration and criminal law.

3. Over the past two months, I have provided pro bono representation to four clients who have been detained in immigration custody at Naval Station Guantanamo Bay ("Guantanamo") and have submitted a Form G-28 for each to indicate my formal representation. I intend to provide pro bono representation to additional clients held at Guantanamo, if requested.

4. Based on my observation and experience from representing clients held at Guantanamo, as well as reports provided by my clients held there, immigrant detainees at Guantanamo face several challenges in access to legal counsel.

5. I have been able to schedule calls with my clients by emailing the government with requests at Legal.GTMO@ice.dhs.gov. However, these scheduled attorney-client telephone calls are far from confidential. My clients have expressed fear that guards can hear the content of our conversations and have been nervous about speaking openly during our consultations. For example, on my first call with a client at Guantanamo, the guard set the phone settings to speaker phone, broadcasting both ends of our conversation. My client indicated that he was afraid that the call would be terminated if he picked up the receiver and that he was concerned that the guard outside the door could hear us. On all subsequent calls, my clients have been able to speak to me using the handset. However, unlike the first call, where the guard sat in the hallway with the door closed as the call took place over speakerphone, my clients have since reported that guards now sit in the hallway with the door cracked open. As a result, my detained clients have

been afraid to speak openly because they think they may be punished by guards for doing so. They speak softly to avoid being overheard, making communication more difficult than it should be.

6. My detained clients at Guantanamo have reported that guards have discouraged them from requesting legal calls, including to the American Bar Association (ABA) hotline. As two of my clients reported to me, detainees are permitted only one five-minute outgoing phone call to family per week. Guards have told detainees that they can either place their outgoing call to the ABA hotline or to their families, but not both. Guards have told detainees that these phone calls (as well as showers) are privileges that can be taken away. One client told me that he thought he would be punished if he requested a call to an attorney.

7. On five occasions, I have requested to make in-person legal visits with my clients detained at Guantanamo by email to Legal.GTMO@ice.dhs.gov. However, each request has gone unanswered. In-person attorney visits are very important to my ability to build rapport and trust with my clients. Being present in person and having human contact with a client is critical to building a strong attorney-client relationship. In-person attorney visits also allow for a greater degree of confidentiality, as I can observe the conditions around me, and lower my voice to avoid being overheard by guards. Clients also often feel more comfortable having a full and frank conversation in person. I would be willing to apply for security clearance and travel to meet with my clients detained at Guantanamo. For example, I have obtained clearance to be present on other military bases, such as to visit my son on base when he graduated from basic training in the Army reserves.

8. ICE has stated on its website, https://www.ice.gov/detain/detention-facilities/naval-station-guantanamo-bay, that the facility administrator may "allow for a reasonable amount of communication via email between the detainee and their designated legal representative." However, I have found it difficult to receive signed documents from my clients. For example, I sent a release form to my client for signature to the email address indicated on the website, but never received a signed version back.

9. My clients have experienced significant mental and emotional distress as a result of their experience at Guantanamo. One of my clients reported that he

had been brought from the United States on a military plane. He was then transferred to and held in solitary confinement in a concrete cell with no windows or lights, and only a slot for food in the door for four days. He was not let out once of the cell during the entire time. As a result, he began to experience severe panic attacks and anxiety. When I spoke with him, his mental and emotional state was extremely fragile, to the point that I worried about the potential for self-harm. All of my clients suffered severe anxiety and depression as a result of the conditions of confinement at Guantanamo, and reported that there was no appropriate treatment, including medication, available to detainees.

Executed on 17 of April, 2025 at Winston-Salem, Forsyth County, NC.

_____
Helen Parsonage