# DECLARATION OF JUAN DIEGO VELIZ VICENT

I, Juan Diego Veliz Vicent, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently and truthfully to these matters.

2. I came to the United States from Venezuela on July 4, 2022 for a better life - to be able to give a better life to my family in Venezuela.

3. I was detained at Guantanamo in Unit 6 – Charlie pod for 22 days. I arrived at Guantanamo on March 20, 2025. I had been told that I was going to Miami. Instead, during the flight I tried to open the window and I saw an island. I never imagined I'd be sent to Guantanamo. I was pressured to board the flight. During the flight, each person was placed in the middle seat of each row, with no one next to them. I was handcuffed and shackled throughout the entire journey. I found out I was in Guantanamo when an ICE official announced it when we were landing. He said it in a mocking voice.

4. Prior to my detention at Guantanamo, I was held at a detention center in Aurora, Colorado for about a month and half. From there, I was moved to El Paso Processing Center in Texas. From there, I was told I'd be moved to Miami. In reality, the flight took me to Guantanamo.

5. I have never been part of any gang. Within 3 days of arriving at Guantanamo, I was interrogated by the FBI asking me about my social history. They asked me questions but they were pressuring me to give the answers they wanted. They kept asking me questions that I did not know the answers to. I have tattoos – my name, a crown, something related to family last name, and the initials of my deceased nephew. None of my tattoos are associated with gang membership. I saw ICE officials that have tattoos and they were not being accused of having gang membership.

6. When I was detained at Guantanamo, we were guarded by corporate guards, military officers, and ICE officials. Some ICE officials would intimidate and threaten us that if we did not behave, they had the power to revoke our deportation to our home country and leave us here.

7. Being detained at Guantanamo was difficult. I was handcuffed with a waist chain each time I stepped outside of my cell. The only time I was not in restraints was when I was in my cell. There was not enough food. I was not allowed to save food for later to stave off the hunger. I either had to eat it right away or throw it away. I was not allowed to keep hygiene products in my cell. There was a camera in my cell. I did not feel comfortable using the toilet knowing I was watched. I could not buy commissary. I was not given cleaning products to clean my cell. It was much different than my time in other detention

    centers. If I went to medical, I was in restraints (feet, hands, and waist chain). No one deserves this treatment.

8. When I was detained at Guantanamo, I faced many challenges communicating with lawyers. Other detainees also faced similar problems. After arriving at Guantanamo, I was never told that I had a right to speak to an attorney. A few days after my arrival, the guards posted a flyer about how to contact an attorney. I heard of people trying to speak to an attorney but were not allowed to. The reason is because we were only allowed to use the phone once per week, for 10-15 minutes. I did not hear about the ABA hotline. A friend who did get to speak to an attorney and I asked him to pass my information so I could get in touch with an attorney. That was the closest I got to being able to speak to an attorney while I was at Guantanamo. My friend did not get the attorney. The attorney had to find my friend. This only happened because his wife had to make a big deal by going to the press. At Guantanamo, an attorney has to find you, a person does not find an attorney. I heard from my friend that when he spoke to the lawyer, there was no privacy. It was on speaker voice and the ICE official could hear everything. I heard that the lawyer told the officer that this was a confidential legal call. This did not make a difference to the ICE official who continued to hear the legal call.

10. At Guantanamo, I was only allowed to speak to my family three times. The longest call was 12 minutes. I was in restraints(feet, hands, and waist chain). I was not allowed to make international calls.

11. On Friday, April 11, 2025, I was put on a plane that left Guantanamo, and arrived at Venezuela.

12. Because I am currently in Venezuela without a stable internet connection, I could not sign this declaration, but have given consent to Marisol Dominguez-Ruiz to sign on my behalf.

Executed on 19 of April, 2025

/s/Marisol Dominguez-Ruiz
_____
Marisol Dominguez-Ruiz

## ATTESTATION AND CERTIFICATE OF TRANSLATION

I, Marisol Dominguez-Ruiz, certify that I am fluent in both English and Spanish. On April 19, 2025, I personally spoke with Juan Diego Veliz Vicent and read the foregoing declaration to him, translated into Spanish faithfully and accurately, over the phone. Juan Diego Veliz Vicent affirmed that he understood my translation and that the information in the above declaration is true and accurate.

Due to Juan Diego Veliz Vicent's location, it was not possible to obtain a written signature on the declaration. In addition to confirming the information on the above declaration is true, Juan Diego Veliz Vicent also gave me verbal consent to sign on his behalf.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

/s/Marisol Dominguez-Ruiz
Marisol Dominguez-Ruiz
Staff Attorney, National Prison Project
American Civil Liberties Union
425 California Street, Suite 700
San Francisco, CA 94104
mdominguez-ruiz@aclu.org