YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

SARAH S. WILSON
*Assistant Director*
MALCOM I. MCDERMOND
JASON K. ZUBATA
*Trial Attorney*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4143
Email: jason.k.zubata@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| )<br>JOHON ELIAS SUAZO-MULLER, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>Kristi Noem, Secretary, U.S. Department )<br>of Homeland Security, *et al.*, )<br>)<br>Defendants. )<br>) | Civil Action No. 1:25-cv-00418-CJN |

## OPPOSITION TO MOTION FOR CLASS CERTIFICATION

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND. ................................................................................................................. 2

    A. *Legal Background.* ............................................................................................... 2

    B. *Factual Background* ............................................................................................ 4

    C. *This Lawsuit and Motion* .................................................................................... 5

    D. *The Individual Plaintiffs.* .................................................................................... 6

STANDARD ......................................................................................................................... 8

ARGUMENT ........................................................................................................................ 9

I.    Plaintiffs' Claims are Moot as They are Neither detained at NSGB or Otherwise in U.S. Custody ......................................................................................................................... 9

II.   Plaintiffs' Proposed Class Lacks the Commonality Required under Rules 23(a)(2) and 23(b)(2) ................................................................................................................ 14

    A.   Plaintiffs are not challenging policies or practices that are common to the proposed class ............................................................................................... 16

    B.   Putative class members' conditions of confinement at the WHF and the MOC are not common ................................................................................................. 18

    C.   Putative class members' due process protections and legally available relief are not common ................................................................................................. 20

III.  The Named Plaintiffs' Claims Are Not Typical of the Claims of the Proposed Class. ........ 23

IV.  The Named Plaintiffs are Not Adequate Class Representatives ........................................... 25

V.   The Court Should Deny Class Certification in Favor of Allowing Individual Habeas Petition. ............................................................................................................................. 26

    A.   Plaintiffs have not met their burden under Rule 23(b)(1)(A) ...................................... 26

    B.   Habeas is unfit for class adjudications. ........................................................................ 28

VI.  The Class is Impermissible Because it Intends to Include Individuals Who Have Not Suffered, and May Not Ever Suffer, the Same Injury and Whose Claims Are Statutorily Precluded from Class Treatment. ....................................................................................... 30

CONCLUSION ..................................................................................................................... 33

# TABLE OF AUTHORITIES

Page(s)

## **Cases**

*Aamer v. Obama,*
   742 F.3d 1023 (D.C. Cir. 2014) ................................................................. 27

*A.A.R.P. v. Trump,*
   145 S. Ct. 1364 (2025) ................................................................................ 13

*A.A.R.P. v. Trump,*
   145 S. Ct. 1034 (2025) ................................................................................ 29

*Altamirano-Lopez v. Gonzales,*
   435 F.3d 547 (5th Cir. 2006) ........................................................................ 2

*Am. Fed'n of Gov't Emps., AFL-CIO v. Fed. Lab. Rels. Auth.,*
   593 F. Supp. 1203 (D.D.C. 1984) ............................................................. 28

*Amatel v. Reno,*
   156 F.3d 192 (D.C. Cir. 1998) ..................................................................... 4

*AmChem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ............................................................... 9, 25, 26, 32

*Americans for Immigrant Just. v. U.S. Dep't of Homeland Sec.,*
   No. CV 22-3118 (CKK), 2023 WL 4364096 (D.D.C. July 6, 2023) ............. 19

*C.G.B. v. Wolf,*
   464 F. Supp. 3d 174 (D.D.C. 2020) ........................................................... 18

*Califano v. Yamasaki,*
   442 U.S. 682 (1979) ..................................................................................... 8

*Coffin v. Sec'y of Health, Ed. & Welfare,*
   400 F. Supp. 953 (D.D.C. 1975) ............................................................... 28

*Cohen v. Chilcott,*
   522 F. Supp. 2d 105 (D.D.C. 2007) ............................................... 23, 24, 25

*Dep't of Homeland Sec. v. Thuraissigiam,*
   591 U.S. 103 (2020) ............................................................................. 3, 21

*DL v. D.C.,*
   713 F.3d 120 (D.C. Cir. 2013) .............................................................. 14, 16

*Garcia Uranga v. Barr*,

    No. 20-3162-JWL, 2020 WL 4334999 (D. Kan. July 28, 2020) ........................................ 3

*Garland v. Aleman Gonzalez*,

    596 U.S. 543 (2022) ........................................................................................................ 23

*Gen. Tel. Co. of Southwest v. Falcon*,

    457 U.S. 147 (1982) .......................................................................................................... 8

*Givens v. Bowser*,

    111 F.4th 117 (D.C. Cir. 2024) .......................................................................... 10, 11, 13

*Gomez v. Trump*,

    490 F. Supp. 3d 276 (D.D.C. 2020*)* ............................................................................... 27

*Hernandez-Carrera v. Carlson*,

    547 F.3d 1237 (10th Cir. 2008) .................................................................................. 3, 21

*Hoggard v. Nationstar Mortg. LLC*,

    No. CV 17-99 (TJK), 2021 WL 7162301 (D.D.C. Dec. 30, 2021) .................................. 26

*Honeywell Int'l, Inc. v. Nuclear Regul. Comm'n*,

    628 F.3d 568 (D.C. Cir. 2010) ................................................................................... 9, 10

*I.M. v. United States Customs & Border Prot.*,

    67 F.4th 436, 439 (D.C. Cir. 2023) ........................................................................... 22, 29

*In re Navy Chaplaincy*,

    306 F.R.D. 33 (D.D.C. 2014) .................................................................................... 16, 27

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,

    292 F. Supp. 3d 14 (D.D.C. 2017) .................................................................................. 19

*In re White*,

    64 F.4th 302 (D.C. Cir.) .................................................................................................. 24

*J.D. v. Azar*,

    925 F.3d 1291 (D.C. Cir. 2019) ............................................................................... passim

*Jennings v. Rodriguez*,

    583 U.S. 281 (2018) ........................................................................................................ 20

*J.G.G. v. Trump*,

    Nos. 25-5067, 25-5068, 2025 U.S. App. LEXIS 7131 (D.C. Cir. Mar. 26, 2025) ........... 29

*Johnson v. D.C.*,

    248 F.R.D. 46 (D.D.C. 2008) ........................................................................ 32

*Jones v. Rossides*,

    256 F.R.D. 274 (D.D.C. 2009) ...................................................................... 9

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,

    571 F.3d 672 (7th Cir. 2009) ....................................................................... 30

*Las Americas Immigrant Advoc. Ctr. v. Wolf*,

    507 F. Supp. 3d 1 (D.D.C. 2020) ............................................................. 3, 21

*Lewis v. Nat'l Football League*,

    146 F.R.D. 5 (D.D.C. 1992) ......................................................................... 30

*Lujan v. G & G Fire Sprinklers, Inc.*,

    532 U.S. 189 (2001) ..................................................................................... 20

*McBride v. Merrell Dow & Pharm.*,

    800 F.2d 1208 (D.C. Cir.1986) .................................................................... 10

*McCarthy v. Kleindienst*,

    741 F.2d 1406 (D.C. Cir. 1984) ................................................................. 8, 9

*O.A. v. Trump*,

    404 F. Supp. 3d 109 (D.D.C. 2019) ........................................................ 17, 33

*O'Shea v. Littleton*,

    414 U.S. 488 (1974) ..................................................................................... 31

*Paracha v. Trump*,

    453 F. Supp. 3d 168 (D.D.C. 2020) ............................................................ 28

*Phillips v. Sheriff of Cook Cnty.*,

    828 F.3d 541 (7th Cir. 2016) ....................................................................... 17

*Pigford v. Glickman*,

    182 F.R.D. 341 (D.D.C. 1998) ..................................................................... 30

*Ramirez v. U.S. Immigr. & Customs Enf't*,

    338 F. Supp. 3d 1 (D.D.C. 2018) ................................................................ 22

*Ross v. Lockheed Martin Corp.*,

    267 F. Supp. 3d 174 (D.D.C. 2017) ............................................................ 30

iv

*Scott v. District of Columbia*,
    139 F.3d 940 (D.C. Cir. 1998) ................................................................ 10

*Steele v. United States*,
    159 F. Supp. 3d 73 (D.D.C. 2016) ........................................................... 27

*Stewart v. Rubin*,
    948 F. Supp. 1077 (D.D.C. 1996) ........................................................... 24

*Thorpe v. District of Columbia*,
    303 F.R.D. 120 (D.D.C. 2014) ............................................................... 30

*Turner v. Safley*,
    482 U.S. 78 (1987) .................................................................................... 4

*U.S. Parole Comm'n v. Geraghty*,
    445 U.S. 388 (1980) ................................................................................ 26

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................................... passim

*Warth v. Seldin*,
    422 U.S. 490 (1975) ................................................................................ 31

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ................................................................................ 29

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ............................................................................ 3, 21

## Statutes

8 U.S.C. § 1225 ...................................................................................... 3, 21

8 U.S.C. § 1225(b) ...................................................................................... 23

8 U.S.C. § 1229a(b)(4)(A) ............................................................................ 2

8 U.S.C. § 1252 .......................................................................................... 22

8 U.S.C. § 1252(e)(1)(B) ............................................................................ 33

8 U.S.C. § 1252(f)(1) .................................................................................. 23

8 U.S.C. § 1362 ............................................................................................ 3

8 U.S.C. § 1252(e)(1)(A) ...................................................................... 15, 22

8 U.S.C. § 1252(e)(2) ................................................................................. 33

28 U.S.C. § 2242 ........................................................................................................ 28, 29

28 U.S.C. § 2243 ........................................................................................................... 29

**Rules**

Fed. R. Civ. P. 23(a) ...................................................................................................... 9

Fed. R. Civ. P. 23(b)(1)(A) ...................................................................................... 9, 28

Fed. R. Civ. P. 23(b)(2) ................................................................................................ 14

# INTRODUCTION

On January 29, 2025, the President directed the Secretary of Defense and the Secretary of Homeland Security to take all appropriate actions to expand the Migrant Operations Center at the Guantanamo Bay Naval Station (NSGB) to allow for the housing of "high-priority criminal aliens unlawfully present in the United States."[1] Since that time, immigrant detainees with final orders of removal have been transferred to NSGB as part of the removal process. ECF No. 14-1, Declaration of Juan Agudelo ("Agudelo Decl.") at ¶ 10.

The individual named Plaintiffs—two aliens with final orders of removal detained at NSGB prior to completion of their removal from the United States—bring this putative class action on behalf of all immigration detainees who are detained at or may be transferred NSGB. Among their many requests, Plaintiffs seek unrestricted access to counsel and communications with family, in-person visits, and extended access to telephone communications generally. The individual Plaintiffs seek to represent a class of all aliens "originally apprehended in the United States and detained at U.S. immigration detention facilities, and who are, or will be held at [NSGB]." ECF No. 35-1, Memorandum in Support of Motion for Class Certification and Appointment of Class Counsel. (hereinafter, "Mot.") at 1.

The Court should deny the motion to certify. As an initial matter, Plaintiffs' claims are moot, and they do not satisfy an exception to the mootness doctrine such that they can continue to serve as class representatives. Moreover, class certification would be improper under Federal Rules of Civil Procedure ("Rule") 23 because the class fails to satisfy the commonality, typicality, and adequacy requirements for an injunctive-relief class, and the class is impermissibly overbroad

---

[1] The White House, "Expanding Migrant Operations Center at Naval Station Guantanamo Bay to Full Capacity" (Jan. 29, 2025), https://www.whitehouse.gov/presidentialactions/2025/01/expanding-migrant-operations-center-at-naval-station-guantanamo-bay-to-fullcapacity/.

and amorphous. The class does not meet most of the requirements under Rule 23(a) and (b). First, Plaintiffs allege individual incidents that turn on each detainee's respective conditions of confinement, which are not common to all putative class members. Stated differently, resolution of Plaintiffs' alleged injuries hinges on factual and legal circumstances that are not shared by the class as a whole. Second, neither Plaintiff has suffered most injuries alleged in the Amended Complaint, and thus their claims are not typical of the class they intend to represent. Third, Plaintiffs similarly have not demonstrated they are adequate class counsel, particularly as their own claims do not demonstrate they suffered the same injury and possess the same interests as the class they intend to represent. Lastly, Plaintiffs have failed to demonstrate that their proposed class qualifies under one of the subsets of Rule 23(b); rather, their claims—challenging individual incidents—would be more appropriately channeled through individual habeas petitions, and habeas relief would be inappropriate on a classwide basis. Finally, even if class certification were appropriate, the class is overly broad and amorphous to the extent it includes aliens no longer at NSGB, who may never be staged at NSGB, or whose relief is limited by statute or who are otherwise not entitled to class relief.

For these reasons, class certification should be denied.

## BACKGROUND

**A.** *Legal Background.* Immigrant detainees with final orders of removal do not have the same due process protections to access counsel as individuals applying for relief or protection as a part of their removal proceedings. Compare 8 U.S.C. § 1229a(b)(4)(A) with *Altamirano-Lopez v. Gonzales*, 435 F.3d 547, 550 (5th Cir. 2006) (concluding the statutory provision only "applies to removal proceedings" but not beyond these proceedings, such as with "motions to reopen" which are "to reconvene removal proceedings."). Although every individual within the jurisdiction of the

United States is entitled some level of due process, "the nature of protection[s] may vary depending upon status and circumstance[s]." *Zadvydas v. Davis*, 533 U.S. 678, 694 (2001); *see Las Americas Immigrant Advoc. Ctr. v. Wolf*, 507 F. Supp. 3d 1, 39 (D.D.C. 2020), *dismissed sub nom. Las Americas Immigrant Advoc. Ctr. v. Mayorkas*, No. 20-5386, 2024 WL 3632500 (D.C. Cir. Aug. 1, 2024) (noting that "claims of [due process] constitutional violations…[are] not always fully available to every claimant"); *Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1254 (10th Cir. 2008) ("[I]t is not at all clear that removable aliens benefit from precisely the same advantages of due process as do citizens or lawful permanent resident aliens.").

Detainees with final, executable removal orders issued after the completion of administrative proceedings possess only a limited right to access counsel, as they have already exhausted their right to challenge removability and apply for relief or protection from removal. *See Zadvydas*, 533 U.S. at 694; *Garcia Uranga v. Barr*, No. 20-3162-JWL, 2020 WL 4334999, at *7 (D. Kan. July 28, 2020) (finding no due process violation when an individual detained under § 1231(a)(6) did not have his attorney present for 90-day Post Order Custody review); 8 U.S.C. § 1362. And due process affords no access to counsel specifically for aliens who are subject to a final order of expedited removal under 8 U.S.C. § 1225 and in the processing of being removed from the United States. *See Las Americas Immigrant Advoc. Ctr.*, 507 F. Supp. 3d at 39 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 (2020)).[2] Furthermore, courts uphold detention regulations as long as they are "reasonably related to legitimate penological interests," considering (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it," (2) "whether there are alternative

---

[2] Although 8 U.S.C. § 1225(b)(1)(B)(iv) provides that aliens in expedited removal have the right to consult with a person of their choosing prior to their interview, that provision does not afford any rights after the completion of the credible fear process.

means of exercising the right that remain open to prison inmates," (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) "the absence of ready alternatives" *Turner v. Safley*, 482 U.S. 78, 89-90 (1987); *Amatel v. Reno*, 156 F.3d 192, 196 (D.C. Cir. 1998) (noting that the first factor "looms especially large").

     **B. *Factual Background.*** On January 29, 2025, the President issued a Memorandum ordering DHS and the Department of Defense (DoD) to take all necessary steps to expand the Migrant Operations Center (MOC) in NSGB to allow for the housing of "high-priority criminal aliens unlawfully present in the United States." ECF No. 34, Am. Compl. ¶¶ 15 (citing the Presidential memorandum). DoD acted swiftly to comply with the President's Order by creating the Joint Task Force Southern Guard (JTF-SG) to work with DHS to operationalize the Memorandum. Currently, the detainees are housed in two areas of the base: the Windward Housing Facility (WHF)[3] and the MOC. Am. Compl. ¶ 20.

     DHS has developed procedures applicable to immigration detainees at NSGB, and the U.S. government personnel are following and supporting DHS procedures. Exhibit D, NSGB NSGB Memorandum of Understanding. (MOU) Specifically, Defendants are providing immigration detainees access to counsel, the opportunity to make calls to family and friends, communal living, recreation time, nutrition, and medical care, and are handling searches and behavioral issues consistent with the Departments' practices. *See* Exhibit B, Declaration of Deputy Field Office Director Jesus Ramos ("Ramos Decl.") at ¶¶ 27-51.

---

[3] Formerly referred to as Camp VI. Ramos Decl. at ¶ 2. For this pleading, Defendants use the updated facility name.

**C. This Lawsuit and Motion.** On February 12, 2025, four organizations that provide services to immigrants filed this lawsuit on behalf of themselves and as next friends on behalf of an unknown number of immigrant detainees at NSGB. ECF. 1. Additionally, two individuals filed as next friends. *Id.* The Complaint alleged violations of the First and Fifth Amendments, the Immigration and Nationality Act (INA), and the detainees right to habeas based on insufficient access to legal counsel. *Id.* Plaintiffs moved for a Temporary Restraining Order requesting, inter alia, confidential incoming and outgoing legal telephone calls, confidential in-person visitation, a method for confidential document exchange, publicly available protocols for attorney-client communication, updates to the ICE detainee locator of a detainee's transfer to NSGB, and 72-hour notice of transfer of any detainee to NSGB and from NSGB to a country other than the United States. ECF 3. Defendants implemented various procedures at NSGB, including providing notice of rights to detainees, confidential attorney-client telephone communication, access to the American Bar Association hotline, updates to the ICE detainee locator, and family phone calls. Ramos Decl. at ¶¶ 27-37 (discussing current protocols and practices for counsel and family calls).

On March 14, 2024, following briefing on Plaintiffs' Temporary Restraining Order, the parties attended a hearing before District Judge Carl Nichols. Minute Order, March 14, 2025. At the hearing, the parties explained that the requests for relief had been "significantly narrowed." Exhibit A, Transcript of March 14, 2025 TRO Hearing ("Hearing Transcript") at 54-59, 71 (noting that remaining issues were (1) in-person visitation, (2) additional language translations for notice of rights, and (3) whether detainees can discuss their location at NGSB on family calls). The Court denied Plaintiffs' request for a Temporary Restraining Order finding that no Plaintiffs are suffering irreparable harm, that Plaintiffs likely lack standing, and that the balance of hardships does not come out in their favor. Minute Order, March 14, 2025; Hearing Transcript at 71-75, 81.

On April 26, 2025, Plaintiffs amended their complaint, replacing the prior organizational and next friend Plaintiffs with two individual named Plaintiffs. *See* Am. Compl. The Amended Complaint argues that existing protocols are "inadequate" and that Defendants "failed to fully implement many of the measures [they have] claimed to have put in place." *Id.* ¶ 3. Specifically, the Amendment Complaint argues that restrictions on communication with counsel and family members is a violation of Plaintiffs' First Amendment right to "communicate with the outside world" and "hire, consult, and communicate with an attorney." *Id.* ¶¶ 52-56 (Claim 1). The Amendment Complaint additionally argues that these restrictions violate Plaintiffs' Fifth Amendment due process right "not to be subjected to punitive conditions of confinement." *Id.* ¶¶ 57-64 (Claim 2). The Amended Complaint asks the Court to declare that Defendants actions violated Plaintiffs' First and Fifth Amendment rights and order Defendants to "provide and ensure a method" for confidential outgoing legal calls and document exchange; notify all detainees of access to counsel protocols in English and Spanish; update ICE detainee locator within 24-hours of transfer to NGSB; and allow "reasonable and equitable access to telephones. . . to allow both domestic and international phone calls; and not to prohibit discussion of the detainee's detention at Guantanamo." *Id.* ¶65-75.

The same day they filed their Amended Complaint, Plaintiffs filed the instant motion for class certification, seeking to certify a class of "[a]ll immigration detainees originally apprehended in the United States and detained at U.S. immigration detention facilities, and who are, or will be held at Naval Station Guantanamo Bay, Cuba." Mot. at 1.

**D.** ***The Individual Plaintiffs.*** The two individual named Plaintiffs (or "named Plaintiffs")—Johon Elias Suazo-Muller and Rodolfo Joel Lopez Jarquin—who seek to represent the class were apprehended in the United States and underwent removal proceedings, issued final

orders of removal, and were detained at NSGB. On May 20, 2025, both named Plaintiffs departed NSGB, were removed to their designated country of removal, and are no longer in U.S. custody. *See* Ramos Decl. at ¶¶ 15, 26. Similarly, several additional declarants[4]—whose allegations comprise a majority of the claims Plaintiffs raise—had also been detained at NSGB but have since been removed and were no longer in U.S. custody at the time Plaintiffs filed their amended complaint and motion for class certification.

Regarding access to legal counsel, Plaintiffs generally allege: (1) scheduled attorney-client calls are not confidential or private, as officers place legal calls on speakerphone and/or sit outside of the room with the door open, Mot. at 3; ECF No. 35-03, Declaration of Johon Elias Suazo-Muller (Suazo-Muller Decl.) ¶ 9; ECF No. 35-04, Declaration of Rodolfo Joel Lopez Jarquin (Lopez Decl.) ¶ 9; (2) not being informed about the opportunity to request ongoing calls with legal counsel and are discouraged from requesting such calls by officers, or even being denied a call, Mot. at 3, Suazo-Muller Decl. ¶ 8; Lopez Decl. ¶ 7; (3) either not receiving notices, Suazo-Muller Decl. ¶ 8, not being made aware of notices, Lopez Decl. ¶ 7, or receiving notices that do not accurately delineate the process and forms used to request outgoing calls with legal counsel, ECF No. 35-10, Declaration of Dominic Alexander Oliveros Tortolero (Oliveros Decl.) ¶ 8; and (4) not receiving documents emailed from attorneys and/or not having documents returned to counsel, ECF No. 35-5, Declaration of Helene Parsonage (Parsonage Decl.) ¶ 8; ECF No. 35-06, Declaration of Delaney Rohan (Rohan Decl.) ¶¶ 15-16. Plaintiffs also challenge the denial of in-person attorney visits. Mot. at 3.

---

[4] The following declarants are neither named Plaintiffs in this action nor in U.S. custody: Xavier Jose Chirinos Toyo (Exhibit 5), Juan Diego Veliz Vicent (Exhibit 6), Carlos Luis Vera Gonzalez (Exhibit 7), and Dominic Alexander Oliveros Tortolero (Exhibit 8).

Plaintiffs additionally allege restrictions on family communications, including: (1) at times, being denied daily phone calls to family, up to a week without a call, ECF No. 35-9, Declaration of Carlos Luis Vera Gonzalez (Vera Decl.) ¶ 16; ECF No. 35-7, Declaration of Xavier Jose Chirinos Toyo (Chirinos Decl.) ¶ 26; ECF No. 35-8, Declaration of Juan Diego Veliz Vincent (Veliz Decl.) ¶ 10; (2) having calls over speakerphone, with officers sitting next to the detainees, Lopez Decl. ¶ 8; (3) being handcuffed and chained during the call, Veliz Decl. ¶¶ 13-14; Chirinos Decl. ¶ 26; and (4) calls being limited to the United States, Oliveros Decl. ¶ 6; Chirinos Decl. ¶ 26; Veliz Decl. ¶ 10.

## STANDARD

The class action "is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). To fall within this narrow exception, Plaintiffs must "affirmatively demonstrate" their compliance with each element of Rule 23—"that is, [they] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc.*, 564 U.S. at 350; *see also McCarthy v. Kleindienst*, 741 F.2d 1406, 1414 n. 9 (D.C. Cir. 1984) ("It is the party seeking class certification that bears the burden of establishing the class action requirements."). This is not just a "mere pleading standard." *Id.* "[A]ctual, not presumed, conformance" with Rule 23 is "indispensable," *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982), and certification is proper only if the Court is satisfied "after a rigorous analysis" that Plaintiffs have shown that each requirement of the Rules has been met. *Wal-Mart Stores, Inc.*, 564 U.S. at 350–51. In determining whether class certification is appropriate, courts may consider evidence outside of the pleadings to determine whether claims or defenses are prone to resolution on a class-wide

basis. *See Jones v. Rossides*, 256 F.R.D. 274, 276 (D.D.C. 2009) (citing *McCarthy*, 741 F. 2d at 1413 n.8).

To merit class certification, Plaintiffs must demonstrate each element of Rule 23(a) is met: (1) the class is so numerous that joinder is impractical ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the named Plaintiffs are typical of claims or defenses of the class ("typicality"); and (4) the named Plaintiffs and counsel will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23(a).

In addition to meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under one of the subsets of Rule 23(b). *AmChem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Relevant to Plaintiffs' motion, Rule 23(b)(1) permits certification when "prosecuting separate actions . . . would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standard s of conduct for [Defendants,]" whereas Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(1)-(2).

## ARGUMENT

## I. Plaintiffs' Claims are Moot as They are Neither Detained at NSGB or Otherwise in U.S. Custody.

The Court should deny Plaintiffs' motion for class certification because both Plaintiffs have been removed from the United States and their claims are now moot. Generally, "[a] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Honeywell Int'l, Inc. v. Nuclear Regul. Comm'n*, 628 F.3d 568, 576 (D.C. Cir.

2010). And proposed class representatives must keep their individual claims "live until certification, or else the class action based on [those claims] generally becomes moot." *Givens v. Bowser*, 111 F.4th 117, 121 (D.C. Cir. 2024) (quoting *J.D. v. Azar*, 925 F.3d 1291, 1307 (D.C. Cir. 2019)) (alteration added). Plaintiffs contend the conditions of their detention at NSGB violate their First Amendment rights to communicate with legal counsel and family, Am. Compl., ¶¶ 52-56, and their Fifth Amendment Due Process rights to not be subject to punitive conditions of confinement. *See id.* ¶¶ 57-64. However, Plaintiffs were removed from NSGB on May 20, 2025. *See* Ramos Decl. ¶¶ 15, 26. Plaintiffs are thus no longer subject to U.S. custody by virtue of being detained at NSGB and, accordingly, cannot continue to challenge their detention conditions at NSGB. *See Scott v. District of Columbia*, 139 F.3d 940, 941 (D.C. Cir. 1998) (finding release from criminal detention normally moots any claims for relief arising out of the conditions of detention). Thus, Plaintiffs claims are moot as they are no longer subject to the detention conditions they seek to challenge.

        Nor does the record demonstrate a mootness exception applies to Plaintiffs' claims such that this Court could certify their proposed class. While Plaintiffs did not invoke mootness exceptions in the foreseeable case—as now confirmed, see Ramos Decl. ¶¶ 15, 26—that the named Plaintiffs were removed prior to the resolution of their motion for class certification, Plaintiffs may invoke the "inherently transitory" exception to mootness in their reply.[5] Nevertheless, had they raised it in their principal motion, or if the Court were to nevertheless consider their argument, Plaintiffs, who bear the burden of demonstrating such exception applies, would not be able to satisfy their burden of proof. *See Honeywell Int'l, Inc.*, 628 F.3d at 576. Whether the "inherently

---

[5] Generally, courts do not consider arguments raised by a party for the first time in a reply. *See*, *e.g.*, *McBride v. Merrell Dow & Pharm.,* 800 F.2d 1208, 1210 (D.C. Cir.1986).

transitory" exception applies depends on "(i) whether the individual claim might end before the district court has a reasonable amount of time to decide class certification, and (ii) whether some class members will retain a live claim at every stage of litigation." *J.D.*, 925 F.3d at 1311. In making this evaluation, the record must assure the court that "some class members will retain a live claim throughout the proceedings." *Givens*, 111 F.4th at 121 (quoting *J.D.*, 925 F.3d at 1310). The record before the Court cannot provide such assurances for three reasons.

First, the record does not demonstrate that injuries to other class members will persist because Plaintiffs concede Defendants have established policies and practices for detainees to communicate with counsel and family members. *See* Am. Compl., ¶ 23. Legal counsel can schedule appointments in 20-minute increments Monday through Friday from 8:00am to 5:00pm EST and Saturday through Sunday from 10:00am to 2:00pm. Ramos Decl. ¶ 28. These calls are confidential although contract security and ICE officer are stationed beyond earshot outside of the confidential room to ensure security. *Id.* ¶ 29. Defendants have posted notices of right to counsel, which include toll-free numbers to the ABA Information Line in both the WHF and MOC. *Id.* ¶ 32. Attorneys can send emails to detainees via legal.gtmo@ice.dhs.gov but cannot contain more than 20 pages. *Id.* ¶ 50. Similarly, detainees receive legal mail once a week, but this is subject to inspection for contraband. *Id.* ¶ 51. Additionally, detainees at the WHF and MOC can request calls to family. *Id.* ¶ 36. At the WHF, familial calls are provided every third day. *Id.* ¶ 37. At the MOC, family calls are provided seven days-a-week from 10:00 am to 5:00 pm. *Id.*

Plaintiffs' contentions only bolster the record that Defendants are implementing these policies and practices. Both named Plaintiffs admit they have had calls with legal counsel. *See* Suazo-Miller Decl. ¶¶ 8-9; Lopez Jarquin Decl. ¶ 9. Even attorneys representing individuals at NSGB concede that they have been able to schedule and conduct legal calls with their clients,

albeit not under the exact conditions they desire. *See* Parsonage Decl. ¶ 5 ("I have been able to schedule calls with my clients by emailing the government with requests at Legal.GTMO@ice.dhs.gov."); Rohan Decl. ¶¶ 5-13 (indicating participation in at least four calls with a client detained at NSGB). Further, Plaintiffs admit that they have been able to communicate with family members on various occasions. *See* Suazo-Miller Decl. ¶ 10 ("At Guantanamo, I have been allowed to speak to my family about 20 times. Each call is about 5 minutes."); Lopez Jarquin Decl. ¶ 8; *see also* Ramos Decl. ¶¶ 16 (noting that Suazo-Muller had made 48 familial calls during his time at NSGB), 25 (noting that Lopez had made 44 familial calls during his time at NSGB).

Second, the record is unclear as to whether Plaintiffs' alleged injuries are common and typical of other potential class members such that the Court can assure itself a class member will retain a live claim throughout these proceedings. *See infra* Parts II-III. (noting issues with commonality and typicality). For example, as further discussed below, different treatments are alleged between those detained in the MOC, like Plaintiffs, and those detained in WHF. Plaintiffs, previously detained in the MOC, alleged that they were able to communicate with legal counsel and had daily calls to family. *See* Suazo-Miller Decl. ¶¶ 8-10; Lopez Jarquin Decl. ¶¶ 8-9. Whereas those who were previously detained at WHF, but are not named Plaintiffs in this action, alleged they had been limited to one five-minute call per week, threatened with the loss of phone privileges, and heard others were denied communication with legal counsel. *See* Decl. Chirinos Toyo ¶ 14 (one call per week), 24 (conceding permitted to call attorney but alleging others were denied phone calls to legal counsel), 26 (noting ability to call family only three times for about five-minutes each call while detained at NSGB); Veliz Vincent Decl. ¶¶ 8 (one call per week), 13

(threatened loss of phone privileges).[6] Given the record does not demonstrate that Plaintiffs' alleged injuries are common and typical to the class, the Court cannot be assured that "some class members will retain a live claim throughout the proceedings." *Givens*, 111 F.4th at 121 (quoting *J.D.*, 925 F.3d at 1310).

Finally, the Court should not extrapolate injuries and claims to other potential class members from Plaintiffs' ambiguous and assumption-filled declarations. Many of Plaintiffs alleged injuries rely on ambiguous accusations and assumptions. *See* Suazo-Muller Decl. ¶ 8 ("I was never told that I had a right to speak to an attorney. . . [I] never saw any signs with information on how to speak to an attorney."); Lopez Jarquin Decl. ¶ 7 ("I think [the form posted at NSGB] is only for complaints related to sexual abuse, not for representation or help in our immigration cases. I do not know of any information available here on whom to contact for legal representation or help."). The fact that Plaintiffs are unaware of the procedures Defendants have put in place to request legal consultations or calls with family does not demonstrate other class members lack such opportunities. For these reasons, the record does not demonstrate their claims meet the "inherently transitory" exception.

---

[6] These allegations are raised by individuals who were previously staged at NSGB but are no longer in U.S. custody and who are not named Plaintiffs to this case. This may well be because those individuals' claims—had they raised them as Plaintiffs in this case—would be moot from the outset. *See Gul v. Obama*, 652 F.3d 12, 15 (D.C. Cir. 2011) (affirming the district court's decision finding that the petitioner's habeas claims were moot once they were no longer in U.S. custody); *see also Abdullah v. Trump*, No. 25-5002, 2025 WL 914093 at *1 (D.C. Cir. Mar. 24, 2025) (affirming Gul's holding in finding "Appellant's habeas case has been mooted by his transfer to the custody of a foreign sovereign."). And "[n]o provision of law imposes on a habeas court the duty to determine facts or decide legal issues regarding parties who are not before the court" *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1376 (2025) (Alito, J., dissenting). Therefore, not only would their claims be moot, but the purported class allegations based on non-parties' declarations should not be entertained.

Accordingly, the removed Plaintiffs' claims are moot, they do not allege that their claims are inherently transitory, and therefore, this Court should deny their motion for class certification.

## II.    Plaintiffs' Proposed Class Lacks the Commonality Required under Rules 23(a)(2) and 23(b)(2)

Plaintiffs also have not established commonality under 23(a)(2) such that their proposed class can be certified under Rule 23(b)(2), *see* Mot. 8-9, 13. Plaintiffs must "affirmatively demonstrate" their compliance with the commonality requirement, which demands not only "common questions . . . but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation" *Wal-Mart Stores, Inc.*, 564 U.S. at 350 (emphasis in original). The commonality requirement is uniquely rigorous when applied to a proposed class, like the one here, seeking certification under Rule 23(b)(2). For certification under Rule 23(b)(2), Plaintiffs must show that Defendants have "acted or refused to act on grounds that apply generally to the class" so that "relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). In other words, the challenged conduct must be of the kind that "can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc.*, 564 U.S. at 360; *J.D. v. Azar*, 925 F.3d 1291, 1321 (D.C. Cir. 2019) ("[I]f any person in the class has a meritorious claim, they all do"). In that way, satisfaction of Rule 23(a)(2) for a class under Rule 23(b)(2) requires a common legal problem wherein the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in *one stroke*." *Wal-Mart Stores, Inc.*, 564 U.S. at 350 (emphasis added); *DL v. D.C.*, 713 F.3d 120, 127 (D.C. Cir. 2013) ("The circuit courts of appeals to address the question have hewed faithfully to *Wal–Mart*'s "one stroke" requirement.").

Plaintiffs assert that they meet the commonality requirement because "Defendants' policies and practices with respect to attorney access and family communication [at NSGB generally] affect

all class members." Mot. at 9. They further contend that whether these policies and practices (i) are reasonably related to a legitimate governmental interest, (ii) are reasonably related to a non-punitive purpose where the conditions are not excessive, and (iii) could be accomplished by alternative methods, are common legal questions that satisfy Rule 23(a)(2). Mot. at 8-9. But "'[a]ny competently crafted class complaint [(like the one here)] literally raises common 'questions.'" *Wal-Mart Stores, Inc.*, 564 U.S. at 349. As discussed below, resolution of Plaintiffs alleged injuries hinges on factual and legal circumstances that are not shared by the class as a whole.[7]  Plaintiffs allege that Defendants "continue[] to impose significant barriers to attorney access," including the failure to bring detainees to scheduled phone calls, denying and imposing penalties for requesting phone calls, and creating a climate of fear and intimidation. Am. Compl. ¶¶ 26-28, 30-32, 36. But as these wide-ranging allegations exemplify, Plaintiffs are not challenging policies that are common to the class, but rather they assert—via declarations of individual aliens who are no longer at NSGB or otherwise in U.S. custody and therefore would not be members of the class—discrete and disparate incidents of harm. These individual incidents turn on each detainee's conditions of confinement, which are likewise not common to all putative class members. And because the putative class includes both detainees who have gone through ordinary removal proceedings and expedited removal proceedings, Agudelo Decl. ¶ 10, their due process rights and legally available relief are not common. 8 U.S.C. §§ 1252(e)(1)(A), (B). Ultimately, it is not only that the Court must look to the discrete allegations, conditions of confinement, and legal status; rather, the Court must consider the interplay between these three elements of their respective claims to properly resolve each individual alien's claim.

---

[7] Indeed, as discussed *infra* Part III (typicality), not even the named Plaintiffs share the rest of the class's alleged injuries, or factual and legal circumstances.

### A. Plaintiffs are not challenging policies or practices that are common to the proposed class.

First, Plaintiffs are not challenging a policy or practice applicable to all detainees at NSGB. Indeed, they acknowledge that Defendants have established robust access to counsel procedures for attorney-client and personal communications. Am. Compl. ¶ 23; *see* Hearing Transcript at 54-59, 71 (noting that Defendants' actions to address Plaintiffs' initially raised concerns led to "significantly narrow[ing]" the remaining legal issues). Rather, Plaintiffs allege harms "involv[ing] different policies and different practices at different stages" of detention and communication, which necessarily defeats commonality. *DL*, 713 F.3d at 127 (being harmed as a result of "the systemic deficiencies" did not satisfy commonality). For some aliens who were staged at NSGB, for example, the alleged harm occurred upon arrival at NSGB. *See, e.g.*, Vera Decl. ¶ 15 (stating that he was never informed of the ABA hotline). Alleged harms also arose during personal calls and ranged from time restrictions to disconnected phone lines to officer conduct. Am. Compl. ¶ 36; Vicent Decl. ¶ 10; Gonzales Decl. ¶ 14. Regarding attorney-client calls, Plaintiffs' alleged harms are equally wide-ranging, *see* Am. Compl ¶ 24-36, including not being informed of the ability to contact counsel, (Suazo-Miller Decl. ¶ 8); individual instances of delays for scheduled attorney-client calls (Rohan Decl. ¶ 5-7); and assuming that attorney-client calls are "only for complaints related to sexual abuse" (Lopez Decl. ¶ 7). As in *DL.*, where the Court found no commonality because the alleged harms to students with disabilities occurred at different stages of the specialized education plans, it is clear from the wide-ranging assertions that Plaintiffs claims, if true, are "based on multiple, [yet] disparate failures to comply with the [established protocols] rather than a truly systemic policy or practice which affects them all[.]" 713 F.3d at 127-28 (citation omitted); *see, e.g.*, *In re Navy Chaplaincy*, 306 F.R.D. 33, 48 (D.D.C.

2014) (finding no commonality when the case rested on "an array of individual anecdotes . . . [where] the theories of religious discrimination varied widely").

Where, as here, the claims turn on "day-to-day operations" and decisions of individual officers concerning a range of telecommunication activities but "[w]ithout some glue" holding these individual incidents together, it would be "impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question[s]. *Wal-Mart Stores, Inc.*, 564 U.S. at 352. Indeed, Plaintiffs do not allege that each of their alleged harms are perpetrated pursuant to an official policy or by the same officer, and thus, contrary to Plaintiff's claim, there is no single determination that will resolve the claims "in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350 (noting that an "assertion of discriminatory bias on the part of the *same* supervisor" may satisfy the commonality requirement) (emphasis added).

In short, Plaintiffs' purportedly common questions, *see* Mot. 8-9, do not have common answers; rather, the Court will be required to analyze the highly individualized harms alleged by each detainee. For example, "[w]hether Defendants' restrictions on attorney access and detainees' communication with their families are reasonably related to legitimate governmental interests" and whether they are "nonpunitive and excessive," Mot. at 9, is necessarily an individualized inquiry when each class member, including each named Plaintiff, has alleged different, unique restrictions. *Cf. O.A. v. Trump*, 404 F. Supp. 3d 109, 156 (D.D.C. 2019) (finding commonality when all class members "challenge[d] the same Rule on the same grounds"). Even each named Plaintiff asserts varying and conflicting degree of restrictions, including how many and how long calls occur. That these harms simply involve telecommunication at NSGB does not suffice. *See Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 555 (7th Cir. 2016) ("The detainees each present a different situation that involved a different type of dental pain, took place at a different time, involved different

medical professionals and prison staff, and concerned a different alleged deficiency in the treatment process."). Even taking one of these categories of alleged restrictions—the frequency and length of family phone calls—makes clear that Plaintiffs are challenging individualized restrictions. *See, e.g.*, Suazo-Miller Decl. ¶ 10 (alleging 20 five-minute family calls in a month); Lopez Decl. ¶ 8 (alleging one five-minute family phone call per day); Vincent Decl. ¶ 8 (alleging approximately one phone call per week for 10-15 minutes), Chirinos Decl. ¶ 25-26 (alleging approximately one family phone call per month). Additionally, given the wide range of alleged harms, there are likely unique governmental interests behind each incident, which cannot be addressed commonly among all class members. For example, the reasons for the restrictions at any given time may depend on resource limitations and security concerns that necessarily change as new detainees are transferred in and out of NSGB as their removal orders are effectuated. *See* Ramos Decl. ¶ 33; Exhibit C, Declaration of Lieutenant Colonel Robert Green ("Green Decl.") ¶ 21. And, as described below, *infra* Part II.B, C, whether conditions are excessive in a due process context requires an assessment of a particular detainee's legal status in relation to a particular detention facility.

### B.    Putative class members' conditions of confinement at the WHF and the MOC are not common.

Plaintiffs also fail to satisfy the commonality requirement because their claims turn on their own conditions of confinement, which, at minimum, will not be common across both facilities at NGSB. *See* Am. Compl ¶ 20 (noting that Defendants hold detainees at the WHF and the MOC); *see, e.g.*, Ramos Decl. ¶ 32-35 (discussing distinctions between the two facilities). Where, as here, the plaintiffs allege harms rooted in the specific context of a detention facility, this Court has held that such claims cannot establish commonality when the putative class members are detained in multiple facilities. *See e.g., C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 202 (D.D.C. 2020) (finding no

commonality when resolution of claims required evaluation of "each individual detention facility (and for that matter, in each individual unit in which putative class members are housed)."). This is because "[a]s a general matter, questions of law and fact in suits brought by detainees (or prisoners) regarding their conditions of confinement generally do not overlap between different detention facilities." *Americans for Immigrant Just. v. U.S. Dep't of Homeland Sec.*, No. CV 22-3118 (CKK), 2023 WL 4364096, at *4 (D.D.C. July 6, 2023).

That is exactly the case at NSGB, where there are two facilities—the WHF and MOC—but each facility's conditions differ in ways that are significant to Plaintiffs' claims. The WHF is a maximum-security facility, while the MOC houses low-and medium security detainees. ECF No. 14-3, Declaration of Colonel Jennifer Venghaus ECF No. 14-3 ("Venghaus Decl.") ¶ 11. Telecommunication policies and practices are similarly different: In the WHF, calls with counsel are conducted in an adjacent building with eight separate rooms with telephones, while at the MOC facility there is currently one private room for legal calls. Ramos Decl. ¶ 33-34. And while the MOC provides time for family calls seven days a week, these calls are offered every third day at the WHF. Ramos Decl. ¶ 35. The differences in security protocols, telecommunication resources, and communication policies between the two facilities, Ramos Decl. ¶ 33, make a single analysis of all of the class members' harms impossible to conduct in "one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350; *see Americans for Immigrant Just.*, 2023 WL 4364096, at *4.

Plaintiffs' allegations further exemplify that significant differences exist between the two facilities. For example, both named Plaintiffs Suazo-Muller and Lopez were detained at the MOC, but have spoken to family 20 times in a month and once every day, respectively.[8] Suazo-Muller

---

[8] Lopez's declaration suggests that he has been provided with the allotted number of family calls. *See* Green Decl. ¶ 17; *see In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14,

Decl. ¶¶ 3, 10; Lopez Decl. ¶ 8.  In contrast, detainees held at Camp IV alleged that they were able to make personal calls less than once per week. Vera Decl. ¶ 3, 13; Chirinos Decl.  ¶ 4, 25, 26; Vincent Decl. ¶¶ 3, 8, 9. Furthermore, the assertion that there is a "climate of fear and intimidation," Am Compl. ¶ 32, necessarily requires an individualized analysis of the specific environment, officer conduct, and conditions of confinement in each separate facility, which, as described above, differ in significant, meaningful ways.  Finally, Plaintiffs' allegations regarding the ICE detainee locator relate only to the detainees housed at the MOC and do not concern those at the WHF. Am. Compl. ¶ 35. Accordingly, the differences between the separate facilities in which the purported class members are and will be held, such as the examples listed above, defeats commonality.

### C.    Putative class members' due process protections and legally available relief are not common.

Not only are Plaintiffs challenging individualized incidents that took place in different facilities, but the process protections at issue are also not common between all class members under a proper due process analytical framework, which makes class-wide injunctive relief impracticable and legally impermissible. *See* Am. Compl. ¶¶ 57-64. In this context, the Supreme Court has recognized a class action may not be the proper vehicle to resolve due process claims, which "call[] for such protections as the particular situation demands." *Jennings v. Rodriguez*, 583 U.S. 281, 314 (2018) (internal quotation and citations omitted); *see also Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001) ("The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.").  This is especially true in the immigration context, where "claims of [due process] constitutional violations . . . [are]

_____

135 (D.D.C. 2017) (recognizing that, although a class may contain a de minimis number of uninjured members, a court should deny class certification where the class definitions are overly broad).

not always fully available to every claimant." *Las Americas Immigrant Advoc. Ctr. v. Wolf*, 507 F. Supp. 3d 1, 39 (D.D.C. 2020), dismissed sub nom. *Las Americas Immigrant Advoc. Ctr. v. Mayorkas*, No. 20-5386, 2024 WL 3632500 (D.C. Cir. Aug. 1, 2024); *Zadvydas*, 533 U.S. at 694 ("[T]he nature of protection[s] may vary depending upon status and circumstance[s]."); *Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1254 (10th Cir. 2008) ("[I]t is not at all clear that removable aliens benefit from precisely the same advantages of due process as do citizens or lawful permanent resident aliens.").

As especially evident here, not all putative class members are entitled to the same due process protections, as Plaintiffs' proposed class includes aliens with: (1) final orders of removal having gone through removal proceedings before an immigration judge, and (2) expedited removal orders having gone through expedited removal proceedings under 8 U.S.C. § 1225 and who can be ordered removed by an immigration officer without a hearing before an immigration judge. *See* 8 U.S.C. §§ 1225(b)(1)(B)(iii)(IV) (authorizing detention pending removal on an expedited removal order), 1231(a)(2), (6) (authorizing detention pending removal on removal orders entered following "full" removal proceedings); *see* Agudelo Decl. ¶ 10. Aliens who underwent expediated proceedings cannot "claim any greater rights under the Due Process Clause" than those statutorily provided by Congress. *Thuraissigiam*, 591 U.S. at 107, which is "considerably less process . . . than [is provided] in full removal proceedings." *Las Americas Immigrant Advoc. Ctr.*, 507 F. Supp. 3d at 39; *see e.g.,* 8 U.S.C. § 1225(b)(1)(A)(i) (authorizing asylum officers to remove aliens "without further hearing or review."). Because commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" that the members of the putative class possess differing levels of due process protections is necessarily fatal to their ability to demonstrate the requisite commonality for class certification. *Wal-Mart Stores, Inc.*, 564 U.S. at 349-50; *cf*

*Ramirez v. U.S. Immigr. & Customs Enf't*, 338 F. Supp. 3d 1, 45 (D.D.C. 2018) (finding commonality satisfied when all members of the putative class were subject to ICE's failure to comply with regulations implementing a single statutory provision.).

Moreover, while Plaintiffs argue that they their proposed class can be certified under Rule 23(b)(2) "simply by virtue of their status as persons held at [NSGB]," Mot. at 13, that is not true. "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc.*, 564 U.S. at 360. As discussed above, Plaintiffs' variable and contradicting allegations in two different facilities are not suitable for a single judgment. And as discussed below, *infra* Part VI, Congress has specifically barred class actions challenging the expedited removal processes or allowing for injunctive relief outside of the stricture of section 1252(e). *See* 8 U.S.C. §§ 1252(e)(1)(A) ("[N]o court may enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1)); *accord I.M. v. United States Customs & Border Prot.*, 67 F.4th 436, 439 (D.C. Cir. 2023); *Vijender v. Wolf*, No. 19-CV-3337 (APM), 2020 WL 1935556, at *4 (D.D.C. Apr. 22, 2020) (interpreting § 1252 as to "strip[] the courts of any source of jurisdiction over challenges arising from the execution of removal orders not expressly permitted in the statute"). On this basis, the Court should deny Plaintiffs' motion for class certification under Rule 23(b)(2).[9]

---

[9] Notably, Plaintiffs are not challenging the "validity of the system" and so their allegations cannot survive under the exception to the jurisdictional bar pursuant to 8 U.S.C. § 1252(e)(3)(A). This provision restores jurisdiction to actions initiated in this Court, but it is "limited to determinations" of the constitutionality of statutory or regulatory provisions or written policies regarding 1225(b). *M.M.V. v. Garland*, 1 F.4th 1100, 1109 (D.C. Cir. 2021). Indeed, Plaintiffs are not bringing a systemic challenge to 1225(b)'s procedures; rather, their proposed class seeks to impermissibly group aliens with expedited and ordinary removal orders to challenge due process protections that are not common between the groups. And, if Plaintiffs *did* purport to challenge the procedures of

Additionally, as the Supreme Court held in *Garland v. Aleman Gonzalez*, 8 U.S.C. § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." 596 U.S. 543, 550 (2022) (referring to 8 U.S.C. §§ 1221-32). Because the provisions therein, as discussed above, provide individuals in expedited removal proceedings with only limited access to counsel, a classwide injunction order requiring additional process would be inconsistent with section 1252(f)(1). *See Aleman Gonzalez*, 596 U.S. at 550. Similarly, a classwide order establishing detention standards would enjoin the operation of 8 U.S.C. § 1231(g), which grants the Secretary authority to arrange for appropriate places of detention. Because these limitations would prevent the Court from entering a single order governing the rights of the class as a whole, the class cannot be certified consistent with Rule 23(b)(2).[10]

Accordingly, Plaintiffs proposed class fails to satisfy the commonality requirement under Rule 23(a)(2) and do not qualify under the (b)(2) class subset.

## III.    The Named Plaintiffs' Claims Are Not Typical of the Claims of the Proposed Class.

Assuming the named Plaintiffs' claims remain viable, *in arguendo*, their allegations are not typical of the class's claims. To certify a class, beyond the requirements already discussed, the "claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. 23(a)(3). This requirement ensures "that the class representatives have suffered injuries in the same general fashion as absent class members." *See Cohen v. Chilcott*, 522 F. Supp. 2d 105, 115 (D.D.C. 2007) (internal quotation omitted); *accord Wal-Mart Stores, Inc.*, 564 U.S.

---

§ 1225(b) in this lawsuit, such an argument would similarly defeat Rule 23(a)(2)'s commonality requirement and Rule 23(b)(2)'s requirement for class wide relief, as those procedures are inapplicable to aliens without expedited orders.

[10] Because section 1252(f)(1) also bars the entry of any declaratory judgment that would function like an injunction, it effectively eliminates any basis for class certification. Therefore, there is no claim on which a class can be certified.

at 349 (recognizing this requirement "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate."). While the claims do not need to be identical, *Cohen*, 522 F. Supp. 2d at 115, "at least one named plaintiff [must have] a claim relating to each challenged practice for which relief is [sought]." *Stewart v. Rubin*, 948 F. Supp. 1077, 1088 (D.D.C. 1996) *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997), and *enforcement denied*, No. CV 90-2841 (RCL), 1999 WL 35798755 (D.D.C. July 1, 1999). However, there are several class allegations that arise—not from the two named Plaintiffs' own experiences but—from declarants who are not named Plaintiffs in this action. *See generally* Mot. at 3-4 (listing allegations from nonparties, including from Helen Parsonage, Delaney Rohan, Xavier Jose Chirinos Toyo, Juan Diego Veliz Vicent, Carlos Luis Vera Gonzalez, and Dominic Alexander Oliveros Tortolero).

Neither named Plaintiffs has suffered most of the injuries alleged in the Amended Complaint, and thus their claims are not typical of the class they intend to represent. *Cohen*, 522 F. Supp. 2d at 115. Neither named Plaintiff alleged having suffered: (1) requests from their attorneys going unanswered and not being made available at the scheduled times; (2) not having documents delivered to detainees or returned to counsel; (3) being denied daily calls with family; nor (4) being handcuffed and chained during calls. *Compare* Mot. at 2-3 *with* Suazo-Muller Decl. and Lopez Decl. In fact, Plaintiffs conceded that they have been able to have calls with counsel, without alleging their requests were ever denied. Suazo-Muller Decl. at ¶ 9, Lopez Decl. at ¶ 9. Plaintiffs also admitted having regular calls with family, Suazo-Muller Decl. at ¶ 10 (noting that he has "been allowed to speak to [his] family about 20 times"), Lopez Decl. at ¶ 8 (acknowledging access to daily calls with family), unlike the class allegations to the contrary. Although there is no need for their claims to be identical to those of the class, neither Plaintiff "suffered injuries in the same general fashion" as the rest of the purported class of immigrant detainees they intend to

24

represent. *Cohen*, 522 F. Supp. 2d at 115. And specifically alleged day-to-day incidents are not direct results of the policy themselves, as evidenced by the lacking allegations by either named Plaintiff. Plaintiffs are thus incorrect to conclude that these injuries arise from Defendants' policies and practices generally such that their individual claims are based on the same legal theories as all class members' claims. Mot. at 10. For these reasons, the typicality requirement is not met, and class certification is inappropriate.

## IV.    The Named Plaintiffs are Not Adequate Class Representatives

Plaintiffs also fail to demonstrate they are adequate class representatives. Rule 23(a)(4) requires that the named parties be able to "fairly and adequately protect the interests of the class." *Anchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26 (alteration in original) (internal quotations removed). Here, Plaintiffs have not demonstrated they are adequate class counsel for two reasons: (i) there is reason to doubt they fully understand their representational responsibilities, and (ii) their claims do not demonstrate they suffer the same injury and possess the same interests.

First, the record does not demonstrate Plaintiffs fully comprehend their representational responsibilities. Plaintiffs claim they would like to serve as class representatives, *see* Suazo-Muller Decl. ¶ 12, Lopez Jarquin Decl. ¶ 13, but their declarations demonstrate no understanding of their role and responsibilities as class representatives. *See generally* Suazo-Muller Decl. and Lopez Jarquin Decl. When a class representative does not understand their responsibilities, they cannot adequately protect the interests of the class. *See*, *e.g.*, *Anchem Prods., Inc.*, 521 U.S. at 626-27 (affirming lower court's finding that sub-class representatives who negotiated on behalf of the entire class, not just their sub-class, were not adequate class representatives because they did not properly understand their representational responsibilities). Here, given there are at least two

separate detention facilities at NSGB—WHF and MOC—with differently alleged practices and violations, it is unclear how Plaintiffs—both of whom were only detained at the MOC—can adequately represent detainees subject to detention conditions they themselves did not endure.[11]

Second, as discussed previously, Plaintiffs alleged injuries lack commonality and typicality of the class they seek to represent. Typicality and adequacy are often "'intertwined' Rule 23(a) requirements[.]" *Hoggard v. Nationstar Mortg. LLC*, No. CV 17-99 (TJK), 2021 WL 7162301 at *5 (D.D.C. Dec. 30, 2021). Here, because Plaintiffs injuries are not common to and typical of the proposed class, Plaintiffs' interests diverge from the class and thus they are not adequate class representatives. *See, e.g.*, *Anchem Prods., Inc.*, 521 U.S. at 625-26 (noting class representatives must possess the same interest as the putative class). And, at the very least, it is unclear how Plaintiffs can adequately represent individuals detained at WHF when they themselves were never subject to detention conditions in that facility.

## V. The Court Should Deny Class Certification in Favor of Allowing Individual Habeas Petitions.

### A. Plaintiffs have not met their burden under Rule 23(b)(1)(A).

Even had Plaintiffs satisfied the four requirements under Rule 23(a), "plaintiffs must show that the proposed class falls within at least one of the three categories set forth in Rule 23(b)."

---

[11] Moreover, Plaintiffs' removal from NSGB to Nicaragua and the mootness of their claims raises tangential adequacy issues. Defendants recognize that "plaintiffs with moot claims *may* adequately represent a class." *J.D.*, 925 F.3d at 1313 (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 407 (1980)) (emphasis added). However, mootness can still raise adequacy concerns. *Id.* Here, the record does not demonstrate that Plaintiffs remain interested in this litigation after their May 20 removal. *See* Suazo-Muller Decl. (indicating desire to represent the class as of April 21, 2025); Lopez Jarquin Decl. (indicating desire to represent the class as of April 26, 2025). Nor does the record establish that Plaintiffs have maintained the capability to communicate with counsel and participate in this litigation, including in any potential settlement negotiations. The Court should not assume Plaintiffs' continued interest and capability to prosecute this action; rather, the Court should hold Plaintiffs to their burden of "affirmatively demonstrating" their adequacy. *See Wal-Mart Stores, Inc.*, 564 U.S. at 350.

*Steele v. United States*, 159 F. Supp. 3d 73, 79 (D.D.C. 2016). In addition to Rule 23(b)(2), which is discussed above, *supra* Part II, Plaintiffs claim that they meet the subset under Rule 23(b)(1). Specifically, a class may be maintained under Rule 23(b)(1)(A) only if prosecuting separate actions "would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct" for the defendants. In other words, "[Rule 23(b)(1)(A)] certification is appropriate when the class seeks . . . relief to change an alleged ongoing course of conduct that is either legal or illegal as to all members of the class." *Gomez v. Trump*, 490 F. Supp. 3d 276, 292 (D.D.C. 2020), *rev'd and remanded sub nom. Goodluck v. Biden*, 104 F.4th 920 (D.C. Cir. 2024) (internal citation omitted). But because there is "'always some risk' that individual actions may expose a defendant to conflicting judgments on liability," such certification "requires something more—namely, a legitimate risk that separate actions may establish 'incompatible standards of conduct,' so as to make individual actions 'impossible or unworkable.'" *In re Navy Chaplaincy*, 306 F.R.D. 33, 55 (D.D.C. 2014) (cleaned up).

Here, Plaintiffs simply conclude that they "easily satisfy [the 23(b)(1)(A)] standard" without engaging with the legal analysis to warrant such conclusion. *See* Mot. at 12. Nevertheless, Plaintiffs' claims—generally challenging individual conditions of confinement—sound purely in habeas and would be better channeled through individual habeas petitions challenging specific issues related to their conditions of confinement. *See Aamer v. Obama*, 742 F.3d 1023, 1032 (D.C. Cir. 2014) ("Our precedent establishes that one in custody may challenge the conditions of his confinement in a petition for habeas corpus."). Plaintiffs' allegations will require individual consideration, as the challenged conditions are not faced by all purported class members, and, contrary to Plaintiffs' claim, bringing individual actions would not "create a risk of . . . inconsistent or varying adjudications" such that it "would establish incompatible standards of conduct" for

Defendants. Fed. R. Civ. P. 23(b)(1)(A). Indeed, given that habeas petitions arising from detention at NSGB would all be brought in this district, *Paracha v. Trump*, 453 F. Supp. 3d 168, 177 (D.D.C. 2020) (internal citation omitted) (noting habeas petitions challenging NSGB detention are to be raised in the District Court for the District of Columbia), the Court would be able to, "without resort to a class action, fashion an order which provides relief both to [individual] plaintiffs and all other similarly situated persons[.]" *See Am. Fed'n of Gov't Emps., AFL-CIO v. Fed. Lab. Rel. Auth.*, 593 F. Supp. 1203, 1204 n.2 (D.D.C. 1984). In fact, this District has recognized that a class action is "neither useful nor required" where "only declaratory and injunctive relief is sought[,]" as is the case here, Mot. at 12, and thus "a decree . . . would [address] the relief both of [the individual plaintiffs] and of all others similarly situated." *Coffin v. Sec'y of Health, Ed. & Welfare*, 400 F. Supp. 953, 956 (D.D.C. 1975). As such, Plaintiffs have not demonstrated that they satisfy the requirement under Rule 23(b)(1)(A).

## B.    Habeas is unfit for class adjudications.

The Court should be especially hesitant to grant class certification here because habeas petitions are generally unfit for class actions. The purpose of class actions is to "create an efficient mechanism for trying claims that share common questions of law or fact when other methods of consolidation are impracticable." *Dellums v. Powell*, 566 F.2d 216, 230 (D.C. Cir. 1977). Habeas, from its inception, has been an individualized writ, however. Indeed, the federal habeas statute is designed for individual petitioners; it requires that an "[a]pplication for a writ of habeas corpus shall be in writing signed and verified *by the person for whose relief it is intended or by someone acting in his behalf*" and "shall allege the facts concerning *the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority*, if known." 28 U.S.C. § 2242 (emphasis added). The issuance of the writ is then "directed *to the person having custody of the person detained*" and may require the custodian to "produce at

the hearing *the body of the person detained.*" *Id.* § 2243 (emphasis added). That is an individualized process and inquiry, not one amenable to class wide resolution.

This reflects the historical origins of habeas. "'Habeas corpus' is Latin for 'you have the body.'" *I.M.*, 67 F.4th at 440 (*Webster's New International Dictionary* 1121 (2d ed. 1945)). The original Habeas Corpus Act of 1679 required the "Sheriff" to "bring up the Body before the Court to which the Writ is returnable; and certify the true Causes of Imprisonment." Habeas Corpus Act of 1679, 31 Cha. 2 c 2 § I. Blackstone commented that habeas was "directed to the person detaining another, and commanding him to produce the body of the prisoner with the day and cause of his caption and detention." 3 William Blackstone, Commentaries on the Laws of England 131-132 (1768). That is, by definition, individualized. How is a court supposed to order the production of a prisoner's body if the prisoner is an unknown class member?

This is reinforced by the one exception to the rule that an application for habeas must be "signed and verified by the person for whose relief it is intended;" the application can sometimes be signed "by someone acting in his behalf." 28 U.S.C. § 2242. This is not carte blanch for any representative to seek habeas on behalf of others. Instead, this incorporates the historical doctrine of "next friend," which allows someone close to the detainee to apply for habeas on their behalf. *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990).

It is no wonder, therefore, that the Supreme Court "has never held that class relief may be sought in a habeas proceeding." *A.A.R.P. v. Trump*, 145 S. Ct. 1034, 1036 (2025) (Alito, J., dissenting). And neither has the D.C. Circuit.[12] This Court should not stray from the tenets of habeas here to certify novel classes that do not even meet Rule 23's requirements.

---

[12] *J.G.G. v. Trump*, Nos. 25-5067, 25-5068, 2025 U.S. App. LEXIS 7131, at *109 (D.C. Cir. Mar. 26, 2025) ("Whether the plaintiffs can certify a class and whether that class is entitled to relief is

**VI.    The Class is Impermissible Because it Intends to Include Individuals Who Have Not Suffered, and May Not Ever Suffer, the Same Injury and Whose Claims Are Statutorily Precluded from Class Treatment.**

Courts in this District interpret Rule 23 as imposing a "requirement that a class be clearly defined." *Pigford v. Glickman*, 182 F.R.D. 341, 346 (D.D.C. 1998). This requirement ensures that the class is "neither amorphous, nor imprecise." *Lewis v. Nat'l Football League*, 146 F.R.D. 5, 8 (D.D.C. 1992). For example, "[a] class sought to be certified under Rule 23(b)(2) must "accurately articulate[] the general demarcations of the class of individuals who are being harmed." *Thorpe v. District of Columbia*, 303 F.R.D. 120, 139 (D.D.C. 2014). A class definition may be fatally overbroad if it "sweeps within it persons who could not have been injured by the defendant's conduct." *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 191 (D.D.C. 2017) (quoting *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009)). Having an inadequately defined or overbroad class also often implicates other Rule 23 requirements, including typicality, commonality, and the standards for certifying an injunctive-relief class under Rule 23(b)(2).

Here, Plaintiffs seek certification of a class of "[a]ll immigration detainees originally apprehended in the United States and detained at U.S. immigration detention facilities, and who are, or will be held at [NSGB]." Mot. at 1. This class is overbroad for several reasons, in part because the term "who . . . will be held" is not sufficiently defined for purposes of resolving the proposed class claims. That proposed class includes numerous individuals who have not been, and well may never be, transferred to NSGB, and hence have not suffered the injury Plaintiffs claim or whose claimed injury cannot be redressed by the relief Plaintiffs seek. Additionally, the class

---

for a federal district court in Texas to decide."); id. at * 109 n.93 ("Whether Plaintiffs can seek habeas relief through a class action in the Southern District of Texas seems to be an open question for that court to resolve in the first instance.").

as currently defined may ultimately include aliens who received expedited removal, and whose challenges to those removal orders Congress has precluded from class certification.[13]

First, the class is overbroad to the extent it includes those who were previously transferred to NSGB but have already been removed, including declarants whose allegations form the basis of many of the class allegations. Plaintiffs do not explain how the relief they seek would benefit these declarants or other aliens similarly situated to them who have already been removed from NSGB. They are no longer in the United States, and thus prospective relief from future transfers to NSGB, conditions of confinement there, or other unspecified relief, if any, will not redress their claimed injury. Moreover, because aliens who are no longer in the United States lack standing to obtain the relief sought, they cannot—absent an applicable mootness exception, *see supra* Part I— represent a class of similarly situated individuals (who likewise lack standing). *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport

---

[13] As set forth above, these same defects defeat commonality and typicality as well as adequacy of representation and the propriety of an injunctive relief class under Rule 23(b)(2), demonstrating that the need for a clearly defined, cohesive class is inherent in Rule 23's various requirements. Thus, the D.C. Circuit's statement that "courts should stick to Rule 23's specified requirements when making class certification decisions," *In re White*, 64 F.4th 302, 314 (D.C. Cir.), *cert. denied sub nom. Hilton Hotels Ret. Plan v. White*, 144 S. Ct. 487 (2023), does not preclude district courts from evaluating whether the class definition is overbroad and insufficiently definite. This is particularly true given that one threshold issue discussed in this Section—whether Congress has precluded certification of certain class claims—involves a statutory command that supersedes Rule 23 and does not fit neatly within Rule 23's contours.

to represent."); *Johnson v. D.C.*, 248 F.R.D. 46, 56 (D.D.C. 2008) (declining to certify Rule 23(b)(2) classes where the Plaintiffs lacked standing to seek prospective injunctive relief).

Second, the proposed class is overbroad and ill-defined to the extent it intends to include everyone Plaintiffs surmise will "be held at [NSGB]" at some point. Mot. at 1. This articulated group would be amorphous insofar as it is based entirely on Plaintiffs' own conjecture as to who may or may not end up at NSGB. Thus, as it currently stands, the proposed class would necessarily encompass individuals who are not yet (and may never be) transferred to NSGB, which would make the claims of the proposed class too disparate to be measured at once, and thus precludes a finding of commonality and typicality among the asserted class claims. *Cf. AmChem Prods., Inc.*, 521 U.S. at 626 (named parties with diverse medical conditions were not adequate representatives of a single class because the "the interests of those within the single class are not aligned).

Third, the proposed class is overbroad to the extent it intends to include aliens who received expedited removal orders pursuant to 8 U.S.C. § 1225(b). Congress has expressly precluded class certification where claims relate to expedited removal orders, and the Court thus cannot permissibly certify a class that includes such claims. The claims asserted by those aliens subject to expedited removal orders are limited by the jurisdictional provisions of 8 U.S.C. § 1252, which provide that there is no judicial review of any claims "arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)" or involving "the application of such section to individual aliens," except as provided under § 1252(e). *See Make the Rd. N.Y. v. McAleenan*, 405 F. Supp. 3d 1, 20 (D.D.C. 2019); *accord Mendoza-Linares v. Garland*, 51 F.4th 1146, 1154-66 (9th Cir. 2022) (discussing the limitations on judicial review of expedited removal orders). And Section 1252(e)(1)(B) provides that "no court may . . . certify a class under Rule 23 of the Federal Rules of Civil Procedure in any action for which judicial

32

review is authorized under . . . this subsection." 8 U.S.C. § 1252(e)(1)(B). The claims in the Complaint ultimately challenge access to legal counsel post-expedited removal order. Accordingly, Section 1252(e)(1)(B)'s bar on class certification applies to the claims of any proposed class member who was processed for an expedited removal order under Section 1225(b).

Indeed, Congress has also limited the relief available for the claims of aliens subject to expedited removal orders. The exclusive means of securing any equitable relief from an expedited removal order would be through limited individual habeas proceedings under Section 1252(e)(2) in the district of confinement seeking to obtain placement in removal proceedings before an immigration judge. *See* 8 U.S.C. §§ 1252(e)(2), (4).  Again, even if the proposed class members' claims could be entertained in this action, Congress has precluded such claims from class treatment. *Id.* § 1252(e)(1)(B). Aliens subject to expedited removal procedures may also challenge those procedures in this District under the terms of Section 1252(e)(3), provided they have standing to do so. But if judicial review of any of Plaintiffs' claims is authorized by Section 1252(e)(3), Section 1252(e)(1)(B) likewise bars class certification. *See O.A. v. Trump*, 404 F. Supp. 3d 109, 158 (D.D.C. 2019) (recognizing class-certification bar of such claims).

For these reasons, Plaintiffs' intended class is fatally overbroad and amorphous by attempting to include individuals who may not suffer the same alleged injuries or who otherwise are not entitled to class wide relief.  The Court should thus not grant class certification.

## CONCLUSION

For these reasons, the Court should decline to certify the proposed class.

Dated: June 10, 2025                    Respectfully submitted,

                                        YAAKOV ROTH
                                        *Principal Deputy Assistant Attorney General*

                                        DREW C. ENSIGN
                                        *Deputy Assistant Attorney General*

                                        SARAH S. WILSON
                                        *Assistant Director*

                                        MALCOLM MCDERMOND
                                        *Trial Attorney*

                                    By: /s/ *Jason K. Zubata*
                                        JASON K. ZUBATA
                                        *Trial Attorney*
                                        U.S. Department of Justice, Civil Division
                                        Office of Immigration Litigation
                                        P.O. Box 868, Ben Franklin Station
                                        Washington, DC 20044
                                        Tel: (202) 532-4143
                                        Email: jason.k.zubata@usdoj.gov

                                        *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2025, I electronically filed this motion with the Clerk of

the Court for the U.S. Court of for the District of Columbia by using the CM/ECF system. Counsel

in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

                                    By: /s/ *Jason K. Zubata*
                                        JASON K. ZUBATA
                                        *Trial Attorney*
                                        United States Department of Justice