BRETT A. SHUMATE
Assistant Attorney General
DREW C. ENSIGN
*Deputy Assistant Attorney General*
SARAH S. WILSON
*Assistant Director*
DEVIN BARRETT
*Senior Litigation Counsel*
MALCOM I. MCDERMOND
ALEXA PERLMUTTER
JASON K. ZUBATA
*Trial Attorneys*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation,
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4143
Email: jason.k.zubata@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | Civil Action No. 1:25-cv-00418-CJN |
| Johon Elias Suazo-Muller, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| Kristi Noem, Secretary, Department ) | |
| of Homeland Security, *et al.*, ) | |
| ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## DEFENDANTS' MOTION TO DISMISS AND
## <u>MEMORANDUM IN SUPPORT THEREOF</u>

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

BACKGROUND .................................................................................................................... 2

    I.      Detention and Removal of Individuals with Final Orders of Removal. ................. 2

    II.     Immigration Detention at NSGB .......................................................................... 5

LEGAL STANDARD ............................................................................................................ 7

ARGUMENT ........................................................................................................................ 8

    I.      Plaintiffs' claims are moot as they are neither detained at NSGB or
           otherwise in U.S. Custody ..................................................................................... 8

    II.     Plaintiffs lack standing to raise many of their allegations as they have not
           actually suffered or will imminently suffer those alleged injuries ...................... 10

    III.    Plaintiffs Fail to State a Constitutional Claim ...................................................... 11

          A.     Plaintiffs fail to state a Fifth Amendment claim ....................................... 12

                 i.      Plaintiffs fail to identify a qualifying liberty interest as to
                        their access to counsel that has been unfulfilled or
                        otherwise infringed upon .............................................................. 12

                 ii.     Plaintiffs fail to state a substantive due process claim ................. 15

          B.     Plaintiffs Fail to State a First Amendment Claim ..................................... 18

CONCLUSION..................................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abdullah v. Trump,*
  No. 25-5002, 2025 WL 914093 (D.C. Cir. Mar. 24, 2025) ...................................................... 8

*Abigail All. for Better Access to Developmental Drugs v. von Eschenbach,*
  495 F.3d 695, 702 (D.C. Cir. 2007) .................................................................................. 12

*Am. Immigration Lawyers Ass'n v. Reno,*
  199 F.3d 1352 (D.C. Cir. 2000) ........................................................................................ 3

*Am. Nat'l Ins. Co. v. FDIC,*
  642 F.3d 1137 (D.C. Cir. 2011) ........................................................................................ 7

*Amatel v. Reno,*
  156 F.3d 192 (D.C. Cir. 1998) ......................................................................................... 19

*Americans for Immigrant Just. v. Dep't of Homeland Sec.,*
  No. CV 22-3118 (CKK), 2023 WL 1438376 (D.D.C. Feb. 1, 2023) ........................... 15, 16, 19

*Arizonans for Official English v. Ariz.,*
  520 U.S. 43 (1997) ............................................................................................................ 8

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................... passim

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ....................................................................................................... 7, 8

*Block v. Rutherford,*
  468 U.S. 576 (1984) ............................................................................................... 12, 15, 16

*Brennan v. City of N.Y.,*
  No. 19-CV-02054 (NGG) (CLP), 2023 U.S. Dist. LEXIS 155576 (E.D.N.Y. Sep. 1, 2023) .. 11

*Clarke v. United States,*
  915 F.2d 699 (D.C. Cir. 1990) ......................................................................................... 10

*Container Corp. of America v. Franchise Tax Bd.,*
  463 U.S. 159 (1983) .......................................................................................................... 5

*Dep't of Homeland Sec. v. Thuraissigiam,*
  591 U.S. 103 (2020) ...................................................................................................... 3, 14

*Dep't of Navy v. Egan,*
  484 U.S. 518 (1988) ........................................................................................................ 17

*Dep't of State v. Munoz*,
  602 U.S. 899, (2024)..................................................................................... 12, 13

*Doe v. Kelly*,
  878 F.3d 710 (9th Cir. 2017) ........................................................................ 16

*Firewalker-Fields v. Lee*,
  58 F.4th 104 (4th Cir. 2023) ......................................................................... 20

*Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*,
  566 U.S. 318 (2012) ...................................................................................... 17

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
  528 U.S. 167 (2000)......................................................................................... 8

*Gul v. Obama*,
  652 F.3d 12 (D.C. Cir. 2011) ........................................................................ 8, 9

*Hatim v. Obama*,
  760 F.3d 54 (D.C. Cir. 2014) ........................................................................ 17

*Herbert v. Nat'l Acad. of Scis.*,
  974 F.2d 192 (D.C. Cir. 1992) ......................................................................... 7

*Hernandez-Carrera v. Carlson*,
  547 F.3d 1237 (10th Cir. 2008) ..................................................................... 14

*in re Guantanamo Bay Litig.*,
  577 F. Supp 2.d 143 (D.D.C. 2008)............................................................... 16

*Jennings v. Rodriguez*,
  583 U.S. 281 (2018)....................................................................................... 4, 13

*Jones v. North Carolina Prisoners' Labor Union, Inc.*,
  433 U.S. 119 (1977)....................................................................................... 21

*Kerry v. Din*,
  576 U.S. 86 (2015).................................................................................... 13, 15

*Kleindienst v. Mandel*,
  408 U.S. 753 (1972)....................................................................................... 18

*Las Americas Immigrant Advoc. Ctr. v. Wolf*,
  507 F. Supp. 3d 1 (D.D.C. 2020)................................................................... 13

*Lewis v. Cont'l. Bank Corp.*,
  494 U.S. 472 (1990)......................................................................................... 8

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992).............................................................................................. 7

*Lyon v. U.S. Immigr. & Customs Enf't,*
    171 F. Supp. 3d 961 (N.D. Cal. 2016) ................................................................. 19

*Mehmood v. United States AG,*
    808 F. App'x 911 (11th Cir. 2020) ...................................................................... 10

*Mejia v. Whitaker,*
    913 F.3d 482 (5th Cir. 2019) ............................................................................... 13

*Murphy v. Hunt,*
    455 U.S. 478 (1982).............................................................................................. 10

*Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.,*
    461 F. Supp. 2d 24 (D.D.C. 2006)..................................................................... 8, 21

*Nishimura Ekiu v. United States,*
    142 U.S. 651 (1892)........................................................................................ 14, 15

*Overton v. Bazzetta,*
    539 U.S. 126 (2003).............................................................................................. 20

*Papasan v. Allain,*
    478 U.S. 265 (1986)................................................................................................ 8

*Pension Benefit Guaranty Corporation v. LTV Corp.,*
    496 U.S. 633 (1990)................................................................................................ 4

*Procunier v. Martinez,*
    416 U.S. 396 (1974).............................................................................................. 19

*Reno v. Flores,*
    507 U.S. 292 (1993).............................................................................................. 12

*S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.,*
    2020 WL 3265533 (D.D.C. June 17, 2020)........................................................... 15

*Sharp v. Capitol City Brewing Co., LLC,*
    680 F. Supp. 2d 51 (D.D.C. 2010)......................................................................... 10

*Thomas v. Principi,*
    394 F.3d 970 (D.C. Cir. 2005) ................................................................................ 7

*Torres v. United States Dep't of Homeland Sec.,*
    411 F. Supp. 3d 1036 (C.D. Cal. 2019) ................................................................. 19

*Turner v. Safley,*
    482 U.S. 78 (1987) ............................................................................ 19, 20, 21

*United States ex rel. Knauff v. Shaughnessy,*
    338 U.S. 537 (1950) ................................................................................. 2, 15

*United States v. Sanchez-Gomez,*
    584 U.S. 381 (2018) ......................................................................................... 10

*Wardell v. Duncan,*
    470 F.3d 954 (10th Cir. 2006) ........................................................................ 20

*Washington v. Glucksberg,*
    521 U.S. 702 (1997) ................................................................................. 12, 13

*Zadvydas v. Davis,*
    533 U.S. 678 (2001) ......................................................................... 4, 5, 13, 15

**Statutes**

6 U.S.C. § 202(5) ................................................................................................ 2

8 U.S.C § 1231(b)(2) ........................................................................................ 14

8 U.S.C. § 1103(a)(3) ......................................................................................... 2

8 U.S.C. § 1158 .................................................................................................. 3

8 U.S.C. § 1182(a)(6)(C) .................................................................................... 3

8 U.S.C. § 1182(d)(5)(A) ................................................................................ 3, 4

8 U.S.C. § 1225(b)(1) ...................................................................................... 2, 4

8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ......................................................... 1, 3, 4, 13

8 U.S.C. § 1229a ......................................................................................... 3, 4, 14

8 U.S.C. § 1231(a) ..................................................................................... 1, 4, 14

8 U.S.C. § 1252(a)(1) .......................................................................................... 3

8 U.S.C. § 1252(a)(2)(B)(ii) ............................................................................... 1

**Regulations**

8 C.F.R. § 208.30(f) ................................................................................................................. 3

8 C.F.R. § 235.3(b)(4) .............................................................................................................. 3

**Other Authorities**

Protecting the American People Against Invasion, https://www.whitehouse.gov/presidential-
    actions/2025/01/protecting-the-american-people-against-invasion/ (Jan. 20, 2025) .................. 2

The White House, "Expanding Migrant Operations Center at Naval Station Guantanamo Bay to
    Full Capacity" (Jan. 29, 2025),
    https://www.whitehouse.gov/presidentialactions/2025/01/expanding-migrant-operations-
    center-at-naval-station-guantanamo-bay-to-fullcapacity/ ......................................................... 1

## INTRODUCTION

On January 29, 2025, the President directed the Secretary of Defense and the Secretary of Homeland Security to take all appropriate actions to expand the Migrant Operations Center at the Naval Station Guantanamo Bay (NSGB) to allow for the housing of "high-priority criminal aliens unlawfully present in the United States."[1] Since that time, groups of immigration detainees who have been ordered removed from the United States have been moved to NSGB in route to completing their removals. These detainees are all subject to final orders of removal, have not been granted any relief or protection from removal, and are at NSGB for staging for final removal. ECF No. 15-1, Declaration of Juan Agudelo at ¶ 10. Accordingly, their detention is authorized by the Immigration and Nationality Act (INA). *See* 8 U.S.C. §§ 1225(b)(1)(B)(iii)(IV) (authorizing detention pending removal on an expedited removal order); 1231(a)(2), (6) (authorizing detention pending removal on removal orders entered following "full" removal proceedings). The Department of Homeland Security (DHS) has broad discretion to decide where to house immigration detainees when staging, finalizing, and implementing a removal operation. *See* 8 U.S.C. § 1252(a)(2)(B)(ii), (f), (g). Nonetheless, Plaintiffs—two immigration detainees who were staged at NSGB for a period of less than sixty days and have since departed—bring this putative class action on behalf of all immigration detainees who are or may be transferred to NSGB. Among their many requests, Plaintiffs seek unrestricted access to counsel and communications with family, in-person visits to an overseas military base, and extended access to telephone communications generally. ECF No. 34, Am. Compl. ¶¶ 25-36.

---

[1] The White House, "Expanding Migrant Operations Center at Naval Station Guantanamo Bay to Full Capacity" (Jan. 29, 2025), https://www.whitehouse.gov/presidentialactions/2025/01/expanding-migrant-operations-center-at-naval-station-guantanamo-bay-to-fullcapacity/.

Plaintiffs' Amended Complaint should be dismissed for three reasons. First, Plaintiffs' claims are moot. Since the Amended Complaint was filed, both Plaintiffs have been removed, are no longer detained in U.S. custody, *see* ECF No. 42-2, Declaration of Deputy Field Office Director Jesus Ramos ("Ramos Decl.") at ¶¶ 15, 26, and do not have any reasonable possibility of being once again subjected to the challenged policies, procedures, or conditions. Neither the collateral consequences nor the capable-of-repetition-yet-evading-review exceptions to mootness apply. Second, Plaintiffs lack standing to challenge a majority of the alleged violations as they have not actually suffered or will imminently suffer said injuries. Finally, Plaintiffs fail to state a constitutional claim as they have not identified a qualifying liberty interest under the Fifth Amendment or a recognized First Amendment right that they are entitled to, yet have not had fulfilled. For these reasons, Plaintiffs' Amended Complaint should be dismissed.

## BACKGROUND

### I.    Detention and Removal of Individuals with Final Orders of Removal.

The Executive Branch has extensive constitutional authority in the field of immigration, and Congress has further conferred broad statutory discretion over the administration and enforcement of the nation's immigration laws. *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950); *see, e.g.*, 6 U.S.C. § 202(5); 8 U.S.C. § 1103(a)(3). Prior to January 20, 2025,[2] applicants for admission who were intercepted at entry or shortly after unlawfully entering the United States could be subject to an expedited process to remove them from the United States under 8 U.S.C. § 1225(b)(1) as described herein. Under this process—known as expedited removal—applicants for admission arriving in the United States (as designated by the Secretary of

---

[2] *See* Protecting the American People Against Invasion, https://www.whitehouse.gov/presidential-actions/2025/01/protecting-the-american-people-against-invasion/ (Jan. 20, 2025).

Homeland Security) who entered illegally and lack valid entry documentation or make material misrepresentations shall be "order[ed] . . . removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under [8 U.S.C. § 1158] or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i); *see* 8 U.S.C. § 1182(a)(6)(C), (a)(7); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107-110 (2020) (discussing expedited removal); *Am. Immigration Lawyers Ass'n v. Reno* (*AILA*), 199 F.3d 1352, 1354-55 (D.C. Cir. 2000) (same). They will remain subject to a final order of expedited removal if they do not indicate a fear of return or otherwise express an intent to apply for asylum, or if they indicate fear or an intent to apply for asylum but are unable to show that the fear is credible. *See* 8 U.S.C. §§ 1225(b)(1)(A)(ii), 1225(b)(1)(B)(v); 8 C.F.R. § 235.3(b)(4). Individuals subject to a final order of expedited removal can be lawfully detained until they are removed from the United States. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Individuals subject to final orders of expedited removal have very limited due process rights with respect to their admission to the United States. *See Thuraissigiam*, 591 U.S. at 138-40.

If the applicant for admission indicates a fear of return and the asylum officer determines that they have a credible fear, the officer will refer them to the immigration court for removal proceedings under 8 U.S.C. § 1229a. 8 U.S.C. § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.30(f). These removal proceedings provide more extensive procedures than expedited removal, *compare* 8 U.S.C. § 1229a *with* § 1225(b)(1), including a right to appeal to the Board of Immigration Appeals and a federal appellate court. 8 U.S.C. § 1252(a)(1). An applicant for admission who demonstrates a credible fear "shall be detained for further consideration of the application for asylum."[3] 8 U.S.C.

---

[3] The only exception to § 1225(b)(1)'s detention mandate is found in 8 U.S.C. § 1182(d)(5)(A), which allows DHS to parole applicants for admission into the United States for "urgent

§ 1225(b)(1)(B)(ii); *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) ("Read most naturally, §§ 1225(b)(1) and (b)(2) . . . mandate detention of applicants for admission until certain proceedings have concluded.").

For anyone with a final order of removal entered following removal proceedings held under 8 U.S.C. § 1229a, Congress has authorized detention under 8 U.S.C. § 1231(a) while the government works to execute the removal order. Section 1231(a)(6), as interpreted by the Supreme Court in *Zadvydas v. Davis*, limits post-final-order detention to the period reasonably necessary to accomplish removal. 533 U.S. 678, 699-701 (2001). The Court determined that six months is a presumptively reasonable period of time to allow the government to complete removal after the removal period has commenced. *Id*. at 701. Once the six-month period has lapsed, and "the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, [then] the Government must respond with evidence sufficient to rebut that showing." *Id*.

"This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. In making this assessment, the Supreme Court has counseled courts hearing immigration habeas claims to apply "[o]rdinary principles of judicial review" in order to "give expert agencies decisionmaking leeway in matters that invoke their expertise" and "recognize [the] Executive Branch['s] primacy in foreign policy matters." *Id.* at 700 (citing *Pension Benefit Guar. Corp. v. LTV Corp*., 496 U.S. 633, 651-652 (1990); *Container Corp. of*

---

humanitarian reasons or significant public benefit." *See Jennings*, 583 U.S. at 300 (holding that the existence of § 1182(d)(5)(A)'s "express exception to detention implies that there are no other circumstances under which aliens detained under § 1225(b) may be released").

*America v. Franchise Tax Bd*., 463 U.S. 159, 196 (1983)). Specifically, the Supreme Court instructed habeas courts to "listen with care when the Government's foreign policy judgments, including, for example, the status of repatriation negotiations, are at issue, and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise." *Zadvydas*, 533 U.S. at 700.

## II.    Immigration Detention at NSGB

On January 29, 2025, the President issued a Memorandum ordering DHS and the Department of Defense (DoD) to take all necessary steps to expand the Migrant Operations Center in NSGB to allow for the housing of "high-priority criminal aliens unlawfully present in the United States."[4] DoD acted swiftly to comply with the President's Order by creating the Joint Task Force Southern Guard (JTF-SG). ECF No. 14-3, Declaration of Col. Jennifer Venghaus (Venghaus Decl.) at ¶¶ 3, 6-10. In addition to JTF-SG, NSGB hosts a variety of missions including maritime security, humanitarian assistance, and joint operations, including Joint Task Force Guantanamo (JTF-GTMO), which is the JTF responsible for the safe and humane custody of law-of-war detainees.[5] Venghaus Decl. at ¶ 3. NSGB's unique geographic location provides strategic advantages, enhancing U.S. defense capabilities in the region and serving as a critical forward operating base for various military and humanitarian activities. Venghaus Decl. at ¶ 4.

---

[4] *See n*ote 1.
[5] In addition to immigration detainees, NSGB currently confines law-of-war detainees. At times, it also houses migrants interdicted at sea with humanitarian protection concerns, who stay at NSGB on a voluntary basis rather than returning to their countries of origin. These populations are outside the scope of the present dispute.

The detainees are housed in two areas of the base, with the higher-threat immigration detainees housed in Camp VI[6] and the lower-threat detainees housed in and around the Migrant Operations Center (MOC). Venghaus Decl. at ¶¶ 11-14.

DHS has developed standards and procedures applicable to immigration detainees at NSGB. Ramos Decl. ¶¶ 27-52; Venghaus Decl. ¶¶ 21-22. DHS has posted written notice, in English and Spanish, of the procedure for detainees to request to place a private, unmonitored telephone call to counsel or speak with a representative at the American Bar Association ("ABA") to find legal representation. Venghaus Decl.¶ 17, 21; Ramos Decl. ¶31-32. For detainees housed at Camp VI, counsel calls are conducted in an adjacent building, Venghaus Decl. ¶ 23, which has eight telephones in eight separate rooms, each with a table and chair. Ramos Decl. ¶ 33. During the calls, guards maintain line of sight through the use of video monitoring (which does not include sound). ECF No. 42-3, Declaration of Lieutenant Colonel Robert Green ("Green Decl.") ¶ 17. The building is a short walk from the main Camp VI building and requires two escorts for each Camp VI detainee. Venghaus Decl.¶ 23. Camp VI is undergoing routine maintenance that has resulted in brief interruptions in the operation of the phone lines. Green Decl. ¶ 16. Any missed calls are rescheduled, and phone services continue at the alternate building at Camp VI. *Id.* For detainees housed at the MOC, counsel calls occur from a private room, where up to five detainees can make 20-minute calls per day. Ramos Decl. ¶ 34. Detainees are permitted to make regular family calls. Ramos Decl. ¶ 36-37; Green Decl. ¶ 17.

Retained counsel for the detainees are also able to make requests for phone calls to their clients and transmit documents electronically by email pursuant to ICE procedures. Venghaus

---

[6] While the agency declaration refers to Camp VI as the Windward Housing Facility, Ramos Decl. at ¶ 2, in this pleading, Defendants have returned to calling it Camp VI.

Decl. ¶ 25; Green Decl. ¶ 19; Ramos Decl. ¶ 27-28, 50. Detainees have the ability to send and receive legal mail. Venghaus Decl. ¶ 27; Ramos Decl. ¶ 51. DHS and DoD will continue to assess the operational needs of the mission and make adjustments to procedures as needed. At this time, requests for in-person visits with immigration detainees are not being accommodated due to extensive logistical challenges with such visits, the potential need for counsel to possess security clearances, the anticipated short-term stay of immigration detainees, and the potential for a very high volume of counsel to request to conduct such visits. Ramos Decl. ¶ 35. The feasibility and necessity of authorizing counsel travel to NSGB for in-person visits between hired attorneys and their clients are being reevaluated as the mission develops. *Id.*

## LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). A court may examine materials outside the pleadings as it deems appropriate to resolve the question of its jurisdiction. *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Under Rule 12(b)(6), the Court may dismiss a Complaint where a plaintiff fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006) (Friedman, J.). However, a court is not required to accept conclusory allegations or unwarranted factual deductions as true. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, the focus is on the language in the complaint and whether that sets forth sufficient factual allegations to support a plaintiff's claims for relief.

## ARGUMENT

### I.  Plaintiffs' claims are moot as they are neither detained at NSGB or otherwise in U.S. custody.

Plaintiffs' claims are not justiciable because both Plaintiffs have departed from NSGB and are no longer in U.S. custody, rendering their claims moot. *See Gul v. Obama*, 652 F.3d 12, 15 (D.C. Cir. 2011) (affirming the district court's decision finding that the petitioner's habeas claims were moot once they were no longer in U.S. custody); *see also Abdullah v. Trump*, No. 25-5002, 2025 WL 914093 at *1 (D.C. Cir. Mar. 24, 2025) (affirming *Gul*'s holding in finding "Appellant's habeas case has been mooted by his transfer to the custody of a foreign sovereign").

Mootness is "the doctrine of standing set in a time frame." *Friends of the Earth, Inc. v. Laidlaw Env't. Servs., Inc.*, 528 U.S. 167, 189 (2000) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22 (1997)). To present a live case or controversy to avoid dismissal on mootness grounds, the plaintiff "must continue to have a 'personal stake in the outcome' of the lawsuit." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 478 (1990).

Here, simply put, both Plaintiffs' claims are moot because they are no longer in U.S. custody or subject to detention, including the challenged conditions, at NSGB. *See Gul*, 652 F.3d at 21 (finding that "[a]lthough the appellants made the necessary showing when they filed their petitions—for they were then detained at NSGB and so alleged—once they left U.S. custody that [requisite jurisdictional] showing no longer sufficed" and finding there is no presumption of "continuing injury" and that "the burden of demonstrating jurisdiction is properly borne by the [individual]"). Through their Amended Complaint, Plaintiffs seek, among their many requests, unrestricted access to counsel and communications with family, in-person visits, and extended access to telephone communications generally. *See* Am. Compl. ¶¶ 67-73. Now that both Plaintiffs have departed to their designated country of removal and are not in U.S. custody, they have no injury that can be remedied with the relief sought in the Complaint.

Nor does the record demonstrate that a mootness exception applies to Plaintiffs' claims. While Plaintiffs' Amended Complaint does not invoke mootness exceptions in the foreseeable case—as now confirmed, *see* Ramos Decl. ¶¶ 15, 26—that the named Plaintiffs were removed prior to the resolution of their claims, even if raised in their opposition to Defendants' motion to dismiss, they would not be able to maintain this suit under the collateral consequences or capable-of-repetition doctrines. Under the collateral consequences doctrine, where a former detainee has been removed, they must make an actual showing that the previously challenged detention continues to burden the individual with "concrete injuries." *Gul,* 652 F.3d at 17. As the D.C. Circuit noted in *Gul*, potential immigration consequences that flow from removal but themselves are not challenged in the operative suit cannot be concrete injuries ameliorated by an order granting relief. *Id.* at 19. The same holds true here where Plaintiffs' challenges do not arise from their immigration

proceedings, but rather, they are exclusively challenging access to counsel available at and conditions in their (now former) detention facility at NSGB.

Plaintiffs' claims fare no better under the capable-of-repetition doctrine. This mootness exception only applies if, among other things, "there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Clarke v. United States*, 915 F.2d 699, 704 (D.C. Cir. 1990) (en banc) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (alteration in original)); *Mehmood v. United States AG*, 808 F. App'x 911, 914 (11th Cir. 2020) ("in a non-class action like this one, that exception applies only when, among other things, 'there is a reasonable expectation that the *same complaining party* will be subjected to the *same action again*.' [*United States v. Sanchez-Gomez*, 584 U.S. 381, 390 (2018)] (emphasis added)").[7] As mentioned above, there is no likelihood of an actual or imminent injury to Plaintiffs since both have departed NSGB and are no longer in U.S. custody. Ramos Decl. ¶¶ 15, 26.

Accordingly, the removed Plaintiffs' claims are moot, they do not allege that their claims are collateral consequences of their removal or otherwise capable of repetition, and therefore, this Amended Complaint should be dismissed as moot.

## II. Plaintiffs lack standing to raise many of their allegations as they have not actually suffered or will imminently suffer those alleged injuries.

Plaintiffs also lack standing to the extent they challenge injuries they themselves have not experienced, and given their removal, will not experience in the future. *See Sharp v. Capitol City Brewing Co., LLC*, 680 F. Supp. 2d 51, 57 (D.D.C. 2010) (requiring Plaintiff to have suffered actual or imminent injury and disallowing claiming injury on behalf of others).

---

[7] Defendants separately address why Plaintiffs' claims are moot as it pertains to their class action motion in Defendants' class certification opposition. *See* ECF No. 42 at 9-14.

First, neither named Plaintiff alleged suffering: (1) requests from their attorneys going unanswered and not being made available at the scheduled times; (2) not having documents delivered to them or returned to counsel; (3) being denied daily calls with family; (4) issues with the ICE Detainee Locator; nor (5) being handcuffed and chained during calls. *Compare* Am. Compl. ¶¶ 26, 30, 31, 33, 34, 35, 36 *with* Suazo-Muller Decl. and Lopez Decl. Indeed, Suazo-Muller acknowledges having approximately 20 calls with his family. Suazo-Muller Decl. at ¶ 10. Lopez similarly acknowledges the availability of daily calls to family and confirms the presence of the posted notices regarding counsel calls. Lopez Decl. at ¶¶ 7-8. Neither Plaintiff alleges that they were denied the opportunity to schedule an in-person legal meeting or that they were unable to obtain necessary documents from their lawyers. *See generally* Suazo-Muller Decl. and Lopez Decl.

Plaintiffs also lack standing to challenge the policies and practices at Camp VI, *see* Ramos Decl. ¶¶ 13, 22, as they were not detained at that facility. *See Brennan v. City of N.Y.*, No. 19-CV-02054 (NGG) (CLP), 2023 U.S. Dist. LEXIS 155576, at *32 (E.D.N.Y. Sep. 1, 2023) (finding "Plaintiffs cannot demonstrate standing to enjoin a current ongoing injury" where they were not detained at the facility where such injury is alleged to be occurring).

Properly stripped of these improper challenges, Plaintiffs are left only with the bare-bones allegations contained in the named Plaintiffs' declarations which are, for the reasons discussed below, insufficient to support either the First Amendment or Due Process claim.

### III.    Plaintiffs Fail to State a Constitutional Claim.

Plaintiffs allege violations of their Fifth and First Amendment rights, Am. Compl ¶¶ 52-64, but they neither identify a qualifying liberty interest under the Fifth Amendment that has not been

satisfied nor any infringement of their First Amendment rights. Therefore, Plaintiffs fail to state a claim under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678.

A.     **Plaintiffs fail to state a Fifth Amendment claim.**

Plaintiffs first allege a violation of their Fifth Amendment Right to Due Process predicated on "experienc[ing] a denial of access to counsel and communication with their families." Am. Compl. ¶ 57-64. They fail to state a claim for two reasons: (1) contrary to Plaintiffs' overstatement, the due process protections afforded to immigration detainees are limited and have already been satisfied here, such that Plaintiffs fail to raise an unfulfilled or infringed upon qualifying liberty interest, *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997); and (2) they do not allege facts establishing that the restrictions placed on their telecommunications are punitive, not rationally related to a legitimate government purpose, nor excessive. *See Block v. Rutherford*, 468 U.S. 576, 583-84 (1984).

i.     **Plaintiffs fail to identify a qualifying liberty interest as to their access to counsel that has been unfulfilled or otherwise infringed upon.**

Plaintiffs have not identified a qualifying liberty interest to trigger due process protections under the Fifth Amendment. A threshold requirement for establishing a due process violation is identifying a liberty interest. *Abigail All. for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695, 702 (D.C. Cir. 2007) (en banc) (citing *Glucksberg*, 521 U.S. at 720-21). The due process clause protects only "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." *Dep't of State v. Munoz*, 602 U.S. 899, 910, (2024) (quoting *Glucksberg*, 521 U.S. at 720-21). Thus, this Court's "substantive due process analysis must begin with a careful description of the asserted right." *See Reno v. Flores*, 507 U.S. 292, 302 (1993) (noting that liberty interests are narrowly defined); *Glucksberg*, 521 U.S. at 720.

In their Amended Complaint, Plaintiffs define their liberty interest as the right to "pursu[e] [the] legal options available to them." Am. Compl. ¶ 62. This falls short of the Supreme Court's instruction that the liberty interests must be carefully described. *Glucksberg*, 521 U.S. at 720; *see also Dep't of State v. Muñoz*, 602 U.S. at 910 (narrowing alien's liberty interest from the "fundamental right of marriage" to "the right to reside with her noncitizen spouse in the United States"); *Kerry v. Din*, 576 U.S. 86, 95 (2015) (finding no *implied* liberty interest in marriage). Here, recast with the proper careful description, Plaintiffs merely claim, without support, that providing access to counsel for aliens with final orders of removal during the effectuation of their removal is a fundamental liberty interest.[8]  But this is not a right "deeply rooted" in the history and tradition of the nation for two reasons.

First, aliens with final orders of removal have never possessed the same due process protections as individuals applying for relief or protection as a part of removal proceedings. Due process protections "may vary depending on status and circumstance[s]." *Zadvydas*, 533 U.S. at 694*; Jennings*, 583 U.S. at 314 (noting that due process claims "call[] for such protections as the situation demands" (internal quotation and citation omitted)). And for certain classes of aliens, "claims of [due process] constitutional violations . . . [are] not always fully available[.]" *Las Americas Immigrant Advoc. Ctr. v. Wolf*, 507 F. Supp. 3d 1, 39 (D.D.C. 2020), *dismissed sub nom. Las Americas Immigrant Advoc. Ctr. v. Mayorkas*, No. 20-5386, 2024 WL 3632500 (D.C. Cir.

---

[8] And to the extent that this interest is meant to encompass the right to apply for any specific immigration relief or status, filing a visa application, motion to consider, and motion to reopen are not constitutionally protected rights. *See Munoz*, 602 U.S. at 908 (noting aliens have no constitutional right of entry to the U.S.); *Mejia v. Whitaker*, 913 F.3d 482, 490 (5th Cir. 2019) (holding that there is no liberty interest exists in a motion to reopen).  And if Plaintiffs attempt to allege a procedural Due Process injury regarding their right to apply for any particular immigration benefit, that claim remains factually underdeveloped; they allege no facts that they want to apply or have been prevented from applying for any statutory or regulatory benefits.

Aug. 1, 2024); *Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1254 (10th Cir. 2008) ("[I]t is not at all clear that removable aliens benefit from precisely the same advantages of due process as do citizens or lawful permanent resident aliens."). On the spectrum of due process protections, aliens who have been through proceedings that determined their inadmissibility, 8 U.S.C. §§ 1229a, 1231(a), do not benefit from the same protections as those in this country lawfully. *See Hernandez-Carrera*, 547 F.3d at 1254. And aliens who underwent expedited proceedings cannot "claim any greater rights under the Due Process Clause" than those statutorily provided by Congress. *Thuraissigiam*, 591 U.S. at 107; *see e.g.*, 8 U.S.C. § 1225(b)(1)(A)(i) (authorizing asylum officers to remove aliens "without further hearing or review"); 8 U.S.C. § 1225(b)(1)(B)(iv) (allowing aliens in expedited removal proceedings "who [are] eligible for [a credible fear] interview" to consult with a person of their choosing prior to their interview). Thus, as is the case here, Plaintiffs (who have already undergone proceedings to determine their inadmissibility and received final orders of removal) overstate the constitutional protections they possess.

Second, Congress has proscribed that when an arriving alien is found inadmissible, he "shall . . . [be] removed from the United States without further hearing or review." 8 U.S.C. § 1255(b)(1)(A)(i); 8 U.S.C. § 1225(b)(1)(B)(iv) (allowing for consultation prior to reasonable fear interview). By being detained at a U.S. staging area during the effectuation of their removal orders, Plaintiffs are "on the threshold" of removal, just as an alien is "on the threshold" of entry when he is detained after arriving at a United States port. *Thuraissigiam*, 591 U.S. at 140; 8 U.S.C § 1231(b)(2). Supreme Court precedent dating back to the nineteenth century is instructive on this threshold point and the Court has reaffirmed that, when it comes to arriving aliens, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." *Thuraissigiam*, 591 U.S. at 138 (citing *Nishimura Ekiu v. United States*, 142

U.S. 651, 660 (1892)); *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950). Plaintiffs are not entitled to robust access to counsel to pursue legal action during the effectuation of their removal orders such that they have a liberty interest that is "deeply rooted" in the history and tradition of the nation. *See Din*, 576 U.S. at 95 (finding no qualifying liberty interest when "there is a tradition denying the specific application of that general interest").

Given that Plaintiffs fail to articulate a viable qualifying liberty interest and possess only the limited due process protections afforded to aliens with final orders of removal, see *Zadvydas*, 533 U.S. at 694, on these facts, Defendants have provided aliens at NSGB with means by which to communicate with their attorneys and family members and obtain an attorney. *See* Am. Compl. ¶ 23. Indeed, Plaintiffs acknowledge that Defendants provided aliens at NSGB with "a method for attorneys to request scheduled phone calls with detainees; the creation of a flier providing information about a telephone hotline to the American Bar Association ("ABA") and the option to request an outgoing legal call." Am. Compl. ¶ 23. Ultimately, Defendants have provided Plaintiffs with constitutionally appropriate access to counsel.

### ii.    Plaintiffs fail to state a substantive due process claim.

Should the Court determine that Plaintiffs have articulated a qualifying liberty interest, they still have not established that the process provided was insufficient. To establish a due process violation in the detention context, Plaintiffs must show that "the challenged condition, practice, or policy constitutes punishment." *S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.*, No. CV 18-760 (CKK), 2020 WL 3265533, at *18 (D.D.C. June 17, 2020) (quoting *Block*, 468 U.S. at 583-84). This standard demands either a "subjective intent to punish" or "that a restriction is unreasonable or excessive relative to the Government's proffered justification." *Americans for Immigrant Just. v. Dep't of Homeland Sec.*, No. CV 22-3118 (CKK), 2023 WL 1438376, at *11 (D.D.C. Feb. 1,

2023); *Doe v. Kelly*, 878 F.3d 710, 714 (9th Cir. 2017). While restrictions on communications can constitute punitive detention where "alternative and less harsh methods are available," those methods must be able to "equally serve the institution's legitimate interests." *Americans for Immigrant Just.*, 2023 WL 1438376, at \*12. If the detainee can establish that his conditions of confinement are equal to or worse than conditions experienced by inmates convicted of a criminal offense, the burden shifts to the government to establish that the conditions are "rationally related to a non-punitive purpose and . . . not excessive." *Id.*

But, here, Plaintiffs do not allege facts in their Amended Complaint that establish the restrictions on their communication with attorneys and family members are punitive or excessive.[9] First, although Plaintiffs state, without explanation, that the restrictions on communication "are not rationally related to a non-punitive purpose," Am. Compl. ⁋ 59, such a conclusory statement is insufficient to satisfy the pleading standard. *Iqbal*, 556 U.S. at 678 ("[A] complaint [does not] suffice if it tenders naked assertion[s] devoid of 'further factual enhancement.'") (internal citation omitted). Throughout its briefing, Defendants have asserted legitimate governmental interests that justify the restrictions. For example, regarding telephone communication, calls are time-limited, and interruptions may occur due to "required maintenance, resource limitations, and security concerns." *See* Ramos Decl. ⁋ 33; Green Decl. ⁋ 16; *cf. Block*, 468 U.S. at 586 (recognizing "internal security of detention facilities is a legitimate governmental interest"). As to the determination that in-person visits are not presently accommodated, there are extensive logistical

---

[9] Plaintiffs cite *in re Guantanamo Bay Litig.*, 577 F. Supp 2.d 143, 160 (D.D.C. 2008) for the proposition that law-of-war detainees have mail delivered within four days. However, upon reviewing this case, undersigned counsel cannot find any stipulation stating that mail is delivered to the island within four days. Am. Compl ⁋ 34. Rather, the procedures stipulate that *when* incoming mail arrives, it will take no longer than four days to reach the detainee. 577 F. Supp 2.d at 159-60 (stating that within two days of delivery, the privilege team must give the envelop to the personnel at NSGB, who have two days to give it to the detainee).

challenges to establishing such visits like "the potential need for counsel to possess security clearances, the anticipated short-term stay of the [aliens], and the potential for a very high volume of counsel to request to conduct such visits." Ramos Decl. ⁋ 35. These restrictions on in-person visits are thus not excessive and are rationally related to a non-punitive purpose. As noted in other litigation, the Government has a reasonable interest in securing the detention and military facilities at this United States Navy base. *See Hatim v. Obama*, 760 F.3d 54, 59 (D.C. Cir. 2014) ("Prison security . . . is beyond cavil a legitimate governmental interest"); *see also Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 328 (2012) ("The task of determining whether a policy is reasonably related to legitimate security interests is peculiarly within the province and professional expertise of corrections officials."). To the extent that immigration detainees are at NSGB for only a short period prior to removal, in-person access provides little additional benefit and adds significant costs, obstacles, and security concerns to facilitate. Ramos Decl. ⁋ 33-35. Finally, family calls are monitored by staff "to ensure that no information pertaining to the security, terrain, or facility details are divulged," which is a reasonable limitation given the national security concerns that could arise in sharing the specifications of a U.S. Navy base. *See, e.g., Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988) (recognizing the government's "compelling interest in withholding national security information from unauthorized persons") (citation omitted).

Given that detainees are able to request calls with legal counsel if represented, able to call the American Bar Association Information Line for a legal referral if they are not represented, and able to have regular calls with family members, and that any restrictions are reasonably related to the government's interest in maintaining the military operations onsite, they fail to state a substantive due process violation.

B.      **Plaintiffs Fail to State a First Amendment Claim.**

Plaintiffs also assert violations of their First Amendment rights to "hire, consult, and communicate with an attorney" and "communicat[e] and associate[e] with family members." Am. Compl. ¶ 52-56. But Plaintiffs' conclusory allegations fail as a matter of law and do not pass muster in light of their repeated communications with counsel and with family and friends.

First, Plaintiffs' alleged First Amendment violation fails as a matter of law because when the Executive exercises its delegated power to exclude aliens "on the basis of a facially legitimate and bona fide reason, the courts will neither look beyond the exercise of that discretion, nor test it by balancing its justification" against the First Amendment. *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972) (finding no First Amendment violation arising from denial of visa application). As described, *supra* III.A.ii, Plaintiffs do not acknowledge the technological, logistical, and resource limitations impacting their telecommunications while stationed briefly at NSGB as the government effectuates their removal orders. Ramos Decl. ¶ 33; Green Decl. ¶ 16. These concerns have resulted in the implementation of limitations on the frequency and length of attorney and family communications for immigration detainees. Under *Mandel*, this Court need not "look beyond" those reasons or "balance" them against Plaintiff's asserted First Amendment interests. 408 U.S. at 770.

Second, Plaintiffs' claims nevertheless lack merit because the restrictions imposed on aliens detained at NSGB are reasonable. Under the Supreme Court's test articulated in *Turner v. Safley*, courts will uphold detention regulations as long as they are "reasonably related to legitimate penological interests," considering (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates,

18

and on the allocation of prison resources generally"; and (4) "the absence of ready alternatives."

482 U.S. 78, 107 (1987).[10] In applying the *Turner* test, the D.C. Circuit has recognized that the

first factor "looms especially large" such that it "directs courts to uphold a regulation, even one

circumscribing constitutionally protected interests, so long as it is 'reasonably related to legitimate

penological interests.'" *Amatel v. Reno*, 156 F.3d 192, 196 (D.C. Cir. 1998). In analyzing these

factors collectively, the Court must undertake "careful analysis of the legitimate requirements" of

the specific environment (i.e., where they are being detained) to determine whether the challenged

regulations are reasonable. *Procunier v. Martinez*, 416 U.S. 396, 410 (1974).

The first, and arguably determining, *Turner* factor weighs heavily in the government's

favor. Plaintiffs do not allege facts in their Amended Complaint to support their claim that the

restrictions on their communication with attorneys and family members are unreasonable. *Iqbal*,

556 U.S. at 678. Nor have Plaintiffs acknowledged the legitimate technological, logistical, and

resource limitations impacting their telecommunications while stationed briefly at NSGB. Ramos

Decl. ⁋ 33; Green Decl. ⁋ 16. Indeed, these limitations imposed at NSGB are reasonable in light

of the secure activities being carried out at this United States Naval base, the high volume of

detainees entering and exiting the premise, and the technological limitations on the island. Ramos

Decl. ⁋ 33, 35; Green Decl. ⁋ 16. To ensure these limitations do not improperly limit

telecommunications, however, Defendants have established protocols to ensure Plaintiffs can

speak via telephone to their attorneys and their families and contact the ABA hotline in case of the

---

[10] While this test was established in the context of prisoners' rights, courts have used *Turner*'s
reasonableness test to assess restrictions to immigration detainees' rights. *See e.g.*, *Ams. for
Immigrant Just. v. U.S. Dep't of Homeland Sec.*, No. CV 22-3118 (CKK), 2023 WL 1438376, at
*13 (D.D.C. Feb. 1, 2023) (applying *Turner* in the context of ICE detention); *Lyon v. U.S. Immigr.
& Customs Enf't*, 171 F. Supp. 3d 961, 985 (N.D. Cal. 2016) (same) *Torres v. United States Dep't
of Homeland Sec.*, 411 F. Supp. 3d 1036, 1067 (C.D. Cal. 2019) (same).

need for legal referrals if unrepresented, which, as explained above, are reasonable, considering the government's interest in maintaining a secure facility. And in cases of telecommunication interruptions, Defendants have acted swiftly to resume access and reschedule any phone calls missed. Ramos Decl. ¶ 16.

Additionally, notwithstanding that Plaintiffs would prefer expanded means of communication, the second *Turner* factor also weighs in the government's favor. 482 U.S. at 107. Indeed, although Plaintiffs challenge the lack of in-person visitation and allege (despite not having endured themselves) unreliable document exchange,[11] Am. Compl. ⁋ 25, 33, those allegations do not infringe upon their First Amendment rights when they can still speak with their attorneys on the phone and receive documents by mail. Am. Compl. ⁋ 23, 34. Indeed, as the Supreme Court has held, "[a]lternatives . . . need not be ideal, however; they need only be available." *Overton v. Bazzetta*, 539 U.S. 126, 135 (2003) (finding that alternatives to visitation including letter writing are of "sufficient utility" that they constitute alternative means of exercising First Amendment rights"); *see Firewalker-Fields v. Lee*, 58 F.4th 104, 117 (4th Cir. 2023) (emphasizing that "the level of generality matters," as the "pertinent question is not whether the inmates have been denied specific [means of exercising the right], but whether, more broadly, the prison affords the inmates opportunities to exercise [it]"); *Wardell v. Duncan*, 470 F.3d 954, 961-62 (10th Cir. 2006) ("[E]ven if not the "best method" from the inmate's point of view, if another means of exercising the right exists, the second *Turner* factor does not undercut the challenged restriction."). The same is true for Plaintiffs' allegations regarding the "[m]isleading ICE detainee locator information." Am. Comp. ⁋ 35. To the extent that Plaintiffs argue that their First Amendment rights are implicated by

---

[11] Since May 6, 2025, Defendants have not received any requests for delivery of legal documents to aliens at NSGB. Ramos Decl. ⁋ 52; *see also* Green Decl. ⁋ 19.

the alleged problems with the locator—a connection that is factually and analytically underdeveloped in the Amended Complaint—that they can inform their attorneys and families of their location via telephone call undercuts the relevance of this allegation. *Nat'l Postal Pro. Nurses*, 461 F. Supp. 2d at 28 ("[T]he Court need not accept inferences drawn by plaintiff if those inferences are unsupported by facts alleged in the complaint.").

The third and fourth *Turner* factors also favor the government. Indeed, the Supreme Court has repeatedly acknowledged the great deference owed to detention officials. *Turner*, 482 U.S. at 107; *see also Jones v. North Carolina Prisoners' Labor Union, Inc*., 433 U.S. 119, 126 (1977) ("Because the realities of running a penal institution are complex and difficult we have also recognized the wide-ranging deference to be accorded the decisions of prison administrators."). This Court must also consider the "significant 'ripple effect'" on fellow detainees caused by accommodating the right asserted. *Turner*, 482 U.S. at 90. For example, by providing Plaintiffs with increased access to telecommunications, other immigration detainees will have less time to speak with their attorneys and families. And since Plaintiffs are also seeking class-wide relief, *see* ECF No. 35, requiring the government to provide increased telecommunications access to *every* detained alien will strain resources past their limit. Ramos Decl. ⁋ 33-35 (stating that there are eight telephone lines at Camp VI and one private phone room at the MOC and noting resource limitations).

On balance, the *Turner* facts all weigh in the government's favor and this Court should uphold the detention regulations Defendants have put in place at NSGB for immigration detainees. Accordingly, Plaintiffs failed to allege facts sufficient to state a claim under the First Amendment and this claim should be dismissed.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss this action. A proposed order is enclosed herewith.

Dated: June 16, 2025                    Respectfully submitted,
        Washington, DC

                                        BRETT A. SHUMATE
                                        Assistant Attorney General

                                        DREW C. ENSIGN
                                        *Deputy Attorney General*

                                        SARAH WILSON
                                        *Assistant Director*

                                        DEVIN BARRETT
                                        *Senior Litigation Counsel*

                                        MALCOLM I. MCDERMOND
                                        ALEXA PERLMUTTER
                                        *Trial Attorneys*

                                        By: */s/  Jason K. Zubata*
                                            JASON K. ZUBATA
                                            Trial Attorney
                                            Office of Immigration Litigation
                                            U.S. Department of Justice, Civil Division
                                            P.O. Box 868, Ben Franklin Station
                                            Washington D.C. 20044
                                            Telephone: (202) 532-4143
                                            Email: Jason.k.zubata@usdoj.gov

                                        *Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that June 16, 2025, I electronically filed this brief with the Clerk of the

Court for the United States Court of for the District of Columbia by using the CM/ECF system.

Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF

system.

By: */s/ Jason K. Zubata*
     Jason K. Zubata
     Trial Attorney
     Office of Immigration Litigation
     U.S. Department of Justice, Civil Division