## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHON ELIAS SUAZO-MULLER, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, on behalf of themselves and all others similarly situated, | ) ) ) | |
| | ) | No. 1:25-cv-418-CJN |
| v. | ) | |
| | ) | |
| KRISTI NOEM, Secretary of Homeland Security, in her official capacity, *et al.*, | ) ) ) | |
| | ) | |
| *Defendants*. | ) | |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 1

    I.    Factual Background ................................................................................. 1

    II.    Legal Background ................................................................................... 2

ARGUMENT ....................................................................................................... 4

    I.    The Case Is Not Moot, Because the Class's Claims Are Inherently Transitory............. 4

    II.    The Proposed Class Satisfies Rule 23(a)'s Commonality Requirements. ...................... 8

    III.    The Proposed Class Satisfies Rule 23(a)'s Typicality Requirements.......................... 15

    IV.    The Named Plaintiffs Are Adequate Class Representatives Under Rule 23(a)............ 16

    V.    Certification of the Class Is Proper Under Rule 23(b)................................................. 17

        A.    Certification of the Class Is Proper Under Rule 23(b)(1)(A). ...................................... 17

        B.    Certification of the Class Is Proper Under Rule 23(b)(2). ........................................... 20

    VI.    The Proposed Class Is Clearly Ascertainable and Is Not Overbroad. ......................... 23

CONCLUSION.................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Aamer v. Obama*,
  742 F.3d 1023 (D.C. Cir. 2014) ................................................................................ 19

*Ams. for Immigrant Just. v. U.S. Dep't of Homeland Sec.*,
  No. 22-3118, 2023 WL 4364096 (D.D.C. July 6, 2023) ........................................... 11

*Ams. for Immigrant Just. v. U.S. Dep't of Homeland Sec.*,
  No. 22-3118, 2023 WL 1438376 (D.D.C. Feb. 1, 2023) ....................................... 3, 19

*Ashker v. Governor of State of Cal.*,
  No. C 09-5796 CW, 2014 WL 2465191 (N.D. Cal. June 2, 2014) ............................ 18

*Berry v. Baca*,
  226 F.R.D. 398 (C.D. Cal. 2005) .............................................................................. 18

*Bijeol v. Benson*,
  513 F.2d 965 (7th Cir. 1975) .................................................................................... 20

*Block v. Rutherford*,
  468 U.S. 576 (1984) ..................................................................................................... 3

*Bynum v. D.C.*,
  214 F.R.D. 27 (D.D.C. 2003) ...................................................................................... 9

*C.G.B. v. Wolf*,
  464 F. Supp. 3d 174 (D.D.C. 2020) .......................................................................... 11

*Cal Coal. for Women Prisoners v. United States*,
  723 F. Supp. 3d 712 (N.D. Cal. 2024) ...................................................................... 13

*D.A.M. v. Barr*,
  474 F. Supp. 3d 45 (D.C. Cir. 2020) ............................................................... 4, 14, 21

*D.B.U. v. Trump*,
  --- F.R.D. ----, 2025 WL 1304198 (D. Colo. May 6, 2025) ..................................... 19

*Damus v. Nielsen*,
  313 F. Supp. 3d 317 (D.D.C. 2018) ......................................................................... 9, 24

*DL v. District of Columbia*,
  302 F.R.D. 1 (D.D.C. 2013) ................................................................................. 13, 23

*DL v. District of Columbia*,
    713 F.3d 120 (D.C. Cir. 2013) ............................................................... 10

*DL v. District of Columbia*,
    860 F.3d 713 (D.C. Cir. 2017) ............................................................... 14

*Franklin v. Barry*,
    909 F. Supp. 21 (D.D.C. 1995) .............................................................. 18

*G.F.F. v. Trump*,
    --- F.R.D. ----, 2025 WL 1166482 (S.D.N.Y. Apr. 9, 2025) ................... 20

*G.F.F. v. Trump*,
    --- F.R.D. ----, 2025 WL 1166909 (S.D.N.Y. Apr. 11, 2025) ................. 20

*Garland v. Aleman Gonzalez*,
    596 U.S. 543 (2022) ......................................................................... 22, 23

*Garnett v. Zeilinger*,
    301 F. Supp. 3d. 199 (D.D.C. 2018) ...................................................... 16

*Gerstein v. Pugh*,
    420 U.S. 103 (1975) ................................................................................ 5

*Hardy v. D.C.*,
    283 F.R.D. 20 (D.D.C. 2012) .................................................................. 9

*Immigrant Defs. L. Ctr. v. Mayorkas*,
    No. CV209893JGBSHKX, 2023 WL 3149243 (C.D. Cal. Mar. 15, 2023) ............ 10

*In re Navy Chaplaincy*,
    306 F.R.D. 33 (D.D.C. 2014) ................................................................ 10

*J.A.V. v. Trump*,
    --- F.R.D. ----, 2025 WL 1256996 (S.D. Tex. May 1, 2025) ................... 19

*J.D. v. Azar*,
    925 F.3d 1291 (D.C. Cir. 2019) ..................................................... passim

*Jimenez v. U.S. Immigr. & Customs Enf't*,
    No. 23-CV-06353-RMI, 2024 WL 2306281 (N.D. Cal. May 20, 2024) ............ 22

*Jones v. Blanas*,
    393 F.3d 918 (9th Cir. 2004) ................................................................. 3

*Las Americas Imm. Adv. Ctr. v. Wolf*,
   507 F. Supp. 3d 1 (D.D.C. 2020) .................................................................................. 14

*Little v. Wash. Metro. Area Transit Auth.*,
   249 F. Supp. 3d 394 (D.D.C. 2017) ............................................................................. 15

*LoBue v. Christopher*,
   82 F.3d 1081 (D.C. Cir. 1996) ..................................................................................... 20

*Lynch v. Cannatella*,
   810 F.2d 1363 (5th Cir. 1987) .................................................................................. 4, 14

*Lyon v. U.S. Immigr. & Customs Enf't*,
   300 F.R.D. 628 (N.D. Cal. 2014) ....................................................................... 10, 20, 24

*Lyon v. U.S. Immigr. & Customs Enf't*,
   308 F.R.D. 203 (N.D. Cal. 2015) ................................................................................. 10

*M.A.P.S. v. Garite*,
   --- F.R.D. ----, 2025 WL 1479504 (W.D. Tex. May 22, 2025) ............................................. 19

*Martinez Rodriguez v. Jimenez*,
   409 F. Supp. 582 (D.P.R. 1976) ................................................................................... 20

*Mead v. Parker*,
   464 F.2d 1108 (9th Cir. 1972) ..................................................................................... 20

*Mons v. McAleenan*,
   No. 19-1953, 2019 WL 4225322 (D.D.C. Sep. 5, 2019) ...................................................... 5, 6

*Napier v. Gertrude*,
   542 F.2d 825 (10th Cir. 1976) ..................................................................................... 20

*Nat'l Ass'n of Rg'l Med. Programs, Inc. v. Mathews*,
   551 F.2d 340 (D.C. Cir. 1976) ..................................................................................... 16

*O.A. v. Trump*,
   404 F. Supp. 3d 109 (D.D.C. 2019) .............................................................................. 23

*Orantes-Hernandez v. Smith*,
   541 F. Supp. 351 (C.D. Cal. 1982) ............................................................................... 20

*P.J.E.S. v. Wolf*,
   502 F. Supp. 3d 492 (D.D.C. 2020) .............................................................................. 24

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ................................................................ 20

*Pell v. Procunier*,
    417 U.S. 817 (1974) ........................................................................... 14

*R.I.L-R v. Johnson*,
    80 F. Supp. 3d 164 ........................................................................... 2, 6

*Reyna as Next Friend of J.F.G. v. Hott*,
    921 F.3d 204 (4th Cir. 2019) ................................................................ 22

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) .............................................................. 22

*S. Poverty L. Cent. v. U.S. Dep't of Homeland Sec.* (*SPLC*),
    No. 18-760, 2020 WL 3265533 (D.D.C. Jun. 17, 2020) ................................... passim

*Thorpe v. D.C.*,
    303 F.R.D. 120 (D.D.C. 2014) .............................................................. 16

*Thorpe v. D.C.*,
    916 F. Supp. 2d 65 (D.D.C. 2013) ........................................................... 6

*U.S. ex rel. Sero v. Preiser*,
    506 F.2d 1115 (2d Cir. 1974) ............................................................... 20

*U.S. Parole Comm'n v. Geraghty*,
    445 U.S. 388 (1980) ........................................................................... 5

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................... 8

*Williams v. Richardson*,
    481 F.2d 358 (8th Cir. 1973) ............................................................... 20

*Women Prisoners of D.C. Dep't of Corr. v. D.C.*,
    899 F. Supp. 659 (D.D.C. 1995) ........................................................... 13

*Wong v. United States*,
    373 F.3d 952 (9th Cir. 2004) .......................................................... 14, 21

*Youngberg v. Romero*,
    457 U.S. 307 (1982) ........................................................................... 3

*Ziglar v. Abbasi*,
    582 U.S. 120 (2017) ................................................................................. 19


**Statutes**

8 U.S.C. § 1101(a)(15)(T)(i) ...................................................................... 15

8 U.S.C. § 1101(a)(15)(U) ......................................................................... 15

8 U.S.C. § 1154(a)(1)(A)(iii) ..................................................................... 15

8 U.S.C. § 1226 ......................................................................................... 22

8 U.S.C. § 1252(e)(1)(A) ........................................................................... 21

8 U.S.C. § 1252(e)(2) ................................................................................. 25

8 U.S.C. § 1252(e)(3) ................................................................................. 25

8 U.S.C. § 1252(f)(1) ................................................................................. 21

8 U.S.C. § 1254a ....................................................................................... 15

8 U.S.C. § 1331 ......................................................................................... 22


**Other Authorities**

William Rubenstein, 1 Newberg & Rubenstein on Class Actions § 2.13 (6th ed. 2025) ............... 7

William Rubenstein, 1 Newberg & Rubenstein on Class Actions § 3.26 (6th ed. 2025) ............... 8

William Rubenstein, 1 Newberg & Rubenstein on Class Actions § 3:57 (6th ed. 2025) ............ 17

William Rubenstein, 1 Newberg & Rubenstein on Class Actions § 3:67 (6th ed. 2025) ............ 16

William Rubenstein, 1 Newberg & Rubenstein on Class Actions § 4:11 (6th ed. 2025) ............ 18

Memorandum for the Secretary of Defense and the Secretary of Homeland Security, "Expanding
    Migrant Operations Center at Naval Station Guantánamo Bay to Full Capacity"
    (Jan. 29, 2025), https://perma.cc/D2P3-45SN .......................................... 12

*Naval Station Guantanamo Bay (JTF Camp Six and Migrant Ops Center Main A)*
    (last visited Jun. 18, 2025), https://www.ice.gov/detain/detention-facilities/naval-station-
    Guantanamo-bay (hours of visitation tab) [https://perma.cc/TY5U-GK8C] ............................ 11

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................... 1, 25

Fed. R. Civ. P. 23(a)(3) ............................................................................................... 15

Fed. R. Civ. P. 23(b)(1) .......................................................................................... 1, 25

Fed. R. Civ. P. 23(b)(1)(A) ........................................................................................ 18

Fed. R. Civ. P. 23(b)(2) ...................................................................................... 1, 20, 25

## INTRODUCTION

Defendants do not dispute that the proposed class satisfies Rule 23(a)'s numerosity requirements, and they do not object to appointment of Plaintiffs' counsel as class counsel. Although Defendants removed Named Plaintiffs Johon Suazo-Muller and Rodolfo Lopez Jarquin from Guantánamo before this motion could be adjudicated, this case is not moot, because the class's claims are inherently transitory and are subject to an exception from mootness. Plaintiffs, moreover, present a textbook case for class certification in a challenge to conditions of confinement. Plaintiffs meet the requirements for commonality, as they raise common questions of fact and law regarding Defendants' restrictions on detainees' communication with counsel and their families, which are not defeated by minor factual variations within the class. Plaintiffs also meet requirements for typicality, as they have suffered the same general injuries as the rest of the class. Plaintiffs are adequate class representatives, as they can vigorously prosecute the interest of the class, and have no conflicting interests with the class.

In addition, the proposed class clearly meets the requirements of Rule 23(b)(1) and (b)(2). The proposed class provides a prototypical class under Rule 23(b)(2), as the unlawful conditions of confinement regarding attorney access and family communication apply generally to the entire class, and would be remedied by a court order applicable to all class members. Moreover, in detention and prison settings, as here, individual adjudication of cases would create a risk of standards for immigrant detainees at Guantánamo, meriting certification under Rule 23(b)(1). For these reasons, class certification is appropriate and warranted.

## BACKGROUND

### I.    Factual Background

Newly available facts corroborate those in Plaintiffs' opening brief, *see* Pls.' Mem. in Supp. of Mot. for Class Certification 7-10, ECF No. 35-1, and underscore the significant need for

classwide relief. Since the Plaintiffs filed their motion for class certification, Defendants have imposed additional barriers to attorney access at Guantánamo. Most significantly, guards have announced to detainees that those who speak to attorneys would be held at Guantánamo for longer—including for eight months to a year more. Decl. Rafael Lopez Ocon ("Lopez Ocon Decl.") ¶ 10, *see also* Decl. Yamil Luna Gutierrez ("Luna Gutierrez Decl.") ¶ 5 (describing threat). These announcements have discouraged detainees from speaking to counsel. Luna Gutierrez Decl. ¶ 5.

On multiple occasions, Defendants have cancelled scheduled attorney calls, claimed technical challenges with phone operations, or claimed that the detainee no longer wished to speak to the attorney. Defendants have rescheduled canceled legal calls to take place at a later date, only for attorneys to learn at the time of the rescheduled call that Defendants had removed their clients from Guantánamo the day before. Decl. Marisol Dominguez Ruiz ¶¶ 6-28.

Lack of information about attorney access at Guantánamo delayed at least one detainee in his quest to file an appeal of his removal order with the Board of Immigration Appeals before the 30-day appeal deadline lapsed. Only after a lawyer working on this case happened to obtain his information and set up a call with him was he able to obtain pro bono counsel, who filed an appeal in his immigration case the next day. Lopez Ocon Decl. ¶ 8-9; Declaration of Afshan Khan ¶¶ 6-7. But by then it was too late: unbeknownst to his counsel, he had been placed on an airplane to be removed hours before his appeal was filed. Khan Decl. ¶ 8.

## II.    Legal Background

Immigration detention is "'undisputedly civil—i.e., non-punitive in nature.'" *S. Poverty L. Cent. v. U.S. Dep't of Homeland Sec.* (*SPLC*), No. 18-760, 2020 WL 3265533, at *18 (D.D.C. Jun. 17, 2020) (quoting *R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164, 187 (D.D.C. 2015)). Those held in

immigration detention therefore have a substantive due process right not to be subjected to any "condition, practice, or policy [that] constitutes punishment." *Block v. Rutherford*, 468 U.S. 576, 583 (1984); *see also SPLC*, 2020 WL 3265533, at *18. Immigrants in civil detention have at least the same rights against punitive conditions of confinement as those detained pending a criminal trial, including conditions of attorney access. *SPLC*, 2020 WL 3265533, at *18–19 & n.6; *Youngberg v. Romero*, 457 U.S. 307, 315-16 (1982); *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004). Indeed, where civil detainees are subjected to more restrictive conditions, including restrictions on attorney access, than convicted prisoners, there is a "presumption" that the restrictions are unconstitutional. *Ams. for Immigrant Just. v. U.S. Dep't of Homeland Sec.*, No. 22-3118, 2023 WL 1438376, at *12 (D.D.C. Feb. 1, 2023).

Plaintiffs and the proposed class in this case challenge the punitive conditions of their confinement with respect to access to counsel and communication with their families while detained at Guantánamo. They allege that the conditions of access to counsel and communication with their families are substantially worse than those experienced by those serving time in prison for a criminal conviction in the United States, in violation of their Fifth Amendment substantive due process rights. Am. Compl. ¶¶ 57-64, ECF No. 33. They also allege that Defendants' restrictions on their communication with counsel and their family members violate their First Amendment right to communication and association. Am. Compl. ¶¶ 52-56.

The fact that class members in expedited removal had fewer procedural protections than a class member in regular removal proceedings is irrelevant to the injury suffered and relief sought by the class in this case, which do not involve the nature of their removal proceedings but the conditions of their detention. Procedural due process protections to challenge removal are categorically different from the substantive due process right to be free from punitive conditions

of confinement while detained. *Lynch v. Cannatella*, 810 F.2d 1363, 1374 (5th Cir. 1987) ("We therefore hold that, whatever due process rights excludable aliens may be denied by virtue of their status, they are entitled under the due process clauses of the fifth and fourteenth amendments to be free of gross physical abuse at the hands of state or federal officials."); *D.A.M. v. Barr*, 474 F. Supp. 3d 45, 62 (D.C. Cir. 2020) (noting the Court retains jurisdiction to "review[] the constitutionality of the physical manner in which petitioners [subject to expedited removal] would be deported").

Class members with either type of removal order may need to consult with counsel for reasons entirely unrelated to immigration law. Even those with final orders of removal, including those ordered removed pursuant to expedited removal proceedings, may need to seek counsel to challenge unlawful conditions of confinement. Class members may also require counsel for legal issues entirely distinct from immigration law, such as custodial or guardianship matters regarding children who may be left behind in the United States. In short, any limitations on the procedural due process rights of noncitizens during their immigration proceedings do not extinguish their need or right to have conditions allowing adequate communication with legal counsel while detained at Guantánamo.

## ARGUMENT

### I.      The Case Is Not Moot, Because the Class's Claims Are Inherently Transitory.

Contrary to Defendants' assertion, the Named Plaintiffs' removal from Guantánamo *after* their motion for class certification was filed and before the Court could resolve the motion, does not negate their ability to serve as class representatives in light of the "inherently transitory"

exception to mootness.[1] Defs.' Opp. Mot. for Class Certification ("Opp.") 9-14, ECF No. 42; Ramos Decl. ¶¶ 13-15, 22-26, ECF No. 42-2. "Some claims are so inherently transitory" that even when "there is no chance that the named plaintiff's expired claim will reoccur, mootness still can be avoided through certification of a class prior to expiration of the named plaintiff's personal claim." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 398-399 (1980) (citing *Gerstein v. Pugh*, 420 U.S. 103, 110, n.11 (1975)). Under this exception, claims of a class persist even after named plaintiffs' claims become moot because the court may "relate [a] certification motion back' to a date when the individual claims were live." *J.D. v. Azar*, 925 F.3d 1291, 1307 (D.C. Cir. 2019) (internal citation omitted). That procedure permits a court to certify a class even after the named plaintiffs' claims become moot. *Id.* at 1312. Notably, "the Supreme Court specifically 'crafted the exception in injunctive class actions,' such as this one, 'challenging criminal and immigration detention procedures.'" *Mons v. McAleenan*, No. 19-1953, 2019 WL 4225322, at *6 (D.D.C. Sep. 5, 2019) (quoting *J.D.*, 925 F.3d at 1308; discussing *Gerstein*, 420 U.S. at 110 n.11). Here, the inherently transitory exception applies because (1) "the individual claim might end before the district court has a reasonable amount of time to decide class certification" and (2) "some class members will retain a live claim at every stage of litigation." *J.D.*, 925 F.3d at 1311.

Plaintiffs satisfy the first requirement. Defendants removed Plaintiffs from Guantánamo on May 20, 2025, before Defendants had even submitted their opposition to the motion for class certification on June 10, 2025. Moreover, the period of time Plaintiffs were held at Guantánamo—

---

[1] Defendants suggest that the Court should not consider Plaintiffs' argument regarding the inherently transitory exception to mootness because Plaintiffs did not raise it in their motion. Opp. at 10 n.5. Plaintiffs, however, had no reason to raise this argument in their motion, as they were detained at Guantánamo when the class certification motion was filed. Defendants raised the mootness argument for the first time in their opposition, Opp. at 9-14, and Plaintiffs are entitled to respond.

54 days for Mr. Suazo-Muller and 45 days for Mr. Lopez Jarquin—falls squarely within the length of time courts have found to be inherently transitory. *See, e.g. J.D.*, 925 F.3d at 1311 (explaining that just as "one-year immigration detention . . . would end too soon, so too would a full term of pregnancy"); *Mons*, 2019 WL 4225322, at *7 (D.D.C. Sep. 5, 2019) (applying exception to claims that "most likely" remained live for a maximum of six months); *R.I.L.-R.*, 80 F. Supp. 3d at 183 (period of detention lasting "weeks or months" was "too short for a court to be expected to rule on a certification motion"). Application of the exception is particularly warranted because class members spend "uncertain and unpredictable" periods of time at Guantánamo, so it is "largely impossible" for a court to determine in advance whose claims will be live past the outer boundary of an inherently transitory period. *Mons*, 2019 WL 4225322, at *7; *see also Thorpe v. District of Columbia*, 916 F. Supp. 2d 65, 67 (D.D.C. 2013) (applying exception where "length of any individual's stay" was "impossible to predict").

Plaintiffs also satisfy the second requirement, that "some class members will retain a live claim at every stage of litigation." *J.D.*, 925 F.3d at 1311. Defendants do not contest that they continue to detain immigrants at Guantánamo, or that the government plans to continue to send immigrant detainees to Guantánamo. Instead, Defendants point to policies and practices that they purport to have established for communication with counsel and family members to argue that there is no assurance that live claims will persist during the litigation. Opp. at 18. Defendants' argument fails for several reasons.

First, the entire crux of the Amended Complaint is that while Defendants have recently adopted policies on paper, not only do those policies fall short of what is constitutionally required for detained immigrants' ability to communicate with legal counsel and family members, but Defendants have failed to actually implement the measures they have claimed to have adopted.

Am. Compl. ¶ 3, ECF No. 33. Second, attorney and family access policies, even as described by Defendants themselves, confirm the live nature of Plaintiffs' claims. For example, Plaintiffs challenge Defendants' prohibition on in-person attorney visits, which Defendants admit that they do not allow. *Compare* Am. Compl. ¶ 4, *with* Declaration of Jesus Ramos ¶ 35, ECF No. 42-2. Plaintiffs challenge their inability to exchange documents with counsel, including the inability to send documents to counsel, and Defendants describe a policy that, at best, allows only for one-way delivery of documents from an attorney to a detainee. *Compare* Am. Compl. ¶ 33 *with* Ramos Decl. ¶¶ 50-51. Plaintiffs challenge the inability to call family members outside of the United States; Defendants do not contest this that this restriction exists. *Compare* Am. Compl. ¶ 36 *with* Ramos Decl. ¶¶ 36-37. Plaintiffs challenge Defendants' practice of disconnecting family phone calls that mention the fact of detention at Guantánamo or in Cuba; Defendants confirm that "a staff member is present to monitor all phone calls to ensure no information pertaining to the security, terrain, or facility details are divulged." *Compare* Am. Compl. ¶ 36 *with* Ramos Decl. ¶ 37.

Defendants also argue that Plaintiffs have failed to establish commonality and typicality, and that as a result, Plaintiffs cannot show that a class member will retain a live claim throughout the proceedings. Opp. at 19. This argument is doubly flawed: first, the premise is wrong, as Plaintiffs satisfy Rule 23's commonality and typicality requirements, *see infra* Sections II and III, and second, Defendants' conclusion is a non sequitur. Commonality and typicality are distinct from the question of whether some class members will retain a live claim for purposes of the inherently transitory exception to mootness. The inquiry into whether some class members will retain a live claim explores whether a case in controversy will continue to exist. William Rubenstein, 1 Newberg & Rubenstein on Class Actions § 2.13 (6th ed. 2025). This question is analytically distinct from commonality and typicality, which examine whether the class members

have common questions of law or fact, and whether the characteristics of a class representative reflect the rest of the class. *See id.* § 3.26. Plaintiffs clearly meet the test for the inherently transitory exception to mootness, and the case is not moot.

## II.    The Proposed Class Satisfies Rule 23(a)'s Commonality Requirements.

The key to commonality is that class members' claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[E]ven a single common question will do." *Id.* at 359 (cleaned up).    This case involves many common factual and legal questions whose answers cut across all class members. For example:

- Do class members have a right to confidential legal calls without staff in earshot, when they also are denied in-person attorney visits?

- Can Defendants permissibly prevent class members from disclosing the basic fact that they are detained at Guantánamo during calls to family and friends?

- Are Defendants' policies and practices regarding attorney access more restrictive than those provided in prisons and immigration detention facilities in the United States, and law-of-war detention at Guantánamo?

Notably, these questions involve violations experienced uniformly by the entire class as a result of Defendants' practices and policies—not isolated, one-off incidents as Defendants suggest. Numerous declarations by class members and their attorneys establish that as a matter of policy, staff stand just outside of the room for all attorney calls with the door ajar. Decl. Johon Suazo-Muller ¶ 9, ECF No. 35-3; Decl. Rodolfo Lopez Jarquin ¶ 9, ECF No. 35-4; Luna Gutierrez Decl. ¶ 5; Lopez Ocon Decl. ¶ 10; Decl. Juan Veliz Vicent ¶ 8, ECF No. 35-8; Decl. Delaney Rohan ¶¶ 8-10, 12, ECF No. 35-6; Decl. Helen Parsonage ¶ 5, ECF No. 35-5. Defendants admit that they have an absolute bar on in-person attorney visits and that they limit the information detained immigrants can share on all calls with family or friends. Ramos Decl. ¶¶ 35, 37. And questions

comparing policies at Guantanamo with those elsewhere necessarily involve high-level policies that apply to all class members.

Defendants attempt to undermine these common questions by pointing to differences between class members' experiences. Opp. at 16-18. But "factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." *Bynum v. District of Columbia*, 214 F.R.D. 27, 33 (D.D.C. 2003); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 332 (D.D.C. 2018) ("as this Circuit has held, if there is a 'single' common question, 'factual variations among the class members will not defeat the commonality requirement'" (citing *Hardy v. District of Columbia*, 283 F.R.D. 20, 24 (D.D.C. 2012)). Defendants' attempts to undercut Plaintiffs' common questions fail.

***First***, Defendants argue that individual factual differences between class members' experiences defeat commonality. Opp. at 16-18. This is wrong. Plaintiffs' allegations and evidence include specific examples that illustrate the systemic problems they challenge. But Plaintiffs do not claim that any one of these examples, standing alone, is a constitutional violation. Instead, because Plaintiffs challenge broadly applied policies and practices, "it is the totality of these circumstances—the lack of viability of in-person visits, the scheduling and quality issues of [virtual visits], and . . . other conditions . . . —that are punitive, not any particular condition." *SPLC*, 2020 WL 3265533, at *24.

The government raised a similar argument in another case involving access to counsel, arguing against commonality because "the inquiry is necessarily individualized, asking whether each class member is represented at all, when the attorney-client relationship was formed, and what, if any, government interference occurred subsequent to the formation of the attorney-client relationship." *Immigrant Defs. L. Ctr. v. Mayorkas*, No. CV209893JGBSHKX, 2023 WL

9

3149243, at *47 (C.D. Cal. Mar. 15, 2023) (internal quotation marks and citation omitted). That court rejected this argument, recognizing that those plaintiffs' claim for classwide injunctive relief would hinge not on individual circumstances but on common questions involving "the totality of restrictions imposed by Defendants . . . ." *Id*. at *48. Here, too, Plaintiffs' claims hinge on common questions involving Defendants' policies affecting the entire class, and the fact that various Plaintiffs and declarants have presented specific examples of those overarching restrictions does not defeat commonality.[2]

***Second***, Defendants argue that members of the purported class are held in two different buildings at the Guantánamo base—the Migrant Operations Center ("MOC") and Camp VI (which the government's brief refers to as the "Winward Housing Facility" or "WHF")—and cannot claim common factual or legal issues that cut across both buildings. Opp. at 18-20. But as a court recognized in certifying a class across three separate immigration detention facilities to challenge access to counsel barriers, "[t]he fact that the precise practices among the three facilities may vary does not negate the application of a constitutional floor equally applicable to all facilities." *Lyon v. U.S. Immigr. & Customs Enf't*, 300 F.R.D. 628, 642 (N.D. Cal. 2014), *modified by* 308 F.R.D. 203 (N.D. Cal. 2015).

---

[2] Defendants cite *DL v. District of Columbia* and *In re Navy Chaplaincy* to argue that Plaintiffs have not pointed to a "'systemic policy or practice which affects them all[.]'" Opp. at 16, (quoting *DL v. D.C.*, 713 F.3d 120, 127-28 (D.C. Cir. 2013); *In re Navy Chaplaincy*, 306 F.R.D. 33, 48 (D.D.C. 2014)). *DL* involved a class whose members had "different claims of harm" that would need to be remedied through different types of injunctions. 713 F.3d at 128. *In re Navy Chaplaincy* involved claims of discrimination based on "individual anecdotes" that "var[ied] widely" across class members. 306 F.R.D. at 48. Here, in contrast, the entire class faces common restrictions on legal and family communications, and Plaintiffs seek a single injunction that would establish class-wide protections to ensure adequate access. *See* Am. Compl. ¶¶ 65-75, ECF No. 34. For example, Defendants do not dispute that their policies bar all in-person attorney visits and restrict what detained immigrants may say on the telephone to family and friends. Ramos Decl. ¶¶ 35, 37, ECF No. 42-2. The entire class is entitled to seek a single injunction against these policies.

Here, Plaintiffs seek to certify a class not at separate detention facilities but at two buildings on the same base, managed by the same authorities, whose factual similarities far outweigh any factual differences.[3] Operations at both buildings are governed by a single Memorandum of Understanding (the "MOU"). Ramos Decl. ¶ 2, ECF No. 42-2; MOU, ECF No. 42-4. The MOU largely treats the two buildings identically, with only minor differences that are irrelevant to the class's claims. *Id.* at § 4.1.5 (setting a specific number of ICE or contract staff for Camp VI and requiring an "appropriate number" at the MOC); § 4.1.19 (specifically barring press access to people detained at Camp VI); § 7.2.1-2 (differentiating between the security levels of the two buildings). Notably, even Defendants admit the substantial overlap between the protocols at both buildings: ICE's own website treats them as a single facility and provides a single set of instructions for legal calls and emails. ICE, *Naval Station Guantanamo Bay (JTF Camp Six and Migrant Ops Center Main A)* (last visited Jun. 18, 2025), https://www.ice.gov/detain/detention-facilities/naval-station-Guantanamo-bay (hours of visitation tab) [https://perma.cc/TY5U-GK8C]. Defendants' declarant describes a single process for legal calls that applies across both facilities. Ramos Decl. ¶¶ 27-32, ECF No. 42-2. Beyond attorney access protocols, the presidential directive that the MOU cites as authorizing detention at Guantánamo mentions only the MOC, yet Defendants have used that authority to hold people in both buildings. *Id.* at §§ 1-2; Memorandum for the Secretary of Defense and the Secretary of Homeland Security, "Expanding Migrant Operations Center at Naval Station Guantánamo Bay to Full Capacity" (Jan. 29, 2025),

---

[3] Defendants attempt to argue that a class cannot cover these two buildings by citing two opinions involving claims spanning multiple detention facilities thousands of miles apart. Opp. at 18-19; *C.G.B. v. Wolf*, 464 F. Supp. 3d 174 (D.D.C. 2020) (covering all ICE detention facilities in the U.S.); *Ams. for Immigrant Just. v. U.S. Dep't of Homeland Sec.*, No. 22-3118, 2023 WL 4364096, at *2, *4 (D.D.C. July 6, 2023) (covering detention facilities in Florida, Louisiana, Texas, and Arizona). The differences between distinct detention centers addressed in those opinions do not apply here.

https://perma.cc/D2P3-45SN. The two buildings fall under the authority of the same task force (Task Force Guardian). Decl. Robert Green ¶¶ 2-3, ECF No. 42-3.

Plaintiffs' allegations, too, apply across the two buildings. For example, immigrants detained at both facilities have been threatened with extended stays at Guantánamo in retaliation for communicating with their attorneys. Lopez Jarquin Decl. ¶ 9, ECF No. 35-4 (MOC); Luna Gutierrez Decl., ¶ 5 (Camp VI); Lopez Ocon Decl., ¶ 10 (Camp VI). Immigrants detained in both buildings also observed officers posted within earshot of their legal calls. *E.g.*, Suazo-Muller Decl. ¶ 9, ECF No. 35-3 (MOC); Lopez Jarquin Decl. ¶ 9, ECF No 35-4 (MOC); Luna Gutierrez Decl., ¶ 5 (Camp VI); Lopez Ocon Decl., ¶ 10 (Camp VI); Rohan Decl. ¶¶ 8-10, 12, ECF No. 35-6 (attorney of immigrant detained at Camp VI). And the absolute ban on in-person attorney-client visitation applies across both facilities. Green Decl. ¶ 18, ECF No. 42-3.

Defendants claim several differences between the two buildings, but none is significant. Defendants point to the different numbers of telephones (eight at Camp VI and currently only one at the MOC). Opp. at 19. However, their declarant states that no person detained in either building has been denied a legal call, Ramos Decl. ¶¶ 33-34, ECF No. 42-2, while Plaintiffs allege that detainees at both buildings have been unable to communicate adequately with counsel, so the issues with legal call availability do not stem from the number of available phones. Defendants also point to differences in the frequency of family calls between the two facilities (which they claim are available daily at the MOC and every three days at Camp VI). Opp. at 19. But Plaintiffs challenge many issues common across the two buildings beyond the calls' frequency. Am. Compl. ¶ 5, ECF No. 34 (alleging a five-minute limit, officers disconnecting calls if detained immigrants mention prohibited topics such as their location at Guantánamo or conditions at the base, and an inability to make calls outside the United States). Defendants point to unspecified differences in

12

"telecommunications policies," Opp. at 19 (citing Ramos Decl. ¶ 33-34, ECF No. 42-2). But that declaration contains no information about what those differences are. Finally, Defendants argue that Plaintiffs' claims of a climate of fear and intimidation require "individualized analysis of the specific environment, officer conduct, and conditions of confinement" and thus differ between the two buildings. This misunderstands Plaintiffs' claims, which includes common practices across both buildings, which include posting guards within earshot of legal calls and informing detained immigrants that contacting lawyers will subject them to retaliatory, prolonged detention at Guantánamo. *See* Suazo-Muller Decl. ¶ 9, ECF No. 35-3; Lopez Jarquin Decl. ¶ 9, ECF No. 35-4; Luna Gutierrez Decl. ¶ 5; Lopez Ocon Decl. ¶ 10. Such claims of facility-wide practices of intimidation and retaliation are appropriate for classwide resolution. *See, e.g.*, *Women Prisoners of D.C. Dep't of Corr. v. District of Columbia*, 899 F. Supp. 659, 675 (D.D.C. 1995) (fashioning classwide relief to address "retaliation" and "threat[s]" in a suit involving people held at multiple facilities in the D.C. jail system); *Cal Coal. for Women Prisoners v. United States*, 723 F. Supp. 3d 712, 720, 729 (N.D. Cal. 2024) (commonality satisfied because common proof could establish a "prison-wide custom" of retaliation and intimidation, even at a prison with two buildings for two different security levels).

Moreover, even if the Court credits Defendants' argument about the differences between the MOC and Camp VI (which at this stage of the litigation it should not), the remedy is not to deny class certification. Rather, the Court should grant class certification, and should certify subclasses for the two buildings if the evidence ever suggests the need for them. *See DL v. District of Columbia*, 302 F.R.D. 1, 14 (D.D.C. 2013) (certifying four separate subclasses on remand after a holding that lack of commonality precluded class certification), *aff'd*, 860 F.3d 713 (D.C. Cir.

2017). At that point, Plaintiffs can then seek leave to amend their complaint accordingly. *See id.* at 22 (granting plaintiffs leave to amend the complaint to reflect new subclasses).

*Third*, Defendants argue that the proposed class lacks commonality because it includes detainees ordered removed via expedited removal proceedings. Opp. at 21. Individuals in expedited removal proceedings may have fewer procedural protections when challenging their removal than those in traditional removal proceedings. *See Las Americas Imm. Adv. Ctr. v. Wolf*, 507 F. Supp. 3d 1, 11 (D.D.C. 2020). This distinction, however, is irrelevant to the injury suffered and relief sought by the class in this case, which does not involve the nature of their removal proceedings but the conditions of their detention. Plaintiffs bring a First Amendment claim to challenge unreasonable restrictions on communication with both legal counsel and their families. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974). Plaintiffs also challenge punitive conditions of confinement with respect to their ability to communicate with legal counsel while detained at Guantánamo, which is a substantive due process violation. *See SPLC*, 2020 WL 3265533 at *16; *Wong v. United States,* 373 F.3d 952, 971-72 (9th Cir. 2004), *abrogated on other grounds.*

None of the legal standards at issue in this case, nor their application, change across class members based on the procedural due process differences in their removal proceedings. The fact that a class member in expedited removal had fewer procedural protections than a class member in regular removal does not mean they have different needs to consult with counsel or communicate with their families from Guantánamo. Courts have acknowledged that detained immigrants in expedited removal retain the substantive due process right "to be free of gross physical abuse at the hands of state or federal officials" and to challenge such abuse. *Lynch*, 810 F.2d at 1374; *D.A.M.*, 474 F. Supp. 3d at 62-63. And class members facing either type of removal may need to consult with counsel for reasons entirely unrelated to immigration matters, such as

family law. Immigrant detainees ordered removed pursuant to expedited removal also remain eligible for and may seek counsel regarding many other forms of immigration relief. *See, e.g.* 8 U.S.C. § 1154(a)(1)(A)(iii) (Violence Against Women Act); 8 U.S.C. § 1254a (Temporary Protected Status); 8 U.S.C. §§ 1101(a)(15)(U), (a)(15)(T)(i) (U and T visas). For these reasons, Plaintiffs and the proposed class meet the commonality requirements of Rule 23(a).

### III.    The Proposed Class Satisfies Rule 23(a)'s Typicality Requirements

The Named Plaintiffs show typicality because they challenge the same "unitary course of conduct" as the class, and because their claims "are based on the same legal or remedial theory" as the classwide claims. *J.D.*, 925 F.3d at 1322. Defendants argue that the Named Plaintiffs do not satisfy typicality because Plaintiffs use declarations by several third parties to set out factual examples that illustrate the policies and practices that they challenge. Opp. at 31. From this, Defendants extrapolate that "[n]either named Plaintiff[] has suffered most of the injuries alleged in the Amended Complaint." *Id.* Defendants' argument gets the law and facts wrong.

As a legal matter, "to destroy typicality, a distinction must differentiate the '*claims or defenses*' of the representatives from those of the class." *J.D.*, 925 F.3d at 1322 (quoting Fed. R. Civ. P. 23(a)(3) (emphasis in original)). Factual variations do not defeat typicality, so long as "the class representatives have suffered injuries in the same general fashion as absent class members." *Little v. Wash. Metro. Area Transit Auth.*, 249 F. Supp. 3d 394, 419 (D.D.C. 2017). The Plaintiffs' use of declarations by attorneys representing clients at Guantánamo and immigrants formerly detained there does not narrow their claims or defenses, and it cannot defeat typicality.

Defendants are wrong on the facts, too: both named Plaintiffs suffered the same injuries as the class at Guantánamo. *Supra* Section II at 8, 12-13, Both named Plaintiffs were deprived in-person attorney access. Green Decl. ¶ 18, ECF No. 42-3. Neither was informed how to contact an

attorney. Suazo-Muller Decl. ¶ 8, ECF No. 35-3; Lopez Jarquin Decl. ¶ 6, ECF No. 35-4. Both had officers within earshot for confidential legal calls. Suazo-Muller Decl. ¶ 9; Lopez Jarquin Decl. ¶ 9. Both feared retaliation for speaking with counsel. *Id.* Both faced sharply limited calls to friends or family. Suazo-Muller Decl. ¶ 10; Lopez Jarquin Decl. ¶ 8. These significant injuries are typical of those of the class.

## IV.    The Named Plaintiffs Are Adequate Class Representatives Under Rule 23(a).

The Named Plaintiffs meet Rule 23(a)'s requirements for adequacy of representation, which are assessed based on "1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and 2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Nat'l Ass'n of Rg'l Med. Programs, Inc. v. Mathews*, 551 F.2d 340, 345 (D.C. Cir. 1976). The Named Plaintiffs meet both criteria.

Defendants speculate that the Named Plaintiffs lack understanding of their role and responsibilities as class representatives, and thus cannot adequately represent the class. Opp. at 32. However, "Rule 23(a)(4) does not require either that the proposed class representatives have legal knowledge or a complete understanding of the representative's role in class litigation." *Thorpe v. District of Columbia*, 303 F.R.D. 120, 151 (D.D.C. 2014). Courts typically will only decline certification in "flagrant cases" where putative class representatives display "alarming unfamiliarity" or "unwillingness" to understand their role. *Garnett v. Zeilinger*, 301 F. Supp. 3d. 199, 210-211 (D.D.C. 2018). Both Mr. Suazo Muller and Mr. Lopez Jarquin have clearly expressed their desire to serve as class representatives, and have demonstrated at least "rudimentary knowledge" of their role as class representatives. *Thorpe*, 303 F.R.D. at 151 (quoting Newberg on Class Actions § 3:67); Suazo Muller Decl. ¶ 12, ECF No. 35-3; Lopez Jarquin Decl. ¶ 13, ECF

No. 35-4. If anything, their declarations demonstrate an acute awareness of the facts and issues in this litigation, including the lack of information provided to detainees about legal calls, lack of confidentiality, and fears of retaliation. Lopez Jarquin Decl. ¶¶ 7-9; Suazo Muller Decl. ¶¶ 8-9. The Named Plaintiffs understand the issues in this litigation, and have no conflicts with putative class members that would implicate their adequacy. Defendants have no meaningful basis to suggest otherwise.

Defendants also argue that the Named Plaintiffs' injuries are not common to or typical of the proposed class, and as a result, that "their interests diverge from the class." Opp. at 33. As discussed above, the Named Plaintiffs have clearly established that they have suffered common and typical injuries as the class while at Guantánamo, showing "a convergence of interest among the class members and between the class and its representative[s]." 1 Newberg & Rubenstein on Class Actions § 3:57; *see supra* Sections II and III at 8, 12, 13, 15.

Defendants finally suggest that Mr. Suazo Muller and Mr. Lopez Jarquin's removal from Guantánamo to their countries of origin "raise adequacy concerns." Opp. at 26 n.11 (citing *J.D.*, 925 F.3d at 1313). "Though the mootness of named plaintiffs' claims can raise 'adequacy concerns,' the very existence of the inherently-transitory exception disproves any suggestion that the mootness of a plaintiff's claims necessarily demonstrates her inadequacy as a representative." *J.D.*, 925 F.3d at 1313 (cleaned up; citations omitted). Indeed, if mootness could defeat adequacy, class certification could never occur in this context. The Named Plaintiffs continue to actively participate in this litigation. *See, e.g.* Suppl. Declaration of Rodolfo Lopez Jarquin. For these reasons, the Named Plaintiffs are adequate representatives of the class.

## V. Certification of the Class Is Proper Under Rule 23(b).

### A. Certification of the Class Is Proper Under Rule 23(b)(1)(A).

17

The proposed class clearly meets the requirements of Rule 23(b)(1)(A), which provides for certification of a class if the prosecution of separate actions by individual members of the class would create the risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). A "core example" of such an action is a "situation in which many individuals, all challenging a single government policy, bring suits for injunctive relief." 1 Newberg & Rubenstein on Class Actions § 4:11.

Certification is appropriate under Rule 23(b)(1)(A) because separate actions by each member of the proposed class would create a risk of inconsistent court decisions regarding attorney access and family communication standards for immigrant detainees held at Guantánamo. Individual adjudications could require Defendants to adhere to significantly varying terms for each detainee, depending on the outcome of each individual case. This risk is well-recognized in cases challenging conditions of confinement. "A haunting specter of inconsistency, resulting in incompatible standards of conduct for prison officials, is raised by the threat of individual suits rather than a class." *Franklin v. Barry*, 909 F. Supp. 21, 31 (D.D.C. 1995); *see also Ashker v. Governor of State of Cal.,* No. C 09-5796 CW, 2014 WL 2465191, at *7 (N.D. Cal. June 2, 2014) (certifying prisoner class under Rule 23(b)(1)(A) to avoid risk of inconsistent judgments); *Berry v. Baca*, 226 F.R.D. 398, 405-06 (C.D. Cal. 2005) (same).[4]

---

[4] Defendants claim that the Court could grant individual Plaintiffs an injunction or declaration worded expansively to protect "'other similarly situated persons,'" rendering class certification unnecessary. Opp. at 28. But Defendants also contend that they mooted the Plaintiffs' individual claims by moving them from Guantánamo. Opp. at 9-10, and there is no reason to expect that other individual plaintiffs would remain at Guantánamo long enough to litigate their individual cases to judgment. Thus class certification—which enables the inherently-transitory mootness exception— is a necessary step to obtain the relief Plaintiffs seek.

Defendants argue that Plaintiffs' challenge to their conditions of confinement "sound purely in habeas," and should be channeled through individual habeas petitions, not a class action suit for injunctive relief. Opp. at 27. The contention that Plaintiffs' challenge should be brought as individual habeas petitions is incorrect. As the Supreme Court has concluded, immigrant detainees "may seek injunctive relief" to challenge "conditions of confinement," while it has "left open the question whether they may be able to challenge their confinement conditions via a petition for a writ of habeas corpus." *Ziglar v. Abbasi*, 582 U.S. 120, 144-45 (2017). Although the D.C. Circuit has concluded that a detainee "may challenge the conditions of his confinement in a petition for habeas corpus," *Aamer v. Obama*, 742 F.3d 1023, 1032 (D.C. Cir. 2014), it is not compulsory. Indeed, this Court has granted injunctive relief in cases not raised via habeas to ensure adequate conditions of attorney access in immigration detention centers. *See, e.g. SPLC*, 2020 WL 3265533, at *33; *Ams. for Immigrant Justice*, 2023 WL 1438376 at *1.

Moreover, Defendants' proposal that the court adjudicate the issue of attorney access and communication with family members via individual habeas petitions would create the very problems that the class action procedure is intended to avoid. Every judge on this Court would be deluged with hundreds of petitions raising identical claims—especially given Defendants' position that habeas petitions are unfit for class actions. Opp. at 28-29. The court need not consider Defendants' argument, however, as Plaintiffs have not filed a habeas petition here. In any event, Defendants' argument is incorrect, as this Circuit and others have recognized.[5] The Proposed Class clearly meets the requirements of Rule 23(b)(1)(A), and the Court should certify it on that basis.

---

[5] Notably, Defendants' contention that class relief is unfit in habeas is incorrect. *See, e.g. J.A.V. v. Trump*, --- F.R.D. ----, 2025 WL 1256996, at *6 (S.D. Tex. May 1, 2025); *M.A.P.S. v. Garite*, --- F.R.D. ----, 2025 WL 1479504, at *7 (W.D. Tex. May 22, 2025); *D.B.U. v. Trump*, --- F.R.D. ---- , 2025 WL 1304198, at *10 (D. Colo. May 6, 2025); *G.F.F. v. Trump*, --- F.R.D. ----, 2025 WL

**B.  Certification of the Class Is Proper Under Rule 23(b)(2).**

Certification of the Proposed Class is also proper under Rule 23(b)(2), because the Defendants' unlawful actions "apply generally to the class" such that relief here "is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Certification under Rule 23(b)(2) is particularly appropriate here, as claims "for injunctive relief stemming from allegedly unconstitutional conditions of confinement are the quintessential type of claims that Rule 23(b)(2) was meant to address." *Parsons v. Ryan*, 754 F.3d 657, 687 (9th Cir. 2014). For this reason, courts have frequently certified Rule 23(b)(2) classes in cases regarding attorney access in immigration detention facilities and jails. *See, e.g. Lyon*, 300 F.R.D. at 643 (certifying (b)(2) class in attorney access challenge in immigration detention); *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 371, 383-85 (C.D. Cal. 1982) (same); *Holland v. Steele*, 92 F.R.D. 58, 64 (N.D. Ga. 1981) (same in jail); *Martinez Rodriguez v. Jimenez*, 409 F. Supp. 582, 593-94 (D.P.R. 1976) (same in jail).

The fact that Defendants have detained class members in two separate buildings on the same base at Guantánamo does not preclude certification under Rule 23(b)(2). Opp. at 22. The relief sought by Plaintiffs—policies to ensure constitutionally adequate access to counsel and communication with family members by detainees at Guantánamo—consists of "systemic changes consistent with a single overarching constitutional standard that will be applicable to all class members," which is the applicable Rule 23(b)(2) question. *Lyon*, 300 F.R.D. at 643.

---

1166482, at *3 (S.D.N.Y. Apr. 9, 2025), *amended* 2025 WL 1166909 (S.D.N.Y. Apr. 11, 2025) (all certifying district-wide habeas classes for detained noncitizens). Those recent cases unanimously recognized, as the D.C. Circuit and every circuit that has addressed the issue, that a habeas class may be maintained either under Rule 23 or in equity informed by Rule 23 principles. *See LoBue v. Christopher*, 82 F.3d 1081, 1085 (D.C. Cir. 1996); *U.S. ex rel. Sero v. Preiser*, 506 F.2d 1115 (2d Cir. 1974); *Bijeol v. Benson*, 513 F.2d 965, 967 (7th Cir. 1975), *Williams v. Richardson*, 481 F.2d 358 (8th Cir. 1973); *Mead v. Parker*, 464 F.2d 1108, 1112 (9th Cir. 1972); *Napier v. Gertrude*, 542 F.2d 825, 827 & n.5 (10th Cir. 1976).

Defendants further argue that a single injunction or declaratory judgment would not provide relief to all of the proposed class, as required under Rule 23(b)(2), because some of the class members have been ordered removed pursuant to the expedited removal process. Opp. at 22. They point to 8 U.S.C. § 1252(e)(1)(A) to suggest that the court would be barred from granting relief to those ordered removed under expedited removal proceedings. Opp. at 22. Defendants' argument has no merit. Section 1252(e)(1)(A) only prohibits courts from entering "declaratory, injunctive, or other equitable relief in any action *pertaining to an order to exclude*" a noncitizen pursuant to expedited removal. 8 U.S.C. § 1252(e)(1)(A) (emphasis added). The proposed class does not pertain to, or seek to challenge, the implementation of the expedited removal statute or the legality of any expedited removal orders. Rather, the proposed class seeks to challenge punitive conditions of attorney and family access at Guantánamo under the Fifth Amendment's substantive due process protections, and to protect their right to communicate with counsel and their families under the First Amendment. *See SPLC*, 2020 WL 3265533 at *16 (finding substantive due process challenge to attorney access restrictions in detention "ancillary to the removal process" and outside "any part of the process by which . . . removability will be determined."); *D.A.M.*, 474 F. Supp. 3d at 62 (concluding that Section 1252 "does not clearly prohibit the Court from reviewing the constitutionality of the physical manner in which [expedited removal] petitioners would be deported"); *Wong*, 373 F.3d at 972 (distinguishing procedural rights "with regard to immigration and deportation proceedings" from the right of detained noncitizens "to humane treatment") .

Defendants' claim that 8 U.S.C. § 1252(f)(1) precludes class certification under Rule 23(b)(2) is similarly flawed. Opp. at 23. Defendants again misconstrue the relief sought by the Plaintiffs and suggest that they seek "a classwide order requiring additional process." *Id.* Plaintiffs, however, do not seek additional *process*. Instead, Plaintiffs seek substantive changes to the

conditions of attorney and family) access while detained at Guantánamo, including in-person attorney visitation, methods to exchange documents with counsel, confidential communication, the ability to place legal calls without threat of retaliation, and the ability to contact family outside of the United States. Am. Compl. ¶¶ 65-75, ECF No. 33. The provision of access to counsel to detainees or family communication is not even remotely addressed by the statutes covered by Section 1252(f)(1), which, to the extent that they address detention, concern only ICE's authority to detain or release certain groups of non-citizens. *See* 8 U.S.C. §§ 1226, 1331. But Plaintiffs are not seeking release. And indeed, the Supreme Court characterized "the statutes to which § 1252(f)(1) refers" as provisions "governing the inspection, apprehension, examination, and removal of aliens," none of which apply here. *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022); *see Jimenez v. U.S. Immigr. & Customs Enf't*, No. 23-CV-06353-RMI, 2024 WL 2306281, at *4 (N.D. Cal. May 20, 2024) (concluding that injunction regarding conditions of COVID-19 medical care in detention would not "in any way remotely resemble[e] what was at issue in *Aleman-Gonzalez*"). Nor do Plaintiffs seek a classwide order "establishing detention standards." Opp. at 23. Plaintiffs' requested injunction does not interfere with ICE's authority or ability to carry out 8 U.S.C. § 1231(g), which relates "to the government's brick and mortar obligations for obtaining facilities in which to detain aliens." *Reyna as Next Friend of J.F.G. v. Hott*, 921 F.3d 204, 209 (4th Cir. 2019). Plaintiff's requested injunction would merely require Defendants to provide attorney access and family phone calls to detainees—an issue about which Section 1231(g) says nothing.[6] For these reasons, the proposed class satisfies Rule 23(b)(2).

---

[6] Defendants' contention that Section 1252(f)(1) bars the entry of declaratory judgment is likewise incorrect. Opp. at 23 n.10. Section 1252(f)(1), on its face, does not strip the court of authority to issue class-wide declaratory relief, nor has the Supreme Court opined on the question. *Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010) ("Section 1252(f) was not meant to bar classwide

## VI.    The Proposed Class Is Clearly Ascertainable and Is Not Overbroad.

Although there is no requirement that a proposed class be precisely defined, Plaintiffs' proposed class definition is clearly ascertainable, and Defendants' claims to the contrary are meritless. As an initial matter, "[i]t is 'far from clear,' . . . 'that there exists in this district a requirement that a class certified under Rule 23(b)(2) must demonstrate ascertainability to merit certification." *O.A. v. Trump*, 404 F. Supp. 3d 109, 159 (D.D.C. 2019) (citation omitted). That is "consistent with the intent of the drafters of Rule 23(b)(2), who explicitly endorsed its use in cases such as this that challenge widespread illegal practices because the class members are often 'incapable of specific enumeration.'" *DL*, 302 F.R.D. at 17. Regardless, the class would satisfy any ascertainability requirement.

Plaintiffs seek to certify a class that consists of "[a]ll immigrant detainees originally apprehended in the United States and detained at U.S. immigration detention facilities, and who are, or will be held at Naval Station Guantánamo Bay, Cuba." Pls.' Mem. Class Cert. 6, ECF No. 35-1. Defendants first argue that the proposed class is overbroad because it includes people who were previously detained at Guantánamo but have already been removed. Opp. at 31-32. This is not the case: the class definition plainly does not include those who "were held" at Guantánamo.

Defendants next argue that the class is overbroad because it includes people who "will be held" at Guantánamo. Opp. at 32. But the definition does not depend on "Plaintiff's own conjecture as to who may or may not end up" at Guantánamo. *Id.* Rather, the class definition ensures the inclusion of detainees who will be held at Guantánamo. Courts routinely certify classes with future, unknown members—including in cases involving immigration detention. *J.D.*, 925 F.3d at 1322-

---

declaratory relief."); *see also Aleman Gonzalez*, 596 U.S. at 552 n.2 ("Because only injunctive relief was entered here, we have no occasion to address [the Government's suggestion that § 1252(f)(1) bars class-wide declaratory relief].").

23 (class consisting of "all pregnant unaccompanied minors who are or will be in [Office of Refugee Resettlement] custody"); *see also Lyon*, 300 F.R.D. at 635-36 (rejecting government's argument that class of "all current and future immigration detainees who are or will be held by ICE" in three counties was overbroad and ill-defined); *Damus v. Nielsen*, 313 F. Supp. 3d 371 (D.D.C. 2018) (class of arriving asylum seekers "who are or will be detained by ICE . . . after having been denied parole . . . "); *P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492, 531 (D.D.C. 2020) (class of "all unaccompanied noncitizen children who (1) are or will be detained in U.S. government custody in the United States, and (2) are or will be subjected to the Title 42 process"). Defendants' argument appears to rest on the misunderstanding that unknown people who will *someday* be detained at Guantánamo are members of the proposed class *now*. That is incorrect. Under Plaintiffs' proposed class definition, individuals will become members *when* they become detained at Guantánamo. That is how "are or will be" class definitions work. The Court can make that clear in its certification.

Defendants also argue that the class is overbroad because it includes people with final orders of removal resulting from the expedited removal process. Opp. at 32. Defendants claim, without analysis or explanation, that because "[t]he claims in the Complaint ultimately challenge access to legal counsel post-expedited removal order," "[a]ccordingly, Section 1252(e)(1)(B)'s bar on class certification applies to the claims of any proposed class member who was processed for an expedited removal order." Opp. at 33. This is incorrect. Defendants correctly note that Plaintiffs and the proposed class challenge attorney access conditions at Guantánamo, including for proposed class members who have been ordered removed via expedited removal processes. However, Section 1252(e)(1)(B) does not bar certification of every class that includes those individuals. Section 1252(e)(1)(B) bars class certification in any action specified in Sections

24

1252(e)(2) and (e)(3) of the statute, which are limited to determinations of whether "the petitioner is an alien," "was ordered removed" pursuant to expedited removal, or was "lawfully admitted for permanent residence . . . admitted as a refugee . . . or granted asylum;" whether the expedited removal statute or implementing regulations are constitutional; or whether regulation, policy directives, guidelines, or procedures to implement expedited removal are inconsistent with the statute or otherwise illegal. 8 U.S.C. §§ 1252(e)(2); (e)(3). Section 1252(e)(1)(B) does not bar class certification of any other claims, including Plaintiffs' substantive due process claims regarding conditions of confinement or First Amendment claim to speak with legal counsel and family. For these reasons, the proposed class is clearly defined, is ascertainable, and is not overbroad.

## CONCLUSION

The Court should certify the proposed Class under Rule 23(a) and 23(b)(1) and (2), appoint the Individual Plaintiffs as Class Representatives, and appoint the undersigned as Class Counsel.

Dated: June 18, 2025

Respectfully submitted,

Eunice H. Cho (D.C. Bar No. 1708073)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW, 7th Floor
Washington, DC 20005
(202) 546-6616
echo@aclu.org

My Khanh Ngo (D.C. Bar No. CA00219)
Kyle Virgien*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
mngo@aclu.org
kvirgien@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org

Deepa Alagesan (D.D.C. Bar No. NY0261)
Kimberly Grano (D.D.C. Bar No. NY0512)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza, 33rd Floor
New York, New York 10004
(516) 838-7044
dalagesan@refugeerights.org
kgrano@refugeerights.org

/s/ *Lee Gelernt*
Lee Gelernt (D.D.C. Bar No. NY0408)
Brett Max Kaufman (D.D.C. Bar No.
NY0224)
Judy Rabinovitz*
Noor Zafar*
Omar C. Jadwat*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
bkaufman@aclu.org
jrabinovitz@aclu.org
nzafar@aclu.org
ojadwat@aclu.org

Wafa Junaid*
NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3376
wjunaid@nyclu.org

Baher Azmy**
Shayana D. Kadidal (D.C. Bar No. 454248)
J. Wells Dixon**
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, Floor 7
New York, NY 10012
(212) 614-6427
bazmy@ccrjustice.org
shanek@ccrjustice.org
wdixon@ccrjustice.org

*Attorneys for Plaintiffs-Petitioners*

*\*Appearing under certificate of pro bono
representation
\*\*Pro bono representation certificates
forthcoming*