# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHON ELIAS SUAZO-MULLER, *et al.*, | ) |
| | ) |
| *Plaintiffs*, on behalf of themselves and all others similarly situated, | ) |
| | ) |
| v. | ) Case No. 1:25-cv-418-CJN |
| | ) |
| KRISTI NOEM, Secretary of Homeland Security, in her official capacity, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ....................................................................................... 2

LEGAL STANDARD.................................................................................................. 6

ARGUMENT .............................................................................................................. 7

   I.     The Plaintiffs Have Standing. ........................................................................ 7

   II.    Plaintiffs' Claims Are Not Moot.................................................................... 9

   III.   Plaintiffs State a Fifth Amendment Claim.................................................. 13

     A.   Plaintiffs Have a Liberty Interest to Be Free from Punitive Conditions of Confinement.

        ......................................................................................................... 13

     B.   Plaintiffs State a Substantive Due Process Claim of Punitive Detention Conditions... 16

   IV.   Plaintiffs State a First Amendment Claim. ................................................. 20

CONCLUSION.......................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Abdullah v. Trump*,
  No. 25-5002, 2025 WL 914093 (D.C. Cir. Mar. 24, 2025) ....................................................... 9

*Al Odah v. United States*,
  346 F. Supp. 2d 1 (D.D.C. 2004) ................................................................................ 18, 20, 23

*Am. Nat. Ins. Co. v. F.D.I.C.*,
  642 F.3d 1137 (D.C. Cir. 2011) ...................................................................................... 6

*Ams. for Immigrant Just. v. U.S. Dep't of Homeland Sec.*,
  No. 22-3118, 2023 WL 1438376 (D.D.C. Feb. 1, 2023) ........................................ 16, 17, 18, 19

*Arizonans for Off. Eng. v. Arizona*,
  520 U.S. 43 (1997) ........................................................................................................ 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................................... 6

*Attias v. Carefirst, Inc.*,
  865 F.3d 620 (D.C. Cir. 2017) ...................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................... 6

*Bell v. Wolfish*,
  441 U.S. 520 (1979) ...................................................................................................... 17

*Benjamin v. Fraser*,
  264 F.3d 175 (2d Cir. 2001) .......................................................................................... 22

*Block v. Rutherford*,
  468 U.S. 576 (1984) ...................................................................................................... 13

*Brennan v. City of N.Y.*,
  No. 19-CV-02054 (NGG) (CLP), 2023 WL 5672590 (S.D.N.Y. Sept. 1, 2023) ..................... 8

*County of Riverside v. McLaughlin*,
  500 U.S. 44 (1991) ........................................................................................................ 11

*Ctr. for Biological Diversity v. Tidwell*,
  239 F. Supp. 3d 213 (D.D.C. 2017) .............................................................................. 18

*D.A.M. v. Barr,*
   474 F. Supp. 3d 45 (D.D.C. 2020) .................................................................. 14, 15, 16

*D.L. v. District of Columbia,*
   302 F.R.D. 1 (D.D.C. 2013) ...................................................................................... 7

*D.L. v. District of Columbia,*
   860 F.3d 713 (D.C. Cir. 2017) ................................................................................ 7

*DeLoach v. Bevers,*
   922 F.2d 618 (10th Cir. 1990) ............................................................................... 20

*Demery v. Arpaio,*
   378 F.3d 1020 (9th Cir. 2004) .............................................................................. 22

*Denius v. Dunlap,*
   209 F.3d 944 (7th Cir. 2000) ................................................................................ 20

*Deposit Guaranty National Bank v. Roper,*
   U.S. 326 (1980) ................................................................................................ 11, 12

*DeShaney v. Winnebago Cnty. Dep't. of Social Serv.,*
   489 U.S. 189 (1989) ............................................................................................... 16

*E.E.O.C. v. St. Francis Xavier Parochial Sch.,*
   117 F.3d 621 (D.C. Cir. 1997) ................................................................................ 7

*Firewalker-Fields v. Lee,*
   58 F.4th 104 (4th Cir. 2023) ................................................................................. 24

*Food & Water Watch,*
   808 F.3d 905 (D.C. Cir. 2015) ................................................................................ 7

*Fraihat v. U.S. Immigr. and Customs Enf't,*
   16 F.4th 613 (9th Cir. 2021) ................................................................................. 16

*Friends of the Earth, Inc. v. Laidlaw Env'tl Servs., Inc.,*
   528 U.S. 167 (2000) ................................................................................................. 9

*Genesis Healthcare Corp. v. Symczyk,*
   569 U.S. 66 (2013) ................................................................................................. 11

*Gerstein v. Pugh,*
   420 U.S. 103 (1975) ............................................................................................ 9, 10

*Gul v. Obama,*
   652 F.3d 12 (D.C. Cir. 2011) ................................................................................. 9

*Hinton v. District of Columbia,*
   567 F. Supp. 3d 30 (D.D.C. 2021) ......................................................................... 7

*Humane Soc'y of the U.S. v. Vilsack,*
   797 F.3d 4 (D.C. Cir. 2015) .................................................................................... 7

*Hurd v. District of Columbia,*
   864 F.3d 671 (D.C. Cir. 2017) .............................................................................. 18

*Ibarra-Perez v. Howard,*
   468 F. Supp. 3d 1156 (D. Ariz. 2020) .................................................................. 16

*Immigrant Defs. L. Ctr. v. Noem,*
   No. CV 20-9893 JGB (SHKX), 2025 WL 1172442 (C.D. Cal. Apr. 16, 2025) ...... 21

*In re Guantanamo Bay Detainee Continued Access to Couns.,*
   892 F. Supp. 2d 8 (D.D.C. 2012) ......................................................................... 21

*In re Guantanamo Bay Detainee Litig.,*
   577 F. Supp. 2d 143 (D.D.C. 2008) ................................................................. 3, 23

*In re Kumar,*
   402 F. Supp. 3d 377 (W.D. Tex. 2019) ................................................................ 22

*In re Petitioners Seeking Habeas Corpus Relief in Rel. to Prior Detentions at Guantanamo Bay,*
   700 F. Supp. 2d 119 (D.D.C. 2010) ..................................................................... 24

*J.D. v. Azar,*
   925 F.3d 1291 (D.C. Cir. 2019) .................................................................. 9, 10, 11

*Jerome Stevens Pharms., Inc. v. Food & Drug Admin.,*
   402 F.3d 1249 (D.C. Cir. 2005) .............................................................................. 6

*Jones v. Blanas,*
   393 F.3d 918 (9th Cir. 2004) ................................................................................ 16

*Kleindienst v. Mandel,*
   408 U.S. 753 (1970) .............................................................................................. 21

*Lashbrook v. Hyatte,*
   758 F. App'x 539 (7th Cir. 2019) .......................................................................... 20

*Lewis v. Casey,*
    518 U.S. 343 (1996) ........................................................................................... 8

*Lewis v. U.S. Parole Comm'n,*
    743 F. Supp. 3d 181 (D.D.C. 2024) ................................................................... 12

*Lucero v. Bureau of Collection Recovery, Inc.,*
    639 F.3d 1239 (10th Cir. 2011) ......................................................................... 12

*Lynch v. Cannatella,*
    810 F.2d 1363 (5th Cir. 1987) ........................................................................... 15

*Mehmood v. U.S. Att'y Gen.,*
    808 F. App'x 911 (11th Cir. 2020) ...................................................................... 9

*Mons v. McAleenan,*
    No. 19-1593 (JEB), 2019 WL 4225322 (D.D.C. Sep. 5, 2019) .......................... 10

*Monsanto Co. v. Geertson Seed Farms,*
    562 U.S. 139 (2010) ........................................................................................ 7, 8

*Murphy v. Hunt,*
    455 U.S. 478 (1982) ........................................................................................... 9

*Nat. L. Party of U.S. v. Fed. Election Comm'n,*
    111 F. Supp. 2d 33 (D.D.C. 2000) ...................................................................... 7

*Overton* v. *Bazzetta,*
    539 U.S. 126 (2003) ......................................................................................... 24

*Pell v. Procunier,*
    417 U.S. 817 (1974) ......................................................................................... 20

*Pinson v. U.S. Dep't of Justice,*
    246 F. Supp. 3d 211 (D.D.C. 2017) ................................................................... 23

*Pitts v. Terrible Herbst, Inc.,*
    653 F.3d 1081 (9th Cir. 2011) ........................................................................... 12

*Procunier v. Martinez,*
    416 U.S. 396 (1974) ......................................................................................... 25

*R.I.L.-R v. Johnson,*
    80 F. Supp. 3d 164 (D.D.C. 2015) ............................................................... 10, 13

*Richardson v. Bledsoe*,
    829 F.3d 273 (3d Cir. 2016) ................................................................. 12

*S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.*,
    No. 18-760, 2020 WL 3265533 (D.D.C. June 17, 2020) ...................... 13, 14, 19, 22

*Sallier v. Brooks*,
    343 F.3d 868 (6th Cir. 2002) ................................................................. 20

*Shaw v. Murphy*,
    532 U.S. 223 (2001) ............................................................................. 22

*Sissel v. U.S. Dep't of Health & Hum. Servs.*,
    760 F.3d 1 (D.C. Cir. 2014) .................................................................. 6

*Sosna v. Iowa*,
    419 U.S. 393 (1975) ............................................................................. 11

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ............................................................................. 7

*Thorpe v. District of Columbia*,
    303 F.R.D. 120 (D.D.C. 2014) ............................................................. 8, 10

*Torres v. U.S. Dep't of Homeland Sec.*,
    411 F. Supp. 3d 1036 (C.D. Cal. 2019) ................................................ 14, 19, 20

*Turner v. Safley*,
    482 U.S. 78 (1987) ............................................................................... 21, 24

*U.S. Parole Comm'n v. Geraghty*,
    445 U.S. 388 (1980) ............................................................................. 9, 11

*United States v. Sanchez-Gomez*,
    584 U.S. 381 (2018) ............................................................................. 9

*Valdez v. Rosenbaum*,
    302 F.3d 1039 (9th Cir. 2002) .............................................................. 20

*Wahington v. Glucksberg*,
    521 U.S. 702 (1997) ............................................................................. 13

*Wardell v. Duncan*,
    470 F.3d 954 (10th Cir. 2006) .............................................................. 24

*Washington v. Reno*,
   35 F.3d 1093 (6th Cir. 1994) ............................................................ 20

*Wilson v. Gordon*,
   822 F.3d 934 (6th Cir. 2016) ........................................................ 11, 12

*Wong Wing v. United States,*
   163 U.S. 228 (1896) ........................................................................ 14

*Youngberg v. Romeo*,
   457 U.S. 307 (1982) ................................................................... 13, 22

*Zadvydas v. Davis,*
   533 U.S. 678 (2001) ............................................................. 14, 16, 21

*Zeidman v. J. Ray McDermott & Co.*,
   651 F.2d 1030 (5th Cir. 1981) ........................................................ 12

## Statutes

8 U.S.C. § 1101 (a)(15)(T)(i) ............................................................. 15

8 U.S.C. § 1101(a)(15)(U) ................................................................. 15

8 U.S.C. § 1154(a)(1)(A)(iii) ............................................................. 15

8 U.S.C. § 1225(b)(1) ........................................................................ 14

8 U.S.C. § 1229a ............................................................................... 14

8 U.S.C. § 1231(a) ............................................................................ 14

8 U.S.C. § 1254a ............................................................................... 15

28 U.S.C. § 2671 ............................................................................... 15

## INTRODUCTION

Since February 2025, Defendants have moved hundreds of immigrants from the United States to be detained in Cuba at the Naval Station at Guantanamo Bay ("Guantánamo"). While holding these immigrants at Guantánamo, Defendants have imposed unusually severe restrictions on their access to counsel and communication with family members, leaving detainees unable to meaningfully communicate with their attorneys, family, or the outside world.

Defendants have barred any in-person attorney visits with immigrant detainees held at Guantánamo, which is required in U.S. immigration detention facilities and prisons, as well as for law-of-war detainees held by the military at Guantánamo. They have provided no avenues for immigrant detainees to share documents with counsel. Officers at Guantánamo have threatened and intimidated detainees who have attempted to exercise their right to communicate with counsel. Although Defendants have established a barebones system for attorneys to request phone calls with detainees, they have repeatedly failed to bring detainees to scheduled calls. When these legal calls take place, the calls are far from confidential: officers have placed the legal calls on speakerphone, and sat in the hallway by an open door during calls. Defendants have failed to provide clear, basic instructions to detainees on how to request legal calls. During the limited five-minute family phone calls available to detainees, officers sit closely by to monitor what they are saying and disconnect phone calls if a detainee mentions the fact of their detention at Guantánamo, or voices complaints regarding conditions of confinement. These restrictions, as alleged in the Amended Complaint, violate the First and Fifth Amendments to the Constitution.

This Court has jurisdiction to remedy these wrongs. Plaintiffs clearly have standing, as they were detained at Guantánamo at the time they filed the Amended Complaint, and because Defendants' access policies unlawfully interfered with their ability to meaningfully communicate with counsel and their families at that time. Plaintiffs' claims are not moot, as it was Defendants

who removed them from Guantánamo, and because Plaintiffs represent a proposed class, to which the "inherently transitory" and "picking off" exceptions to mootness apply. Plaintiffs' complaint properly alleges First and Fifth Amendment claims. This Court should deny Defendants' motion and permit Plaintiffs to proceed with their claims.

## FACTUAL BACKGROUND

Plaintiffs' extensive, well-supported factual allegations establish the following:

The government has detained people in civil immigration detention at Guantánamo since February 2025. Am. Compl. ¶ 2, ECF No. 34. Initially, the government held immigrants detained at Guantánamo incommunicado, without any access to attorneys, family, or the outside world. *Id.* Only after Plaintiffs filed suit in this case did the government implement some limited measures for detainees to communicate with counsel and their families. *Id.* ¶ 3, 23.

These limited measures are wholly inadequate. As alleged in the Amended Complaint, immigrant detainees at Guantánamo remain unable to meaningfully communicate with legal counsel and their families. *Id.* ¶¶ 4-6, 24-43. While the government claims to have enacted protocols for attorney access, it has failed to fully implement many of the measures it has claimed to put into place. *Id.* ¶¶ 24, 26-30, 33-34. Moreover, the government continues to impose significant restrictions on access to counsel and communication with family members even more severe than those imposed on prisoners in the United States and on law-of-war detainees held at Guantánamo by the military. *Id.* ¶¶ 36-43.

**No In-Person Attorney Visits.** The government has prohibited in-person attorney visits with immigrant detainees held at Guantánamo—which it provides even to law-of-war detainees held at Guantánamo by the military. *Id.* ¶¶ 25, 38. The government has denied multiple requests for in-person legal visits by counsel for immigrant detainees at Guantánamo, and has ignored

requests from attorneys who have security clearance, and who were present on base at Guantánamo as part of their separate, law-of-war legal representation, for in-person legal visits with immigrant detainees. *Id*. ¶ 25.

**No Ability to Exchange Legal Documents.** Although the government claims that attorneys may send legal correspondence *to* detainees via email, there is no reliable method for detainees to be able to send documents, including forms or declarations with signatures, to their legal counsel. *Id*. ¶ 33. ICE's website states that the "facility administrator may, in his discretion, allow for a reasonable amount of communication via email between the detainee and their designated legal representative." *Id.* But attorneys have sent documents to the specified email address, requesting that the document be returned with the detainee's signature, with no response. *Id*. For instance, at least one attorney has sent a document to a detained client at Guantánamo through the government-provided email address but, when he spoke to his client days later, learned that the client never received the document. *Id*. ¶ 33.

Although the government states that "legal mail will be delivered to [Guantánamo] on a weekly basis via the Defense Courier Service," ICE has provided no publicly available information or address as to how detainees can receive postal or courier mail. *Id*. ¶ 34. The purported weekly period of mail delivery is also slower than for law-of-war detainees held at Guantánamo by the military. *Id*. (citing *In re Guantanamo Bay Detainee Litig.,* 577 F. Supp. 2d 143, 160 (D.D.C. 2008)). There is no information or publicly available policy as to how counsel can receive mail from detainees. *Id*.

**Lack of Instruction Regarding Requests for Outgoing Calls to Counsel and ABA Hotline.** Officers at Guantánamo do not tell detainees that they have the right to call an attorney and have not provided information about how to place outgoing legal calls. *Id*. ¶ 30. Detainees

frequently do not know that they have the right and ability to request a call with legal counsel. *Id.* ¶ 29. The government has claimed that it has posted or otherwise provided detainees with fliers about requesting outgoing legal calls to counsel or the American Bar Association's (ABA) Information Line. *Id.* However, the information it claims to have provided to detainees does not actually explain how to place a request for an outgoing legal call. *Id.* The flier explains that detainees can use an unspecified "form" and "include your legal representative's name, phone number(s), and email address," to request a call with an attorney or the ABA Information Line. *Id.* But the request form provided by the government does not actually indicate that it can be used to request a legal call and provides no fields to enter a legal representative's name, phone number, or email address. *Id.* The form instead includes fields to request attention regarding programs such as "payroll (voluntary work)," or "commissary inquiry," neither of which exist for immigrant detainees at Guantánamo. *Id.*

**Failure to Provide Scheduled Phone Calls.** Although the government has publicized on its website a system for attorneys to schedule telephone calls with detained clients at Guantánamo, this system is not reliable. *Id.* ¶ 26. The government has frequently failed to bring detainees to these scheduled attorney-client calls, even after sending confirmation that the call had been scheduled, or has not responded at all to requests for legal calls sent by attorneys. *Id.*

**Lack of Confidential Attorney-Phone Calls.** Officers at Guantánamo have created a climate of extreme fear and intimidation related to attorney-client communication. *Id.* ¶ 27. Detainees are chained and put in restraints while speaking to attorneys on the phone. *Id.* Scheduled attorney-client calls are not private or confidential at Guantánamo. *Id.* ¶¶ 27-28. Officers sit in the hallway by an open door to the room where detainees receive calls from their attorneys, and have placed the legal calls on speakerphone, broadcasting both sides of the conversation. *Id.* ¶ 27. At

least one guard has told detainees and attorneys that the military is recording their attorney-client calls. *Id.* ¶ 28.

**Reported Recording of Attorney-Client Phone Calls.** An officer at Guantánamo told lawyers during an attorney-client call that military officials are recording attorney-client telephone conversations at Guantánamo, causing the attorneys to immediately terminate the call. *Id.* ¶ 28.[1] The officer's statement has had a significant chilling effect on detainees' communication with legal counsel. *Id.*

**Detainees Are Penalized or Threatened for Exercising Right to Communicate with Counsel.** Detainees have been penalized or threatened with punishment or retaliation if they request attorney calls or freely share their thoughts on attorney-client calls. *Id.* ¶ 27, 30. Officers at Guantánamo have informed detainees that telephone calls, including to attorneys, are a "privilege" that can be taken away. *Id.* ¶ 30. These threats take place amidst a broader climate of fear: upon admission to Guantánamo, officers tell detainees that they are terrorists and that they do not have rights. *Id.* ¶ 32.

**Restrictions on Personal Phone Calls.** The government has stated that it allows immigrant detainees one five-minute personal phone call per day. *Id.* ¶ 36. In practice, some detainees have only been permitted to place a personal phone call once per week. *Id.* The personal phone calls take place over speakerphone, with an officer seated less than half a meter away from the detainee. *Id.* Officers have disconnected the phone line and suspended detainees from phone privileges if the detainee shares anything that the officers "disagree with" on the calls, such as mention of their detention at Guantánamo or in Cuba, or conditions of confinement and the

---

[1] Although the government's counsel has denied this allegation, that denial is inadmissible on the pending 12(b)(6) motion to dismiss.

treatment of detainees at Guantánamo. *Id*. Calls to anywhere other than the United States are not permitted. *Id*. Some people detained at Guantánamo have no friends or family in the United States whom they can call, which means they are unable to communicate with their friends or families at all. *Id*.

## LEGAL STANDARD

Defendants seek to dismiss Plaintiffs' Amended Complaint under Rule 12(b)(1) on standing and mootness theories, and under Rule 12(b)(6) as to the substance of Plaintiffs' constitutional claims.

Plaintiffs survive a Rule 12(b)(1) if they can establish jurisdiction, "assum[ing] the truth of all material factual allegations in the complaint and constru[ing] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged . . . ." *Am. Nat. Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quotation marks and citations omitted). "While the district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction, the court must still accept all of the factual allegations in the complaint as true." *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (cleaned up).

To survive dismissal under Rule 12(b)(6), Plaintiffs need simply allege enough facts in the complaint to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor." *Sissel v. U.S. Dep't of Health & Hum. Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014). The Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which

[it] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## ARGUMENT

### I.    The Plaintiffs Have Standing.

For standing, "the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). An imminent injury is one that is either "certainly impending" or there is a "substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). At the pleading stage, a plaintiff need only "state a plausible claim" that each of the standing elements is present. *Attias v. Carefirst, Inc.*, 865 F.3d 620, 625 (D.C. Cir. 2017) (quoting *Food & Water Watch*, 808 F.3d 905, 913 (D.C. Cir. 2015) and *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015)). Standing is "assessed as of the time a suit commences." *Hinton v. District of Columbia*, 567 F. Supp. 3d 30, 48 (D.D.C. 2021) (quoting *D.L. v. District of Columbia*, 302 F.R.D. 1, 19 (D.D.C. 2013), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017)); *see Nat. L. Party of U.S. v. Fed. Election Comn'n*, 111 F. Supp. 2d 33, 40 (D.D.C. 2000).

Here, Plaintiffs have standing to bring both of their claims: (1) a First Amendment claim against unreasonable restrictions that limit their ability (and that of other Guantánamo immigrant detainees) to retain, consult, and communicate with counsel, and to communicate and associate with family members, *see* Am. Compl. ¶¶ 52–56; and (2) a Fifth Amendment Due Process claim against their detention at Guantánamo because it amounts to unconstitutional punishment, *see id.* ¶¶ 57–64. At the time they filed the Amended Complaint, Plaintiffs were detained at Guantánamo, and throughout their detention there, Defendants' access policies interfered with their ability to

meaningfully access and communicate with legal counsel and to speak with their families under reasonable conditions. *See id.* ¶¶ 10–11. That is enough for standing.

The government contests Plaintiffs' standing—but not on the more ordinary grounds that they failed to allege an injury in fact, or that those injuries are neither traceable to Defendants nor remediable by this Court. Instead, the government's argument against standing boils down to the complaint that the two Named Plaintiffs did not "allege[] suffering" from *all* of the unconstitutional conditions suffered by the class. Defs.' Mot. to Dismiss 11, ECF No. 43. That is not a standing argument, but an argument against the class typicality requirement. *See* Defs.' Opp. to Mot. Class Cert. 23-25, ECF No. 42 (government's argument on the same basis); Pls.' Reply to Mot. Class Cert. 15-16, ECF No. 45. For standing at the "pleading stage," all Plaintiffs must do is make "general factual allegations of injury resulting from the defendant's conduct . . . , for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim[s]." *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (quotation omitted); *see Thorpe v. District of Columbia*, 303 F.R.D. 120, 142-43 (D.D.C. 2014). They have done that with respect to each claim and form of relief sought here, *see Monsanto Co.*, 561 U.S. at 153: their First and Fifth Amendment claims seeking a declaration and injunction against the unlawful conditions.[2]

---

[2] The government argues that because neither Named Plaintiff was detained at Camp VI, they lack standing to challenge Defendants' policies that apply there. Defs.' Mot. to Dismiss 11. But Plaintiffs' complaint does not allege that different policies apply at Camp VI and the Migrant Operations Center. Moreover, the government's citation of *Brennan v. City of N.Y.*, No. 19-CV-02054 (NGG) (CLP), 2023 WL 5672590 (S.D.N.Y. Sept. 1, 2023), is inapposite; there, "[n]one of the Named Plaintiffs were detained at [a particular facility] at the time they brought th[e] suit," *id.* at *10, but here, both Named Plaintiffs were detained at Guantánamo at the time they filed the Amended Complaint.

## II.    Plaintiffs' Claims Are Not Moot.

The government argues that Plaintiffs' claims are moot because they "have departed" from Guantánamo and were removed to other countries. Defs.' Mot. to Dismiss 8. But because it was *Defendants* who removed them, and because Plaintiffs represent a putative class (which the government's argument essentially ignores), two exceptions to mootness apply.[3]

First, under the "inherently transitory" exception to mootness, the Named Plaintiffs' removal from Guantánamo after their complaint and motion for class certification was filed (but before the Court could resolve that motion or the government's motion to dismiss) does not negate their ability to serve as class representatives. "Some claims are so inherently transitory" that even when "there is no chance that the named plaintiff's expired claim will reoccur, mootness still can be avoided." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 398-399 (1980) (citing *Gerstein v. Pugh*, 420 U.S. 103, 110, n.11 (1975)). While *Geraghty* referred to the survival of claims "through certification of a class prior to expiration of the named plaintiff's personal claim," *id.*, later cases have made clear that certification can occur *nunc pro tunc*, because the court may "'relate [a] certification motion back' to a date when the individual claims were live," *J.D. v. Azar*, 925 F.3d 1291, 1307 (D.C. Cir. 2019) (citation omitted), thereby permitting a court to certify a class even after the named plaintiffs' claims become moot. *Id.* at 1312. Notably, "the Supreme Court specifically 'crafted the exception in injunctive class actions,' such as this one, 'challenging

---

[3] None of the cases the government cites in support of its mootness argument involved a class complaint. *See, e.g.*, *Gul v. Obama*, 652 F.3d 12 (D.C. Cir. 2011) (non-class habeas action); *Abdullah v. Trump*, No. 25-5002, 2025 WL 914093 (D.C. Cir. Mar. 24, 2025) (same). And almost all of them explicitly distinguish mootness in the class context from mootness as it applies in ordinary litigation. *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Env'tl Servs., Inc.*, 528 U.S. 167, 192 (2000); *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 72 n.27 (1997); *United States v. Sanchez-Gomez*, 584 U.S. 381, 386-390 (2018); *Murphy v. Hunt*, 455 U.S. 478, 482 (1982); *Mehmood v. U.S. Att'y Gen.*, 808 F. App'x 911, 913 (11th Cir. 2020).

criminal and immigration detention procedures.'" *Mons v. McAleenan*, No. 19-1593 (JEB), 2019 WL 4225322, at *6 (D.D.C. Sep. 5, 2019) (quoting *J.D.*, 925 F.3d at 1308, and discussing *Gerstein*, 420 U.S. at 110 n.11). Here, the inherently transitory exception applies because (1) "the individual claim might end before the district court has a reasonable amount of time to decide class certification" and (2) "some class members will retain a live claim at every stage of litigation." *J.D.*, 925 F.3d at 1311.

Plaintiffs satisfy both requirements. As to the first, Defendants removed Plaintiffs from Guantánamo on May 20, 2025, before Defendants had even submitted their opposition to the motion for class certification on June 10, or their motion to dismiss on June 16. Moreover, the period of time Plaintiffs were held at Guantánamo—54 days for Mr. Suazo-Muller and 45 days for Mr. Lopez Jarquin—falls squarely within the length of time courts have found to be inherently transitory. Decl. Jesus Ramos ¶¶ 13, 15, 22, 26, ECF 42-2; *see, e.g.*, *J.D.*, 925 F.3d at 1311 (explaining that just as "one-year immigration detention . . . would end too soon, so too would a full term of pregnancy . . . ."); *Mons*, 2019 WL 4225322, at *7 (applying exception to claims that "most likely" remained live for a maximum of six months); *R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164, 183 (D.D.C. 2015) (period of detention lasting "weeks or months" was "too short for a court to be expected to rule on a certification motion"). Application of the exception is particularly warranted here because class members spend "uncertain and unpredictable" periods of time at Guantánamo, so it is "largely impossible" for a court to determine in advance whose claims will be live past the outer boundary of an inherently transitory period. *Mons*, 2019 WL 4225322, at *7; *see Thorpe*, 916 F. Supp. 2d at 67 (applying exception where "length of any individual's stay" was "impossible to predict"). And Plaintiffs also satisfy the second requirement, that "some class members will retain a live claim at every stage of litigation," *J.D.*, 925 F.3d at 1311, because

Defendants continue to transfer individuals from immigration detention in the United States to Guantánamo and subject them to their inadequate access protocols there.

As noted above, the fact that the Court has not yet granted class certification is irrelevant, because "where a named plaintiff's claim is 'inherently transitory,' and becomes moot prior to certification, a motion for certification may 'relate back' to the filing of the complaint." *J.D. v. Azar*, 925 F.3d at 1308 (cleaned up) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 n.2 (2013)); *see County of Riverside v. McLaughlin*, 500 U.S. 44, 51–52 (1991); *Geraghty*, 445 U.S. at 398–99; *Sosna v. Iowa*, 419 U.S. 393, 402 n.11 (1975). As a result, if a class is later properly certified, that "class is deemed to have attained" on that date [*i.e.,* on the date the complaint was filed] a "'legal status separate from the interest asserted' by the representatives." *J.D.*, 925 F.3d at 1307-08 (quoting *Sosna*, 419 U.S. at 399). Thus, "[b]ecause the class possesses a concrete legal interest, the mootness of individual claims does not affect the ability of representatives to litigate a controversy between the defendants and absent class members." *Id.* at 1308. Accordingly, the fact that the Named Plaintiffs are no longer in custody at Guantánamo does not moot this case because a live controversy remains between the Plaintiff class members detained there and Defendants.

Second, the "picking off" exception to mootness also applies here. This exception applies when "a defendant picks off named plaintiffs in a class action before the class is certified" by "strategically mooting named plaintiffs' claims in an attempt to avoid a class action." *Wilson v. Gordon*, 822 F.3d 934, 947 (6th Cir. 2016). The doctrine arises from *Deposit Guaranty National Bank v. Roper*, in which a defendant attempted to buy off the class representatives, thus mooting their claims, in an attempt to moot the case. 445 U.S. 326, 339 (1980). The Supreme Court held that defendants cannot use such "picking off" tactics to moot a case. *Id.* Its reasoning was

prudential: "Requiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant[]" would "waste . . . judicial resources" and "frustrate the objectives of class actions." *Id.* Several Circuits have since applied this standard or a substantively similar standard. *See Richardson v. Bledsoe*, 829 F.3d 273, 279 (3d Cir. 2016) (applying the picking off exception when the named class representative was transferred out of a penitentiary before the class was certified); *Wilson*, 822 F.3d at 947–52; *see also Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1250 (10th Cir. 2011) (applying picking off exception when defendant offered full amount of requested relief to named plaintiff before class certification); *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011) (same); *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1050 (5th Cir. 1981) (same). Like under the "inherently transitory" exception, the "picking off" exception enables courts to relate the liveness of claims back to the filing of the complaint. *See, e.g.*, *Wilson*, 822 F.3d at 948; *Richardson*, 829 F.3d at 286.[4]

The government's actions show that the exception applies here. The government removed both Named Plaintiffs after they filed the complaint and sought class certification, and then opposed certification and moved to dismiss the complaint on the basis of those removals. But Defendants do not dispute that the government plans to continue transferring individuals to Guantánamo and then removing them to other countries. Under Defendants' view, detainees will have to keep filing new cases that will inevitably be mooted as the government transfers them from Guantánamo, frustrating review and expending litigants' and judicial resources. This is precisely

---

[4] In *Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d 181 (D.D.C. 2024), Judge Lamberth acknowledged that multiple circuits had adopted and applied the "picking off exception," but did not address it because the plaintiffs' claims also satisfied the "inherently transitory" exception. *Id.* at 194 n.4 (also observing the D.C. Circuit had not yet had the opportunity to address the exception).

the situation that the "picking off" exception (like the "inherently transitory" one) is meant to prevent.

### III.    Plaintiffs State a Fifth Amendment Claim.

#### A.   Plaintiffs Have a Liberty Interest to Be Free from Punitive Conditions of Confinement.

Defendants argue that Plaintiffs lack a "qualifying liberty interest to trigger due process protections under the Fifth Amendment." Defs.' Mot. to Dismiss 12. This is error. Unlike the question, for example, of whether there exists a "fundamental liberty interest protected by the Due Process clause" in "determining the time and manner of one's death," *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997), Plaintiffs have a clearly established liberty interest to be free from punitive conditions of confinement—including punitive restrictions on their ability to communicate with legal counsel, essential to pursuing available legal options.[5] *S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.*, No. 18-760, 2020 WL 3265533, at *18 (D.D.C. June 17, 2020). Immigration detention is "'civil—i.e., non-punitive in nature.'" *Id.* (quoting *R.I.L-R*, 80 F. Supp. 3d at 187). As the Supreme Court has concluded, civil detainees "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982). Those in immigration detention therefore have a substantive due process right not to be subjected to any "condition, practice, or policy [that] constitutes punishment." *Block v. Rutherford,* 468 U.S. 576, 583 (1984). This includes conditions of confinement that result "in limited access to counsel." *S. Poverty L. Ctr.*, 2020 WL 3265533 at *19.

---

[5] Plaintiffs clarify that they do not allege a violation of their procedural due process rights, to the extent that any confusion exists as to that point. *See* Defs.' Mot. to Dismiss 13 n.8.

Defendants argue that Plaintiffs lack a fundamental liberty interest in the right to access counsel because noncitizens with final orders of removal may have fewer procedural protections than those in removal proceedings. Defs.' Mot. to Dismiss 13-14 (citing 8 U.S.C. §§ 1225(b)(1), 1229a, 1231(a)). Pointing to noncitizens "on the threshold of entry," who have fewer procedural protections than those in the United States, Defendants also argue that Plaintiffs "are not entitled to robust access to counsel to pursue legal action during the effectuation of their removal orders." Defs,' Mot to Dismiss 14-15. But this novel theory has no basis in the law and is foreclosed by *Zadvydas v. Davis*, which reaffirmed that the Due Process Clause protects those "subject to a final deportation order" and permits them to challenge unlawful detention. *Zadvydas,* 533 U.S. 678, 693-94 (2001) (citing *Wong Wing v. United States,* 163 U.S. 228, 238 (1896)). The Supreme Court has long recognized, after a person effects an entry, "the Due Process Clause applies . . . whether their presence here is lawful, unlawful, temporary, or permanent." 533 U.S. at 693 (collecting cases).

These distinctions, moreover, are irrelevant. Plaintiffs "do not seek to vindicate procedural due process rights related to their [immigration petitions] . . . .[r]ather, they are seeking to enforce substantive due process rights based on what amounts to unconstitutional conditions of confinement during the removal process." *D.A.M. v. Barr*, 474 F. Supp. 3d 45, 63 (D.D.C. 2020). Plaintiffs assert claims regarding conditions of their detention that are "ancillary to the removal process." *S. Poverty L. Ctr.*, 2020 WL 3265533, at *16; *see also Torres v. U.S. Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036, 1063-64 (C.D. Cal. 2019) (recognizing distinction between due process protections in removal proceedings and challenge to punitive conditions of detention regarding attorney access).

14

Defendants further argue that because Plaintiffs are noncitizens with final orders of removal, that the government has already provided "constitutionally appropriate access to counsel" at Guantánamo. Defs.' Mot. to Dismiss 15. But the procedural posture of Plaintiffs' immigration cases does not extinguish their need or right to communicate with counsel. Plaintiffs may need to consult with counsel for reasons entirely unrelated to immigration law. For example, those with final orders of removal, including those ordered removed pursuant to expedited removal proceedings, may need to seek counsel to challenge unlawful conditions of confinement, including abuses in detention under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* There is no question that "whatever due process rights excludable aliens may be denied by virtue of their status, they are entitled under the due process clauses of the fifth and fourteenth amendments to be free of gross physical abuse at the hands of state or federal officials." *Lynch v. Cannatella*, 810 F.2d 1363, 1374 (5th Cir. 1987); *see also D.A.M.*, 474 F. Supp. 3d at 62 (noting the Court retains jurisdiction to "review[] the constitutionality of the physical manner in which petitioners [subject to expedited removal] would be deported"). Plaintiffs may also require counsel for legal issues entirely distinct from immigration law, such as custodial or guardianship matters regarding children who may be left behind in the United States. Plaintiffs are also entitled to consult with counsel regarding available legal options for immigration benefits, *see, e.g.*, 8 U.S.C. § 1154(a)(1)(A)(iii) (Violence Against Women Act); 8 U.S.C. § 1254a (Temporary Protected Status); 8 U.S.C. §§ 1101(a)(15)(U), (a)(15)(T)(i) (U and T visas).

Defendants' sweeping theory would also allow the government to subject anyone with a final order of removal to indefinite detention, or punitive and abusive detention conditions, without the ability to challenge those abuses through legal counsel. It is undisputed that individuals "subject to a final deportation order" have a liberty interest in being free from arbitrary detention,

*Zadvydas*, 533 U.S. at 693, and to safe and non-punitive detention conditions. *D.A.M.*, 474 F. Supp. 3d at 63 ("When the Government 'takes a person into its custody and holds [her] there against [her] will, the Constitution imposes upon it a corresponding duty to assume some responsibility for [her] safety and general well-being[.]'") (citing *DeShaney v. Winnebago Cnty. Dep't. of Social Serv.*, 489 U.S. 189, 199-200 (1989). In order to vindicate these substantive rights, Plaintiffs are entitled to non-punitive conditions to enable them to consult effectively with counsel.

### B. Plaintiffs State a Substantive Due Process Claim of Punitive Detention Conditions.

Plaintiffs have clearly stated a claim that Defendants' restrictions on communication with legal counsel and their families are punitive and in violation of their substantive due process rights. The parties agree on the framework to consider the validity of a substantive due process challenge to punitive conditions of detention. Plaintiffs may "show a 'presumption' of punitive detention by establishing that the conditions of confinement applicable to civil (e.g., pretrial or immigrant) detainees are equal to or worse than conditions experienced by inmates convicted of a criminal offense." *Ams. for Immigrant Just. v. U.S. Dep't of Homeland Sec.*, No. 22-3118, 2023 WL 1438376, at *12 (D.D.C. Feb. 1, 2023) (quoting *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) and citing *Ibarra-Perez v. Howard*, 468 F. Supp. 3d 1156, 1172 (D. Ariz. 2020)); *see also* Defs.' Mot. to Dismiss 23 (citing *Ams. for Immigrant Just.*, 2023 WL 1438376, at *12). If the plaintiff makes this showing, the "burden then generally shifts to the defendant to establish that the conditions are rationally related to a non-punitive purpose and those conditions are not excessive." *Ams. for Immigrant Just.*, 2023 WL 1438376, at *12 (citing *Fraihat v. U.S. Immigr. and Customs Enf't*, 16 F.4th 613, 648-49 (9th Cir. 2021)); *see also Jones*, 393 F.3d at 934. In the alternative, Plaintiffs may show unconstitutional punishment by demonstrating that the government could accomplish its non-punitive goals through "alternative and less harsh methods." *Bell v. Wolfish*,

16

441 U.S. 520, 539 n.20 (1979); *see also* Defs.' Mot. to Dismiss 23 (citing *Ams. for Immigrant Just.*, 2023 WL 1438376, at *12).

Plaintiffs allege blatantly unconstitutional deprivations of attorney access. For example, the government "den[ies] in-person attorney visits" in any form. Am. Compl. ¶ 4; *see also id.* ¶ 25. Attorney calls are not confidential: "[o]fficers sit in the hallway by an open door to the room where detainees receive calls from their attorneys, and have placed the legal calls on speakerphone, broadcasting both sides of the conversation." *Id.* ¶ 27. As a result, putative class members "fear that they will face punishment or retaliation if they freely share their thoughts or information with counsel . . . ." *Id.* An ICE "officer has reported to attorneys that the military is recording legal calls," chilling legal communications and raising the specter of further confidentiality problems. *Id.* ¶ 4.[6] And despite the government's assertions that legal mail is available, Defs.' Mot. to Dismiss 7, the Court must accept as true the allegation of the Amended Complaint that "ICE has provided no publicly-available information or address as to how detainees can receive postal or courier mail" as it does for other detention facilities. Am. Compl. ¶ 34.[7] Defendants list instructions for attorneys to send documents electronically to their clients, but they have repeatedly failed to deliver documents sent this way. *Id.* ¶ 33. Detainees have no way to send documents electronically to their attorneys. *Id.* These deprivations, combined, mean that there is no way for attorneys and clients to communicate confidentially—an impermissible intrusion on the attorney-client

---

[6] While a government attorney has denied that legal calls are being recorded, Am. Compl. ¶ 4, that does not make the officer's statement false or negate the impact it has had on detainees' communications with lawyers.

[7] Defendants take issue with Plaintiffs' allegation that the timeframe for physical mail delivery is longer for those in ICE custody than those in law-of-war custody. Defs.' Mot. to Dismiss 16 n.9. That effort to controvert the factual allegations of the complaint is improper. In any event, the Court does need to rely on the allegation about timeframe, because ICE has provided no way to send physical mail at all, rendering it an ineffective means to communicate regardless of the timing. Am. Compl. ¶ 34.

relationship. *See Al Odah v. United States*, 346 F. Supp. 2d 1, 8-10 (D.D.C. 2004); *Ams. for Immigrant Just.*, 2023 WL 1438376, at *17.

The government makes only one argument for dismissal of this claim: that "legitimate governmental interests" "justify the restrictions" Defendants have placed on attorney access. Defs.' Mot. to Dismiss 23-24. But this argument is fatally flawed.

As an initial matter, Defendants depend on declaration evidence outside of the proper record to claim a non-punitive government interest that justifies their restrictions. *Id.* at 23-24 (citing and quoting Ramos Decl. ¶¶ 33-35, 37, ECF No. 42-2 and Decl. Robert Green ¶ 16, ECF No. 42-3). "[D]eclarations may not be reviewed by the Court in the context of a Rule 12(b)(6) analysis without converting the motion to dismiss into one for summary judgment" under Rule 12(d). *Ctr. for Biological Diversity v. Tidwell*, 239 F. Supp. 3d 213, 228–29 (D.D.C. 2017); *see also Hurd v. District of Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017) (reversing grant of 12(b)(6) motion that erroneously considered "matters outside the pleadings" without providing the procedural protections associated with a Rule 12(d) conversion to a motion for summary judgment).[8]

Next, in characterizing Plaintiffs' allegations as "conclusory," Defs.' Mot. to Dismiss. 23, Defendants ignore that Plaintiffs properly alleged detailed facts showing that no non-punitive purpose justifies the restrictions on attorney access and communication with family. Plaintiffs allege that federal prisons guarantee in-person attorney visits, confidential legal calls, confidential legal document exchange, and adequate calls to friends and family. Am. Compl. ¶¶ 38-43. These allegations shift the burden onto the government to "establish that the conditions are rationally

---

[8] As *Hurd* explained, to convert a motion to dismiss into a motion for summary judgment, "[t]he court must give the parties notice of the court's intention to convert the motion and a reasonable opportunity to discover and present relevant evidence." *Hurd*, 864 F.3d at 687.

related to a non-punitive purpose and those conditions are not excessive." *Ams. for Immigrant Just.*, 2023 WL 1438376, at *12 (citation omitted); *see also S. Poverty L. Ctr.*, 2020 WL 3265533, at *30 (finding that evidence of worse attorney access in ICE detention than in the Federal Bureau of Prisons "supports that these conditions [in ICE detention] are likely to be punitive"); *Torres*, 411 F. Supp. 3d at 1064 (finding plaintiffs' allegations that attorney access policies were "not more considerate than those at pretrial and prison facilities" "create[d] a presumption of punitiveness").

Plaintiffs having adequately alleged that their conditions of confinement are worse than conditions in federal prisons, the burden shifts to the government to show that the conditions are rationally related to a non-punitive purpose and are not excessive. *Ams. for Immigrant Just.*, 2023 WL 1438376, at *1. The government cannot meet this burden at this stage, where the only facts the Court may properly consider are those alleged in the Amended Complaint. Defendants provide in-person attorney access to law-of-war clients on the same military base, so their denial of in-person visits—even by lawyers with security clearances who are already on the base to visit their law-of-war clients—can find no support in any non-punitive purpose. Am. Compl. ¶¶ 25, 38. Likewise, Defendant ICE's detention standards set out detailed policies that balance the need to provide communication against any non-punitive governmental interests. Am. Compl. ¶¶ 38-43. These standards "offer an example of less restrictive alternative measures" that Defendants could have—but did not—take to protect attorney access. *S. Poverty L. Ctr.*, 2020 WL 3265533, at *30 (finding that ICE's "fail[ure] to comply with ICE's own Detention Standards related to confidentiality . . . supports that these restrictions and conditions are punitive since there are less restrictive alternatives"); *Torres*, 411 F. Supp. 3d at 1065 (finding allegations of attorney access not in compliance with ICE's detention standards stated a Fifth Amendment claim). "Having raised

an unrebutted presumption of punitiveness, Plaintiffs successfully plead a substantive due process claim." *Torres*, 411 F. Supp. 3d at 1065.

## IV.    Plaintiffs State a First Amendment Claim.

The government has imposed significant and unreasonable barriers to attorney access and family communication for immigrant detainees at Guantánamo, in violation of the First Amendment. The First Amendment guarantees all persons—even prisoners—freedom of speech. *See Pell v. Procunier*, 417 U.S. 817, 822-23 (1974). "The right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association, and petition." *Denius v. Dunlap*, 209 F.3d 944, 953 (7th Cir. 2000). Under "clearly established First Amendment rights of association and free speech," detainees have the right to "retain and consult with an attorney," *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990); *Lashbrook v. Hyatte*, 758 F. App'x 539, 541 (7th Cir. 2019) ("The First Amendment protects a prisoner's right to consult with an attorney."). Even prisoners have a First Amendment right to "communicate with persons outside prison walls," *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002); and barriers to legal communication between a prisoner and counsel merit "heightened concern" given the "import for the prisoner's legal rights." *Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2002). The government cannot impose conditions of confinement that "inappropriately burden th[e] [attorney-client] relationship." *Al Odah*, 346 F. Supp. 2d at 9; *see also Torres*, 411 F. Supp. 3d at 1067 ("overly restrictive" policies hindering immigrant detainees' ability to "hire and consult with an attorney" violated their First Amendment right to "communicate with the outside world"). Prisoners "retain their First Amendment rights to communicate with family and friends." *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (citation omitted).

Defendants cite to *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1970), a case that considered the government's power to issue visa revocations based on a noncitizen's political views, to argue that the court should not "look beyond" the government's justifications for "frequency and length" limitations on attorney and family communications against the Plaintiffs' asserted First Amendment interests. Defs.' Mot. to Dismiss 18. But *Kleindienst* is entirely inapposite, as Plaintiffs "are not challenging discretionary border restrictions," or any administrative decisions related to admission or removal, but rather, challenge restrictions on the speech (with attorneys and family) imposed on people held at Guantánamo. *Immigrant Defs. L. Ctr. v. Noem*, No. CV 20-9893 JGB (SHKX), 2025 WL 1172442, at *18 (C.D. Cal. Apr. 16, 2025) (rejecting same argument). And as another court in this District has noted, "in the context of Guantánamo," "the Court is charged with ensuring that prisoners are 'provided with the tools . . . to challenge the conditions of their confinement,'" even in the face of expansive executive authority. *In re Guantanamo Bay Detainee Continued Access to Couns.*, 892 F. Supp. 2d 8, 17 (D.D.C. 2012) (citations omitted).

Defendants also cite to the four-factor test set out in *Turner v. Safley*, 482 U.S. 78, 89 (1987), to argue that restrictions imposed on immigrant detainees at Guantánamo are reasonable, and do not violate First Amendment protections.[9] The government's arguments fail. First, *Turner* involved the rights of convicted prisoners. Immigrant detainees are civil detainees held pursuant to civil immigration laws. *Zadvydas*, 533 U.S. at 690. Accordingly, the "legitimate penological

---

[9] Under *Turner*, courts examine whether the prison's restriction on communication is "reasonably related to legitimate penological interests" using four factors: (1) whether there exists "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it," (2) "whether there are alternative means of exercising the right that remain open to prison inmates," (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) "the absence of ready alternatives" to the prison regulation. *Turner*, 482 U.S. at 89-91.

interests" at issue with convicted prisoners have little or no application to civil detainees. *Benjamin v. Fraser*, 264 F.3d 175, 187 n.10 (2d Cir. 2001) ("Penological interests are interests that relate to the treatment (including punishment, deterrence, rehabilitation . . . of persons convicted of crimes); *Demery v. Arpaio*, 378 F.3d 1020, 1028–29 (9th Cir. 2004); *In re Kumar*, 402 F. Supp. 3d 377, 383-84 (W.D. Tex. 2019). People who have been civilly detained "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg*, 457 U.S. at 321-22 .

Even under *Turner*, however, Defendants' restrictions on attorney-client and family communication violate Plaintiffs' First Amendment rights. As an initial matter, Defendants do not identify any governmental interests to justify their failure to (1) provide a mechanism for detainees to timely send documents to counsel; (2) to ensure confidential and unrecorded attorney-client phone calls; (3) to penalize detainees for exercising their right to communicate with counsel; (4) provide clear instruction regarding outgoing calls to counsel or the ABA hotline; or (5) prohibit detainees from calling family members outside the United States . Defendants' failure to do so is fatal: when analyzing the first of the four *Turner* factors, "if the connection between the regulation and the asserted goal is 'arbitrary or irrational,' then the regulation fails, irrespective of whether the other factors tilt in its favor." *Shaw v. Murphy*, 532 U.S. 223, 229–30 (2001).

Nor do any legitimate governmental interests, or other factors weighing towards Defendants, exist for these restrictions. A client's ability to timely share documents or to provide signed copies of declarations to counsel is critical to effective legal representation. *S. Poverty L. Ctr.*, 2020 WL 3265533 at *13. Defendants can easily establish a protocol that requires the facility to provide detainees with the non-discretionary ability to timely send documents to counsel via email, as ICE has already stated that it will "allow for a reasonable amount of communication via

email between the detainee and their designated legal representative" at the facility administrator's discretion. Am. Compl. ¶ 33. There is no justification for failing to ensure confidential attorney-client phone calls, nor for allowing guards to sit next to an open door while detainees speak to their attorneys, place calls on speakerphone, or record attorney-client calls. *Id.* ¶¶ 27-28. *Al Odah*, 346 F. Supp. at 10 (discussing the "exceptional" importance of confidential attorney-client communication in the U.S. legal system). There is no justification for retaliatory threats to detainees for exercising their right to communicate with counsel. *Pinson v. U.S. Dep't of Justice*, 246 F. Supp. 3d 211, 221-22 (D.D.C. 2017) (barring retaliation for exercise of First Amendment rights). There is no justification for failure to clearly provide information to detainees as to how to place a request for an outgoing legal call; the administrative burden is minimal. Am. Compl. ¶ 29. Nor is there any justification for limiting calls to family in the United States; calls from Guantánamo to the United States are already international.

Defendants' blanket denial of in-person attorney visits is not reasonably related to legitimate penological interests. Defendants point to "extensive logistical challenges," the "potential need to possess security clearances," the "anticipated short-term stay of the immigration detainees," and "the potential for a very high volume of counsel," to justify the ban on in-person attorney visits, Ramos Decl. ¶ 35, ECF No. 42-2, but these reasons are "thinly-supported." *Al Odah v. United States*, 346 F. Supp. 2d at 10. Immigration detention facilities and federal prisons in the United States are required to provide in-person attorney visitation. Am. Compl. ¶ 38. The government has clear mechanisms to ensure in-person attorney access for law-of-war detainees held by the military at Guantánamo, in the *same* facilities where immigrant detainees are held. *In re Guantanamo Bay Detainee Litigation*, 577 F. Supp. 2d at 163-164 (outlining protocol for in-person attorney visits). Defendants have ignored requests by counsel who were on base with valid

security clearances for in-person attorney visits with immigrant detainees at Guantánamo. Am. Compl. ¶ 25. Defendants have held immigrant detainees at Guantánamo for as long as 54 days. Ramos Decl.   ¶¶ 13, 15. And the number of law-of-war detainees held by the military at Guantánamo, was greater than the number of immigrants detained at Guantánamo—last publicly reported at 42 people. *Compare* Am. Compl. ¶ 46, *with In re Petitioners Seeking Habeas Corpus Relief in Rel. to Prior Detentions at Guantanamo Bay*, 700 F. Supp. 2d 119, 124 (D.D.C. 2010) (noting consolidation of 105 cases of law-of-war detainees held at Guantánamo). Given the existence of attorney-client visitation rooms and a decades-old protocol for in-person attorney visitation of law-of-war detainees at Guantánamo, there exists an "alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests." *Turner*, 482 U.S. at 91.[10]

Defendants' restrictions on detainees' calls to family further violate Plaintiffs' First Amendment rights. Officers place Plaintiffs' calls on speakerphone, sit less than half a meter from the detainee during calls to family, and disconnect the phone call and suspend detainees from phone calls if the detainee shares anything that the officers "disagree with," including mention of their detention at Guantánamo or Cuba, or conditions of confinement. Am. Compl. ¶ 36. Defendants do not dispute this practice or specify a governmental interest at issue, but instead, explain that "[d]uring family calls, a staff member is present to monitor all phone calls to ensure

---

[10] Defendants' citation to *Overton* v. *Bazzetta*, 539 U.S. 126 (2003), is inapposite. *Overton* addressed a regulation that allowed for prisoners to receive in-person visits from an "unlimited number" of immediate family members and 10 other designated individuals, but excluded minors under the age of 18 unless they are children, stepchildren, grandchildren, or siblings of the prisoner. *Firewalker-Fields v. Lee*, 58 F.4th 104, 117 (4th Cir. 2023) is also misplaced, as it involved the provision of religious accommodations to a prisoner who complained of lack of Muslim services at noon, when he was permitted to have an Imam visit at 12:30. *Wardell v. Duncan*, 470 F.3d 954 (10th Cir. 2006), is also inapplicable, as it involved a challenge to a prison's confiscation of books sent by an unapproved source.

that no information pertaining to the security, terrain, or facility details are divulged." Ramos Decl. ¶ 37. However, there is no permissible interest in prohibiting detainees from disclosing the location of their detention, particularly where the government has made this information publicly available on the ICE detainee locator website, and given their status in civil immigration detention. *See Procunier v. Martinez*, 416 U.S. 396, 413 (1974) (First Amendment restrictions on outgoing correspondence cannot be "greater than is necessary or essential" to protect "important or substantial interests."). Nor can the government censor communication by detainees to their family members because they criticize conditions of confinement. *Id.* at 413-16 (striking down restrictions on prisoner correspondence that "unduly complain" or "magnify grievances."). For these reasons, Plaintiffs have more than adequately stated a First Amendment claim based on Defendants' restrictions on communication with attorneys and family members.

## CONCLUSION

For these reasons, Defendants' Motion to Dismiss should be denied.

Dated: June 30, 2025

Eunice H. Cho (D.C. Bar No. 1708073)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW, 7th Floor
Washington, DC 20005
(202) 546-6616
echo@aclu.org

My Khanh Ngo (D.C. Bar No. CA00219)
Kyle Virgien*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770

Respectfully submitted,

*/s/ Lee Gelernt*
Lee Gelernt (D.D.C. Bar No. NY0408)
Brett Max Kaufman (D.D.C. Bar No. NY0224)
Judy Rabinovitz*
Noor Zafar*
Omar C. Jadwat*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
bkaufman@aclu.org
jrabinovitz@aclu.org
nzafar@aclu.org

25

mngo@aclu.org
kvirgien@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org

Deepa Alagesan (D.D.C. Bar No. NY0261)
Kimberly Grano (D.D.C. Bar No. NY0512)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza, 33rd Floor
New York, New York 10004
(516) 838-7044
dalagesan@refugeerights.org
kgrano@refugeerights.org

ojadwat@aclu.org

Wafa Junaid*
NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3376
wjunaid@nyclu.org

Baher Azmy**
Shayana D. Kadidal (D.C. Bar No.
454248)
J. Wells Dixon**
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, Floor 7
New York, NY 10012
(212) 614-6427
bazmy@ccrjustice.org
shanek@ccrjustice.org
wdixon@ccrjustice.org

*Attorneys for Plaintiffs-Petitioners*

*Appearing under certificate of pro bono
representation*
***Pro bono representation certificates
forthcoming*