BRETT A. SHUMATE
*Assistant Attorney General*
DREW C. ENSIGN
*Deputy Assistant Attorney General*
ANTHONY NICASTRO
*Acting Director*
DEVIN BARRETT
*Senior Litigation Counsel*
MALCOLM MCDERMOND
JASON K. ZUBATA
ALEXA PERLMUTTER
*Trial Attorneys*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation,
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4665
Email: alexa.s.perlmutter@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Johon Elias Suazo-Muller, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-00418-CJN |
| | ) | |
| Kristi Noem, Secretary, Department of Homeland Security, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# DEFENDANTS' REPLY IN SUPPORT OF
## THEIR MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

   I.   Plaintiffs' claims are moot as they are neither detained at NSGB or otherwise in U.S. custody. ...........................................................................................................................2

   II.  Plaintiffs lack standing to raise many of their allegations as they have not actually suffered or will imminently suffer those alleged injuries. ...................................................5

   III.  Plaintiffs Fail to State a Viable Constitutional Claim...........................................................8

      A.   Plaintiffs fail to state a Fifth Amendment claim. ........................................................ 9

         i.   Plaintiffs fail to identify a qualifying liberty interest as to their access to counsel that has been unfulfilled or otherwise infringed upon. ............................................. 9

         ii.   Plaintiffs fail to state a substantive due process claim...............................................11

      B.   Plaintiffs fail to state a First Amendment claim. ........................................................ 14

CONCLUSION...................................................................................................................16

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Ams. for Immigrant Just. v. DHS*,
   No. CV 22-3118 (CKK), 2023 WL 1438376 (D.D.C. Feb. 1, 2023) ...................................... 14

*A.A.R.P. v. Trump*,
   145 S. Ct. 1364 (2025) ............................................................................................................ 4

*Abdullah v. Trump*,
   No. 25-5002, 2025 WL 914093 (D.C. Cir. Mar. 24, 2025) ...................................................... 2

*Abhe & Svoboda, Inc. v. Chao*,
   508 F.3d 1052 (D.C. Cir. 2007) ............................................................................................. 12

*Amatel v. Reno*,
   156 F.3d 192 (D.C. Cir. 1998) ............................................................................................... 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................... 8, 14

*Bell v. Wolfish*,
   441 U.S. 520 (1979) ............................................................................................................... 13

*Block v. Rutherford*,
   468 U.S. 576 (1984) ................................................................................................................. 9

*Brennan v. City of N.Y.*,
   No. 19-CV-02054 (NGG) (CLP), 2023 WL 5672590 (E.D.N.Y. Sep. 1, 2023) ....................... 8

*Briscoe v. Costco Wholesale Corp.*,
   61 F. Supp. 3d 78 (D.D.C. 2014) .................................................................................. 2, 8, 15

*Cannon v. Wells Fargo Bank, N.A.*,
   952 F. Supp. 2d 1 (D.D.C. 2013) ........................................................................................... 12

*Collins v. Harker Heights*,
   503 U.S. 115 (1992) ................................................................................................................. 9

*Dep't of State v. Munoz*,
   602 U.S. 899 (2024) ................................................................................................................. 9

*Givens v. Bowser*,

    111 F.4th 117 (D.C. Cir. 2024) ............................................................................ 3

*Gul v. Obama*,

    652 F.3d 12 (D.C. Cir. 2011) ............................................................................... 2

*Hatim v. Obama*,

    760 F.3d 54 (D.C. Cir. 2014) ............................................................................. 13

*Hernandez-Carrera v. Carlson*,

    547 F.3d 1237 (10th Cir. 2008) ......................................................................... 10

*Hinton v. Corr. Corp. of Am.*,

    624 F. Supp. 2d 45 (D.D.C. 2009) ..................................................................... 12

*J.D. v. Azar*,

    925 F.3d 1291 (D.C. Cir. 2019) ........................................................................... 3

*Jennings v. Rodriguez*,

    583 U.S. 281 (2018) ................................................................................... 10, 13

*Kang v. DHS*, No. 21-2944 (RJL),

    2022 WL 4446385, at *5 (D.D.C. Sep. 23, 2022) ................................................ 5

*Kleindienst v. Mandel*,

    408 U.S. 753 (1972) .......................................................................................... 14

*Lewis v. Casey*,

    518 U.S. 343 (1996) ............................................................................................ 7

*Lyon v. U.S. Immigr. & Customs Enf't*,

    171 F. Supp. 3d 961 (N.D. Cal. 2016) .............................................................. 15

*Morrissey v. Brewer*,

    408 U.S. 471 (1972) .......................................................................................... 10

*N.Y. Rehab. Care Mgmt., LLC v. N.L.R.B.*,

    506 F.3d 1070 (D.C. Cir. 2007) ......................................................................... 15

*Parm v. Nat'l Bank of Cal., N.A.*,

    242 F. Supp. 3d 1321 (N.D. Ga. 2017) ........................................................... 2, 7

*Sharp v. Capitol City Brewing Co., LLC*,

    680 F. Supp. 2d 51 (D.D.C. 2010) ................................................................... 6, 7

*Singh v. Tillerson*,
    271 F. Supp. 3d 64 (D.D.C. 2017) ........................................................................ 8

*S. Poverty L. Ctr. v. DHS*,
    *No. CV 18-760 (CKK),* 2020 WL 3265533, at *19 (D.D.C. June 17, 2020) ........................... 11

*Thorpe v. District of Columbia*,
    303 F.R.D. 120 (D.D.C. 2014) .............................................................................. 7

*Torres v. DHS*,
    411 F. Supp. 3d 1036 (C.D. Cal. 2019) ............................................................. 11, 15

*Trudeau v. FTC*,
    456 F.3d 178 (D.C. Cir. 2006) ............................................................................ 8

*Trump v. CASA, Inc.*,
    No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025) ................................................. 4

*Turner v. Safley*,
    482 U.S. 78 (1987) ............................................................................... 14, 15, 16

*Unan v. Lyon*,
    853 F.3d 279 (6th Cir. 2017) ............................................................................. 5

*Ward v. D.C. Dep't of Youth Rehab. Servs.*,
    768 F. Supp. 2d 117 (D.D.C. 2011) .................................................................... 12

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) ................................................................................ 9, 10, 11

*Wilson v. Gordon*,
    822 F.3d 934 (6th Cir. 2016) ............................................................................. 5

*Wong Wing v. United States*,
    163 U.S. 228 (1896) ....................................................................................... 10

*Youkelsone v. F.D.I.C.*,
    910 F. Supp. 2d 213,221 (D.D.C. 2012), aff'd, 560F. App'x 4 (D.C. Cir. 2014) ................... 12

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) .................................................................................. 10, 11

# INTRODUCTION

On January 29, 2025, the President directed the Secretary of Defense and the Secretary of Homeland Security to take all appropriate actions to expand the Migrant Operations Center at the Naval Station Guantanamo Bay (NSGB) to allow for the housing of "high-priority criminal aliens unlawfully present in the United States."[1] Since that time, groups of immigration detainees who have been ordered removed from the United States have been moved to NSGB en route to completing their removals. These detainees—including both named Plaintiffs who were staged at NSGB for less than sixty days and have since departed for their final destination countries—are all subject to final orders of removal and were at NSGB for staging for final removal. ECF No. 14-1, Declaration of Juan Agudelo ("Agudelo Decl.") at ¶ 10.

Plaintiffs' Opposition, ECF No. 46 (Opp'n), fails to overcome Defendants' bases for dismissal. Plaintiffs' claims are moot because both Plaintiffs have been removed and neither faces any reasonable possibility of being subjected to the challenged policies again. *See* ECF No. 42-2, Declaration of Jesus Ramos ("Ramos Decl.") at ¶¶ 15, 26. They additionally lack standing because they have not personally suffered, nor have they alleged that they will suffer, the wide range of injuries stated in their Amended Complaint. While Plaintiffs attempt to relitigate their motion for class certification to avoid procedural default, those arguments fail because neither named Plaintiff remains at NSGB nor do the alleged facts establish that they suffered or will suffer the claimed injuries. Thus, Plaintiffs have not met their burden of demonstrating that an exception to the mootness or standing doctrines apply.

---

[1] The White House, "Expanding Migrant Operations Center at Naval Station Guantanamo Bay to Full Capacity" (Jan. 29, 2025), https://www.whitehouse.gov/presidentialactions/2025/01/expanding-migrant-operations-center-at-naval-station-guantanamo-bay-to-fullcapacity/.

1

Finally, Plaintiffs fail to state a constitutional claim under the Fifth or First Amendments as their proposed liberty interest is overly broad, and they fail to allege facts to establish that their rights have been violated or that the reasonable limitations on telecommunications at NSGB are not in service of a legitimate government interest. For these reasons, Plaintiffs' Amended Complaint should be dismissed.

## **ARGUMENT**

### I. **Plaintiffs' claims are moot as they are neither detained at NSGB or otherwise in U.S. custody.**

Plaintiffs' claims are not justiciable because both Plaintiffs have departed from NSGB and are no longer in U.S. custody, rendering their claims moot. *See Gul v. Obama*, 652 F.3d 12, 15 (D.C. Cir. 2011) (affirming the district court's finding that the petitioners' habeas claims were moot once they were no longer in U.S. custody); *see also Abdullah v. Trump*, No. 25-5002, 2025 WL 914093, at *1 (D.C. Cir. Mar. 24, 2025) (affirming *Gul*'s finding that "[a]ppellant's habeas case has been mooted by his transfer to the custody of a foreign sovereign").[2]

As an initial matter, Plaintiffs do not dispute Defendants' arguments that their individual claims do not satisfy the collateral consequences or capable-of-repetition-but-evading-review exceptions to mootness. *Compare* Mot. at 9-10, *with* Opp'n at 9-13. Both arguments are thus conceded. *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 83 n.2 (D.D.C. 2014) ("[F]ailure to respond to a legal argument made in a defendant's motion to dismiss can be treated as a concession of that argument and, thus, result in dismissal of the cause of action."). Plaintiffs instead

---

[2] Plaintiffs take issue with Defendants' reliance of *Gul* and *Abdullah* as they did not involve a class complaint. However, absent class certification (which is inappropriate for reasons Defendants addressed separately in their opposition, ECF No. 42), "the Court considers only Plaintiff's individual allegations ..., not the generalized allegations of the putative class members." *Parm v. Nat'l Bank of Cal., N.A.*, 242 F. Supp. 3d 1321, 1342 (N.D. Ga. 2017). Defendants' opposition to Plaintiffs' motion for class certification separately addresses how Plaintiffs' claims are nonetheless moot in the class context. ECF No. 42 at 9-14.

use their opposition to relitigate their arguments in support of class certification, particularly claiming that mootness should be considered "in the class context" before a class has been certified. *See* Opp'n at 9 n.3. As a general rule, at least one named plaintiff must keep his or her individual dispute live for every claim until class certification or else the class action based on those claims becomes moot. *See J.D. v. Azar*, 925 F.3d 1291, 1307 (D.C. Cir. 2019). Even considered in the potential class context, however, Plaintiffs' claims are moot, without an exception for their claims to survive dismissal. *See* Defs.' Opp'n to Class Certification at 9-14 (ECF No. 42) (arguing how Plaintiffs' claims fare no better in the class certification context and discussing the deficiencies that prevent an inherently transitory finding).

First, Plaintiffs allege the named Plaintiffs' claims satisfy both requirements of the "inherently transitory" exception to mootness: (1) "whether the individual claim might end before the district court has a reasonable amount of time to decide class certification" and (2) "whether some class members will retain a live claim at every stage of litigation." Opp'n at 9-11 (citing *J.D.*, 925 F.3d at 1311). However, the record must assure the Court that "some class members will retain a live claim through the proceedings." *Givens v. Bowser*, 111 F.4th 117, 121 (D.C. Cir. 2024) (quoting *J.D.*, 925 F.3d at 1307). But here, the record fails to provide such assurances because, at the outset, both named Plaintiffs no longer retain live claims—neither are at NSGB and neither has any reasonable expectation of being there ever again.

In addition, the record does not demonstrate that alleged injuries to other class members will persist because Plaintiffs concede that Defendants have established policies and practices for detainees to communicate with counsel and family members. *See* Am. Compl. ¶ 23. Further, Plaintiffs' own contentions prove that Defendants are implementing these policies and practices: (1) both named Plaintiffs admit being able to have calls with legal counsel and with family

members on various occasions, ECF No. 35-3, Suazo-Miller Decl. ¶¶ 8-9 (legal counsel call), ¶ 10 (stating he was "allowed to speak to my family about 20 times" as of the filing of the Amended Complaint); ECF No. 35-4, Lopez Jarquin Decl. ¶¶ 8 (family calls), 9 (legal counsel call); and (2) attorneys representing individuals at NSGB concede that they have been able to schedule and conduct legal calls with their clients. ECF No. 35-5, Parsonage Decl. ¶ 5; ECF No. 35-6, Rohan Decl. ¶¶ 5-13.

Furthermore, the Court should not infer injuries and claims to other potential class members from Plaintiffs' self-serving, imprecise declarations.[3] Many of Plaintiffs' alleged injuries rely on ambiguous accusations and assumptions. *See* Suazo-Muller Decl. ¶ 8 ("I was never told that I had a right to speak to an attorney... [I] never saw any signs with information on how to speak to an attorney."); Lopez Jarquin Decl. ¶ 7 ("I think [the form posted at NSGB] is only for complaints related to sexual abuse, not for representation or help in our immigration cases. I do not know of any information available here on whom to contact for legal representation or help."). The named Plaintiffs' claimed personal (and perhaps strategic) ignorance of the procedures that Defendants have put in place to request legal consultations or calls with family does not demonstrate that other potential class members lack such knowledge and opportunity. For these reasons, the record does not demonstrate Plaintiffs' claims meet the "inherently transitory" exception.

---

[3] Nor should this Court entertain or extrapolate injuries and claims made by non-party declarants. *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1376 (2025) (Alito, J., dissenting) ("No provision of law imposes on a habeas court the duty to determine facts or decide legal issues regarding parties who are not before the court."); *cf. Trump v. CASA, Inc*., No. 24A884, 2025 WL 1773631, at *10-11 (U.S. June 27, 2025) (explaining that, to avoid "de facto class actions," injunctions must be "party-specific" prior to class certification) (citation omitted) .

Second, Plaintiffs contend that the "picking off" exception to mootness applies. Opp'n at 11 (citing *Wilson v. Gordon*, 822 F.3d 934, 947 (6th Cir. 2016)). As an initial matter, the D.C. Circuit has not recognized this exception. *Kang v. DHS*, No. 21-2944 (RJL), 2022 WL 4446385, at \*5 (D.D.C. Sep. 23, 2022).[4]  Even if the exception exists in this jurisdiction, Plaintiffs fail to demonstrate that Defendants have picked off the named Plaintiffs by "strategically mooting named plaintiffs claims in an attempt to avoid class action." *Id.* (cleaned up).  Plaintiffs point to the government's removal of both named Plaintiffs "after they filed the complaint and sought class certification[.]" Opp'n at 12. But that is precisely the point of removal operations. Both named Plaintiffs had final removal orders and were staged at NSGB pending departure to their country of removal. While Plaintiffs attempt to impute malicious intent in carrying out final orders of removal, Plaintiffs have not shown any evidence in support of this presumptive conclusion. *Kang*, 2022 WL 4446385, at \*5 ("Other than this bare allegation that defendants picked-off the named plaintiffs, plaintiffs have offered no evidence or support for their position" and thus "have failed to show that the exception applies.").

Accordingly, the removed Plaintiffs' claims are moot, Plaintiffs fail to demonstrate an applicable exception to the mootness doctrine, and therefore, the Amended Complaint should be dismissed.

## II.    Plaintiffs lack standing to raise many of their allegations as they have not actually suffered or will imminently suffer those alleged injuries.

Plaintiffs do not address or respond to Defendants' argument that the named Plaintiffs lack standing to the extent they challenge injuries they themselves have not experienced and will not

---

[4] Moreover, in jurisdictions that have adopted the "picking off" exception, it remains an open question whether evidence of a defendant's motive to avoid a class certification is necessary to invoke this exception. *See Wilson v. Gordon*, 822 F.3d at 951 & n.4 (6th Cir. 2016); *see also, e.g.*, *Unan v. Lyon*, 853 F.3d 279, 285-86 (6th Cir. 2017) (analyzing defendant's actions in mooting plaintiff's claims to determine whether the evidence would "support a finding of motive").

experience in the future, given their removal. *See Sharp v. Capitol City Brewing Co., LLC*, 680 F. Supp. 2d 51, 57 (D.D.C. 2010) (requiring plaintiff to have suffered actual or imminent injury and disallowing claiming injury on behalf of others). Instead, Plaintiffs incorrectly assert that Defendants did not claim that Plaintiffs "failed to allege an injury in fact," Opp'n at 8; yet, Defendants argued in their principal motion that Plaintiffs lack standing to "challenge injuries they themselves have not experienced, and ... will not experience in the future[.]" Mot. at 10 (citing *Sharp*, 680 F. Supp. 2d at 57.

Plaintiffs' Opposition asserts that they have standing to raise their First Amendment claim alleging "unreasonable restrictions that limit their ability ... to retain, consult, and communicate with counsel, and to communicate and associate with family members," Opp'n at 7, despite both Plaintiffs having the ability to communicate repeatedly with their family members and with counsel during their staging at NSGB. *See, e.g.*, Suazo-Muller Decl. at ¶ 10 (acknowledging having approximately 20 calls with his family at the time of filing the amended complaint); Lopez Decl. at ¶¶ 7-8 (similarly acknowledging the availability of daily calls to family and confirming the presence of the posted notices regarding counsel calls).

Plaintiffs also continue to claim that they have alleged an injury of their Fifth Amendment Due Process rights as their detention at NSGB "amounts to unconstitutional punishment." Opp'n at 7. Yet, Plaintiffs do not acknowledge the fact they themselves have not actually suffered or will imminently suffer most of the injuries alleged in the Amended Complaint, instead mischaracterizing Defendants' standing argument as a challenge of typicality for class certification—which Defendants separately addressed in their opposition to Plaintiff's motion for class certification. Defs.' Opp'n to Class Certification at 23-25 (noting that "[n]either named

Plaintiff[] has suffered most of the injuries in the Amended Complaint, and thus their claims are not typical of the class they intend to represent").

Plaintiffs seemingly attempt to blur the line between the allegations of the named Plaintiffs and allegations made on behalf of the putative class. In so doing, they rely exclusively on *Lewis v. Casey*, 518 U.S. 343, 358 (1996) and *Thorpe v. District of Columbia*, 303 F.R.D. 120, 142-43 (D.D.C. 2014), two cases dealing with the sufficiency of claims made on behalf of a *certified* class. But that case law has no bearing here, as no class has been (and should not be) certified. Without class certification (which is inappropriate for reasons Defendants addressed separately in their class certification opposition), "the Court considers only Plaintiff's individual allegations ... not the generalized allegations of the putative class members." *Parm*, 242 F. Supp. 3d at 1342.

At bottom, neither named Plaintiff alleged suffering of a majority of the allegations in the Amended Complaint, including: (1) requests from their attorneys going unanswered and not being made available at the scheduled times; (2) not having documents delivered to them or returned to counsel; (3) being denied daily calls with family; (4) issues with the ICE Detainee Locator; or (5) being handcuffed and chained during calls. *Compare* Am. Compl. ¶¶ 26, 30, 31, 33, 34, 35, 36 *with* Suazo-Muller Decl. and Lopez Decl. Thus, neither having suffered these injuries, nor being likely to suffer them after having been removed from the United States, they lack a concrete and particularized injury to challenge these alleged violations. *See Sharp*, 680 F. Supp. 2d at 57.

Plaintiffs also fail to meaningfully respond to Defendants' argument that Plaintiffs lack standing to challenge the distinct policies and practices at Camp VI, *see* Ramos Decl. ¶¶ 13, 22, as

they were not detained at that facility. *Compare* Mot. at 11 *with* Opp'n at 7-8.[5] At most, Plaintiffs merely note in a footnote that they have not "allege[d] that different policies apply at Camp VI and the [MOC]." Opp'n at 8 n.2. But that is simply not true. *See* Defs.' Opp'n to Class Certification at 19 (discussing how "each facility's conditions differ in ways that are significant to Plaintiffs' claims"); *see also Singh v. Tillerson*, 271 F. Supp. 3d 64, 67 (D.D.C. 2017) ("A court need not accept as true 'a legal conclusion couched as a factual allegation' nor an inference 'unsupported by the facts set out in the complaint.'") (quoting *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006)).  Because Plaintiffs did not respond to this argument, this Court should treat it as conceded, *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 83 n.2 (D.D.C. 2014), and dismiss the Amended Complaint insofar as it challenges the policies at Camp VI where neither named Plaintiff was detained.

Accordingly, Plaintiffs lack standing and are left only with the bare-bones allegations contained in the named Plaintiffs' declarations which are, for the reasons discussed in Defendants' Motion and below, insufficient to support either the First Amendment or Due Process claim.

## III.    Plaintiffs Fail to State a Viable Constitutional Claim.

Plaintiffs maintain that they suffered violations of their Fifth and First Amendment rights, Opp'n at 13-25, but they have yet to identify a qualifying liberty interest under the Fifth Amendment that has not been satisfied nor any infringement of their First Amendment rights.

---

[5] Plaintiffs challenge Defendants' reliance on *Brennan v. City of N.Y.*, No. 19-CV-02054 (NGG) (CLP), 2023 WL 5672590, at *10-11 (E.D.N.Y. Sep. 1, 2023), as "both Named Plaintiffs were detained at [NSGB] at the time they filed the Amended Complaint." Opp'n at 8. However, Plaintiffs' clarification is irrelevant because, while both facilities are located at NSGB, they are different facilities with distinct policies. *See* ECF No. 42-4, Memorandum of Understanding ("MOU") (describing Camp VI and the MOC as distinct detention facilities). Therefore, contrary to Plaintiffs' reading of *Brennan*, its holding that "Plaintiffs cannot demonstrate standing to enjoin a current ongoing injury" when they were not detained at the facility where such injury is alleged to be occurring is applicable here. 2023 WL 5672590, at *10-11.

Therefore, Plaintiffs fail to state a claim under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.     Plaintiffs fail to state a Fifth Amendment claim.

Plaintiffs maintain that Defendants have violated Plaintiffs' Fifth Amendment Right to Due Process by denying or otherwise discouraging detainees from communicating with counsel and their families. Opp'n at 15. Their claim fails because their due process protections—which are limited—have already been satisfied, such that Plaintiffs fail to raise an unfulfilled or infringed-upon qualifying liberty interest. *See Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). Furthermore, Plaintiffs have not established that the challenged telecommunication restrictions are either punitive, not rationally related to a legitimate government purpose, or excessive, as required to receive relief. *See Block v. Rutherford*, 468 U.S. 576, 583-84 (1984).

### i.     Plaintiffs fail to identify a qualifying liberty interest as to their access to counsel that has been unfulfilled or otherwise infringed upon.

Plaintiffs argue that they possess a "clearly established liberty interest to be free from punitive conditions of confinement—including punitive restrictions on their ability to communicate with counsel," Opp'n at 13, but this overbroad construction fails to heed the Supreme Court's instruction to provide a "careful description" of the asserted interest. *Glucksberg*, 521 U.S. at 721; *see also Dep't of State v. Munoz*, 602 U.S. 899, 910 (2024) (narrowing alien's liberty interest from the "fundamental right of marriage" to "the right to reside with her noncitizen spouse in the United States"). Properly construed, Plaintiffs' asserted liberty interest is the right to dictate access to counsel procedures, including in-person visits *during* the effectuation of their removal order, which would "break new ground" and expand the concept of substantive due process into the "unchartered area" of the final stages of an execution of final order of removal. *Glucksberg*, 521 U.S. at 720 (quoting *Collins v. Harker Heights,* 503 U.S. 115, 125 (1992)).

Contrary to Plaintiffs' assertions, it is not "irrelevant" to the due process inquiry that they are aliens with final orders of removal.  Opp'n at 14.  While they are correct that "the Due Process Clause protects an alien subject to a final order of deportation[,] ... the nature of that protection may vary depending upon status and circumstance." *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001); *see Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1254 (10th Cir. 2008) ("[I]t is not at all clear that removable aliens benefit from precisely the same advantages of due process as do citizens or lawful permanent resident aliens.").  Indeed, "[d]ue process is flexible ... and it calls for such procedural protections as the particular situation demands." *Jennings v. Rodriguez*, 583 U.S. 281, 314 (2018) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  For that reason, it hardly follows from the Court's decision to strike down a statute imposing a year of hard labor on removable aliens, *Zadvydas*, 533 U.S. at 694 (discussing *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)), that some limitations on Plaintiffs' ability to access counsel based on operational constraints during the short period in which they are being staged for imminent removal would give rise to a liberty interest that is "objectively, deeply rooted in this Nation's history and tradition." *See Glucksberg*, 521 U.S. at 720-21 (cautioning courts to carefully consider whether to "expand the concept of substantive due process" to recognize novel rights).

Plaintiffs may want to assert claims "ancillary to the removal process," Opp'n at 14-15, but that does not change the analysis. First, they allege no facts in their Amended Complaint that they desire to or have been prevented from bringing any of these claims as a result of Defendants' policies or practices regarding access to counsel at NSGB. *See generally* Am. Compl. In fact, Plaintiffs admit that there is now communication with counsel and their families. *See id.* at 23; *see also* Suazo-Muller Decl. ¶¶ 8-9 (indicating ability to contact counsel); Lopez Jarquin Decl. ¶ 9 (same). Second, the relevant inquiry does not depend on *which* legal challenges Plaintiffs seek to

bring, but whether, during the effectuation of their removal order, they have a "deeply rooted" right to access to counsel beyond what is currently provided. *Glucksberg*, 521 U.S. at 720-21. They cite no authority for expanding this right through the effectuation of their removal orders, nor any history to justify it. The cases they cite on this point, *see S. Poverty L. Ctr. v. DHS*, No. CV 18-760 (CKK), 2020 WL 3265533, at *19 (D.D.C. June 17, 2020); *Torres v. DHS,* 411 F. Supp. 3d 1036, 1063-64 (C.D. Cal. 2019), do not lend credence to their asserted liberty interest because the aliens in those cases were in removal proceedings and not in the process of being removed.

Finally, Plaintiffs are incorrect that, under this theory of their liberty interest, the "government [could] subject anyone with a final order of removal to indefinite detention, or punitive and abusive detention conditions, without the ability to challenge those abuses." Opp'n at 15-16. This is a straw man argument. Defendants do not argue that individuals with removal orders cannot challenge a deprivation of their liberty interests in non-punitive detention. *See*, *e.g.*, *Zadvydas*, 533 U.S. at 689 ("The [post-removal-period detention] statute ... limits an alien's detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention."). Rather, Defendants contend that the liberty interest Plaintiffs assert as non-punitive detention vis-à-vis access to counsel is not a "careful description" of the alleged liberty interest as required by *Glucksberg*, because it broadly includes their wish-list of procedures to facilitate attorney-client communications during the execution of their removal orders.

### ii.    Plaintiffs fail to state a substantive due process claim.

As a threshold matter, Defendants do not rely on "evidence outside of the proper record" in alleging a non-punitive government interest, Opp'n at 18, because the Court may consider documents "incorporated by reference in the complaint," or those "'upon which the plaintiff's

complaint necessarily relies' even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss," *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (quoting *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009). Plaintiffs rely upon the Memorandum of Understanding (MOU) between DHS and DOD, Am. Compl. ¶ 18, the declaration of Juan Agudelo, *id.* ¶ 34; Ex. B, Defs.' Opp'n to TRO (ECF No. 14-2), and the declarations from two other individuals, *id.* ¶¶ 29, 35, 36, 46, from the now dismissed *Espinoza Escalona v. Noem* action, *see, e.g.*, Declaration of Juan Lopez-Vega, *Espinoza Escalona v. Noem*, No. 1:25-cv-604 (D.D.C. Mar. 10, 2025), ECF No. 14-2; Declaration of Robert Green, *Espinoza Escalona v. Noem*, No. 1:25-cv-604 (D.D.C. Mar. 10, 2025), ECF No. 14-1. The Court may consider those declarations. *See Cannon v. Wells Fargo Bank, N.A.*, 952 F. Supp. 2d 1, 4 (D.D.C. 2013) (relying on documents not attached as exhibits to the Complaint, but on which the Complaint "specifically relies"). And the Court may take judicial notice of the new and updated declarations in this matter. *See, e.g.*, Declaration of Robert Green (ECF No. 42-3); Declaration of Jesus Ramos (ECF No. 42-2). Those declarations state relevant facts contained in the public record of this proceeding, which also underlie Plaintiffs' complaint. *See Youkelsone v. F.D.I.C.*, 910 F. Supp. 2d 213, 221 (D.D.C. 2012), *aff'd*, 560 F. App'x 4 (D.C. Cir. 2014) (allowing court to take judicial notice of public records from other proceedings); *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). Thus, it is incorrect that "the government cannot meet [its] burden at this stage, where the only facts the Court may properly consider are those in those alleged in the Amended Complaint," when the Amended Complaint itself expressly relies on and incorporates other documents.

As discussed in Defendants' motion (Mot. at 13-14), due process is a "flexible inquiry" and there is no constitutional requirement for the breadth of protections that Plaintiffs seek. *See*

*Jennings*, 583 U.S. at 314. Plaintiffs do not "allege blatantly unconstitutional deprivations of attorney access." Opp'n at 17. Plaintiffs expressly acknowledge that Defendants provided aliens at NSGB with "a method for attorneys to request scheduled phone calls with detainees; the creation of a flier providing information about a telephone hotline to the American Bar Association ("ABA") and the option to request an outgoing legal call." Am. Compl. ¶ 23. Despite providing access through these means, Plaintiffs contend that the government does not have a legitimate interest in maintaining reasonable restrictions on telecommunications. Opp'n at 17-19.

Contrary to Plaintiffs' assertion comparing the access to counsel procedures for law-of-war detainees and detainees at other ICE facilities, Opp'n at 19, does not establish that no legitimate governmental interest exists in the reasonable restrictions on telecommunications for aliens at NSGB nor that these restrictions are excessive. This is because of the unique concerns present at a United States military base coupled with the anticipated short-term stay of aliens during the effectuation of their removal orders. *See* Ramos Decl. ¶¶ 33-35; Green Decl. ¶ 16. As the D.C. Circuit has previously recognized, securing the detention and military facilities at NSGB is "beyond cavil a legitimate governmental interest." *Hatim v. Obama*, 760 F.3d 54, 59 (D.C. Cir. 2014); *see also* MOU at 4.1.20 (explaining that "the appropriate level of access ... to legal representation" takes into account "security concerns"). In line with the D.C. Circuit's reasoning, throughout its briefing here, Defendants have asserted such interests—specifically "required maintenance, resource limitations, and security concerns," Ramos Decl. ¶ 33; Green Decl. ¶ 16— which have already been found to justify restrictions for those not subject to punitive detention. *Bell v. Wolfish*, 441 U.S. 520, 561 (1979) ("Ensuring security and order at the institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both."). Ultimately, because Plaintiffs have not alleged facts showing punitive

13

conditions, nor that those conditions are not rationally related to a legitimate government interest or otherwise excessive, their substantive due process claim should be dismissed. *Iqbal*, 556 U.S. at 678.

**B.    Plaintiffs fail to state a First Amendment claim.**

Plaintiffs further maintain that their First Amendment rights to communicate with legal counsel and family have been impeded or otherwise infringed upon. Opp'n at 20. But Plaintiffs have received all they are entitled to and their claims to the contrary cannot pass muster in light of their repeated communications with counsel and with family and friends. *See, e.g.*, Suazo-Miller Decl. ¶¶ 8-9; Lopez Jarquin Decl. ¶ 9.

Plaintiffs' alleged First Amendment violation fails as a matter of law because when the Executive exercises its delegated power to exclude aliens "on the basis of a facially legitimate and bona fide reason, the courts will neither look beyond the exercise of that discretion, nor test it by balancing its justification" against the First Amendment. *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972) (finding no First Amendment violation arising from denial of visa application). As described above, Plaintiffs fail to acknowledge the technological, logistical, and resource limitations of NSGB impacting their telecommunications while being stationed there briefly as the government effectuates their final removal orders. Ramos Decl. ¶ 33; Green Decl. ¶ 16. These facility limitations have resulted in the implementation of limitations on the frequency and length of attorney and family communications for immigration detainees. However, under *Mandel*, this Court need not "look beyond" those reasons or "balance" them against Plaintiffs' asserted First Amendment interests. 408 U.S. at 770.

Plaintiffs incorrectly argue that the four-factor test established in *Turner v. Safley*, 482 U.S. 78, 107 (1987)—used to assess the reasonableness of detention restrictions—does not apply to immigration detention. Various courts, including in this District, have applied this test in

this exact context. *See e.g.*, *Ams. for Immigrant Just. v. DHS*, No. CV 22-3118 (CKK), 2023 WL 1438376, at *13 (D.D.C. Feb. 1, 2023) (applying *Turner* in the context of ICE detention); *Lyon v. U.S. Immigr. & Customs Enf't*, 171 F. Supp. 3d 961, 985 (N.D. Cal. 2016) (same); *Torres*, 411 F. Supp. 3d at 1067 (same). In any event, Plaintiffs maintain that their Amended Complaint alleges facts sufficient to prevail under the *Turner* test. Opp'n at 23; 482 U.S. at 107. But, in doing so, they address only one of the four factors. *See* Opp'n at 21-25. Although the first factor "looms especially large," *Amatel v. Reno*, 156 F.3d 192, 196 (D.C. Cir. 1998), the fact that Plaintiffs forfeit any argument on the other factors should be dispositive. *N.Y. Rehab. Care Mgmt., LLC v. N.L.R.B.*, 506 F.3d 1070, 1076 (D.C. Cir. 2007) (party forfeits argument by failing to brief it or by mentioning it only "in the most skeletal way" (internal quotation omitted)). As explained in Defendants' motion, Mot. at 20-21, the final three *Turner* factors cut decisively toward the government because although Plaintiffs would prefer additional means by which to contact counsel, they are not prevented from hiring or speaking with their attorneys, Am. Compl. ¶¶ 23, 34, and granting Plaintiffs' requests would cause a "significant ripple effect" on fellow detainees as well as strain resources past their limits. *Turner*, 482 U.S. at 107-09; *see* Ramos Decl. ¶¶ 33-35.

Turning to the only factor that Plaintiffs do address, there is a "valid, rational connection between the [detention facility] regulation and the legitimate governmental interest put forward to justify it." 482 U.S. at 107. Plaintiffs do not appear to contest Defendants' argument that time-limited calls, intermittent interruptions of service, restriction on in-person visitation, and monitoring of family calls are justified by resource limitations, high costs, and security concerns on NGSB. *See generally* Opp'n; *see also Briscoe*, 61 F. Supp. 3d at 83 n.2 (finding that arguments not countered have been conceded). Rather, they argue only that five specific allegations lack a

rational connection to a legitimate government interest. Opp'n at 22-25. But these specific allegations lie outside of the core First Amendment rights that Plaintiffs seek to vindicate. *See* Opp'n at 20 (characterizing their First Amendment right as the freedom to hire and consult with an attorney and communicate with the outside world). Given that Plaintiffs expressly acknowledge that Defendants provided aliens at NSGB with "a method for attorneys to request scheduled phone calls with detainees; the creation of a flier providing information about a telephone hotline to the American Bar Association ("ABA") and the option to request an outgoing legal call," Am. Compl. ¶ 23, Defendants have not infringed on any protected interest.

On balance, the four *Turner* factors all weigh in the government's favor and this Court should uphold the detention regulations Defendants have put in place at NSGB for immigration detainees. Accordingly, Plaintiffs failed to allege facts sufficient to state a claim under the First Amendment and this claim should be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss this action.

Dated:  July 7, 2025
         Washington, DC

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Attorney General*

ANTHONY NICASTRO
*Acting Director*

DEVIN BARRETT
*Senior Litigation Counsel*

MALCOLM MCDERMOND
JASON K. ZUBATA

*Trial Attorneys*

By: */s/  Alexa Perlmutter*

    ALEXA PERLMUTTER
    Trial Attorney
    Office of Immigration Litigation
    U.S. Department of Justice, Civil Division
    P.O. Box 868, Ben Franklin Station
    Washington D.C. 20044
    Telephone: (202) 532-4665
    Email: alexa.s.perlmutter@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that July 7, 2025, I electronically filed this brief with the Clerk of the Court for the United States Court of for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Alexa Perlmutter*
ALEXA PERLMUTTER
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
Tel: (202) 532-4665
Email: alexa.s.perlmutter@usdoj.gov