UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHON ELIAS SUAZO-MULLER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, et al.,<br><br>Defendants. | Civil Action No. 1:25-cv-00418-CJN |

**JOINT STATUS REPORT RESPONDING TO MARCH 5, 2026, MINUTE ORDER**

Plaintiffs and Defendants (collectively, the "Parties") respectfully submit this Joint Status Report in response to the Court's March 5, 2026, Minute Order. On March 11, 2026, the Parties met and conferred as to the parties' response as discussed further below. The parties have narrowed the issues in dispute since this action began, and while some disagreements remain, the parties would like to continue conferring and negotiating to further narrow the issues before the Court.

\*   \*   \*

**1. Whether the Government is currently detaining and/or processing IAs at Camp VI and the Migrant Operations Center (MOC).**

Defendants' Position:

The U.S. Department of Homeland Security (DHS) advises that as of March 10, 2026, there are a total of three (3) illegal aliens ("IAs") detained at the MOC and zero (0) at Camp VI.

Plaintiffs' Position:

Plaintiffs have no basis to contest Defendants' report on the number of noncitizens currently detained at Guantanamo. Plaintiffs note that, based on public reporting, there have been about 780 noncitizens detained at Guantanamo as of January 28, 2026, many of whom were

detained four weeks or longer at Guantanamo. *See, e.g.*, Carol Rosenberg, The Journey of a Group of Cuban Deportees Stuck at Guantánamo, NY Times, Jan. 28, 2026, https://www.nytimes.com/2026/01/28/us/politics/cubans-gitmo-deportations.html.

**2. Whether the Government plans to continue to detain and/or process migrants at Camp VI and the MOC.**

Defendants' Position:

The Government will continue to use both facilities at NSGB for the purpose of carrying out its Illegal Alien Holding and Removal Operations, pursuant to the President's Memorandum, "Expanding Migrant Operations Center at Naval Station Guantanamo Bay to Full Capacity" (Jan. 29, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/expanding-migrant-operations-center-at-naval-station-guantanamo-bay-to-full-capacity/.

Plaintiffs' Position:

Plaintiffs have no basis to contest Defendants' position.

**3. How long migrants generally remain at NSGB before being moved off the base.**

Defendants' Position:

Defendant agencies advise that IAs are generally at NSGB an average of sixteen (16) days. Whether a particular IA remains at NSGB more or less than the 16-day average is largely dependent on the travel processing required by the country to which they are being removed.

Plaintiffs' Position:

Plaintiffs have reason to believe that the length of stay for many of the individuals detained at Guantanamo is much longer than the 16-day average reported by Defendants herein. *See, e.g.*, Carol Rosenberg, The Journey of a Group of Cuban Deportees Stuck at Guantánamo, NY Times, Jan. 28, 2026, https://www.nytimes.com/2026/01/28/us/politics/cubans-gitmo-deportations.html (describing a group of Cuban men held at Guantanamo for a least 40 days). There is ongoing

discovery in separate litigation regarding the length of time that detainees are held at Guantanamo. *See, e.g.*, Jt. Status Rep., *Luna Gutierrez v. Noem*, No. 1:25-cv-1766 (D.D.C. Mar. 5, 2026), ECF No. 81. Plaintiffs' counsel is also counsel in that litigation, but the information provided as part of that case is subject to a Protective Order. Moreover, it is unclear to Plaintiffs how Defendants are calculating the average length of stay reported above, in particular, what period of time that covers.

**4. What procedures, if any, the Government has in place to allow "detainees to communicate with counsel and their families" and which "significant barriers to attorney access," if any, remain.**

Defendants' Position:

Upon an IA's arrival at NSGB, United States Immigration and Customs Enforcement (ICE) provides each IA with an orientation session on what to expect when they are housed at the facility. ICE works diligently to ensure all essential informational materials regarding procedural rights are available to detainees. The materials include a toll-free phone number to contact pro-bono legal counsel, instructions on how to make and receive legal calls, and a detainee handbook translated into their native language. This information is provided upon an IA's arrival as well as posted in the housing units. ICE provides the IAs with multiple avenues to ensure access to both counsel and personal communications. ICE posts notices in its facilities containing information to ensure that IAs in ICE custody know about and can access options for legal representation. Those housed at NSGB may use a toll-free phone number to obtain contact information for pro bono legal counsel. The American Bar Association Legal Orientation Program toll free number is 1-855-641-6081. All legal representation information is posted in detainee housing units.

Legal representatives may request confidential legal phone calls with their clients or prospective clients by emailing: Legal.GTMO@ice.dhs.gov. ICE officers regularly monitor the inbox and aim to substantively respond to attorney requests within a few hours, providing available

timeslots for the attorney. All appointments for legal calls should be made 24 hours prior to the desired appointment time. Typically, attorney requested calls are scheduled and facilitated by the following day. Appointments are scheduled Monday through Friday 8 a.m. – 5 p.m. EST, and Saturday through Sunday from 10 a.m. – 2 p.m. and are in 20-minute increments. Legal representatives are not limited to the number of calls they can request. Legal representatives are generally permitted no more than a single 60-minute call with an illegal alien in a day, although longer calls have sometimes been accommodated. Only legal representatives, legal assistants, and interpreters are allowed on the legal calls; no family or friends of the clients are permitted. The attorney and/or his/her agents may contact outside interpretation services during the call. The calls will be confidential; a visitation officer will be stationed outside of the confidential room to ensure security by standing out of earshot but within eyeshot. The officer will knock five (5) minutes before the end time. Legal representatives and their staff are not permitted to video or audio record during any call with illegal aliens at the facility. More information about legal call access at NSGB is available here: https://www.ice.gov/detain/detention-facilities/naval-station-guantanamo-bay.

DHS has posted written notice, in English and Spanish, in the community areas of the pods regarding procedure for detainees to request to place a private, unmonitored telephone call to counsel or to speak with a representative at the American Bar Association to find legal representation. *See* ECF No. 14-3, Declaration of Col. Jennifer Venghaus (Venghaus Decl.) ¶¶ 17, 21; ECF No. 42-2, Declaration of Deputy Field Office Director Jesus Ramos ("Ramos Decl.") ¶¶ 31-32.[1] At the MOC, the notices are posted in the dorm rooms and hallways. For IAs who are not fluent in either English or Spanish, translation services are available and used

---

[1] This report incorporates previous agency declarations by reference and any updated representations are based on the current conditions at NSGB.

to help translate and explain the notices or other information. If any on-site ICE officers speak the IA's native language, translation services are provided by said ICE officers. For other languages, ICE also has access to over-the-phone interpretation services 24 hours a day, seven days a week to help coordinate interpretation between an ICE officer and a detainee. The process to facilitate an IA's request is often quicker than facilitating an attorney-requested legal call since the detainee need only dial out during designated calling periods.

For detainees housed at Camp VI, counsel calls are conducted in an adjacent building, which has eight telephone lines—four lines running into an open space with tables and chairs used for personal calls, and four lines running into four individual rooms, each with a small table and chair. There is no camera in these individual rooms, but there is a peep hole on each door covered by a wooden flap that hangs down at all times unless lifted up to check on the IA. The building is a short walk from the main Camp VI building and requires two escorts for each Camp VI detainee. Venghaus Decl.¶ 23. Any missed calls are rescheduled at the attorney or IA's request. Defendants acknowledge limited instances in which opposing counsel reached out to facilitate rescheduling calls, which were resolved expeditiously. Defendants are not aware of any ongoing disruptions to communications that would pose a significant barrier to IAs detained at NSGB.

At the MOC, the facility offers one (1) private room designated for legal calls. To maintain privacy, a white noise device is used, allowing ICE officers to still maintain a visual of the IA using the private room for security reasons but preventing the disclosure of the IA's confidential legal communications. No IAs at the MOC have been denied a request to speak with a lawyer. Plaintiffs have acknowledged these robust procedures in Plaintiffs' declarations, which, for example, confirm the presence of the posted notices regarding counsel calls. ECF No. 35-3, Declaration of Rodolfo Joel Lopez Jarquin ("Lopez Decl.") ¶¶ 7-8. Furthermore, neither named

Plaintiff alleged that they were denied the opportunity to meet with legal counsel or that they were unable to obtain necessary documents from their lawyers. *See generally*, ECF No. 35-3, Declaration of Johon Elias Suazo-Muller ("Suazo Decl.") and Lopez Decl.

Plaintiffs' Position:

Based on the information available to Plaintiffs' counsel, the system the government has set up for scheduling attorney-client calls, following the filing of this lawsuit, is not reliable. Plaintiffs' positions in this joint status report are based on the limited information available to counsel, without discovery, as this case remains at the motion to dismiss stage.

**Delays in Scheduling Legal Calls and Cancellations**. Attorneys and legal representatives have had to wait up to six (6) days to receive a response to their request for legal calls, and at times such a response is received only after Plaintiffs' counsel notifies Defendants' counsel of an unanswered request. In addition, in some cases, even when attorneys or legal representatives are able to schedule legal calls, Defendants have abruptly cancelled confirmed appointments and rescheduled them.

**Limited Call Duration**. Attorneys have reported that, despite requesting one-hour calls with clients, the facility has notified them that such a request could not be accommodated. Legal calls have therefore been limited in duration, which impedes communication, especially given the need to use interpreters and delays in scheduling calls.

**Lack of Confidential Attorney-Client Phone Calls**. Legal representatives and detainees both report that legal calls are not private or confidential. Some detainees report that legal calls take place in the same open, monitored room in which family calls take place. When legal calls occur in a separate room, detainees report being able to clearly hear guards outside of the room. In

fact, even the legal representatives on the other side of the line have also heard the guards in the background of the call.

**Lack of Clear Instruction Regarding Requests for Outgoing Calls to Counsel and ABA Hotline**. Some detainees have reported that the flyers that the government claims are available at Camp 6 and the MOC instructing detainees on how to access legal calls are not in fact available. Even when the flyers were available, detainees have reported that they believed they had to choose between calling family members and attorneys.

**5. Whether the Government has established a process for the exchange of legal documents and whether that process is sufficiently reliable.**

Defendants' Position:

IA's attorneys may follow the procedures outlined at https://www.ice.gov/detain/detention-facilities/naval-station-guantanamo-bay to send messages or documents for delivery to their clients. All correspondence must be sent to Legal.GTMO@ice.dhs.gov. The email subject line should clearly indicate it is legal correspondence/mail, and attachments must include the specific documents or forms for the IA, limited to twenty (20) pages. All documents will be inspected for contraband but not read, and legal mail will be delivered to the IA. ICE personnel processes electronic communication requests Monday through Friday, from 8 a.m. to 4 p.m. EST, by printing and providing copies to the IAs. ICE has successfully coordinated each correspondence/mail request for IAs and their attorneys using this process. It has not been common for attorneys to send documents for an IA to sign or exchange. Attorneys have generally adhered to the posted limitations, such as sending documents within the 20-page limit and only sending legal correspondence. ICE has found the current document exchange process to be sufficiently reliable, to function well, and satisfy its purpose.

Plaintiffs' Position:

Based on the information available to Plaintiffs' counsel, the process the government has established for the exchange of legal documents, following the filing of this lawsuit, remains inadequate. Plaintiffs' positions in this joint status report are based on the limited information available to counsel, without discovery, as this case remains at the motion to dismiss stage.

**Limited Incoming Legal Mail**. Defendants' process for attorneys to send legal correspondence—sending materials to Legal.GTMO@ice.dhs.gov—remains inadequate. The current process is the same one that was in place at the time Plaintiffs filed the Amended Complaint, and as noted therein, attorneys reported sending materials to that email address and either never receiving confirmation that the materials were passed along to their clients or hearing from their clients that the documents had not been provided to them. Am. Compl. ¶ 33, ECF No. 34. In addition, any legal correspondence to be provided to detainees must be limited to 20 pages. *See* ICE, Naval Station Guantanamo Bay, https://www.ice.gov/detain/detention-facilities/naval-station-guantanamo-bay ("legal correspondence/mail and include as an attachment the specific documents/forms that the legal representative wants the facility to deliver to the detained alien not to exceed the number of 20 pages"). Finally, and importantly, ICE still has not provided any publicly-available information or address as to how detainees can receive postal or courier mail. *Id.*

**No Information Regarding Outgoing Legal Mail**. Defendants' process for the exchange of legal mail still does not provide a reliable method for detainees to be able to send documents, including forms or declarations with signatures, to their legal counsel. Although Defendants have established an email account through which counsel can send legal correspondence to detainees, there is no information on how detainees can send legal correspondence or materials back to their

attorneys. Defendants' submission to this Court does not indicate that any such process exists or, if it does, how that is communicated to detainees.

**6. Whether IAs at Camp VI and the MOC have any capacity to meet in-person with legal counsel.**

Defendants' Position:

Requests for in-person visits with IAs are not being accommodated at this time due to the extensive logistical challenges with such visits, the potential need for counsel to possess security clearances, the anticipated short-term stay of the IAs, and the potential for a very high volume of counsel to request such visits. The feasibility of and challenges associated with authorizing counsel travel to NSGB for in-person visits between hired attorneys and their clients are continually being evaluated as the mission develops.

Plaintiffs' Position:

Plaintiffs have no reason to contest Defendants' position. Plaintiffs maintain that in-person visitation is critical for meaningful communication with legal counsel. Plaintiffs note that Defendants' position does not address requests for in-person by attorneys with security clearances who are already present on base at Guantánamo as part of their separate, law of war legal representation, for in person legal visits with immigrant detainees. *See* Am. Compl. ¶ 25.

**7. Whether IAs at Camp VI and the MOC are permitted to make personal phone calls.**

Defendants' Position:

IAs at both Camp VI and the MOC may request telephone calls to family by filling out and submitting a detainee request form to an ICE officer or an ICE contract security officer. For detainees housed at Camp VI, personal calls are conducted in an adjacent building, which has four phone lines situated in a single, large room, dedicated for personal calls. The building is a short walk from the main Camp VI building and requires two escorts for each Camp VI detainee. During

the calls, guards maintain line of sight through the use of video monitoring (which does not include sound). ECF No. 42-3, Declaration of Lieutenant Colonel Robert Green ("Green Decl.") ¶ 17.

The telephone calls are typically limited to ten (10) minutes; however, the IA may request an extension. At Camp VI, family calls are individually provided every third day, free of charge. When population at Camp VI is low, family calls may be offered more often, such as on a daily occurrence. At the MOC, family calls are also free of charge and are provided seven (7) days a week from 10:00 a.m. to 5:00 p.m., local time. Family calls are monitored by either ICE officers or ICE contract personnel. During family calls, a staff member is present to monitor all phone calls to ensure that no information pertaining to the security or facility details are divulged. If an initial telephone call attempt is unsuccessful, the IA is given the opportunity to call another family member. If the call to the alternate family member is not successful, the IA is escorted back to his room but given an opportunity to try again the following day. If a family call cannot be completed due to unforeseen issues—such as building maintenance—ICE staff makes every effort to allow the IA to try again later the same day. While the ability to reschedule on the same day depends on the facility's population, current population levels have generally allowed for ICE to retry same-day call attempts for the IAs. Plaintiffs have acknowledged these robust procedures in their declarations, which, for example, confirms their ability to routinely call their families while detained at NSGB. Lopez Decl. ¶¶ 7-8; Suazo Decl. ¶ 10.

Plaintiffs' Position:

Plaintiffs have no basis to dispute Defendants' position. As noted above, however, detainees have reported that they believe they must choose between a call to a family member or

an attorney, but that they cannot call both. Detainees continue to report that they are unable to make calls to family outside of the United States. *See* Am. Compl. ¶ 36.

Dated: March 13, 2026                    Respectfully submitted,

                                         BRETT A. SHUMATE
                                         *Assistant Attorney General, Civil Division*

                                         ANTHONY NICASTRO
                                         *Acting Director*

                                         LESLIE McKAY
                                         *Assistant Director*

                                         RUSSELL J.E. VERBY
                                         *Senior Litigation Counsel*

                                     By: /s/ *Jason K. Zubata*
                                         JASON K. ZUBATA
                                         *Trial Attorney*
                                         U.S. Department of Justice, Civil Division
                                         Office of Immigration Litigation
                                         P.O. Box 868, Ben Franklin Station
                                         Washington, DC 20044
                                         Tel: (202) 532-4143
                                         Email: jason.k.zubata@usdoj.gov

                                         Attorneys for Defendants

                                         /s/ *Lee Gelernt*
                                         Lee Gelernt (D.D.C. Bar No. NY0408)
                                         AMERICAN CIVIL LIBERTIES UNION
                                         FOUNDATION
                                         125 Broad Street, 18th Floor
                                         New York, NY 10004
                                         (212) 549-2660
                                         lgelernt@aclu.org

                                         Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

      I certify that I served a copy of this motion on the Court and all parties of record by filing it with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to these documents to all counsel of record.

Dated: March 13, 2026                          /s/ *Jason K. Zubata*
                                                         Jason K. Zubata
                                                         *Attorney for Defendant*